J. CHRISTOPHER JACZKO (149317)
JACZKO GODDARD LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone:     (858) 404-9205
Facsimile:      (858) 225-3500
cjaczko@jaczkogoddard.com

DAVID B. CUPAR (to be admitted Pro Hac Vice)
MATTHEW J. CAVANAGH (to be admitted Pro Hac Vice)
MCDONALD HOPKINS LLC
600 Superior Ave., East
Suite 2100
Cleveland, OH 44114
Telephone:     (216) 348-5400
Facsimile:      (216) 348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS


GARY L. EASTMAN (SBN 182518)
GARY L. EASTMAN, APLC
401 W. A Street, Suite 1785
San Diego, CA 92101
Telephone: 619-230-1144
Facsimile:  619-230-1194
garyeastman@sbcglobal.net

Attorney for Plaintiff
DR. GREENS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　　Defendants.<br><br>SPECTRUM LABORATORIES, LLC., an Ohio limited liability company,<br><br>　　　　　Counterclaimant,<br><br>v.<br><br>DR. GREENS, INC., a California corporation,<br><br>　　　　　Counterclaim-Defendant. | Case No. 11cv0638 JAH (CAB)<br><br>**JOINT PROPOSED DISCOVERY PLAN**<br><br>DATE: _____<br><br>TIME: _____<br><br><br><br><br><br><br><br>JUDGE: Hon. John A. Houston<br>FILED: March 29, 2011<br>TRIAL: None Set |

　　　In accordance with Rule 26(f) of the Federal Rules of Civil Procedure, Patent Local Rule 2.1 and this Court's August 24, 2011, order (Dkt. No. 11), plaintiff Dr. Greens, Inc. and defendants Spectrum Laboratories, LLC and James Matthew Stephens hereby submit their Joint Proposed Discovery Plan in connection with the Early Neutral Evaluation Conference ("ENE") scheduled for October 11, 2011.

## I. Nature of the Case

This dispute arises out of a claim of infringement of United States Patent No. 7,192,776 (the "'776 Patent") for a "Synthetic Urine and Method of Manufacturing Same." James Matthew Stephens allegedly owned and assigned the '776 Patent to Spectrum Laboratories, LLC. Dr. Greens, Inc. sells a synthetic urine that Spectrum Laboratories, LLC claims infringes the '776 Patent. After an exchange of correspondence between counsel for the parties, Dr. Greens, Inc. initiated suit for declaratory judgment of patent non-infringement and patent invalidity and damages for patent misuse, unfair competition under federal and common law, as well as damages for intentional interference with business relations and prospective economic advantage.

### A. Dr. Greens' Statement of Case

Dr. Greens, Inc. contends that '776 Patent is invalid under the sale bar of 35 U.S.C. § 102. Dr. Greens, Inc. has alleged that Defendants sold product covered by one or more of the claims of the '776 Patent long before the filing date of the of the '776 Patent resulting in the invalidity of the '776 Patent under 35 U.S.C. § 102. Dr. Greens, Inc. contends that the solutions described in the '776 Patent are well known in the industry resulting in the invalidity of the '776 Patent under 35 U.S.C. § 102 and 35 U.S.C. § 103. Dr. Greens, Inc. also contends that Spectrum Laboratories, LLC and James Matthew Stephens knew, or should have known that the '776 Patent is invalid based in part upon prior sales activities of Defendants and have engaged in patent misuse and unfair competition through alleging patent rights where there are none.

Dr. Greens, Inc. also contends that Spectrum Laboratories, LLC and James Matthew Stephens have engaged in patent misuse, unfair competition and intentional interference with business relations and prospective economic advantage by sending a document to Dr. Greens' customers and prospective customers that stated that Spectrum Labs was taking action against all synthetic urine manufacturers who are potentially violating the '776 Patent.

B.        Spectrum and Stephens' Statement of Case

Spectrum denies Dr. Greens' allegations and has moved to dismiss all of the claims except for the non-monetary declaratory claims directed to the '766 Patent for a "Synthetic Urine and Method of Manufacturing Same." Specifically, Spectrum cannot be liable to Dr. Greens for any money damages because, among other things, the "Legal Action Notification" upon which Dr. Greens bases all of its Lanham Act and tort claims is judicially privileged.

