J. CHRISTOPHER JACZKO (149317)
JACZKO GODDARD LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 404-9205
Facsimile: (858) 225-3500
cjaczko@jaczkogoddard.com

DAVID B. CUPAR (Pro Hac Vice pending)
MATTHEW J. CAVANAGH (Pro Hac Vice pending)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone: (216)348-5730
Facsimile: (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Defendant.<br><br>―――――――――――――――――<br>SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>DR. GREENS, INC., a California corporation,<br><br>　　　　Counterclaim-Defendant. | No.　11cv0638 JAH (CAB)<br><br>**DEFENDANT SPECTRUM LABORATORIES, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE:　October 24, 2011<br>TIME:　2:30 pm<br>COURTOOM:　11<br><br>JUDGE: Hon. John A. Houston<br>FILED: March 29, 2011<br>TRIAL: None Set |

## I. INTRODUCTION

All of Dr. Greens, Inc.'s Lanham Act and state tort claims against Spectrum Laboratories, LLC ("Spectrum") fail because the "Legal Action Notification" (the "Notice") that Dr. Greens uses as its basis to sue is not actionable. Because the Patent Act requires patent owners to give such notice to recover infringement damages, those notices are lawful in the absence of bad faith. Dr. Greens' claims must fail because it has not alleged any facts showing that Spectrum sent the Notice in bad faith. Dr. Greens now argues that the Court should infer bad faith because Spectrum did not "vigorously" respond to pre-suit letters from Dr. Greens' lawyer and because it did not file an answer or counterclaim in Dr. Greens' first, unprosecuted lawsuit. Spectrum had no obligation to "vigorously" defend against baseless accusations in Dr. Greens' letters or to answer a prior, frivolous complaint that Dr. Greens filed - but never served. Therefore, those alleged facts cannot support an inference of bad faith.

Thus, the Court should dismiss all of the monetary claims against Spectrum for those reasons and for the other reasons explained more fully below.

## II. REPLY ARGUMENT

### A. Dr. Greens' Lanham Act And State Tort Claims Fail Because It Does Not Plausibly Allege Bad Faith

#### 1. Dr. Greens' Claims Fail Because It Does Not Contend That Spectrum Alleged "Potential Infringement" In Bad Faith

Dr. Greens does not dispute that it bases its Lanham Act and state tort claims entirely upon the Notice's statement that other synthetic urine products "potentially violate" or are "potentially infringing" Spectrum's '776 patent. Because Dr. Greens failed to adequately allege that statement was made in "bad faith," as it admits it must, Spectrum moved to dismiss. In response, Dr. Greens argues that it adequately pleaded bad faith because its complaint "alleged repeatedly that 'Defendants knew, or should have know, that the '776 Patent is invalid and unenforceable.'" (Opp. Br. 4.)

But as a threshold issue, the Notice on which Dr. Greens sues says nothing about the '776 patent's "validity," and speaks only of potential "violations" or "infringement." (*See* Dkt. 1-5.) Yet oddly Dr. Greens does not argue that Spectrum lacked a good faith belief that one or more of the claims of its '776 patent "potentially" cover or read on other synthetic urine products, which is the actual test for infringement. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("To prove literal infringement, the patentee must show the accused device contains every limitation in the asserted claims."). Infringement is a separate issue from patent validity. *See Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("whether [a patent] is infringed is an entirely separate question [from invalidity] capable of determination without regard to its validity"). What Spectrum allegedly thought about patent "validity" is irrelevant. Because Dr. Greens does not allege (or even argue) that Spectrum did not believe other synthetic urine products "potentially infringe" the '776 patent – which is the only statement challenged by Dr. Greens – the Court should dismiss Dr. Greens' Lanham Act and state tort claims outright.

### 2. Not "Vigorously Defending" Against An Invalidity Claim Does Not Suggest Bad Faith

But even assuming, solely for sake of argument, that Spectrum's believing the '776 patent is invalid could support a bad faith allegation (which it cannot), Dr. Greens fails to adequately plead that Spectrum had such a belief. Dr. Greens says that two alleged facts support its allegation that Spectrum knew or should have know the '776 patent is invalid: (1) Spectrum did not "vigorously" defend against Dr. Greens' claims of invalidity; and (2) Spectrum did not file an answer or counterclaim in Dr. Greens' first, failed lawsuit. (Opp. Br. 4-7.) Dr. Greens argues the Court can reasonably infer from those responses (or non-responses) that Spectrum knew the '776 patent was invalid. But the bad faith inference that Dr. Greens tries to draw from those two allegations is not plausible and therefore must be rejected.

