| | |
|---|---|
| 1 | J. CHRISTOPHER JACZKO (149317)<br>JACZKO GODDARD LLP |
| 2 | 4401 Eastgate Mall<br>San Diego, CA 92121 |
| 3 | Telephone: (858) 404-9205<br>Facsimile: (858) 225-3500 |
| 4 | cjaczko@jaczkogoddard.com |
| 5 | DAVID B. CUPAR (Pro Hac Vice pending)<br>MATTHEW J. CAVANAGH (Pro Hac Vice pending) |
| 6 | MCDONALD HOPKINS LLC<br>600 Superior Avenue East |
| 7 | Suite 2100<br>Cleveland, OH 44114 |
| 8 | Telephone: (216)348-5730<br>Facsimile: (216)348-5474 |
| 9 | dcupar@mcdonaldhopkins.com<br>mcavanagh@mcdonaldhopkins.com |
| 10 | |
| 11 | Attorneys for Defendant and Counterclaimant<br>SPECTRUM LABORATORIES, LLC and<br>Defendant JAMES MATTHEW STEPHENS |

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Defendant.<br><br>SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>DR. GREENS, INC., a California corporation,<br><br>　　　　Counterclaim-Defendant. | No.　11cv0638 JAH (CAB)<br><br>**DEFENDANT JAMES MATTHEW STEPHENS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE: October 24, 2011<br>TIME: 2:30 pm<br>COURTOOM: 11<br><br>JUDGE: Hon. John A. Houston<br>FILED: March 29, 2011<br>TRIAL: None Set |

1  **I.      INTRODUCTION**

All of Dr. Greens, Inc.'s claims against defendant James Matthew "Matt" Stephens, the individual, fail for at least two separate and independent reasons, neither of which Dr. Greens can overcome.

First, all of the conduct on which Dr. Greens has sued was allegedly committed by Spectrum Laboratories, LLC ("Spectrum"), which Dr. Greens has named as a defendant in this action. As a matter of law, Stephens cannot be liable for the actions of Spectrum because it is a limited liability company and there are no allegations of piercing the corporate veil that protects Stephens (or that could support such an allegation). Opposing that legal reality, Dr. Greens claims that because the letters and "Legal Action Notification" (the "Notice") on which it has sued identified "Spectrum Laboratories" or "Spectrum Labs" as its author, the Court should infer that Stephens was somehow acting on his own. That unreasonable inference is the very definition of implausibility and should be rejected.

Second, the Notice that Dr. Greens uses as its basis to sue is not actionable because such notices are required by the Patent Act and therefore are lawful in the absence of bad faith. Dr. Greens' claims must fail because it has not alleged any facts showing that Stephens or Spectrum sent the Notice in bad faith. Dr. Greens now argues that the Court should infer bad faith because Spectrum and Stephens did not "vigorously" respond to pre-suit letters from Dr. Greens' lawyer and because neither filed answers or counterclaims in Dr. Greens' first, unprosecuted lawsuit. Stephens had no obligation to "vigorously" defend against baseless accusations in Dr. Greens' letters or to answer a prior, frivolous complaint that Dr. Greens filed – but never served. Therefore, those alleged facts cannot support an inference of bad faith.

Thus, the Court should dismiss all of the claims against Mr. Stephens individually for those reasons and for the other reasons explained more fully below.

*/ / /*

*/ / /*

## II. REPLY ARGUMENT

### A. Dr. Greens Alleges No Facts To Support A Claim Against Mr. Stephens Individually

Dr. Greens admits, and asks the Court to take judicial notice, that Spectrum incorporated on December 31, 2007, which is over a year and a half before Dr. Greens says the "dispute between the parties arose on July 22, 2009." (Opp. Br. 4; Dkt. 16-2 (requesting judicial notice).) Dr. Greens, however, urges the Court to disregard Spectrum's corporate form – and the liability protection it provides to its managing member, Matt Stephens – because the Notice and correspondence from Spectrum's attorney did not use the full, formal name "Spectrum Laboratories, LLC" when asserting the '776 patent. According to Dr. Greens, because Spectrum's attorney's letters left the "LLC" off of Spectrum Laboratories' name and because the Notice identified "Spectrum Labs" (and not "Spectrum Laboratories, LLC") as the author, Stephens somehow lost the protection of Spectrum's corporate form. Dr. Greens, however, provides no legal support for this hyper-technical theory.

It is well-established that courts will not disregard a corporate entity, except in limited circumstances. *See Automotriz Del Golfo De California S.A. De C.V. v. Resnick*, 306 P.2d 1, 3-4 (Cal. 1957) (citing "conditions under which a corporate entity may be disregarded"). Not including the "LLC" in a company's name in a letter asserting a patent is not one of those circumstances, and the complaint lacks any allegations (whether properly supported or not) that could permit the piercing of the corporate veil protecting Stephens under any legal theory. Therefore, the Court should dismiss Stephens.

Dr. Greens also makes the attorney argument – without evidence or support – that despite Spectrum's admitted existence, its managing member Stephens chose to forego the protection of Spectrum, and to set out as an individual to do business as "Spectrum Laboratories" (apparently in competition with Stephens' own Spectrum Laboratories, LLC). (*See* Opp. Br. 10-11.) The facts pled, however, do not support such an implausible inference. Not using the full name "Spectrum Laboratories, LLC" in correspondence and in the Notice is entirely normal and not – as Dr. Greens' baseless "conspiracy theory" goes – evidence of bad faith. Indeed, Dr. Greens' own product packaging refers to "Dr. Greens, Inc." as simply "Dr. Greens." (Dkt. 8-2 (magazine ad showing Dr.

Greens' "Agent X" product).) So it is disingenuous for Dr. Greens to argue the "Inc." and "LLC" must be used at all times to maintain corporate protection.

Similarly, the *nunc pro tunc* assignment document on which Dr. Greens places so much weight does not plausibly suggest that Stephens was doing business as "Spectrum Laboratories" rather than "Spectrum Laboratories, LLC" for several reasons. (Opp. Br. 10.) As an initial matter, assignments with retroactive effect are entirely normal and effective, especially where (as here) there are no competing claims of ownership by third-parties. *See Lavergne v. Concrete Southwest, Inc.*, 899 F.2d 1228 (Table), 1990 WL 33120 (Fed. Cir. 1990) ("Southwest has not demonstrated that the transfer of patent property could not be accomplished nunc pro tunc by a subsequently executed assignment"); *Sunrise Medical HHG, Inc. v. AirSep Corp.*, 95 F. Supp. 2d 348, 436-37 (W.D. Pa. 2000) ("a *nunc pro tunc* assignment filed *before* the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights"). So the assignment is not "bogus" or suspicious as Dr. Greens claims without legal support. (Opp. Br. 12.)

But even if, as Dr. Greens seems to argue, the assignment had no retroactive effect, that does not suggest that Stephens was doing business individually as "Spectrum Laboratories." Rather, at worst, it would mean only that Spectrum did not have ownership at the time it first asserted the patent. Whether Spectrum actually owned the patent it asserted has no bearing on whether Stephens committed any act that could subject to him to personal liability. Also, whether the *nunc pro tunc* assignment has retroactive effect is not a relevant issue for two reasons. First, Spectrum indisputably had ownership at the time it filed its infringement counterclaim. Thus, no standing problem exists, which is the only situation where *nunc pro tunc* assignments could conceivably not obtain retroactive effect. *See Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998) (finding "nunc pro tunc assignments are not sufficient to confer retroactive standing" after filing of complaint); *see also Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1210-11 (Fed. Cir. 1998) (upholding *nunc pro tunc* assignment because "standing was not deficient at the time the suit was filed"). Second, the assignment conveyed to Spectrum the right to sue for any past infringement for which Stephens could have sued. Thus, Dr. Greens' argument about the assignment is a classic red herring and should be ignored by the Court.

Also, Dr. Greens' reliance on the July 22, 2009 statement by Spectrums' lawyer that "for nearly two decades Spectrum Laboratories has prided itself on creating and having innovative and original products" is unavailing. (Opp. Br. 11.) The form that Spectrum did business in prior to Spectrum's incorporation on December 31, 2007, is irrelevant because, by Dr. Greens' own admission, this dispute did not begin until July 22, 2009. (Opp. Br. 4 ("The dispute between the parties arose on July 22, 2009 . . .").) So even if Stephens was doing business as Spectrum Laboratories prior to December 31, 2007, which he was not, it would not matter. All of the alleged conduct at issue occurred after Spectrum incorporated as Spectrum LLC in 2007.

Nonetheless, the truth is that prior to December 31, 2007, Spectrum existed as "Spectrum Laboratories, Inc.," and not as a dba. Its registration with the Ohio Secretary of State confirms that Spectrum "Inc." incorporated on September 11, 1992, and dissolved on May 19, 2010. (**Exhibit A**, attached.) The Court can take judicial notice of the publicly-filed articles of incorporation and dissolution of Spectrum Inc. for the same reasons Dr. Greens urges the Court to take judicial notice of Spectrum LLC's incorporation. (*See* Dkt. 16-2) Those publicly-filed documents confirm that Spectrum Inc. began "nearly two decades" ago and that it seamlessly transitioned in 2007 to Spectrum LLC.

Dr. Greens provides no factual allegations plausibly suggesting that Stephens was doing business outside of the corporate form during the relevant period, or at any other time. To the contrary, it is implausible to allege that Stephens would have done business as "Spectrum Laboratories" while Spectrum Laboratories, LLC existed. Therefore, the Court should dismiss all of Dr. Greens' claims against Stephens individually.

### B. Dr. Greens' Lanham Act And State Tort Claims Separately Fail Because It Does Not Plausibly Allege Bad Faith

#### 1. Dr. Greens' Claims Fail Because It Does Not Contend That Stephens Alleged "Potential Infringement" In Bad Faith

Dr. Greens does not dispute that it bases its Lanham Act and state tort claims entirely upon the Notice's statement that other synthetic urine products "potentially violate" or are "potentially infringing" the '776 patent. Because Dr. Greens failed to adequately allege that statement was made in "bad faith," as it admits it must, Stephens also moved to dismiss those claims on that separate and

independent ground. Dr. Greens argues that it adequately pleaded bad faith because its complaint "alleged repeatedly that 'Defendants knew, or should have know, that the '776 Patent is invalid and unenforceable.'" (Opp. Br. 3-4.)

But as a threshold issue, the Notice on which Dr. Greens sues says nothing about the '776 patent's "validity," and speaks only of potential "violations" or "infringement." (*See* Dkt. 1-5.) Yet oddly Dr. Greens does not argue that Spectrum lacked a good faith belief that one or more of the claims of its '776 patent "potentially" cover or read on other synthetic urine products, which is the actual test for infringement. *Mas-Hamilton*, 156 F.3d at 1211 ("To prove literal infringement, the patentee must show the accused device contains every limitation in the asserted claims."). Infringement is a separate issue from patent validity. *See Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("whether [a patent] is infringed is an entirely separate question [from invalidity] capable of determination without regard to its validity"). What Stephens allegedly thought about patent "validity" is irrelevant. Because Dr. Greens does not allege (or even argue) that Stephens did not believe other synthetic urine products "potentially infringe" the '776 patent – which is the only statement challenged by Dr. Greens – the Court should dismiss Dr. Greens' Lanham Act and state tort claims outright.

### 2. Not "Vigorously Defending" Against An Invalidity Claim Does Not Suggest Bad Faith

But even assuming, solely for sake of argument, that Stephens' believing the '776 patent is invalid could support a bad faith allegation (which it cannot), Dr. Greens fails to adequately plead that Stephens had such a belief. Dr. Greens says that two alleged facts support its allegation that Stephens knew or should have know the '776 patent is invalid: (1) Stephens did not "vigorously" defend against Dr. Greens' claims of invalidity; and (2) Stephens did not file an answer or counterclaim in Dr. Greens' first, failed lawsuit. Dr. Greens argues the Court can reasonably infer from those responses (or non-responses) that Stephens knew the '776 patent was invalid. But the bad faith inference that Dr. Greens tries to draw from those two allegations is not plausible and therefore must be rejected.

First, Dr. Greens relies on the fact that when it responded to Spectrum's original July 22, 2009 letter, it put Spectrum "on notice that Dr. Greens, Inc. believed that the '776 Patent was

invalid" and that Spectrum did not "vigorously defend[ against] Dr. Greens' claim of patent invalidity." (Opp. Br. 4.) According to Dr. Greens, failing to vigorously defend against Dr. Greens' invalidity charge is a "tacit acknowledgement" of invalidity. (*Id.*) That, however, is not a plausible inference. That Spectrum's subsequent responses did not specifically address Dr. Greens' lawyers' invalidity accusation means nothing because Spectrum had no obligation to specifically or "vigorously" address that charge.

In *DCI Mktg.*, a district court correctly rejected the very same argument and dismissed the same types of claims Dr. Greens asserts here. *DCI Mktg., Inc. v. Justrite Mfg. Co.*, 213 F. Supp. 2d 971, 974 (E.D. Wis. 2002). There, Justrite, an accused infringer, tried to infer that the patentee knew there was no infringement because Justrite advised the patentee that Justrite's "product did not infringe, [but the patentee] improperly failed to respond to Justrite's explanation." *Id.* Because the patentee "had no obligation to respond," the court correctly held, "its failure to do so does not support a claim of bad faith." *Id.* The Court should rule the same here.

Indeed, for as long as patent owners have claimed infringement, virtually all accused infringers, when approached, have done what Dr. Greens did: deny infringement and claim invalidity. *See Flynn & Emrich Co. v. Greenwood*, 242 F.2d 737, 737 (4th Cir. 1957) (referring to invalidity and non-infringement as the "usual defenses"). Thus, the exchange of correspondence on which Dr. Greens relies is the typical back-and-forth that follows a patentee's notice of potential infringement under the Patent Act; it is not an indication of bad faith. Because Spectrum had no obligation to respond to Dr. Greens' barebones invalidity claims, not vigorously defending against them cannot support an inference of bad faith.

### 3. Not Responding To An Un-Served Complaint Does Not Suggest Bad Faith

Second, Dr. Greens says the court can infer that Stephens knew the '776 patent was invalid because he did not answer Dr. Greens first, ill-fated lawsuit. (Opp. Br. 5-7.) This distorted argument fails because, as Dr. Greens' own allegations admit, "service was never made on Defendants Stephens or Spectrum, LLC." (Compl. ¶ 27.) That Stephens did not respond to an un-served complaint filed over 2,000 miles away from his home state means nothing because he had no

obligation or reason to respond. Therefore, this attorney argument and speculation does not and cannot establish bad faith.

### 4. Stephens Could Not Plausibly Think A Valid Patent Is Invalid

In arguing that Spectrum and Stephens knew the '776 patent was invalid, Dr. Greens ignores that the 776 patent *is valid* based on the statutory presumption of validity. "[U]ntil such a [court] determination of invalidity is made, the patent is considered valid and unenforceable." *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F. Supp. 2d 193, 197 (E.D. Pa. 2003). Thus, many courts have held there can be no bad faith belief in patent validity before a patent is actually invalidated by a court or the USPTO. *E.g.*, *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101, 110 (D. Del. 2002) (dismissing Lanham Act and state tort claims where patentee's alleged statements were made prior to USPTO invalidating patent); *Carpenter Tech. Corp. v. Allegheny Techs. Inc.*, No. 08-2907, 2011 WL 3652447, at *3 (E.D. Pa. Aug. 19, 2011). The reason is obvious. It cannot be argued one thought a patent was invalid when, in fact, the patent is valid at the time of the challenged statement.

In *Carpenter*, for example, plaintiff argued that defendant's letters to customers notifying them of potential patent infringement violated the Lanham Act. *Carpenter*, 2011 WL 3652447, at *3. Applying the bad faith requirement, the court explained that plaintiff had to show "there was no reasonable argument that the patents were valid and enforceable." Doing so, the court held, "is for all practical purposes impossible, because [defendant] owned a valid patent." *Id.* at *5. The court entered judgment for defendant.

Here, it is implausible to infer that Stephens knew the '776 patent was invalid because it is undisputed that Spectrum owned (and continues to own) a valid patent, a patent that remains valid and unexpired to this day. The face of the '776 patent confirms that the USPTO examined the patent application to determine its validity for over three years. (Dkt. 1-1 (stating application date of Jan. 28, 2004 and issuance date of Mar. 20, 2007).) And Dr. Greens does not allege any adverse judicial decisions regarding the validity of the '776 patent, nor does it allege any adverse decisions by the USPTO in reexamination proceedings or otherwise. *See Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 765 (W.D. Pa. 2007) (finding counterclaimant could not demonstrate plaintiff knew

patent was invalid in light of presumption of validity). Dr. Greens ignores the '776 patent's validity, which is fatal to its claims.

### C. Dr. Greens' Lanham Act And State Tort Claims Also Fail Rule 9(b)'s Pleading Standard

Dr. Greens argues Rule 9(b)'s heightened pleading standard "is not applicable," but it does not provide a single legal citation nor any analysis to support its conclusion. (*See* Opp. Br. 9.) It then argues that it satisfied the heightened standard by sufficiently alleging its invalidity position. (*Id.*) Dr. Greens' arguments are unavailing.

Rule 9(b) applies because Dr. Greens bases its Lanham Act and state tort claims entirely upon alleged misrepresentations by Stephens. They, therefore, sound in fraud and must be pled with particularity under Rule 9(b). *See EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (dismissing Lanham Act false advertising claim for failure to satisfy Rule 9(b) standard); *see also Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704,709 (N.D. Ill. 2006) (applying Rule 9(b) to false advertising claims under Lanham Act and state law). A California district court has explained Rule 9(b)'s standard:

> To satisfy Rule 9(b), Plaintiff must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986). Further, Plaintiff must set forth what is false or misleading about a statement, and why it is false. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (citations omitted).

*EcoDisc*, 711 F. Supp. 2d at 1085.

Dr. Greens has wholly failed to satisfy Rule 9(b)'s standard at least because it does not allege when Spectrum allegedly published the Notice, when Dr. Greens received it, to whom (by name) Spectrum allegedly published the Notice, when and from whom (by name) Dr. Greens allegedly received the Notice, and how Spectrum allegedly published it and how Dr. Greens received it. For that separate and independent reason, the Court should dismiss Dr. Greens' Lanham Act and state tort claims.

### D. Dr. Greens Concedes It Has No Declaratory Claims Against Stephens

Stephens also moved to dismiss Dr. Greens' declaratory claims (Counts I.A, I.B, and II) because Dr. Greens has not alleged that Stephens has any present legal interest in the '776 patent, a prerequisite for asserting declaratory claims against him. (Dkt. 10-1 at 9.) Dr. Greens does not address that argument, which concedes its merit. *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 670-71 (S.D.N.Y. 2000) (failing to adequately address an argument for dismissal in an opposition brief implicitly concedes the claim's legal insufficiency and "constitutes and abandonment of the issue"). Regardless of whether the *nunc pro tunc* assignment has retroactive effect, Dr. Greens cannot (and does not) dispute that it is effective at least by its January 4, 2010 execution date. Because Dr. Greens does not allege that Stephens has any legal interest in the '776 patent on the day it filed this lawsuit, the Court should dismiss all of the declaratory claims against Stephens.

### E. Dr. Greens Concedes It Failed To State A Claim For Unfair Competition Under California Common Law

Stephens moved to dismiss Dr. Greens' unfair competition claim (Count IV) on the separate ground that Dr. Greens failed to allege that any defendant passed off its goods as those of another, which is the essence of such a claim. In response, Dr. Greens admits it failed to state a claim for unfair competition under California common law and asks for permission to amend its complaint to assert unfair competition under California statutory law. (Opp. Br. 13.) The Court, therefore, should dismiss Count IV of Dr. Greens' complaint.

Also, the Court should deny Dr. Greens' request for leave to amend its complaint because re-pleading that claim under a California statute would be futile. *See Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (affirming dismissal without leave to amend because "any amendment would be futile"). The reason is that Dr. Greens bases its unfair competition claim upon the same Notice upon which it bases its Lanham Act and other state tort claims. Because Dr. Greens has not adequately pleaded "bad faith" by Spectrum or by Stephens, it cannot sue on that Notice under California statutory law or any other cause of action, regardless of the claim's name.

### F. Dr. Greens Admits It Cannot Seek Money Damages Under Declaratory Claims

Stephens also moved to dismiss Dr. Greens' declaratory claims to the extent they seek money damages because, as a matter of law, money damages are not available under such claims. (Stephens' Memo. 10.) In response, Dr. Greens admits that it cannot recover money damages under its declaratory claims. But it argues the Court should preserve its money demands to "preserve Dr. Greens right to pursue . . . a hearing" after the action to articulate a substantive claim for money damages if it prevails on its declaratory claims. (Opp. Br. 13.)

The Court should reject this argument. If Dr. Greens intends to seek money damages under a substantive claim, then notice pleading under Rule 8 requires it to identify that claim now so that Stephens may fairly defend against it through discovery and motion practice. Allowing Dr. Greens to wait until the case is over to assert a new substantive claim for damages would inefficiently restart the entire litigation and would unfairly prejudice Stephens. The Court should require Dr. Greens to identify all of its substantive claims in its complaint, and reject any attempt to do otherwise.

## III. CONCLUSION

For the foregoing reasons, and for the reasons explained in Stephens' opening memorandum, the Court should dismiss all claims against Mr. Stephens with prejudice.

DATED: October 17, 2011              JACZKO GODDARD LLP
                                     MCDONALD HOPKINS LLC


                                     By:    /s/ J. Christopher Jaczko
                                            J. Christopher Jaczko


                                            Attorneys for Defendant and
                                            Counterclaimant
                                            SPECTRUM LABORATORIES, LLC and
                                            Defendant JAMES MATTHEW STEPHENS