J. CHRISTOPHER JACZKO (149317)
JACZKO LAW GROUP, APC
4401 Eastgate Mall
San Diego, CA 92121
Telephone:     (858) 404-9205
Facsimile:     (858) 225-3500
chris@jaczkolaw.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:     (216)348-5730
Facsimile:     (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>    Defendant.<br><br>SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>    Counterclaimant,<br><br>v.<br><br>DR. GREENS, INC., a California corporation,<br><br>    Counterclaim-Defendant. | No.   11cv0638 JAH (CAB)<br><br>**JAMES MATTHEW STEPHENS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS**<br><br>DATE: December 12, 2011<br>TIME: 2:30 p.m.<br>COURTOOM: 11<br><br><br><br>JUDGE: Hon. John A. Houston<br>FILED: March 29, 2011<br>TRIAL: None Set |

## I. Introduction

In its motion, defendant Matt Stephens established that Dr. Greens, Inc. had no legal basis to sue him individually yet refused to dismiss those claims. In response, Dr. Greens incorrectly attempts to portray this as some sort of personal dispute. It is not. While Dr. Greens says Stephens' motion is "offensive," the motion is not a personal attack. Rather, it rests on a simple legal truth: Dr. Greens' complaint is frivolous because it does not (and cannot) allege facts sufficient to sue Stephens individually. To resolve this motion, therefore, the Court must decide "whether the complaint is legally or factually baseless from an objective perspective" and whether "the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676-77 (9th Cir. 2005). Stephens' motion correctly focuses on the complaint and the lack of any pre-filing investigation by Dr. Greens' attorney. In contrast, Dr. Greens incorrectly makes an emotional plea.

With no law or facts to support a plausible claim against Stephens, Dr. Greens tells a story of evil doing by Stephens. But that story is fantasy and not plausibly tethered to any factual allegation or to reality, for that matter. It, therefore, must be disregarded. In the end, Dr. Greens still has not identified any factual allegations or legal authority sufficient to state a non-frivolous claim against Stephens or to pierce the corporate veil that protects him. In fact, Dr. Greens never alleged piercing the corporate veil, which is required. The Court should grant this motion and order Dr. Greens and its attorney to compensate Stephens for the legal fees he has needlessly incurred in opposing the baseless and harassing complaint against him.

## II. Reply Argument

### A. Mr. Stephens Has No "Evidentiary" Burden To Prove His Innocence

#### 1. Mr. Stephens' Motion Is Based On A Deficient Complaint

Dr. Greens incorrectly argues that Stephens' motion "should be dismissed outright" because "no admissible evidence was brought by Mr. Stephens in support of the motion for sanctions." (Br. at 4.) Dr. Greens then tries to reverse the burdens and leap over the pleadings stage by arguing that Stephens – the defendant – somehow has an affirmative burden to prove he did nothing wrong by

offering "evidence of [his] lack of culpability." (Br. at 4.) Dr. Greens misunderstands the legal burdens.

As the party who sued Mr. Stephens, it is Dr. Greens that must present a complaint with sufficient factual allegations to support a "plausible" legal claim against Stephens to proceed with discovery. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (requiring a "plausible claim for relief" to "unlock the doors of discovery"). Before evidence bearing on Stephens' alleged "culpability" is discovered or presented, Dr. Greens' complaint must first offer sufficient factual allegations to survive the pleadings stage, which it does not do. Indeed, as a defendant, Stephens would <u>never</u> have the burden to present "evidence of [his] lack of culpability." Stephens, therefore, has no obligation to offer "admissible evidence" to prove he did nothing wrong, and Dr. Greens cites no legal authority stating or even suggesting otherwise.

Instead, Stephens' motion succeeds by showing the complaint is legally or factually baseless and that no attorney, after conducting an objectively reasonable inquiry, would have found the complaint to be well-founded. *Holgate*, 425 F.3d at 676-77. The complaint, its exhibits, and the USPTO's record of Stephens' patent assignment more than prove that Dr. Greens has no factual or legal basis to sue Stephens individually. Given that, no attorney, having conducted a reasonable inquiry, could conclude otherwise. Thus, by pointing out the deficiencies in Dr. Greens' complaint, Stephens has more than satisfied his burden. That shifts the burden to Dr. Greens to show its complaint has legal and factual merit. Because it has not done so, the Court should grant this motion.

### 2. Dr. Greens Tries To Divert Attention Away From Its Complaint

Applying its incorrect (and unsupported) legal standard, Dr. Greens tries to divert attention from its anemic complaint to the three exhibits attached to Spectrum's motion. Then, Dr. Greens argues the Court should ignore two of them – Exhibits B and C – as "nothing more than attorney letters unsupported in law and fact." (Br. at 3.)

This is a red herring. Stephens did not offer Exhibits B and C as evidence to support the substance of his motion. Rather, those letters demonstrate that Stephens gave Dr. Greens multiple chances to withdraw its frivolous claims to avoid motion practice. They show that Stephens complied with the procedural requirements of Rule 11 and extended professional courtesy before

filing his sanctions motion. Exhibit B was the "informal notice" that the Committee Notes urge parties to give before drafting and serving a Rule 11 motion. *See* 1993 Amendment Notes, Fed. R. Civ. P. 11 ("counsel should be expected to give informal notice to the other party to the other party . . . before proceeding to prepare and serve a Rule 11 motion"). And Exhibit C confirmed that Mr. Stephens properly served the sanctions motion in compliance with Rule 11(c)(2), which triggered the 21-day safe harbor period.

Dr. Greens then urges the Court to ignore the *nunc pro tunc* assignment documents (Exhibit A), which dispositively prove that Stephens does not own any interest in the '776 patent, because it is "unauthenticated by any declaration." (Br. at 4.) The Court should reject this argument because there is no reason, and Dr. Greens gives no reason, to doubt the authenticity of the USPTO's record of the assignment or the assignment document itself. Indeed, Dr. Greens relies upon the documents as authentic to make its arguments. (*See* Br. at 5, 6-7, arguing the "circumstances and timing under which the *nunc pro tunc* assignment was created are entirely suspect").

Further, these documents have been sufficiently authenticated for purposes of this motion because counsel for Stephens represents to the Court that they are true copies of the assignment and the USPTO's record of assignment. *See Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 328-29 (3d Cir. 2005) (explaining authentication is a "slight" burden). That the assignment document was offered by Stephens, the sole signatory, further bolsters its authenticity. Also, the header of the USPTO's "abstract of title" document identifies the USPTO as its undeniable source, and the dates on the assignment match the dates from the abstract of title. (*Compare* Dkt. No. 23-2, Ex. A, Page 1 *with* Page 2.)Moreover, this is not trial or summary judgment, where the stricter admissibility and authentication requirements of Fed. R. Evid. 901 must be met. Even so, the USPTO's assignment records are self-authenticating public records under Fed. R. Evid. 803(8), and therefore would need no separate authentication even if this were trial. Dr. Greens cites no legal authority that would require Stephens to authenticate these types of documents by declaration to rely on them in his motion for sanctions. Therefore, the Court should consider the assignment documents in deciding this motion.

### B. Dr. Greens Has Not Articulated Any Valid Legal Basis For Its Declaratory Claims Against Stephens

#### 1. Dr. Greens Cites No Legal Interest Held By Stephens On Which To Base Its Declaratory Claims

With regard to Dr. Greens' declaratory claims, Stephens moved for sanctions under Rule 11 because, had Dr. Greens' attorney performed a simple online search of the USPTO's assignment database, he would have discovered that Stephens no longer owned the '776 patent due to an assignment to Spectrum. The assignment was recorded with the USPTO in February 2010, over a year before Dr. Greens filed suit. That assignment means Stephens has no legal interest in the '776 patent, and therefore – according to well-settled law – cannot be sued in a declaratory action over that patent. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007); *see also Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1480-81 (Fed. Cir. 1998) (explaining that defendant must have a "legal interest in the [patents at issue]" to be named in a declaratory action).

In response, Dr. Greens' attorney does not deny that he failed to search the USPTO's assignment database before suing Stephens. Instead, Dr. Greens now argues – for the very first time – that Stephens might have a legal interest in the patent if Dr. Greens can prove through discovery "that the assignment is invalid." (Br. at 7.) As Dr. Greens' complaint never mentioned the assignment or alleged it was invalid, this new argument is no more than *post hoc* rationalization and should be rejected as such. It also necessarily fails because no law would invalidate the assignment based on the facts alleged in the complaint or the reasonable inferences drawn from them. Contracts, such as the assignment, are presumed valid. *Walsh v. Schlecht*, 429 U.S. 401, 408 (1977) ("a general rule of construction presumes the legality and enforceability of contracts").

Without any legal support, Dr. Greens says the assignment could be invalidated because, according to the unfounded and rambling story of its attorney, Stephens executed the assignment with some evil intent "to exculpate himself from the liability surrounding the LEGAL ACTION NOTIFICATION." (Br. at 5.) This argument fails legally and factually. Legally, even if that accusation was a plausible inference to draw from the few pleaded facts – which it is not – Dr Greens cites no law that would invalidate the assignment based on that inference. And even if somehow the assignment were denied retroactive effect, it would still be effective as of March 10,

2008, the date it was executed. So even then, Stephens would have no legal interest to support Dr. Greens' declaratory claims against him on the date the complaint was filed.

Factually, Dr. Green's evil intent inference is not plausible. First, Stephens faced no liability for Spectrum's general notice to the industry because, on its face, that notice was authored by "Spectrum Labs," not by Stephens. (*See* Dkt. No. 1-5 (copy of notice).) Also, such good faith notices are privileged under the Patent Act, and therefore not actionable, especially when – as here – they accuse no particular product or seller and make only qualified warnings that other unnamed products "potentially" infringe. *See Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999). And no adverse inference can be drawn from Stephens not answering Dr. Greens' first complaint because, by its own admission, it never served Stephens. (Compl. ¶ 27.)[1] Second, there is no inferential connection between any unlikely liability arising out of the notice and Stephens' assignment, let alone a plausible one, because retroactively changing ownership would not "exculpate" Stephens from liability. So "exculpation" could not have been Stephens' motivation.

Third, *nunc pro tunc* assignments are a normal means for executing an assignment document with a prior effective date, and not suggestive of any wrongdoing. *See Lavergne v. Concrete Southwest, Inc.*, 899 F.2d 1228 (Table), 1990 WL 33120 (Fed. Cir. 1990) ("Southwest has not demonstrated that the transfer of patent property could not be accomplished nunc pro tunc by a subsequently executed assignment"); *Sunrise Medical HHG, Inc. v. AirSep Corp.*, 95 F. Supp. 2d 348, 436-37 (W.D. Pa. 2000) ("a *nunc pro tunc* assignment filed *before* the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights"). In fact, the USPTO's own assignment form specifically asks whether the assignment is "nunc pro tunc."[2]

---

[1] Dr. Greens filed, but did not serve, its first declaratory action solely as a means for obtaining home field advantage under the first-to-file rule in case Spectrum sued him for infringement. *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-39 (Fed. Cir. 1993), abrogated in part on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (explaining "first-to-file rule"). Otherwise, Dr. Greens would have prosecuted that first lawsuit.

[2] A true copy of the USPTO's online form for recording an assignment is attached as **Exhibit A**.

## 2. Stephens Also Assigned His Rights To Sue For Past Infringement

Acknowledging the assignment may be valid, Dr. Greens makes a backstop argument that, even if it is valid, Stephens still has a legal interest because he "is necessarily the owner of interest for any period prior to the effective date of the Nunc Pro Tunc assignment." (Br. at 7.) But Dr. Greens ignores the wording of the assignment, which conveys to Spectrum the right to recover for all "past" infringement.[3] (Dkt. No. 23-2.) Having granted Spectrum the right to recover for all past infringement, including infringement that occurred prior to the effective date of the assignment, Stephens has no standing to assert patent infringement regardless of when it occurred. *See Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) (holding right to sue for past infringement can be assigned).

Without that standing, there can be no controversy to support declaratory claims against Stephens. *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1480-81 (Fed. Cir. 1998) (describing prior finding that no controversy exists where defendants in declaratory action have "no legal interest [in the patents at issue] and therefore could not bring suit for patent infringement"); *see also Top Victory Elect. v. Hitachi Ltd.*, No. C 10-01579 CB, 2010 WL 4722482, at *2-3 (N.D. Cal. Nov. 15, 2010) (dismissing declaratory action where defendant had previously assigned patent).

Because Dr. Greens has not alleged or offered any facts, reasonable inferences, or legal authority that could invalidate Stephens' assignment to Spectrum, he has no plausible legal interest remaining in the '776 patent. Therefore, Dr. Greens' declaratory judgment claims against him are frivolous. The Court should sanction Dr. Greens and its attorney for filing and maintaining those claims. And it should do so regardless of whether it finds the other claims against Stephens are frivolous. *See Holgate*, 425 F.3d at 677.

---

[3] Specifically, the assignment states, "Assignor [Stephens] hereby sells, assigns, transfers, sets over and delivers to Assignee [Spectrum] . . . all of Assignor's right, title and interest in and to . . . all causes of action, claims and demands or other rights for, or arising from any infringement of the Patent in the past, currently, or in the future." (Dkt. No. 23-2.)

### C. Dr. Greens Has No Valid Legal Basis For Its Lanham Act And Tort Claims Against Stephens

Dr. Greens' Lanham Act and tort claims against Stephens violate Rule 11 because Dr. Greens has not pleaded any facts showing Stephens could be personally responsible for a notice sent by Spectrum. Dr. Greens argues that Stephens is liable because the Court can infer that he executed the nunc pro tunc assignment "to shield himself from the personal liability created by him." (Br. at 5.) As explained above, that is an implausible inference and should be rejected. (*See supra* p. 5-6.)

Dr. Greens then argues the Court can infer Stephens did "author or approve the document" because he did not submit a declaration denying those facts. (Br. at 8.) The lack of a declaration from Stephens means nothing because he had no obligation to submit such a declaration at the pleadings stage. *See DCI Mktg., Inc. v. Justrite Mfg. Co.*, 213 F. Supp. 2d 971, 974 (E.D. Wis. 2002) (refusing to infer bad faith from silence on an issue where no obligation to speak existed); *see also Landover Corp. v. Bellevue Master LLC*, 252 Fed. Appx. 800, 803 (9th Cir. 2007) (holding "silence cannot be construed as an admission" where a party has no "duty to speak"). Again, as plaintiff, Dr. Greens has the burden to allege sufficient facts to state a claim against Stephens personally to survive the pleadings stage, which it has failed to do. As defendant, Stephens never has the burden to disprove personal liability. (*See supra* at p. 3.)

Next, Dr. Greens argues the court can infer Stephens "would have some information relating to the LEGAL ACTION NOTIFICATION" by virtue of his position as Managing Member of Spectrum. (Br. at 8.) This argument fails for at least two reasons. First, having "some information" about the notice would not be enough to hold Stephens personally liable. *See J & J Sports Productions, Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *6 (N.D. Cal. Mar. 4, 2011) (requiring "meaningful" participation by corporate officer to impose liability). Second, Stephens' position within a company is not a valid basis for holding him liable for the company's alleged conduct. That is the essence of the corporate shield laws. *See* Cal. Code § 17101 (immunizing members against liability incurred by the company).

Next, Dr. Greens contends that Stephens must have been responsible for the notice because Spectrum's attorney did not use the full, formal name "Spectrum Laboratories, LLC" when asserting

1    the '776 patent. (Br. at 9; *see also* Dkt. No. 16-1 at 10-11.) According to Dr. Greens, because
2    Spectrum's attorney's letters left the "LLC" off of Spectrum Laboratories' name and because
3    Spectrum's industry notice identified "Spectrum Labs" (and not "Spectrum Laboratories, LLC") as
4    the author, Stephens somehow lost the protection of Spectrum's corporate form. Dr. Greens,
5    however, provides no legal support for this hyper-technical theory.

6         It is well-established that courts will not disregard a corporate entity, except under limited
7    circumstances. *See Automotriz Del Golfo De California S.A. De C.V. v. Resnick*, 306 P.2d 1, 3-4
8    (Cal. 1957) (citing "conditions under which a corporate entity may be disregarded"). Failing to
9    include the "LLC" in a company's name while asserting a patent is not one of those circumstances,
10   and the complaint lacks any allegations (whether properly supported or not) that could permit the
11   piercing of the corporate veil protecting Stephens under any legal theory.

12        Dr. Greens seems to argue that despite Spectrum's existence, its managing member Stephens
13   chose to forego the protection of Spectrum's corporate form and set out as an individual, doing
14   business as "Spectrum Laboratories" (apparently in competition with Stephens' Spectrum
15   Laboratories, LLC). (*See* Br. 9.) The facts pleaded, however, do not support such an implausible
16   inference. Not using the full name "Spectrum Laboratories, LLC" in correspondence and in the
17   notice is entirely normal. These documents, after all, were not contracts where precise identification
18   of the parties is necessary. Indeed, Dr. Greens' own product packaging refers to "Dr. Greens, Inc."
19   as simply "Dr. Greens." So it is disingenuous for it to argue the "Inc." and "LLC" must be used at all
20   times to maintain corporate protection.

21        Lastly, Dr. Greens argues that because Spectrum "Inc." applied for an unrelated trademark
22   application, the court can infer that "Spectrum Laboratories, LLC was [not] the active entity as of the
23   March of 2008." (Br. at 10.) This argument makes no sense. It is undisputed that both Spectrum
24   "Inc." and "LLC" coexisted for 2-1/2 years. (*See* Dkt. No. 20-1 (Spectrum LLC's registration); Dkt.
25   No. 16-2 (Spectrum Inc.'s registration).) That coexistence does not suggest Stephens was acting on
26   his own as a dba during this period. It is beyond implausible to infer that Stephens would act as a
27   dba because two Spectrum entities existed at that time, either of which provided corporate protection
28   to Stephens. To the contrary, the existence of one or more corporate entities establishes that

Stephens was *not* acting outside their corporate forms as a dba. There simply is no inferential connection, plausible or otherwise, between the coexistence of two Spectrum entities and Stephens having personal liability for a notice authored by a Spectrum entity.

### III. Conclusion

For the foregoing reasons, and for the reasons offered in Stephens' opening memorandum, the Court should grant this motion and order sanctions against Dr. Greens and its attorney.

DATED: December 5, 2011      JACZKO GODDARD LLP

MCDONALD HOPKINS LLC

By:    /s/ Matthew J. Cavanagh
       Matthew J. Cavanagh

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS