J. CHRISTOPHER JACZKO (149317)
JACZKO LAW GROUP, APC
4401 Eastgate Mall
San Diego, CA 92121
Telephone:    (858) 404-9205
Facsimile:    (858) 225-3500
chris@jaczkolaw.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:    (216)348-5730
Facsimile:    (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Defendant.<br><br>SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>DR. GREENS, INC., a California corporation,<br><br>　　　　Counterclaim-Defendant. | No.　11cv0638 JAH (CAB)<br><br>**SPECTRUM LABORATORIES' MEMORANDUM IN OPPOSITION TO DR. GREENS' MOTION FOR PROTECTIVE ORDER**<br><br>DATE:　December 16, 2011<br>TIME:　3:00 p.m.<br>COURTOOM:　11<br><br><br><br>JUDGE: Hon. John A. Houston<br>FILED: March 29, 2011<br>TRIAL: None Set |

SPECTRUM'S MEMO. IN OPP. TO DR. GREEN'S MOT. FOR PROTECTIVE ORDER　　　　1　　　　11cv0638 JAH (CAB)

In accordance with this Court's December 6, 2011 Order (Dkt. No. 26), Spectrum Laboratories, LLC hereby responds to Dr. Greens, Inc.'s Motion for Protective Order (Dkt. No. 24). Dr. Greens asks the Court to entirely excuse it from having to produce its synthetic urine formulas or the name of its synthetic supplier, two pieces of centrally relevant evidence, on "trade secret" grounds. Although Spectrum does not oppose a protective order, Dr. Greens should produce the requested discovery under a protective order with an attorneys'-eyes-only ("AEO") designation, which is the norm when trade secrets are relevant to a patent case.

I.  **Introduction**

Dr. Greens sued Spectrum to obtain a declaratory judgment that Dr. Greens' synthetic urine products do not infringe Spectrum's '776 patent. That required Spectrum to assert patent infringement as a compulsory counterclaim. Dr. Greens now wants this Court to find non-infringement and dismiss Spectrum's infringement counterclaim without allowing Spectrum to see the very evidence it needs to prove its case: Dr. Greens' synthetic urine formulas. Despite initiating the lawsuit, and thereby putting its formulas at issue, Dr. Greens says it should not be required to produce those formulas because they are "trade secrets." But the simple solution to Dr. Greens' motion is that which the Court instructed at October's ENE Conference: Dr. Greens should produce the formulas and supplier information under an AEO designation. The Court should enter an order accordingly.

II. **Law And Argument**

   A.  **Dr. Greens' Must Prove "Good Cause" For The Protective Order It Seeks**

A party seeking a protective order has the burden to "'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). If a party satisfies that burden, the court then weighs that demonstrated harm against the requesting party's need for the discovery. *Id.* at 1063-64.

   B.  **Dr. Greens Cannot Show "Good Cause" Because There Is No Risk Of Harm**

Dr. Greens says it should not be required to disclose the formula and supplier of its synthetic urine products because "the source of its secret formula is a closely guarded trade secret." (Br. at 2.) But asserting trade secret is not a valid reason for refusing to produce discovery altogether. This

Court's Patent Local Rules and the Court's approved protective order allow for the disclosure of trade secrets subject to an AEO designation. Patent L.R. 2.2 (permitting use of AEO designation prior to entry of protective order), Appx. A at ¶ 4.b (instructing parties to use AEO designation to protect "trade secret[s]"). Courts agree that producing trade secrets under an AEO designation strikes the proper balance between one party's trade secret rights and the other party's need for discovery. *See, e.g., Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011) (where AEO designation is available "even a very sensitive trade secret will be sufficiently protected and should be produced if relevant"); 1221122 Ontario Ltd. v. TCP Water Solutions, Inc., No. 10 C 4942, 2011 WL 2516531, at *5 (N.D. Ill. June 23, 2011) (finding protective order with AEO provision "give[s] 'sufficient protection' to the parties' trade secrets during the discovery process").

Thus, the risk of competitive harm claimed by Dr. Greens easily can be cured by requiring it to produce the discovery under an AEO designation. Doing so would give access only to "outside counsel" and properly-designated independent experts, and would protect against Spectrum seeing the information. (Appx. A at ¶ 8.) Indeed, that trade secrets are often at issue in patent cases is the very reason the Court's Patent Local Rules have adopted a model protective order.

Spectrum offered to stipulate to that approved protective order to resolve Dr. Greens' motion, but Dr. Greens' attorney refused to stipulate because Spectrum's litigation counsel also prosecuted the '776 patent. (*See* Eastman e-mail, Dec. 15, 2011, attached as **Exhibit A**.) According to Dr. Greens, Spectrum's lead litigation counsel "would forever be in a conflict" after viewing the trade secrets because of its role as patent counsel for Spectrum. (Br. at 9.) But since its inception almost 20 years ago, Spectrum has only applied for <u>one</u> patent relating to synthetic urine: the '776 patent. And Spectrum's outside patent counsel does not participate in Spectrum's supplier and product recipe decisions. So there is no risk of future conflict or disclosure of synthetic urine trade secrets, whether purposely or inadvertently. Plus, the integrity of Spectrum's counsel, combined with the threat of contempt and disciplinary proceedings, more than ensure that the trade secrets will not be disclosed to Spectrum.

While Dr. Greens says the AEO designation is inadequate, it does not cite a single case where relevant trade secrets were withheld from *outside* counsel. In the *Brown Bag* case cited by Dr.

Greens, the parties allowed "outside" counsel to view the alleged trade secrets under an AEO designation. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir. 1992). The Court limited "in-house" counsel's access to those trade secrets because that attorney was one of only 14 employees of the plaintiff who regularly participated in "competitive decisionmaking," and because "none of the trade secrets were themselves relevant." *Id*. at 1471. Here, the approved protective order limits access to "outside" counsel (who are not involved in "competitive decisionmaking") and, as explained below, the alleged trade secrets are centrally relevant to this case.

### C. There Is No "Good Cause" Because The Discovery Is Centrally Relevant

Because Spectrum has a critical need for the formula and supplier information, the Court should order their production, regardless of what potential harm Dr. Greens alleges. The '776 patent claims both methods of making synthetic urine (claims 5-13) and the compositions themselves (claims 1-4). Therefore, Spectrum must know each of the precise ingredients used to make Dr. Greens' products (the compositions), and it must know how they are made (the methods).

Spectrum needs that discovery to defend against Dr. Greens' declaratory claims and to prosecute its infringement counterclaim. Spectrum also must know the identity of Dr. Greens' suppliers to confirm the specific ingredients supplied to Dr. Greens. Dr. Greens' suppliers themselves may be directly or indirectly infringing the '776 patent, thus enhancing Spectrum's need for their identity. Therefore, the discovery withheld by Dr. Greens is centrally relevant, the denial of which would violate Spectrum's due process rights, among other things. In the end, Dr. Greens is not an uninvolved third-party opposing a subpoena, but instead is a plaintiff that filed a lawsuit putting its formula and suppliers directly at issue by claiming that its formulation does not infringe. It must produce that discovery.

### D. Dr. Greens' Arguments Are Unavailing

Dr. Greens argues Spectrum should conduct a "chemical test" on Dr. Greens' products rather than view the actual formulas. (Br. at 6.) But a chemical test is not an adequate substitute for several important reasons.

First, errors can occur in chemical analysis, which Dr. Greens would no doubt focus on while cross-examining the expert who performed the testing. In contrast, Dr. Greens cannot impeach its own formulas. Spectrum is entitled to that stronger evidence.

Second, testing may not detect all of the ingredients actually added to the tested solution due to masking agents, interactions with other ingredients, testing limitations, and diminishing concentrations over time. After all, the '776 patent claims methods and a combination of ingredients used to <u>make</u> synthetic urines, not what can be detected by chemical testing <u>after</u> production and bottling.

Third, using chemical testing would limit the analysis only to a small sampling of synthetic urine products currently existing in the marketplace, whereas the requested formulas, ingredients, and purchasing records should allow Spectrum to test infringement of the entire population of synthetic urines sold or made by Dr. Greens since the '776 patent issued in 2007.

Fourth, chemical testing would be more expensive and time consuming than Dr. Greens simply producing the business records requested. Dr. Greens obtained a $5,600 quote from a purported chemical lab to test "a synthetic urine solution," but Dr. Greens overlooks that multiple samples would have to be tested. It also ignores that an expert witness will be required to admit the testing into evidence, which would require the extra cost, time, and effort associated with the expert's fees, report, deposition, paper discovery, *Daubert* motion and hearing, and trial testimony.

Dr. Greens then claims that Spectrum needs no further discovery because, according to Dr. Greens, the only biocide in its product is "sodium azide," which is not named in the '776 patent. (Br. at 7, 10.) For support, Dr. Greens offers a single test commissioned by Dr. Greens that detected "sodium azide" in a single sample of "Agent X" and a 2004 MSDS identifying "sodium azide." But these two isolated documents do not end the case. Spectrum is entitled to conduct its own discovery, not rely on the few pieces of filtered, unauthenticated evidence that Dr. Greens chooses. Moreover, that sodium azide is present in a single solution (or present in a 2004 solution) does not mean other claimed biocides are not present in that tested sample or in the other synthetic urine products sold by Dr. Greens since the '776 patent issued in 2007.

Also, Dr. Greens' argument that Spectrum should not obtain discovery based on Dr. Greens' incorrect claim that Spectrum did not do an adequate pre-filing investigation is a *non sequitur*. (Br. at 8-9.) Dr. Greens is not excused from its discovery obligations simply because it thinks Spectrum did not conduct adequate pre-filing investigations, and Dr. Greens cites no authority to support this argument. Even so, Spectrum made reasonable efforts to discover Dr. Greens' formula but, as the present motion confirms, Dr. Greens steadfastly has refused to disclose it. Furthermore, Dr. Greens overlooks that it filed this lawsuit. So Spectrum is entitled to this evidence to defend against Dr. Greens' declaratory claims, even if Spectrum had not counterclaimed for infringement. The Patent Act also belies Dr. Greens' incorrect argument. *See* 35 U.S.C. § 295 (burden of proof shifts to Dr. Greens to prove non-infringement of process claims because, in discovery, Spectrum made "reasonable effort to determine the process actually used").

### III. Conclusion

For the foregoing reasons, the Court should enter the "Approved Form of Protective Order," which is Appendix A to the Court's Patent Local Rules, and order Dr. Greens to produce all of the discovery requested by Spectrum subject to the appropriate confidentiality designation under the Protective Order.

DATED: December 12, 2011

JACZKO GODDARD LLP
MCDONALD HOPKINS LLC

By: /s/ Matthew J. Cavanagh
Matthew J. Cavanagh

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS