UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DR. GREENS, INC., | ) | Civil No. 3:11-cv-638-JAH (CAB) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT** |
| v. | ) | **SPECTRUM LABORATORIES,** |
| | ) | **LLC'S MOTION TO DISMISS;** |
| JAMES MATTHEW STEPHENS, an | ) | **GRANTING DEFENDANT JAMES** |
| individual, and SPECTRUM | ) | **MATTHEW STEPHENS' MOTION** |
| LABORATORIES, LLC, | ) | **TO DISMISS; GRANTING** |
| | ) | **PLAINTIFF'S REQUEST FOR** |
| Defendants. | ) | **LEAVE TO AMEND; AND** |
| _____ | ) | **DENYING DEFENDANT JAMES** |
| | ) | **MATTHEW STEPHENS' MOTION** |
| Related Counterclaims. | ) | **FOR SANCTIONS** |
| | ) | |
| _____ | ) | **[DKT. NOS. 7, 10, 23]** |

## **INTRODUCTION**

On March 29, 2011, plaintiff Dr. Greens, Inc. ("Plaintiff") filed this patent case against defendants James Matthew Stephens ("Stephens") and Spectrum Laboratories, LLC (collectively, "Defendants"). In its Complaint, Plaintiff asserts the following causes of action: (1) patent non-infringement, (2) patent invalidity, (3) misuse of patent, (4) federal statutory unfair competition, (5) common law unfair competition, (6) interference with business relations, and (7) interference with prospective economic advantage. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, attorney's fees, and costs of suit.

On August 15, 2011, Spectrum Laboratories, LLC filed an answer to Plaintiff's Complaint, along with counterclaims for (1) patent infringement; (2) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) violation of Ohio's Deceptive Trade Practices Act, Ohio Revised Code sections 4165.01-04; (4) violation of California's Unfair Competition Law, California Business and Professions Code section 17200 et seq.; and (5) malicious litigation under Ohio common law.

Also on August 15, 2011, Spectrum Laboratories, LLC and Stephens each filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6). (Dkt. Nos. 7, 10). On October 10, 2011, Plaintiff filed responses in opposition to the motions to dismiss and sought leave to file an amended complaint. (Dkt. No. 16.) On October 17, 2011, Defendants each filed a reply. (Dkt. Nos. 19, 20.) On October 29, 2011, the Court took the motions to dismiss under submission with oral argument. (Dkt. No. 22.)

On November 1, 2011, Stephens filed a motion for sanctions against Plaintiff and its attorney of record, Gary L. Eastman, pursuant to Federal Rules of Civil Procedure, Rule 11. On November 28, 2011, Plaintiff filed a response in opposition to Stephens' Motion for Sanctions, (Dkt. No. 25), and, on December 5, 2011, Stephens filed a reply, (Dkt. No. 26). On December 12, 2011, the Court took the Motion for Sanctions under submission without oral argument. (Dkt. No. 28.)

After a careful review of the parties' submissions, and for the reasons that follow, the Court **GRANTS** Spectrum Laboratories, LLC's Motion to Dismiss, **GRANTS** Stephens' Motion to Dismiss, **GRANTS** Plaintiff's request for leave to file an amended complaint, and **DENIES** Stephens' Motion for Sanctions.

## BACKGROUND

I.     **General Allegations**

Plaintiff alleges it is a California corporation that markets and distributes a synthetic urine product known as "Dr. Green's Agent X." Plaintiff alleges Stephens is an individual residing in Ohio and doing business as Spectrum Laboratories; and that

Spectrum Laboratories, LLC is an Ohio limited liability company with its principal place of business in Ohio. Plaintiff further alleges Stephens is an officer, director, and/or managing agent of Spectrum Laboratories, LLC.

Plaintiff alleges that, on or about January 28, 2004, Stephens applied for a United States patent for synthetic urine and the method of manufacturing same, which the United States Patent and Trademark Office ("USPTO") issued on March 20, 2007, as Patent No. 7,192,776 ("the '776 patent"). An alleged copy of the '776 patent is attached as Exhibit A to the Complaint and incorporated therein.

Plaintiff alleges that, on or about July 22, 2009, Defendants, through counsel, sent a cease and desist letter to Plaintiff. The letter, attached as Exhibit B to the Complaint and incorporated therein, states:

> For nearly two decades Spectrum Laboratories has prided itself on creating and having innovative and original products were [sic] an original idea to the market. Spectrum has spent significant resources on the development of such products.
>
> Consistent with this, Spectrum owns U.S. Patent No. 7,192,776, a copy of which is enclosed. Spectrum believes that your Agent X product likely infringes the '776 patent. Please review the '776 patent and let us know by **_Monday, August 3, 2009_** any basis for which you do not believe that you infringe.

(Emphasis in original.)

Plaintiff alleges that, on August 3, 2009, Plaintiff's counsel responded to the July 22, 2009 letter. In the August 3, 2009 letter, attached as Exhibit C to the Complaint and incorporated therein, Plaintiff's counsel denied infringement on the basis that, based on a preliminary assessment of the '776 patent, "each of the independent claims includes an element or process step which is not included in any product of Dr. Greens, Inc., and particularly not in the AGENT X product." Also in the letter, Plaintiff's counsel asserted that the '776 patent is invalid pursuant to 35 U.S.C. § 102 because "Stephens and Spectrum Laboratories had sold the solution specified in the '776 patent long before the January 23, 2004 [patent application] filing date."

Plaintiff's counsel also stated in the August 3, 2009 letter that he had become

aware that Defendants had sent letters to Plaintiff's customers warning them of potential

infringement and instructing them not to purchase Agent X from Plaintiff.  Indeed,

Plaintiff alleges in its Complaint that Defendants had sent a document entitled "Legal

Action Notification" ("the Notification") to Plaintiff and its customers.  An alleged copy

of the Notification is attached as Exhibit E to the Complaint, incorporated therein, and

states in full:

> Dear Valued Retailer,
>
> We wanted to make you aware of legal actions Spectrum Labs is in the process of taking against all synthetic urine manufacturers who are potentially violating our patent.  As you know, Spectrum Labs' "Quick Fix" synthetic urine is the <u>only</u> patented product of its kind in the market.  Other companies have brought similar products into the marketplace.  It has come to our attention that these products potentially violate Spectrum's U.S. Patent No. 7,192,776.
>
> According to our attorneys, patent laws are very clear on protecting the patent holder against "***whoever***", without authority, makes, uses, ***offers to sell, or sells*** any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271.  Violators – whether the manufacturer ***or*** seller – can be held legally and financially responsible for any losses to Spectrum due to infringement.
>
> While we do not wish to place any financial hardship on our customers, we must take action to protect our patented products.  Due to the number of companies flooding the market with inferior products, knock-offs and potentially infringing formulas we have no option but to consider moving forward with legal action.
>
> To avoid potential liability, please avoid offering for sale, or selling, any potentially infringing products.  If you have any questions regarding this matter please contact us.
>
> Spectrum Labs

(Emphasis in original.)

Also in the August 3, 2009 letter, Plaintiff's counsel asserted that Defendants'

mischaracterization of Agent X as an infringing product constituted unfair competition in

violation of the Lanham Act, 15 U.S.C. § 1125(a), as well as formed the basis for related

causes of action for misuse of a patent, common law unfair competition, and interference

with prospective economic advantage.  As such, Plaintiff's counsel demanded a list of all

customers to whom Defendants had sent the "Legal Action Notification."

1    Plaintiff alleges that, on August 6, 2009, Defendants' counsel responded to the

2    August 3, 2009 letter, stating that he would be out of town but that he would work with

3    Plaintiff's counsel over the ensuing weeks to resolve the matter.

4    Plaintiff alleges that, in or about August 2009, Plaintiff filed suit in this Court for

5    a declaratory judgment of non-infringement and other related causes of action against

6    Spectrum Laboratories, Inc.; Spectrum Laboratories, LLC; and James Stephens.  Plaintiff

7    alleges that it served that initial complaint on Spectrum Laboratories, Inc. but not on

8    Stephens or Spectrum Laboratories, LLC.

9    Plaintiff alleges that, on September 19, 2009, its counsel sent a follow-up letter to

10   Defendants' counsel, again requesting specifics regarding the alleged infringement, further

11   warning that Defendants were engaged in patent misuse and unfair competition, again

12   requesting a list of customers to whom Defendants had sent the Legal Action Notification,

13   and demanding a retraction of same.

14   Plaintiff alleges that, on September 21, 2009, Defendants' counsel responded by

15   email to the September 19, 2009 follow-up letter.  In his September 21, 2009 email,

16   attached as Exhibit G to the Complaint and incorporated therein, Defendants' counsel

17   requested Plaintiff's final assessment of whether Agent X infringed the '776 patent.

18   Defendants' counsel also requested letters that supported the claim that Defendants were

19   sending letters to Plaintiff's customers in violation of the Lanham Act.

20   Plaintiff alleges that, on September 23, 2009, Plaintiff's counsel sent a letter in

21   response to the September 21, 2009 email.  In the September 23, 2009 letter, Plaintiff's

22   counsel set forth his theory that the '776 patent is invalid pursuant to the on-sale bar set

23   forth in 35 U.S.C. § 102, specifically that Defendants had sold the patented product to

24   Plaintiff more than a year before the earliest filing of the '776 patent application.  Then

25   Plaintiff's counsel again demanded a list of customers to whom Defendants had sent the

26   Legal Action Notification and a retraction of same.

27   Plaintiff alleges that, on October 23, 2009, Plaintiff's counsel sent another letter

28   to Defendants, stating Plaintiff had received no meaningful response to its September 23,

2009 letter and again requesting a list of customers to whom Defendants sent the Notification and again demanding a retraction of the same.

Plaintiff alleges it received no further correspondence from Defendants and that Spectrum Laboratories, Inc., although served, did not respond to the August 2009 complaint. Accordingly, Plaintiff alleges that, because nearly seventeen months had passed without action by Defendants, it believed Defendants had abandoned their allegations of infringement. Based on that belief, Plaintiff voluntarily dismissed its August 2009 complaint without prejudice.

Plaintiff alleges, however, that, on February 11, 2011, its counsel received a renewed notification from Defendants' counsel alleging infringement of the '776 patent and requesting the Agent X formula and method of manufacture. The February 11, 2011 letter, attached as Exhibit J to the Complaint and incorporated therein, states:

. . .

I previously wrote to your client, Dr. Greens, Inc., on July 22, 2009, expressing Spectrum's belief that Dr. Greens' Agent X product potentially infringes the '776 patent. My letter asked that Dr. Greens provide to us any basis for its believing that it does not infringe the '776 patent. Although you responded on behalf of Dr. Greens with a letter dated August 3, 2009, generally denying infringement, neither you nor Dr. Greens have ever provided any specific information why it believes it does not infringe.

. . . Spectrum again asks that Dr. Greens identify any reasons why it does not believe it is infringing. Specifically, if Dr. Greens contends that its Agent X product does not infringe, please provide the formula and method used to manufacture that product so we can test the accuracy of that contention in accordance with 35 U.S.C. § 295.

## II.    Claims for Relief

In Count I(a) (Patent Non-infringement), Plaintiff alleges that Agent X does not infringe the '776 patent and that a judiciable controversy has arisen with regard to whether Agent X infringes the '776 patent.

In Count I(b) (Patent Invalidity), Plaintiff alleges the '776 patent is invalid because "Defendants manufactured and sold product covered by one or more claims of the patent long before the filing date of the patent." Plaintiff also alleges the '776 patent is invalid because its claims are obvious in light of prior art. Plaintiff alleges a judiciable controversy

11cv638

has arisen with regard to the '776 patent's validity. Plaintiff seeks a judicial determination regarding its allegations of invalidity and claims it is entitled to punitive damages because "Defendants knew, or should have known, that the '776 patent is invalid and unenforceable, and as a result, such actions were willful and without a reasonable basis."

In Count II (Misuse of Patent), Plaintiff claims Defendants threatened legal action against Plaintiff to remove Agent X from the marketplace. Plaintiff asserts the July 22, 2009 letter and the August 6, 2009 email were attempts to prevent Plaintiff from all advertising, distribution, and sale of its non-infringing Agent X. Plaintiff also asserts the "Legal Action Notification," which Defendants allegedly sent to Plaintiff's customers, "constitutes patent misuse because Defendants know, or should have known, that the '776 patent is invalid and unenforceable under at least 35 U.S.C. § 102." As with Count I(b), Plaintiff alleges it is entitled to punitive damages based on Defendants' alleged knowledge of the '776 patent's invalidity.

In Count III (Federal Statutory Unfair Competition), Plaintiff asserts that "Defendants have mischaracterized Plaintiff's products as an infringement of the patent." Plaintiff asserts that "Defendants' mischaracterization of Plaintiff's products has and will continue to lead to the loss of reputation and goodwill." Accordingly, Plaintiff alleges "Defendants' mischaracterization . . . constitutes Federal Unfair Competition under . . . the Lanham Act." Plaintiff specifically alleges that "Defendants' creation and transmission of the 'Legal Action Notification' . . . constitutes Federal Unfair Competition under . . . the Lanham Act." Plaintiff claims that "Defendants knew, or should have known, that the '776 patent is invalid and unenforceable."

In Count IV (Common Law Unfair Competition), Plaintiff reasserts its allegations regarding the mischaracterization of Agent X, except Plaintiff claims relief pursuant to common law rather than under the Lanham Act.

In Count V (Interference with Business Relations), Plaintiff again claims Defendants mischaracterized Agent X. In addition, Plaintiff alleges "that some number of Plaintiff's current and prospective customers were among those to whom Defendants

11cv638

mischaracterized Plaintiff's products and services." Plaintiff claims that "Defendants were aware the mischaracterizations of Plaintiff's products and services were reaching [Plaintiff's] current and prospective customers." Plaintiff asserts that "Defendants' creation and transmission of the 'Legal Action Notification' . . . was for the sole purpose of damaging Plaintiff's business by discouraging Plaintiff's customers from doing business with Plaintiff under false fear of patent infringement litigation by Defendants." Indeed, Plaintiff claims "Defendants intended the mischaracterizations . . . to discourage current customers from using Plaintiff's products" and that "some of Plaintiff's current customers were discouraged from using Plaintiff's products by Defendants' mischaracterizations," thus resulting in "some number of lost sales by Plaintiff." Plaintiff again alleges that "Defendants knew, or should have known, that the '776 patent is invalid and unenforceable."

In Count VI (Interference with Prospective Economic Advantage), Plaintiff reasserts its allegations regarding Defendants' mischaracterization of Plaintiff's products, regarding Plaintiff's loss of business, and regarding Defendants' knowledge of the '776 patent's invalidity and unenforceability.

## III.    Facts Subject to Judicial Notice

Both parties submit documents that contain facts they contend are subject to judicial notice. The Court deems it appropriate to take judicial notice of the following facts for purposes of deciding Defendants' motions to dismiss:[1]

---

[1] Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). "When matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." Id. (citation omitted). A court, however, may look to facts proper for judicial notice without converting a Rule 12(b)(6) motion to one for summary judgment even though those facts are beyond the complaint. See Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986), abrogated in part on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).

Federal Rule of Evidence 201 allows a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." "Adjudicative facts are those to which the law is applied in the process of

- Spectrum Laboratories, Inc. was incorporated on September 9, 1992, and dissolved on May 18, 2010.

- Stephens was the president of Spectrum Laboratories, Inc.

- Spectrum Laboratories, LLC was organized on December 31, 2007.

- Stephens recorded a document with the USPTO purporting to assign his interest in the '776 patent to Spectrum Laboratories, LLC on January 4, 2010, effective, nunc pro tunc, on March 4, 2008.

## DISCUSSION

The Court will first address Defendants' motions to dismiss, followed by Plaintiff's request for leave to file an amended complaint, after which the Court will address Stephens' motion for Rule 11 sanctions.

## I. Defendants' Motions to Dismiss

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

---

adjudication. They are the facts that normally go to the jury in a jury case." Grason Elec. Co. v. Sacramento Mun. Util. Dist., 571 F. Supp. 1504, 1521 (E.D. Cal. 1983) (citation omitted).

129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. <u>Lee v. Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001).

**B.    Analysis**

The Court will first address Defendants' common grounds for dismissal, after which the Court will address Stephens' individual grounds for dismissal.

**1.    Common Grounds for Dismissal**

**a.    Judicial Privilege and Bad Faith**

Defendants argue Counts III through VI should be dismissed because the creation and transmission of the "Legal Action Notification" (i.e., the basis for Counts III through VI) is judicially privileged, and Plaintiff has failed to allege facts demonstrating the notification was sent in bad faith as required to overcome the privilege.

Defendants argue "Spectrum did [nothing] more than obey the Patent Act by giving notice of 'potential' infringement of its patent, which is presumed to be valid." Indeed, Defendants assert that "the law presumes that a patent holder acts in good faith when asserting rights in a duly granted patent."

Defendants argue Plaintiff's allegation, based on information and belief, that "Defendants knew, or should have known, that the '776 patent is invalid and unenforceable" is a legal conclusion that deserves no presumption of truth in deciding Defendants' motions. Defendants argue the "few well-pleaded facts of the [C]omplaint actually suggest good faith," e.g., that "Spectrum repeatedly asked Dr. Greens, in writing to state the reasons it believed it did not infringe" and to provide the formula for Plaintiff's product to confirm non-infringement. On that basis, Defendants argue Plaintiff's refusal to provide Defendants with its formula gives rise to a judicial presumption of infringement under 35 U.S.C. § 295, which shifts the burden of proving non-infringement to Plaintiff, thus making it even more implausible that "Spectrum's claim of 'potential' infringement" was made in bad faith.

Lastly, Defendants assert that the Notification itself further suggests good faith because "it uses the qualifier 'potentially' [with regard to infringement] and does not even name [Plaintiff] or its product."

In response, Plaintiff agrees that it must plausibly allege bad faith on the part of Defendants to survive a motion to dismiss. Plaintiff asserts, however, that bad faith is adequately pled where a plaintiff claims that a patentee has represented that a competitor is infringing a patent the patentee knows is invalid, unenforceable, or not infringed. Plaintiff then goes on to assert that "the timing and sequence of events relating to the [August 2009] complaint, as plead in the current Complaint," demonstrate Defendants' bad faith. That is, Plaintiff asserts it need not use the exact words "bad faith" because the sequence of events alleged in the Complaint "evidences a pattern of misconduct on the part of Defendants and a tacit acknowledgment" that Defendants knew the '776 patent was invalid – per the on-sale bar set forth in 35 U.S.C. § 102(b) – at the time Defendants

11

created and transmitted the Notification because, as alleged in the Complaint, Defendants knew they were selling the solution specified in the '776 patent long before Stephens filed the '776 patent application.

Plaintiff argues its allegations further demonstrate Defendants' bad faith in that Plaintiff alleges Defendants failed to defend against Plaintiff's August 2009 lawsuit, which Defendants must have known would result in a declaration of patent invalidity, and then resumed their accusations of infringement once Plaintiff dismissed that first lawsuit. Plaintiff asserts that, "if Defendants had any intention of bringing suit based on the alleged infringement by [Plaintiff], they would have done so in 2009 when they were originally sued by [Plaintiff]." Plaintiff notes that, indeed, had Defendants filed an answer to the 2009 complaint, a counter-claim for infringement would have been compulsory, and the suit would have resulted in a finding of patent invalidity – something Defendants wanted to avoid.

Regarding the Notification itself, Plaintiff notes that, while it does not specifically name Plaintiff's business, it asserts "patent infringement by 'all synthetic urine manufacturers,'" which necessarily includes Plaintiff's business. Plaintiff further notes that, while the Notification only states that other products "potentially violate" the '776 patent, it states that "Spectrum Labs' [product] is the <u>only</u> patented product of its kind," thus giving rise to the inference that any other synthetic urine, including Plaintiff's product, infringes the '776 patent. Plaintiff argues an average recipient of the Notification would construe it to mean he or she would become involved in litigation if he or she distributed any synthetic urine other than the synthetic urine covered by the '776 patent. Accordingly, Plaintiff asserts Defendant's intentionally disseminated the Notification to chill Plaintiff's business.

Plaintiff further asserts that the presumption of infringement set forth in 35 U.S.C. § 295 does not apply when adjudicating a motion to dismiss under Rule 12(b)(6), which tests the sufficiency of a complaint – not whether a party bears and/or has satisfied a particular burden of proof. Plaintiff notes, however, that "the only information available

before this Court, which must be deemed true for purposes of a 12(b)(6) motion, is that[, as set forth in the letter attached as Exhibit C to the Complaint, counsel for Plaintiff's preliminary assessment led him to conclude that] Dr. Greens' product is not covered by the claims of the '776 Patent." Accordingly, even if the presumption of infringement applied when deciding a 12(b)(6) motion, Plaintiff has adequately pled facts to overcome the presumption.

In sum, Plaintiff argues its allegation that "Defendants knew, or should have known, that the '776 patent is invalid and unenforceable" – when considered with the remainder of its Complaint, including the attached exhibits – is sufficient to plausibly allege that Defendants created and transmitted the Notification in bad faith thus overcoming the applicable privilege.

In reply, Defendants reassert that Plaintiff's allegation that "Defendants knew, or should have known, that the '776 patent is invalid and unenforceable," is insufficient to plausibly allege that Defendants created and transmitted the Notification in bad faith. Defendants assert the Notification says nothing about the patent's validity, only potential infringement, and infringement is a separate issue from validity. Defendants argue one's subjective perspective of a patent's validity is irrelevant to whether a notice of infringement was created and transmitted in bad faith because a patent is presumed valid.

With regard to Plaintiff's claim that Defendants failed to respond to Plaintiff's original claims of invalidity, Defendants argue they had no obligation to address Plaintiff's claims of invalidity and, thus, their failure to do so does not demonstrate Defendants acted in bad faith. Similarly, Defendants argue they had no obligation to respond to Plaintiff's initial lawsuit because, as Plaintiff alleges, the initial complaint was served only on Spectrum Laboratories, Inc.

"[A] patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith." Zenith Electronics Corp. v. Excez, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999). "[B]ad faith is not supported when the information is objectively accurate." Golan v.

<u>Pingel Enter., Inc.</u>, 310 F.3d 1360, 1371 (Fed. Cir. 2002).  Indeed, "[a] plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless," <u>Globetrotter Software, Inc. v. Elan Computer Grp.</u>, 362 F.3d 1367, 1377 (Fed. Cir. 2004), "meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent," <u>Judkins v. HT Window Fashion Corp.</u>, 529 F.3d 1334, 1338 (Fed. Cir. 2008).  And, while subjective considerations are also relevant when determining bad faith, <u>Zenith</u>, 310 F.3d at 1354-55, lack of an objective basis is a threshold requirement, <u>Judkins</u>, 529 F.3d at 1338.  This threshold requirement is satisfied by a "showing of incorrectness or falsity, or disregard for either."  <u>Mikohn Gaming Corp. v. Acres Gaming, Inc.</u>, 165 F.3d 891, 897 (Fed. Cir. 1998).

"Exactly what constitutes bad faith remains to be determined on a case by case basis."  <u>Zenith</u>, 182 F.3d at 1354.  "Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out."  <u>Id.</u>; <u>see also</u> <u>Mallinckrodt, Inc. v. Medipart, Inc.</u>, 976 F.2d 700, 710 (Fed. Cir. 1992) ("Infringement notices have been enjoined when the patentee acted in bad faith, for example by making threats without intending to file suit . . . or when the patentee sent notices indiscriminately to all members of the trade . . . or when the patentee had no good faith belief in the validity of its patent . . . .") (internal citations omitted).

Here, the Court finds that, while Plaintiff states cognizable legal theories in Counts III through VI, Plaintiff has failed to allege facts in a way that plausibly demonstrates Defendants acted in bad faith when they allegedly created and transmitted the "Legal Action Notification."

As a threshold matter, the Court must determine whether the infringement claims made in the Notification were objectively baseless.  The Court first finds that, even though the Notification does not specifically name Plaintiff or its product, the language in the Notification stating that the product covered by the '776 patent is the "<u>only</u>

14

patented product of its kind in the market" is broad enough to plainly imply that Plaintiff's product – another synthetic urine on the market – infringes the '776 patent.[2] Thus, that the Notification states that similar products only "potentially violate" the '776 patent is of little consequence.[3]

The Court next finds it plausible that Defendants' alleged conduct, beginning in July 2009, demonstrates Defendants knew the '776 patent was invalid when the Notification was created and transmitted. Construing Plaintiff's allegations in the light most favorable to Plaintiff, the Court finds the following allegations and inferences plausibly demonstrate Defendants knew of the '776 patent's alleged invalidity at the time the Notification was sent: (1) the allegation that Defendants entirely failed to respond to Plaintiff's claim that it purchased the product covered by the '776 patent years before Stephens submitted the '776 patent application; (2) the apparent lack of any basis in the parties' pre-suit correspondence for asserting Plaintiff's product infringed the '776 patent; (3) the inference that the Notification was indiscriminately sent to Plaintiff's customers at or before the time Defendants' attempted to confirm infringement; (4) the inference that Spectrum Laboratories, LLC took no legal action after allegedly sending the Notification to Plaintiff's customers; (5) the likelihood that Plaintiff's invalidity argument would have been tested in the initial suit; (6) the allegation that Spectrum Laboratories, Inc.'s failed to respond to Plaintiff's initial suit (as that entity, of which Stephens was the president, still existed when Plaintiff allegedly served its initial complaint); and (7) the allegations that Defendants resumed their infringement claims after Plaintiff dismissed its original suit.

While a patent may be presumed valid until a court finds otherwise, a patentee's

---

[2] See Healthport Corp. v. Tanita Corp. of America, 563 F. Supp. 2d 1169, 1179 (D. Or. 2008) (finding a representation that a product was the "only [such product] patented in the United States and abroad false and for unequaled accuracy and validity to be unsubstantiated and false).

[3] See Judkins v. HT Window Fashions Corp., 514 F. Supp. 753, 764-65 (W.D. Pa. 2007) ("In order to succeed on this [Lanham Act] claim defendant must prove, by clear and convincing evidence, that plaintiff acted in bad faith in notifying the marketplace of possible infringement . . . ." (emphasis added)).

11cv638

actual knowledge of invalidity, when plausibly alleged, must certainly overcome that presumption for purposes of testing the sufficiency of a complaint. And with regard to the presumption of infringement set forth in 35 U.S.C. § 295, the Court agrees with Plaintiff that the presumption does not apply when deciding a motion to dismiss for failure to state a claim because, for example, the Court must make factual findings regarding whether Plaintiff's product was made by the process protected by the '776 patent before the presumption attaches. And, of course, making factual findings is not appropriate when testing the sufficiency of a complaint.

Further, while Defendants may not have had a legal obligation to respond to Plaintiff's claims of invalidity, the practical consequence is that, when considered with Defendants' other alleged conduct, a plausible inference may be drawn regarding Defendants' knowledge of invalidity and thus bad faith. Because Plaintiff specifically asserted that Defendants sold their product to Plaintiff years before the '776 patent application was filed, this case differs from the usual case in which an accused infringer responds with the boilerplate defenses of invalidity and non-infringement.[4] Plaintiff alleges facts that plausibly demonstrate Defendants, at a minimum, disregarded the falsity or incorrectness of an ability to enforce the '776 patent against all other synthetic urine manufacturers as represented in the Legal Action Notification. In other words, it is plausible that Defendants' alleged mischaracterization of Plaintiff's product as infringing the '776 patent was objectively unreasonable in light of Defendants' alleged knowledge of invalidity.

Lastly, while the above factual allegations are set forth in the body of, and in the exhibits attached to, the Complaint, Plaintiff has failed to tie the alleged facts together in a way that plausibly alleges bad faith. Indeed, the Complaint fails to mention bad faith at all. Plaintiff only clearly sets forth its claim of bad faith in opposition to Defendants' motions to dismiss. Accordingly, because the Complaint must state a claim on its face,

---

[4] Cf. Judkins, 514 F. Supp. 2d at 765 (finding a party would be unable to sufficiently prove bad faith per the opposing party's knowledge of invalidity and unenforceability, where such allegation of knowledge was supported only by the history of prior litigation).

1   Plaintiff's Counts III through VI must be dismissed for failure to allege bad faith.

2   **b.     Federal Rule of Civil Procedure 9(b)**

3       In a two-part argument, Defendants argue (1) that the heightened pleading

4   standard of Federal Rule of Civil Procedure 9(b) applies to Counts III through VI because

5   Plaintiff claims Defendants falsely asserted patent claims that they knew, or should have

6   known, were false and because the bad faith requirement is "fraud-like"; and (2) that

7   Plaintiff has failed to allege its claims with sufficient particularity to satisfy the Rule 9(b)

8   requirement.

9       In response, Plaintiff argues Rule 9(b) does not apply to its claims but, even if it

10  did, that Plaintiff has alleged facts sufficient to satisfy Rule 9(b)'s heightened pleadings

11  standard with regard to invalidity.

12      In reply, Defendants argue that, because Plaintiff "bases its Lanham Act and state

13  tort claims entirely upon alleged misrepresentations," those claims sound in fraud and

14  must be pled with particularity under Rule 9(b).  Defendants argue Plaintiff failed to

15  satisfy Rule 9(b) because Plaintiff did not allege "when Spectrum allegedly published the

16  Notice, when [Plaintiff] received it, to whom (by name) Spectrum allegedly published the

17  Notice, when and from whom (by name) [Plaintiff] allegedly received the Notice, and how

18  Spectrum allegedly published it and how [Plaintiff] received it."

19      "Although the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham

20  Act claims, many district courts have applied this heightened pleading standard to claims

21  that are grounded in fraud, such as misrepresentation claims."  EcoDisc Tech. A.G. v.

22  DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (citing

23  Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC, 404 F. Supp. 2d 1214, 1219-20

24  (E.D. Cal. 2005)).

25      To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must allege

26  the "time, place, and specific content of the false representations as well as the identities

27  of the parties to the misrepresentation."  Schreiber Distrib. Co. v. ServWell Furniture Co.,

28  806 F.2d 1393, 1401 (9th Cir.1986).  The plaintiff must also "set forth what is false or

misleading about a statement, and why it is false." <u>EcoDisc Tech.</u>, 711 F. Supp. 2d at 1085 (citing <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Here, Plaintiff bases its tort claims on the creation and transmission of the Notification and, specifically, the representations made in the Notification. To state a claim based on those representations, Plaintiff must plausibly allege they were false or misleading and must set forth sufficient facts to comply with Rule 9(b), including, "the who, what, when, where, and how of the misconduct charged in the complaint."[5] Accordingly, the Court must grant Defendants' motions to dismiss on this ground as well.

### c. Money Damages under Counts I(b) and II

Defendants argue Counts I(b) and II fail to the extent they seek money damages because money damages are unavailable under claims for declaratory relief.

In response, Plaintiff states it sought money damages under Counts I(b) and II only to reserve its right to seek such damages in the event it prevails on its claims of patent invalidity and/or patent misuse.

In reply, Defendants assert Plaintiff's argument should be rejected because, if Plaintiff intends to seek money damages under a substantive claim, then Federal Rule of Civil Procedure 8 requires Plaintiff to identify that claim so Defendants may fairly defend against it.

If a "district court enters a declaratory judgment that [a] patent is unenforceable due to misuse, it <u>could</u> then exercise its discretion to hold a hearing to allow [a declaratory judgment plaintiff] to state a substantive claim upon which it is entitled to recover damages." <u>B. Braun Medical, Inc. v. Abbott Lab.</u>, 124 F.3d 1419, 1428 (Fed. Cir. 1997) (emphasis in original). This discretion arises under the Declaratory Judgment Act, 28 U.S.C. § 2202, which gives a court authority to grant "[f]urther necessary or proper relief based on a declaratory judgment . . . after reasonable notice and hearing."

The few cases that discuss this rule indicate that claims for coercive relief following

---

[5]    <u>Meridian Project Sys., Inc.</u>, 404 F. Supp. 2d at 1219 (internal quotation omitted).

a grant of declaratory relief are asserted via a subsequent petition in the same case. Heimann v. Nat'l Elevator Ind. Pension Fund, 187 F.3d 493, 510 (5th Cir. 1999), overruled on other grounds by Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003); Shumaker v. Utex Exploration Co., 157 F. Supp. 68, 77 (D. Utah 1957) ("Under 28 U.S.C.A. § 2202, even though it has limited application, the Court does have power upon subsequent petition in the same case to grant coercive or further declaratory relief in connection with a final declaratory judgment theretofore entered."), superseded on other grounds by statute, Utah Code § 16-10a-627. The Court agrees with this procedural approach given that any such coercive relief is necessarily contingent on a grant of declaratory relief.

The Court finds Plaintiff's claims for damages are premature in this instance because Plaintiff must first prevail on its claims for declaratory relief. Additionally, Plaintiff has failed to articulate why money damages would be necessary and proper in relation to its declaratory relief claims. With regard to Defendants' concerns regarding notice, the Court finds those concerns are addressed by the nature of the relief which Plaintiff seeks. That is, any damages Plaintiff seeks pursuant to its declaratory relief claims must arise from the facts supporting those claims because any damages awarded following a grant of declaratory relief must be "necessary or proper relief based on [the] declaratory judgment." 28 U.S.C. § 2202. Thus, Plaintiff may later submit a petition seeking damages pursuant to its declaratory relief claims. Plaintiff's Counts I(b) and II must, however, be dismissed to the extent they allege Plaintiff is entitled to monetary damages because Plaintiff has failed to allege why it would be entitled to such relief under its declaratory relief claims.

### d. Common Law Unfair Competition

Defendants argue that Count IV fails because Plaintiff has failed to allege facts demonstrating that Defendants passed off Plaintiff's product as their own.

Plaintiff states in response that it agrees "the pleadings for this case warrant a claim for unfair competition under the California statutory scheme rather than under California

11cv638

common law."

In reply, Defendants argue any amendment to Count IV would be futile because Plaintiff bases its state unfair competition claim on the "Legal Action Notification," which cannot be the basis for any cause of action, including under the California statutory scheme, given Plaintiff's failure to allege facts demonstrating the Notification was created and transmitted in bad faith.

Because Plaintiff concedes its common law unfair competition claim should be dismissed, the Court dismisses Count IV.[6]

### 2. Stephens' Grounds for Dismissal

#### a. Legal Interest in the '776 Patent

Stephens argues Counts I(a), I(b), and II fail against him individually because he has no legal interest in the '776 patent, having executed an assignment of his interest in the patent to Spectrum Laboratories, LLC, effective March 4, 2008. Stephens asserts that, "to state a claim for declaratory relief, plaintiff must allege that 'there is a substantial controversy, between parties having adverse legal interests,'" and Plaintiff "has not alleged that Stephens has any legal interest in the '776 patent." Stephens notes he was not mentioned in the Notification or in the correspondence attached to the Complaint. And, in further support of his position, Stephens attaches a document to his motion to dismiss that purports to assign the '776 patent from himself to Spectrum Laboratories, LLC. The assignment was executed on January 4, 2010, and purports to be effective, nunc pro tunc, on March 4, 2008.

Plaintiff does not address this argument in its opposition, which Stephens notes in his reply.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

---

[6] The Court, however, offers no opinion with regard to Plaintiff's ability to state a claim under the California statutory scheme.

further relief is or could be sought." 28 U.S.C. § 2201(a). Whether the case-or-controversy requirement is satisfied for purposes of a motion to dismiss for failure to state a claim depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, <u>between parties having adverse legal interests</u>, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007) (quoting <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)) (emphasis added).

Here, Counts I(a) (Patent Non-infringement), I(b) (Patent invalidity), and II (Misuse of Patent) are each claims for declaratory relief, the outcome of which would effect the '776 patent's present validity and/or enforceability. Stephens argued that, to state a claim against him under these claims, Stephens must have a present legal interest in the '776 patent. The Court find's Plaintiff's failure to address this argument to be a concession that Stephens does not have a present legal interest in the '776 patent.[7] Any declaration regarding non-infringement, invalidity, or misuse will only affect the patent's present enforceability. Accordingly, Counts I(a), I(b), and II must be dismissed as alleged against Stephens individually unless Plaintiff can plausibly allege that Stephens does, or should, have a legal interest in the '776 patent.

### b. Membership in Limited Liability Company

Stephens also argues Plaintiff fails to state a claim against him individually because, as a member of a limited liability company (i.e., Spectrum Laboratories, LLC), he cannot be held liable for the torts alleged in Counts III through VI unless he actively participated in the alleged conduct in some meaningful way. Specifically, Stephens argues none of Plaintiff's "allegations plausibly suggest that Stephens himself personally participated in the publication of the Notice." Stephens again notes, for example, that the "Notice itself does not mention Stephens, but instead identifies 'Spectrum Labs' as its author." Stephens further notes none of the correspondence attached to the Complaint mentions

---

[7] The Court makes no finding as to the assignment's retroactive effect, if any. The Court finds only that Plaintiff has failed to state a claim for declaratory relief against Stephens individually.

Stephens, but instead mentions "Spectrum Laboratories," as it must, given the requirement that a notice of infringement come from a patent's actual owner, which, because of the assignment, is Spectrum Laboratories, LLC. Stephens argues that, indeed, Stephens' "only alleged connection to this case is that he is an 'officer, director, and/or managing agent of Spectrum' and that he was the inventor of the '778 patent, which he no longer owns."

In response, Plaintiff first notes that it has alleged Stephens "is an individual residing in Cincinnati, Ohio, and doing business as Spectrum Laboratories" and that "Spectrum Laboratories, LLC was purposefully, separately and specifically identified in paragraph 3 of the Complaint and defined as 'SPECTRUM LLC.'" That is, Plaintiff has alleged that "Spectrum Laboratories is merely a fictitious business name of Mr. Stephens and is wholly separate and distinct from the entity defendant Spectrum Laboratories, LLC." Thus, Plaintiff notes it has alleged the Notification was written on behalf of "Spectrum Laboratories," not "Spectrum Laboratories, LLC." Indeed, Plaintiff asserts the first letter it received on behalf of "Spectrum Laboratories, LLC" was on February 11, 2011, in which Spectrum Laboratories, LLC claimed to be the owner of the '776 patent.

Regarding the nunc pro tunc assignment, Plaintiff asserts the document attached to Stephens' motions is unauthenticated and merely "a transparent effort to lend credence to the notion that somehow Spectrum Laboratories, LLC owned the '776 Patent back in 2009." That is, Plaintiff asserts the assignment was not executed until months after the correspondence at issue here was written. Plaintiff notes that, at the time of the assignment, Plaintiff's initial lawsuit was pending against Stephens, Spectrum Laboratories, Inc., and Spectrum Laboratories, LLC (though, as stated above, Plaintiff alleges that only Spectrum Laboratories, Inc. was served with the initial complaint). In sum, Plaintiff argues Stephens executed the assignment "to avoid the liabilities associated with his patent misuse and unfair competition as alleged in the original complaint."

Plaintiff makes two further points. First, Plaintiff claims that Defendants' counsel, Mr. Cupar, made representations to Plaintiff in connection with Plaintiff's initial suit that

Stephens was "doing business as Spectrum Laboratories." Second, Plaintiff points out that the July 22, 2009 letter (Exhibit B) states that "for nearly two decades Spectrum Laboratories has prided itself on creating and having innovative original products." Thus, Plaintiff argues that, "[b]ecause Spectrum Laboratories, LLC has only existed for less than four years, Spectrum Laboratories cannot be Spectrum Laboratories, LLC."

Based on the foregoing, Plaintiff argues it must be presumed that Stephens authored or otherwise approved the Notification because Plaintiff has alleged Stephens was doing business as Spectrum Laboratories when the Notification was sent and because Plaintiff claims (based on its allegation that the assignment was a sham) that Stephens was the only holder of the '776 patent when the Notification was sent. Plaintiff argues accordingly that, because Stephens personally participated in the alleged tortious conduct, Stephens is not protected by his membership in a limited liability company. Thus, Plaintiff argues it has alleged sufficient facts to plausibly state a claim against Stephens individually.

In reply, Stephens argues that the failure to distinguish between "Spectrum Laboratories" and "Spectrum Laboratories, LLC" in the Notification is an insufficient basis on which to disregard the protection Stephens enjoys as a member of a limited liability company. Stephens asserts Plaintiff's theory that Stephens was doing business as Spectrum Laboratories is implausible given that the "DBA" would have existed at the same time as, and would have been in competition with, Spectrum Laboratories, LLC.

Regarding the nunc pro tunc assignment, Stephens merely asserts that nunc pro tunc assignments "are entirely normal and effective." Even if the assignment has no retroactive effect, however, Stephens argues "it would mean only that Spectrum did not have ownership at the time it first asserted the patent." Thus, argues Stephens, "[w]hether Spectrum actually owned the patent it asserted has no bearing on whether Stephens committed any act that could subject him to personal liability."

Regarding the July 22, 2009 statement that "for nearly two decades Spectrum Laboratories has prided itself on creating and having innovate and original products,"

Stephens argues it is irrelevant because the alleged tortious conduct began in July 2009, and Spectrum Laboratories, LLC was organized in 2007. Thus, Stephens asserts it would not matter if he was doing business as "Spectrum Laboratories" prior to 2007. Stephens notes that, in any event, "prior to December 31, 2007, Spectrum existed as 'Spectrum Laboratories, Inc.' and not as a dba."

In sum, Stephens asserts that Plaintiff has pled no facts that plausibly suggest Stephens was doing business outside the limited liability form during the relevant period; thus, the Court should dismiss all claims against Stephens individually.

"A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999). An officer "cannot 'hide behind the corporation where he is an actual participant in the tort.'" Id. This applies to an officer or director that authorizes and/or approves a corporation's act of unfair competition under § 43(a) of the Lanham Act. Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978).

The Court first finds Plaintiff's claim that Stephens executed the nunc pro tunc assignment to avoid the potential liability – of which Stephens was allegedly apprised by Plaintiff's initial lawsuit as the president of Spectrum Laboratories, Inc. – plausibly suggests that Stephens, as the then patent holder, was responsible for the creation and transmission of the "Legal Action Notification." Stephens' argument that, without retroactive effect, Stephens (instead of Spectrum Laboratories, LLC) would have owned the '776 patent when the Notification was sent is well taken. Stephens' argument that his prior ownership would have no bearing on his individual liability, however, lacks merit, because, if he was the patent owner, Stephens would arguably be liable for any tortious conduct arising from an assertion of his rights under the patent, to wit, the creation and transmission of the "Legal Action Notification." Even if Spectrum Laboratories, LLC were the owner it appears that, as a managing member, Stephens may still be liable for any tort

24

arising out of the creation and transmission of the Notification.

Whether Stephens owned the '776 patent when the Notification was sent is a question of fact. Similarly, whether Stephens (doing business as Spectrum Laboratories) sent the Notification or whether Spectrum Laboratories, LLC sent the Notification is a question of fact. Merely because Stephens (doing business as Spectrum Laboratories) "would be in competition" with Spectrum Laboratories, LLC is not sufficient to make it implausible that Stephens was asserting his individual rights as the owner of the '776 patent when the Notification was sent. Indeed, that Spectrum Laboratories, Inc. existed when Stephens obtained the '776 patent suggests that Stephens may not have intended a business entity to own the '776 patent, thus making it more plausible that Spectrum Laboratories, LLC did not own the '776 patent when the Notification was sent. Moreover, as is often the case when only a few individuals form corporations or organize into limited liability companies, legitimate questions arise with regard to adherence to the corporate or limited liability form.

Of course, the Court need not resolve these questions, as it is enough to say the Court finds Plaintiff has stated facts sufficient to plausibly state a claim against Stephens individually. As with the issue of bad faith, however, Plaintiff has only set forth its theory of Stephens' individual liability in opposition to Stephens' motion to dismiss. As currently pled, Plaintiff's Complaint does not allege facts in a way that plausibly states a claim against Stephens individually under Counts III through VI. Because the Complaint must plausibly state a claim on its face, Counts III through VI must be dismissed to the extent they are alleged against Stephens individually.

## II.     Leave to Amend

### A.     Legal Standard

The filing of an amended complaint after a responsive pleading has been filed may be allowed with the opposing party's written consent or with leave of court. Fed. R. Civ. P. 15(a). Because Rule 15(a) mandates that leave to amend should be freely given when justice so requires, the rule is to be interpreted with "extreme liberality." United States

v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

Granting leave to amend rests in the sound discretion of the trial court. Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985). This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits. DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. Genetech, Inc. v. Abbott Labs., 127 F.R.D. 529 (N.D. Cal. 1989).

Even though leave to amend is generally granted freely, it is not granted automatically. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002). Four factors are considered when a court determines whether to allow amendment of a pleading: prejudice to the opposing party, undue delay, bad faith, and futility. See Forsyth v. Humana, 114 F.3d 1467, 1482 (9th Cir. 1997); DCD Programs, 833 F.2d at 186; see also Foman v. Davis, 371 U.S. 178, 182 (1962).

If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

**B.    Analysis**

In its opposition to Defendants' motions, Plaintiff requested leave to amend its Complaint. In reply, Defendants argue Plaintiff's request for leave to amend should be denied because Plaintiff cannot adequately allege the Notification was sent in bad faith.

The Court finds Defendants have not met their burden of demonstrating why Plaintiff should not be granted leave to amend its Complaint. Defendants do not argue they will be prejudiced if Plaintiff is granted leave to amend. Delay is not at issue, and Defendants do not argue Plaintiff has acted in bad faith. With regard to futility, Plaintiff has set forth plausible claims for relief with regard to bad faith and Stephens' individual liability as discussed above. As also set forth above, however, Plaintiff has failed to set forth its theories on the face of its Complaint in a way that plausibly alleges bad faith and

Stephens' individual liability.  Thus, the Court finds justice requires Plaintiff be granted leave to amend its Complaint.

### III.    Rule 11 Sanctions

On November 1, 2011, Stephens filed a motion for Rule 11 sanctions against Plaintiff and its attorney, Mr. Eastman.

### A.    Legal Standard

"By presenting to the court a pleading . . . an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] . . . the claims . . . are warranted by existing law . . . [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).

Where a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (quoting Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002)).

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).

### B.    Analysis

Stephens argues Plaintiff has no factual or legal basis for asserting its declaratory relief claims against individually because Stephens has no legal interest in the '776 patent. Thus, Stephens argues – regardless of whether the Court rules that Plaintiff's remaining claims are not frivolous – Plaintiff and its attorney should be sanctioned for asserting its declaratory relief claims against Stephens individually.

Regarding Plaintiff's remaining claims, Stephens argues it cannot be held liable

under Counts III through VI because, as a member of a limited liability company, he is shielded from personal liability. Stephens asserts that "[c]laims against corporate officers in their individual capacities are frivolous under Rule 11 when, as here, plaintiff does not allege any meaningful personal conduct by the individual." Stephens asserts the Notification was sent by "Spectrum," and, because "Spectrum is a limited liability company, by statute, Stephens cannot be held individually liable for Spectrum's actions or for any notices allegedly published by Spectrum."

In response, Plaintiff first argues that Stephens has not offered any evidence in support of its contention that Plaintiff's Complaint is factually and legally baseless or that Plaintiff's counsel failed to conduct a reasonable and competent inquiry before signing and filing the Complaint. Plaintiff asserts that a long history exists between itself and Defendants, which began as early as 2001 when Plaintiff was the exclusive distributor for Spectrum Laboratories, Inc. and which ultimately ended in Plaintiff becoming a competitor to Spectrum Laboratories, Inc.

With regard to Stephens' interest in the '776 patent, Plaintiff asserts that a key issue in this case is whether the nunc pro tunc assignment is valid and retroactively effective. Indeed, Plaintiff states that "[i]f, as suspected, the evidence uncovered during the discovery supports the conclusion that the assignment is invalid, then Mr. Stephens will remain the patent holder and will remain an indispensable party to any claim for declaratory relief relating to the '776 patent." Plaintiff further asserts that Spectrum Laboratories, LLC's counter-claim for patent infringement seeks damages from the date the patent was issued in 2007, at which time Stephens still owned the patent, as the assignment purports to transfer Stephens interest in the patent as of 2008.

With regard to Plaintiff's tort claims, Plaintiff argues that both law and fact support the notion that Stephens can be held personally liable as an individual who personally participated in and/or authorized the tortious conduct.

In reply, Stephens argues he has no evidentiary burden to offer evidence to prove his lack of culpability. Stephens asserts that, by pointing out the deficiencies in Plaintiff's

Complaint, he has satisfied his burden under Rule 11. Stephens argues the nunc pro tunc assignment requires no additional authentication and that it should be considered effective. Stephens further notes that, as set forth in the assignment, he assigned all rights to sue for past infringement, thus it does not matter if Spectrum Laboratories, LLC is suing for infringement dating back to the '776 patent's issuance in 2007. Lastly, with regard to Plaintiff's tort claims, Stephens reasserts his theory that he cannot be held personally liable because he is protected by his membership in Spectrum Laboratories, LLC.

With regard to Plaintiff's declaratory relief claims, the Court first notes – as discussed under Section I(B)(2)(a) above – that Plaintiff failed to address Stephens' legal interest argument in the context of Stephens' motion to dismiss. Here, in opposition to Stephens' motion for sanctions, Plaintiff claims that, if the assignment is deemed invalid, Stephens will still have a present interest in the '776 patent, making him an indispensable party to Plaintiff's declaratory relief claims. Plaintiff, however, has only set forth facts and theories related to the retroactive effect of the nunc pro tunc assignment – not the prospective effect. Nevertheless, the Court finds Plaintiff's claims are not entirely baseless given the alleged sequence of events surrounding the parties' pre-suit interactions. That is, the Court finds it objectively reasonable for Plaintiff to have asserted its declaratory relief claims against Stephens where Stephen's actual legal interest in the '776 patent may vary depending on how the facts in this case develop. Moreover, the Court finds, as discussed above, that Plaintiff has asserted plausible – though inadequately pled – tort claims against Stephens. Thus, viewing the Complaint in its entirety, the Court cannot say that Plaintiff and its attorney violated Rule 11. Accordingly, the Court must deny Stephens' motion for sanctions.

## CONCLUSION

After a thorough review of the parties' submissions, and based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Spectrum Laboratories, LLC's Motion to Dismiss, (Dkt. No. 7), is

1       **GRANTED**;

2     2.    Stephens' Motion to Dismiss, (Dkt. No. 10), is **GRANTED**;

3     3.    Plaintiff's request for leave to file an amended complaint is **GRANTED**, and

4         Plaintiff shall have until thirty days from the filing of this Order to file a first

5         amended complaint;

6     4.    Stephens' Motion for Sanctions, (Dkt. No. 23), is **DENIED**.

8 Dated: March 20, 2012

9                    HON. JOHN A. HOUSTON
                   United States District Judge