J. CHRISTOPHER JACZKO (149317)
JACZKO LAW GROUP, APC
4401 Eastgate Mall
San Diego, CA 92121
Telephone:    (858) 404-9206
Facsimile:    (858) 225-3500
chris@jaczkolaw.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:    (216)348-5730
Facsimile:    (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC
and Defendant JAMES MATTHEW STEPHENS

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Defendant.<br><br>AND RELATED CROSS ACTION | No.   11cv0638 JAH (KSC)<br><br>**SPECTRUM LABORATORIES, LLC's OPENING CLAIM CONSTRUCTION BRIEF**<br><br><br>Judge: HON. JOHN A HOUSTON<br>Filed: March 29, 2011<br>Trial: None Set |

I.   **Introduction and Summary of Argument**

   Spectrum and Dr. Greens compete in the synthetic urine market. Spectrum's owner, Matt Stephens, conceived of adding biocides to synthetic urine to prevent it from experiencing "sepsis" (*i.e.*, bacterial growth) while on store shelves. Mr. Stephens patented his idea as U.S. Patent No. 7,192,776 ("the '776 patent"), which Spectrum now owns. As relevant here, the synthetic urine

formulas and methods claimed by the '776 patent include a group of 22 biocides. To infringe, a synthetic must have a biocide from that group.

Dr. Greens sued Spectrum and Mr. Stephens, seeking a declaration that Dr. Greens' synthetic products do not infringe the '776 patent. Dr. Greens alleges that it "has never sold a synthetic urine under any of its brand names, including Agent X, that included a biocide set forth in any claim of the '776 Patent." (Am. Compl. ¶ 21, ECF # 54.) Through chemical testing, however, Spectrum has confirmed that Dr. Greens' products contain one of the 22 claimed biocides, namely "carbamates," and therefore infringe. Spectrum has moved to amend its preliminary infringement contentions to specifically identify carbamate as the infringing biocide. (Mot. to Am. Prelim. Infringement Contentions, ECF # 72.) The parties' dispute, therefore, is a simple one: whether Dr. Greens' products contain carbamate. Based on the parties' claim construction positions, claim construction will not impact the resolution of that dispute, and therefore is unnecessary.

Indeed, Dr. Greens does not contend that Spectrum is misconstruing any claim terms, but simply denies the truth of Spectrum's test results. Dr. Greens has not offered a single proposed construction that would result in its products, if found by the jury to contain a carbamate, to fall outside the scope of the asserted claims of the '776 patent. The Court, therefore, should decline to issue an advisory opinion construing any of the claim terms of the '776 patent. If, however, the Court decides constructions are necessary, it should adopt the constructions proposed by Spectrum, as opposed to Dr. Greens' legally incorrect constructions.

## II. Law and Argument

### A. The Court Should Not Construe All 22 Biocide Terms

#### 1. Only Claim Constructions That Resolve Infringement Or Invalidity Disputes Should Be Issued

Courts only construe claim terms if necessary to resolve infringement or invalidity disputes between the parties. *Vivid Technologies, Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (claim terms should be construed "only to the extent necessary to resolve the controversy"); *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) (court "construes the claims to the extent necessary to determine whether the accused device

infringes"). Claim constructions "that do not actually affect the infringement controversy between the parties" would result in impermissible "advisory opinions," which are prohibited by Article III of the Constitution. *See Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (refusing to construe claims and remanding to district court to clarify which constructions affect infringement).

Thus, district courts refuse to construe terms when the disputed meaning does not affect infringement or invalidity. *See Apple, Inc. v. Motorola, Inc.*, No. 10-cv-662-bbc, 2011 WL 10004441, at *36-37 (W.D. Wis. Oct. 13, 2011) (declining to construe a term where there was "no real dispute between the parties regarding the meaning of th[e] term that affect an issue of infringement or invalidity"); *see also Columbia Sportswear N. Am. v. Cerf Bros. Bag Co.*, No. CV 05-1960-PK, 2007 WL 1792304, at *11 (D. Or. June 19, 2007) ("Because under any reasonable construction[, the claims] necessarily include the accused dry CD port, this court will not issue an advisory opinion by undertaking to construe the claim terms with greater specificity than necessary to resolve the instant dispute.").

**2.  The Court Should Not Construe Any Biocide Term, Other Than Carbamate, Because Those Terms Are Not Relevant To Infringement**

Dr. Greens needlessly seeks constructions of all 22 biocides listed in the claims of the '776 patent. (*See* Joint Claim Construction Chart, at 3-24, ECF # 71-1.) Yet Spectrum contends that Dr. Greens' products contain "carbamates." Therefore, a construction of any of the other 21 biocides listed in the claims would not affect the infringement controversy between the parties and therefore would be an impermissible advisory opinion. *See Jang*, 532 F.3d at 1336. The Court should not construe those 21 biocide terms.

**B.  The Court Either Should Not Construe "Carbamates" Or Adopt The First Sentence Of Dr. Greens' Proposed Construction**

**1.  The Court Should Not Construe "Carbamates"**

The Court should not construe "carbamates" because: (i) Dr. Greens has not shown how the construction it proposes would affect infringement; and (ii) a jury does not need a definition for this term to assist it. Dr. Greens proposes the following construction for "carbamates":

> Organic compounds derived from carbamic acid. Carbamates contain the monovalent ion $NH_2COO^-$. There can be no equivalents under the doctrine of prosecution history estoppel.

(Joint Claim Construction Chart at 5.) Yet Dr. Greens does not contend that this construction would preclude the carbamate that Spectrum found in its products from satisfying the "carbamates" element in the claims. And the jury would not be aided by Dr. Greens' proposed construction, which only adds more complexity to the word. Thus, the Court should decline to issue an advisory opinion on the abstract meaning of "carbamates."

### 2. If The Court Construes "Carbamates," It Should Adopt Only The First Sentence Of Dr. Greens' Construction

If the Court is inclined to construe "carbamates," then it should adopt only the first sentence of Dr. Greens' proposed construction – "organic compounds derived from carbamic acid" – and reject the remainder as incorrect and contrary to the intrinsic and extrinsic evidence. (Joint Claim Construction Chart at 5.)

It is well established that claim terms should be "given their ordinary and customary meaning," as informed by the intrinsic and extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Here, the intrinsic evidence—the claims, specification, and prosecution history—support an ordinary and customary meaning of "carbamates," and not limiting that term to any particular subset of carbamates. (*See* '776 patent, col. 5, ll. 5-9.) Neither the specification nor the prosecution history show any disclaimer or disavowal of claim scope with regard to the "carbamates" term. *See Phillips*, 415 F.3d at 1316-17 (explaining relevance of specification and prosecution history to claim construction). Because Spectrum never limited the definition of "carbamates," it should have its ordinary and customary meaning: "organic compounds derived from carbamic acid."

The second sentence of Dr. Greens' proposal is incorrect because it improperly limits "carbamates" only to those that "contain the monovalent ion $NH_2COO^-$." The intrinsic evidence does not support such a narrow construction. In fact, the patent's claims, specification, and prosecution history do not mention a "monovalent ion $NH_2COO^-$," let alone disclaim all carbamates without that specific monovalent ion.

And, ironically, the extrinsic evidence that Dr. Greens' relies upon for its construction actually shows that carbamates are more than those containing the "monovalent ion $NH_2COO^-$" in at least two ways. First, the carbamate diagram from the Wikipedia page cited by Dr. Greens shows—through the use of the "$R^2$" and "$R^3$" variables—that carbamates can have various atoms (or groups of atoms) bonded to the nitrogen atom, instead of the two hydrogen atoms (the "$H_2$" of $NH_2COO^-$) that Dr. Greens' construction would require:

[Chemical structure diagram of carbamates showing $R^1-O-C(=O)-N(R^2)(R^3)$, with annotation: "$R^2$ and $R^3$ can be, but do not have to be, hydrogen."]

Chemical structure of carbamates

(Wikipedia entry for "carbamate," PLA000746, cited by Dr. Greens in Joint Claim Construction Chart at 5, attached hereto as Exhibit A.) Controlling precedent precludes Dr. Greens from attempting to impermissibly import limitations into the claims by limiting "carbamates" only to specific carbamates, while ignoring all others. *See Phillips*, 415 F.3d at 1323 (warning against "importing limitations" into claims).

Second, the online definition for "carbamate" that Dr. Greens relies upon states that: (i) "carbamate" can be a "salt or ester of carbamic acid"; (ii) the "salts" contain "the monovalent ion $NH_2COO^-$"; and (iii) the "esters contain the group $NH_2COO-$." Therefore, Dr. Greens' proposal contradicts its own online dictionary definition by excluding "esters" of carbamic acid in that they "contain the group $NH_2COO-$," rather than "the monovalent ion $NH_2COO^-$" that is found in salts of carbamic acid. (Free Online Dictionary entries for "carbamate," PLA000750, cited by Dr. Greens in Joint Claim Construction Chart at 5, attached hereto as Exhibit A.)

The third sentence of Dr. Greens' proposed construction—"There can be no equivalents under the doctrine of prosecution history estoppel"—is not a claim construction (*i.e.*, an

interpretation of what "carbamates" means), but rather is an infringement argument. That sentence in no way would assist the jury in understanding the meaning of "carbamates."

Therefore, the court should not construe "carbamates." But if it does, it should construe it as "organic compounds derived from carbamic acid."

### C. It Would Be Legal Error To Limit The Claims Of The '776 Patent To Solutions Having "Only One Biocide"

Dr. Greens does not dispute the meaning of "biocide" or contend that it needs a Court construction. Instead, Dr. Greens says that the Court should construe the term "a biocide" to mean "only one biocide," and the phrase "said biocide is selected from the group consisting of" to mean "one biocide selected from the group of biocides specifically listed in the claim." By doing so, Dr. Greens seeks to have the Court misconstrue the '776 patent as limited to synthetic products that contain "only one" biocide. Under Dr. Greens' proposed construction, an infringing synthetic product that had one of the claimed biocides could avoid infringement by adding a second biocide. Dr. Greens misreads the claims and misapplies claim construction law.

First, the Court should decline to construe these terms. Dr. Greens' proposed construction would not save it from infringement because Spectrum's infringement theory rests on the presence of a single biocide: "carbamates." And Dr. Greens does not contend that its products have two or more biocides. Thus, whether a product with two or more biocides could infringe the '776 patent is a purely hypothetical question. To avoid issuing an advisory opinion, the Court should decline to answer that needless hypothetical. *See Jang*, 532 F.3d at 1336.

Also, neither the Court nor the jury needs a formal construction of the simple English words surrounding the "biocide" term, such as "a," "selected from the group," and "consisting of." *See Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 737-38 (E.D. Tex. 2005) (declining to construe terms that were "used in accordance with their ordinary lay meaning"). Rather than helping the jurors, rewording those simple terms could risk confusing them into misunderstanding the true meaning of the claims as written. The Court should not construe these simple, everyday words.

If the Court believes construction is necessary, it should reject Dr. Greens' proposals as contrary to well-established, controlling precedent. The open-ended and commonplace "comprising"

term in each claim of the '776 patent means the invention is not limited—and cannot be limited— to synthetic solutions having one and "only one biocide." "Comprising" means that the "claims do not exclude the presence in the accused apparatus or method of factors in additional to those explicitly recited," such as additional biocides. *Vivid Technologies*, 200 F.3d at 811; *accord Stiftung v. Renishaw* PLC, 945 F.2d 1173, 1178 (Fed. Cir. 1991) (a claim "which uses the term 'comprising' is an 'open' claim which will read on devices which add additional elements").

The preamble of every independent claim of the '776 patent (and, therefore, every dependent claim) contains the "comprising" language. So if a solution or method contains or uses "a biocide" from the group of 22 identified in the claims and otherwise meets the limitations of a claim, then there is infringement. That is so regardless of whether more than one biocide is in the solution. *See Vivid Technologies*, 200 F.3d at 811. Therefore, the Court should not narrow the '776 patent to solutions containing one and "only one" biocide as Dr. Greens urges.

If, however, the Court is inclined to construe the "a biocide" or "said biocide is selected from the group consisting of" terms, then it should construe them in a way that does not limit them to single-biocide solutions or methods, such as the alternative constructions proposed by Spectrum. (*See* Joint Claim Construction Chart at 1-2.)

### III. Conclusion

For the foregoing reasons, the Court need not and should not construe any of the claim terms of the '776 patent. If, however, it decides construction is necessary, it should adopt the alternative constructions proposed by Spectrum here and in the Joint Claim Construction Chart.

.

DATED:  March 4, 2013            JACZKO LAW GROUP, APC

                                 MCDONALD HOPKINS LLC

                                 By:     /s/ Matthew J. Cavanagh
                                         Matthew J. Cavanagh

                                 Attorneys for Defendant and
                                 Counterclaimant
                                 SPECTRUM LABORATORIES, LLC and
                                 Defendant JAMES MATTHEW STEPHENS