Spectrum has counterclaimed against Dr. Greens for patent infringement, false advertising under the Lanham Act, violating Ohio's deceptive trade practices act, unfair competition under California statutory law, and malicious litigation under Ohio common law. Spectrum's patent infringement claim is based upon Dr. Greens' "Agent X" product infringing Spectrum's '776 patent. Because Dr. Greens has steadfastly refused to disclose the Agent X formula, despite Spectrum's repeated requests, the Patent Act presumes that Dr. Greens is infringing. *See* 35 U.S.C. § 295. Spectrum bases its false advertising, deceptive trade practices, and unfair competition claims upon a magazine ad by Dr. Greens that, among other things, falsely states that Dr. Greens "invented Detox." Spectrum bases its malicious litigation claim upon Spectrum filing objectively baseless claims in its complaint with the malicious intent to harm its competitor, Spectrum.

Stephens has moved to dismiss all of Dr. Greens claims against him because, among other things, Dr. Greens has no factual or legal basis for suing Stephens as an individual. First, Dr. Greens seeks a declaratory judgment on the '776 patent, yet it is undisputed that Stephens has no legal interest in that patent. He assigned his interest to Spectrum in March 2008, which is confirmed by a publicly available assignment document recorded with the USPTO. Second, Dr. Greens seeks money damages for a "Legal Action Notification" document sent by *Spectrum*, not by Stephens. Because it is undisputed that Spectrum is a limited liability company, by statute, Stephens cannot be held individually liable for Spectrum's actions or for any notices allegedly published by Spectrum. Therefore, Spectrum's complaint lacks any factual allegations that would plausibly suggest that Stephens committed any act that could subject him to personal

liability or permit a piercing of the corporate veil protecting him. Stephens will be serving a motion for sanctions against Dr. Greens and its attorney based upon the factually and legally baseless claims against Stephens.

## II.     Rule 26(F)(3) Issues Addressed By Parties

### A.     Initial Disclosures

The parties do not propose changes to the timing, form, or requirement of Rule 26(a) Initial Disclosures.  Pursuant to Rule 26(a), the parties will exchange Initial Disclosures on or before October 3, 2011, fourteen days following the parties' Rule 26 conference, which occurred on September 19, 2011.

### B.     Subjects on Which Discovery Will be Needed

Plaintiff Dr. Greens expects to conduct discovery to obtain documentary and testimonial evidence tending to show:

(1)     that the '776 patent is invalid, misused, and not infringed by Dr. Greens' manufacture and sale of the Agent X product;

(2)     that Spectrum Laboratories, LLC's predecessor in interest asserted patent rights in the '766 patent when it was not an assignee of the same;

(3)     that Spectrum Laboratories, LLC's predecessor in interest sold Quick Fix more than one year prior to the priority date of the '776 Patent and that James Matthew Stephens authorized the sale of Quick Fix more than one year prior to the priority date of the '776 Patent;

(4)     that Spectrum Laboratories, LLC and James Matthew Stephens were aware that the '776 Patent was not valid as a result of James Matthew Stephen's and/or Spectrum Laboratories, LLC's predecessor's sales activities of Quick Fix more than one year prior to the priority date of the '776 Patent and nevertheless asserted patent rights on behalf of Spectrum Laboratories, LLC against Dr. Greens;

(5)     that Spectrum Laboratories, LLC and James Matthew Stephens knowingly falsely asserted patent rights in the '776 Patent in an effort to unfairly ascertain the formula for Dr. Green's successful Agent X product;

(6) that James Matthew Stephens's assignment of the '776 Patent is invalid;

(7) that the solutions and methods of manufacture described in the '776 Patent are well known in the industry resulting in the invalidity of the '776 Patent under 35 U.S.C. § 102 and 35 U.S.C. § 103; and

(8) the profits made by James Matthew Stephen's, Spectrum Laboratories, LLC and Spectrum Laboratories, LLC's predecessor in interest as a result of their acts of unfair competition and intentional interference with Dr. Greens business relations and prospective economic advantages.

Defendants Spectrum and Stephens expects to conduct discovery to obtain documentary and testimonial evidence tending to show:

(1) that the '776 patent is valid, not misused, and infringed by Dr. Greens' manufacture and sale of the Agent X product;

(2) that Dr. Greens' infringement is willful;

(3) that Spectrum is entitled to injunctive relief against Dr. Greens;

(4) that Spectrum is entitled to a presumption of infringement under 35 U.S.C. § 295;

(5) that Spectrum published the "Legal Action Notification" upon which Dr. Greens bases its money damage claims in a good faith effort to comply with the Patent Act's marking statute;

(6) that Spectrum's "Legal Action Notification" caused Dr. Greens no damages;

(7) that Dr. Greens' claims are objectively baseless and maliciously filed, therefore entitling Spectrum and Stephens to recover their resulting damages;

(8) that Dr. Greens' magazine ad is false, misleading, a deceptive trade practice, and unfair competition;

(9) details regarding the manufacture and sale of Agent X by Dr. Greens;

(10) the amount of damages to which Spectrum and Stephens are entitled as a result of Dr. Greens' willful patent infringement, deceptive trade practices, false advertising, unfair competition, and malicious litigation; and

  (11) that Dr. Greens did not invent detox.

### C.  Changes in the Limits on Discovery

The parties do not currently anticipate the need for any changes to the limits on discovery set forth in the Federal Rules of Civil Procedure or this Court's Local Rules.

### D.  Protective Order

The parties agree that a Protective Order is needed in this case, and expect to submit a jointly proposed Protective Order shortly. The parties are negotiating a proposed protective order to govern discovery of confidential information and related issues. The parties agree that until the Court enters a protective order, all documents produced pursuant to this Plan and in response to discovery requests shall be treated by the receiving party as Outside Attorneys' Eyes Only, shall be disclosed only to outside counsel of record for a party, shall be used solely for purposes of this litigation, and shall not be disclosed to any person involved in prosecuting any patent for any party. No party shall withhold producing its documents based on confidentiality concerns (other than third-party obligations) or the fact that the protective order has not yet been entered.

### E.  Production of Electronic Files and Data and Other Discoverable Materials

Electronically stored information ("ESI") ordinarily will not be produced in native format, but instead will be produced in TIFF format with corresponding load files or in PDF format. To the extent other production formats are deemed necessary, the parties will endeavor to reach agreement as needed and will seek judicial resolution if they cannot do so. Additionally, the electronically imaged documents will be marked with appropriate production numbers and confidentiality designations. All data, files, information, and communications that, in the ordinary course of business, are recorded in other media (microfiche, paper, etc.), shall be produced as either image files (*e.g.*, PDF or TIFF) or as paper files. Parties may produce ESI by USB flash drive, CD, DVD, or, for insubstantial productions, email attachment.

### F.  Claims of Privilege or Protection of Trial Preparation Material

A party withholding discovery on the basis of attorney-client privilege, work-product doctrine, or both shall provide a privilege log setting forth the (1) bates number (if any) of the

withheld discovery; (2) the date of its creation; (3) its author(s); (4) its recipient(s); (5) its description in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim; brief general description of the document along with the basis for the privilege assertion; and (6) the basis on which the discovery is withheld (e.g., attorney-client privilege, work-product doctrine, or both). No party will be required to put on the privilege log documents that chronicle communications between the parties and their respective counsel made in relation to or in anticipation of this litigation if such documents were generated after the filing of the Complaint. Otherwise, the parties agree to comply with the Federal Rules of Civil Procedure and other applicable laws governing discovery of privileged or protected matters.

### G.     Service

The parties have agreed that, to the extent possible in light of the volume of the submission, all court filings, to the extent not served through ECF (namely, filings under seal), will be served via email on each of the other parties, and such service shall constitute proper service under Fed. R. Civ. P. 5(b)(2)(E). Moreover, the parties agree that each party may serve discovery, in lieu of other service methods, by email under the Fed. R. Civ. P. 5(b)(2)(E). The additional time provided by Fed. R. Civ. P. 6(d) applies to email service.

### H.     Close of Fact Discovery

The parties agree that fact discovery shall close 45 days after the Court issues a Claim Construction Order. Therefore, all requests for production, interrogatories, and requests for admission shall be served at least 30 days before the close of discovery.

### I.     Expert Disclosures

The parties shall exchange expert disclosures pursuant to Rule 26(a)(2) 45 days after the Court issues a Claim Construction Order. The parties shall exchange rebuttal expert disclosures within 30 days of the other party's disclosure.

### J.     Dispositive Motions

Dispositive motions shall be filed and served within 15 days after the close of expert discovery.

### III. Local Patent Rule 2.2 Issues Addressed By Parties

#### A. Proposed Modifications To Patent Local Rule Deadlines

None.

#### B. Live Testimony At Claim Construction Hearing

The parties agree that live testimony should be heard at the Claim Construction Hearing.

#### C. Specific Limits On Claim Construction Discovery

None, other than those imposed by federal rule, local rule, court order, or other applicable law.

#### D. Order Of Presentation At Claim Construction Hearing

The parties agree they shall begin the hearing by calling their witnesses, who shall be subject to direct examination and cross-examination as they would at trial, with Spectrum's witnesses going first. The parties shall then argue the construction of each disputed term on a term-by-term basis, with Spectrum arguing its construction (or non-construction) of the particular disputed term first, then Dr. Greens arguing its construction (or non-construction), and each party having an opportunity for rebuttal argument.

### IV. Proposed Case Management Schedule

The following proposed case management schedule follows the requirements of the Federal Rules and Patent Local Rules:

| Event | Proposed Dates |
| --- | --- |
| Exchange of Initial Disclosures Pursuant to Fed.R.Civ.P. 26(A)(1) | October 25, 2011 |
| Disclosure of Asserted Claims and Preliminary Infringement Contentions and accompanying document production [Pat. L.R. 3.1-3.2] | October 25, 2011 |
| Preliminary Invalidity Contentions and accompanying document production [Pat. L.R. 3.3-3.4] | December 26, 2011 |

| Event | Proposed Dates |
|---|---|
| Simultaneous Exchange of Preliminary Claim Constructions and Preliminary Identifications of Extrinsic Evidence [Pat. L.R. 4.1.a-b.] | January 9, 2011 |
| Deadline to Amend Pleadings | October 28, 2011 |
| Simultaneous Exchange of Responsive Claim Constructions [Pat. L.R. 4.1.c-d.] | January 23, 2012 |
| Filing of Joint Claim Chart, Worksheet and Hearing Statement [Pat. L.R. 4.2] | February 6, 2012 |
| Status Conference regarding Claim Construction Hearing (at Court's discretion) [Pat. L.R. 4.2.d] | February 13, 2012 |
| Completion of Claim Construction Discovery [Pat. L.R. 4.3] | March 5, 2012 |
| Opening Claim Construction Briefs [Pat. L.R. 4.4.a.] | March 19, 2012 |
| Responsive Claim Construction Briefs [Pat. L.R. 4.4.b] | April 2, 2012 |
| Claim Construction Hearing [Pat. L.R. 4.5] | April 30, 2012 |
| Claim Construction Order | Court's discretion |
| Disclosure of Advice of Counsel [Pat. L.R. 3.8] | within 30 days of Claim Construction Order |
| Close of Fact Discovery | within 45 days of Claim Construction Order |
| Exchange of Expert Reports | original reports within 45 days of Claim Construction Order; rebuttal reports within 30 days of other party's disclosure |
| Close of Expert Discovery | within 120 days of Claim Construction Order |

DATED:   ____10/03/2011____         JACZKO GODDARD LLP

MCDONALD HOPKINS LLC

By:   ___/s/ J. Christopher Jaczko_____
      J. Christopher Jaczko

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS

GARY EASTMAN, APLC

By:   ____/s/  Gary L. Eastman_____
      Gary L. Eastman
      Attorney for Plaintiff Dr. Greens, Inc.

I, the undersigned declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; that I served the above named person the following:

1.  RULE 26 - JONT DISCOVERY PLAN.

in the following manner: (check one)

1. ____ By personally delivering copies to the person served.

2. ____ By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

3. ____ By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of his office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

4. ____ By placing a copy in a separate envelope, with postage fully prepaid, for each address named below and depositing each in the U.S. Mail at _____ on _____, 2010.

5. _XX_ By ECF Filing Service by filing the above-identified documents with the Court via ECF electronic filing to attorneys of record in the case.

| | |
|---|---|
| J. CHRISTOPHER JACZKO (149317) | DAVID B. CUPAR |
| JACZKO GODDARD LLP | MATTHEW J. CAVANAGH |
| 4401 Eastgate Mall | MCDONALD HOPKINS LLC |
| San Diego, CA 92121 | 600 Superior Ave., East |
| Telephone:   (858) 404-9205 | Suite 2100 |
| Facsimile:   (858) 225-3500 | Cleveland, OH 44114 |
| cjaczko@jaczkogoddard.com | dcupar@mcdonaldhopkins.com |
| | mcavanagh@mcdonaldhopkins.com |

Executed on October 3, 2011 at San Diego, California.

/s/ Gary L. Eastman
Gary L. Eastman