First, Dr. Greens relies on the fact that when it responded to Spectrum's original July 22, 2009 letter, it put Spectrum "on notice that Dr. Greens, Inc. believed that the '776 Patent was invalid" and that Spectrum did not "vigorously defend[ against] Dr. Greens' claim of patent invalidity." (Opp. Br. 5.) According to Dr. Greens, failing to vigorously defend against Dr. Greens'

invalidity charge is a "tacit acknowledgement" of invalidity. (*Id.*) That, however, is not a plausible inference. That Spectrum's subsequent responses did not specifically address Dr. Greens' lawyers' invalidity accusation means nothing because Spectrum had no obligation to specifically or "vigorously" address that charge.

In *DCI Mktg.*, a district court correctly rejected the very same argument and dismissed the same types of claims Dr. Greens asserts here. *DCI Mktg., Inc. v. Justrit Mfg. Co.*, 213 F. Supp. 2d 971, 974 (E.D. Wis. 2002). There, Justrite, an accused infringer, tried to infer that the patentee knew there was no infringement because Justrite advised the patentee that Justrite's "product did not infringe, [but the patentee] improperly failed to respond to Justrite's explanation." *Id.* Because the patentee "had no obligation to respond," the court correctly held, "its failure to do so does not support a claim of bad faith." *Id.* The Court should rule the same here.

Indeed, for as long as patent owners have claimed infringement, virtually all accused infringers, when approached, have done what Dr. Greens did: deny infringement and claim invalidity. *See Flynn & Emrich Co. v. Greenwood*, 242 F.2d 737, 737 (4th Cir. 1957) (referring to invalidity and non-infringement as the "usual defenses"). Thus, the exchange of correspondence on which Dr. Greens relies is the typical back-and-forth that follows a patentee's notice of potential infringement under the Patent Act; it is not an indication of bad faith. Because Spectrum had no obligation to respond to Dr. Greens' barebones invalidity claims, not vigorously defending against them cannot support an inference of bad faith.

### 3. Not Responding To An Un-Served Complaint Does Not Suggest Bad Faith

Second, Dr. Greens says the court can infer that Spectrum knew the '776 patent was invalid because it did not answer Dr. Greens' first, ill-fated lawsuit. (Opp. Br. 5-6.) This distorted argument fails because, as Dr. Greens' own allegations admit, "service was never made on Defendants Stephens or Spectrum, LLC." (Compl. ¶ 27.) That Spectrum did not respond to an un-served complaint filed over 2,000 miles away from its home state means nothing because it had no obligation or reason to respond. Therefore, this attorney argument and speculation does not and cannot establish bad faith.

### 4. Spectrum Could Not Plausibly Think A Valid Patent Is Invalid

In arguing that Spectrum and Stephens knew the '776 patent was invalid, Dr. Greens ignores that the 776 patent *is valid* based on the statutory presumption of validity. "[U]ntil such a [court] determination of invalidity is made, the patent is considered valid and unenforceable." *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F. Supp. 2d 193, 197 (E.D. Pa. 2003). Thus, many courts have held there can be no bad faith belief in patent validity before a patent is actually invalidated by a court or the USPTO. *E.g.*, *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101, 110 (D. Del. 2002) (dismissing Lanham Act and state tort claims where patentee's alleged statements were made prior to USPTO invalidating patent); *Carpenter Tech. Corp. v. Allegheny Techs. Inc.*, No. 08-2907, 2011 WL 3652447, at *3 (E.D. Pa. Aug. 19, 2011). The reason is obvious. It cannot be argued one thought a patent was invalid when, in fact, the patent is valid at the time of the challenged statement.

In *Carpenter*, for example, plaintiff argued that defendant's letters to customers notifying them of potential patent infringement violated the Lanham Act. *Carpenter*, 2011 WL 3652447, at *3. Applying the bad faith requirement, the court explained that plaintiff had to show "there was no reasonable argument that the patents were valid and enforceable." Doing so, the court held, "is for all practical purposes impossible, because [defendant] owned a valid patent." *Id.* at *5. The court entered judgment for defendant.

Here, it is implausible to infer that Spectrum knew the '776 patent was invalid because it is undisputed that Spectrum owned (and continues to own) a valid patent, a patent that remains valid and unexpired to this day. The face of the '776 patent confirms that the USPTO examined the patent application to determine its validity for over three years. (Dkt. 1-1 (stating application date of Jan. 28, 2004 and issuance date of Mar. 20, 2007).) And Dr. Greens does not allege any adverse judicial decisions regarding the validity of the '776 patent, nor does it allege any adverse decisions by the USPTO in reexamination proceedings or otherwise. *See Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 765 (W.D. Pa. 2007) (finding counterclaimant could not demonstrate plaintiff knew patent was invalid in light of presumption of validity). Dr. Greens ignores the '776 patent's validity, which is fatal to its claims.

### C. Dr. Greens' Lanham Act And State Tort Claims Also Fail Rule 9(b)'s Pleading Standard

Dr. Greens argues Rule 9(b)'s heightened pleading standard "is not applicable," but it does not provide a single legal citation nor any analysis to support its conclusion. (*See* Opp. Br. 9.) It then argues that it satisfied the heightened standard by sufficiently alleging its invalidity position. (*Id.*) Dr. Greens' arguments are unavailing.

Rule 9(b) applies because Dr. Greens bases its Lanham Act and state tort claims entirely upon alleged misrepresentations by Spectrum. They, therefore, sound in fraud and must be pled with particularity under Rule 9(b). *See EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (dismissing Lanham Act false advertising claim for failure to satisfy Rule 9(b) standard); *see also Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) (applying Rule 9(b) to false advertising claims under Lanham Act and state law). A California district court has explained Rule 9(b)'s standard:

> To satisfy Rule 9(b), Plaintiff must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986). Further, Plaintiff must set forth what is false or misleading about a statement, and why it is false. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (citations omitted).

*EcoDisc*, 711 F. Supp. 2d at 1085.

Dr. Greens has wholly failed to satisfy Rule 9(b)'s standard at least because it does not allege when Spectrum allegedly published the Notice, when Dr. Greens received it, to whom (by name) Spectrum allegedly published the Notice, when and from whom (by name) Dr. Greens allegedly received the Notice, and how Spectrum allegedly published it and how Dr. Greens received it. For that separate and independent reason, the Court should dismiss Dr. Greens' Lanham Act and state tort claims.

/ / /

/ / /

/ / /

### D. Dr. Greens Concedes It Failed To State A Claim For Unfair Competition Under California Common Law

Spectrum also moved to dismiss Dr. Greens' unfair competition claim (Count IV) on the separate ground that Dr. Greens failed to allege that any defendant passed off its goods as those of another, which is the essence of such a claim. In response, Dr. Greens admits it failed to state a claim for unfair competition under California common law and asks for permission to amend its complaint to assert unfair competition under California statutory law. (Opp. Br. 13.) The Court, therefore, should dismiss Count IV of Dr. Greens' complaint.

Also, the Court should deny Dr. Greens' request for leave to amend its complaint because re-pleading that claim under a California statute would be futile. *See Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (affirming dismissal without leave to amend because "any amendment would be futile"). The reason is that Dr. Greens bases its unfair competition claim upon the same Notice upon which it bases its Lanham Act and other state tort claims. Because Dr. Greens has not adequately pleaded "bad faith" by Spectrum or by Stephens, it cannot sue on that Notice under California statutory law or any other cause of action, regardless of the claim's name.

### E. Dr. Greens Admits It Cannot Seek Money Damages Under Declaratory Claims

Spectrum also moved to dismiss Dr. Greens' declaratory claims to the extent they seek money damages because, as a matter of law, money damages are not available under such claims. (Spectrum's Memo. 8.) In response, Dr. Greens admits that it cannot recover money damages under its declaratory claims. But it argues the Court should preserve its money demands to "preserve Dr. Greens right to pursue . . . a hearing" after the action to articulate a substantive claim for money damages if it prevails on its declaratory claims. (Opp. Br. 10.)

The Court should reject this argument. If Dr. Greens intends to seek money damages under a substantive claim, then notice pleading under Rule 8 requires it to identify that claim now so that Spectrum may fairly defend against it through discovery and motion practice. Allowing Dr. Greens to wait until the case is over to assert a new substantive claim for damages would inefficiently restart the entire litigation and would unfairly prejudice Spectrum. The Court should require Dr. Greens to identify all of its substantive claims in its complaint, and reject any attempt to do otherwise.

## III. CONCLUSION

For the foregoing reasons, and for the reasons explained in Spectrum's opening memorandum, the Court should dismiss all claims against Spectrum with prejudice, except the non-monetary declaratory claims related to the '776 patent. Spectrum will seek judgment in its favor on those claims at the appropriate time.

DATED: October 17, 2011

JACZKO GODDARD LLP
MCDONALD HOPKINS LLC

By:    /s/ J. Christopher Jaczko
       J. Christopher Jaczko

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS