J. CHRISTOPHER JACZKO (149317)
JACZKO LAW GROUP, APC
4401 Eastgate Mall
San Diego, CA 92121
Telephone:    (858) 404-9206
Facsimile:    (858) 225-3500
chris@jaczkolaw.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:    (216)348-5730
Facsimile:    (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC
and Defendant JAMES MATTHEW STEPHENS

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>　　　　Defendant.<br><br>AND RELATED CROSS ACTION | No.   11cv0638 JAH (KSC)<br><br>**SPECTRUM LABORATORIES, LLC's RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br><br><br>Judge: HON. JOHN A HOUSTON<br>Filed: March 29, 2011<br>Trial: None Set |

**I.   Introduction And Summary Of Argument**

　　　Dr. Greens urges the Court to narrow the claims of the '776 patent to solutions containing one and "only one" biocide and to construe "carbamates" narrower than that term's ordinary meaning. But Dr. Greens' opening claim construction brief fails to show how the constructions it proposes would cause its products to fall outside the scope of the '776 patent. Therefore, to avoid

issuing an advisory opinion, the Court should not construe any of the claims of the '776 patent. If, however, it decides to do so, it should adopt Spectrum's proposed constructions. Those constructions, unlike Dr. Greens' proposals, match the ordinary and customary meanings as understood by a person having ordinary skill in the art.

**II.    Law And Argument**

    **A.    The Court Should Not Narrow The Claims To Single-Biocide Solutions**

        **1.    Dr. Greens Has Not Explained Why The Court Should Decide Whether The Claims Cover Multiple-Biocide Solutions**

Dr. Greens wants this Court to decide whether the '776 patent covers multiple-biocide solutions. (*See* Dr. Greens' Opening Br. ("Br.") at 4, ECF # 74.) But it does not matter whether multiple-biocide solutions can infringe the patent because no one contends that Dr. Greens' products have multiple biocides. Dr. Greens says it has never used *any* biocides, but instead uses "either" a "preservative" called "sodium benzoate" or a "chemical" called "sodium azide." (Br. at 7; *see* Am. Compl. ¶ 21, ECF # 54.) It does not contend that either of those chemicals is a "biocide," or that it has used those two chemicals together in the same product. Spectrum contends that Dr. Greens' products have one biocide: carbamates. (Mot. to Am. Infr. Contentions, ECF #72.) Therefore, whether a solution having two or more biocides would infringe Spectrum's patent is a hypothetical question that the Court should not answer. *See Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (construing claim terms "that do not actually affect the infringement controversy between the parties" would result in impermissible "advisory opinions").

        **2.    Dr. Greens Failed To Show That The Intrinsic Evidence Limits The Claims To Single-Biocide Solutions**

If the Court construes "a biocide," then it should construe it as claiming "one or more" biocides and reject Dr. Greens' faulty analysis. Dr. Greens relies on the claims referring to "a" and "said" biocide to argue that multi-biocide solutions cannot be covered by the patent. (Br. at 4.). This argument contradicts well-established precedent that "a" or "an" means "one or more" when, as here, the claims begin with the open-ended "comprising" term. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000). Dr. Greens cites no law for its incorrect reading of "a." (*See*

Br. at 3.) Also, by reciting biocides, such as "peroxides" and "hypochlorites," in the plural form, the claims themselves confirm that they cover "one or more" biocides. (*See* '776 patent, col. 6, l. 54.)

But even if the law were different and construed "a" biocide to mean "one" biocide, that would not mean that an infringing solution becomes non-infringing by adding biocides. It would merely mean that Spectrum could only rely on the presence of "one" biocide to satisfy the biocide limitation. Because the claims are open-ended, once the claim limitations are met, it does not matter what other ingredients are in the solution. *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991) (a claim "which uses the term 'comprising' is an 'open' claim which will read on devices which add additional elements"). Therefore, under no interpretation of "a biocide" should the claims be limited to solutions with "only" one biocide.

Dr. Greens cites nothing in the specification that would support its faulty arguments. Ironically, the specification language that Dr. Greens block-quotes confirms that the patentee intended for "a" biocide to mean "one or more" biocides. (Br. at 5.) That quoted language describes two carbamate examples: (i) a "mix" of two different carbamates; and (ii) a "single" carbamate. ('776 patent, col. 5, ll. 5-9.) Because the specification describes a "mix" of two carbamates as an example of carbamates, "a biocide" must be construed to include a mix of two or more biocides to ensure the claims do not exclude that example. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) (as a matter of law, the Court "do[es] not interpret claim terms in a way that excludes disclosed examples in the specification").

Dr. Greens' incorrect arguments based on the '776 patent's prosecution history are equally unavailing. According to Dr. Greens, the examiner's statement in the notice of allowance that "none of the prior art . . . has one of the recited biocides" somehow disclaims all multiple-biocide solutions. (Br. at 6.) Dr. Greens' hope that the Court will draw some inference from this statement does not comport with controlling precedent. Instead, the prosecution history cannot narrow the claims unless the *patentee* makes a "clear and unmistakable disavowal of claim scope" to, for example, overcome prior art. *Purdue Pharma L.P. v. Endo Parmaceuticals Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). The fact that Dr. Greens hopes the Court will buy its inference shows this statement is not a "clear and unmistakable disavowal." And an examiner's statement in a notice of allowance, which the

patentee need not respond to, cannot be a prosecution disclaimer because it is not the *patentee's* statement. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1374-75 (Fed. Cir. 2003) (reversing district court construction, ruling that examiner statement did not limit claims); *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337-38 (Fed. Cir. 2005) (examiner's stated reason for allowance is not a disclaimer). Dr. Greens cites no law to support its reliance on the examiner's statement as a clear and unmistakable disavowal by Spectrum.

Further, Dr. Greens misinterprets what the examiner stated. Spectrum had amended the claims to specify a group of 22 different types of biocides that had not been used in prior art solutions. After that amendment, the examiner found the claimed solution patentable because not "one" (*i.e.*, none) of the recited biocides were used in the prior art solutions. The examiner never stated that the recited biocides had been previously used *together*. So there would have been no reason to narrow the claims to single-biocide solutions. The examiner's statement, therefore, is not a clear and unmistakable disavowal of multiple-biocide solutions.

In fact, the prosecution history favors Spectrum's proposed construction of "a biocide." Specifically, Spectrum added the "comprising" term to clarify that the claims are open-ended when the examiner rejected the claims as ambiguous regarding the openness of the claims. (*See* Dec. 20, 2005, Office Action, ECF # 74-2 at pg. 64 (stating that use of "consisting essentially of" in preamble is ambiguous as to openness); Feb. 13, 2006, Interview Summary, ECF # 74-2 at pg. 61 (noting that patentee would file "amended claims that all use the open language 'comprising' in order to overcome the previous rejection"); Apr. 11, 2006, Claim Amendment, ECF #74-2 at pg. 48 (adding "comprising" to claims).)

Because the claims are open-ended, the Court should not construe them as limited to solutions having "only one" biocide.

### B. Dr. Greens Does Not Explain Why Court Should Adopt Its Proposed "Carbamates" Construction

As to the "carbamates" term, because Dr. Greens has not explained how its proposed construction would affect infringement, the Court should not issue an advisory opinion defining it. *See Jang*, 532 F.3d at 1336.

If the Court construes "carbamates," it should adopt only the first sentence of Dr. Greens' three-sentence proposed construction from the Joint Claim Construction Chart. (*See* ECF # 71-1 at pg. 5.) The parties agree that the first sentence correctly defines "carbamates" as "organic compounds derived from carbamic acid." Dr. Greens' opening brief, however, never discusses the second or third sentences of its proposed construction. As Spectrum showed in its opening brief, the second sentence—"Carbamates contain the monovalent ion $NH_2COO^-$"—would incorrectly narrow the "carbamates" term to a subclass of carbamates as confirmed by Dr. Greens' own extrinsic evidence. (*See* ECF # 73 at 5.) The third sentence is a mere non-infringement argument against the doctrine of equivalents that has no place in claim construction. The Court, therefore, should reject Dr. Greens' second and third sentences as incorrect and abandoned by Dr. Greens.

Rather than argue in favor of its proposed construction from the Joint Claim Construction Statement, Dr. Greens now argues that "carbamates" should be construed as limited to the two carbamate examples described in the patent's specification. (*See* Br. at 5.) This new position is procedurally and legally flawed. Dr. Greens did not raise this proposed construction or the newly-cited portion of the specification in its preliminary claim constructions, responsive claim constructions, the parties' meet-and-confer, or the Joint Claim Construction Chart. Therefore, this new argument contradicts the letter and spirit of the local patent rules, and should be rejected on that basis alone.

Legally, Dr. Greens' new proposal violates well-established precedent that prohibits limiting the claims to specific examples described in the specification. *See Falana v. Kent State Univ.*, 669 F.3d 1349, 1355 (Fed. Cir. 2012). To the extent the specification describes examples of carbamates, those are mere examples or preferred embodiments; they do not limit the claims. *See id*. Therefore, the Court should reject all of Dr. Greens' carbamate proposals, except for the first sentence that it proposed in the Joint Claim Construction Chart.

**C.    The Parties Agree That The 21 Non-Carbamate Biocides Need No Construction**

Dr. Greens agrees that Spectrum identifying "carbamates" as the infringing biocide has made it unnecessary for the Court to construe the other 21 recited biocides. (*See* Br. at 7.) Therefore, the

Court should not construe those 21 terms and should grant Spectrum's pending motion for leave to amend its infringement contentions to specify carbamates as the infringing biocide. (ECF # 72.)

As an aside, Dr. Greens' statement that Spectrum failed to identify "carbamate" as the infringing biocide until the Friday before the parties filed their opening claim construction briefs, March 1, is patently false. (Br. at 6-7.) Spectrum's attorney told Dr. Greens' attorney weeks before that—during a face-to-face meeting on January 24, 2012—that carbamates had been found in Dr. Greens' product and that Spectrum would be moving to amend its infringement contentions accordingly. (Cavanagh Decl. ¶ 30, ECF # 72-2.) On February 15, Spectrum was ready to file its motion to amend its infringement contentions and asked whether Dr. Greens—which had asked Spectrum to provide more specific contentions—would be opposing Spectrum's motion. Almost two weeks later, after Spectrum followed up, Dr. Greens responded that it had "no position" on Spectrum's motion. (*Id.* ¶ 31-32.) Spectrum filed its motion the next day, on Thursday, February 28.

Therefore, Dr. Greens knew that carbamates was the relevant biocide over five weeks before it filed its claim construction brief. And the timing of Spectrum's motion was due to Dr. Greens' own delay in responding to Spectrum. There was no "deceitful withholding of information" or sandbagging by Spectrum. (Br. at 2.) Spectrum did not immediately disclose its expert's findings to Dr. Greens because they were protected by the work-product doctrine. *See* Fed. R. Civ. P. 26(b)(4)(C) (stating that communications between attorney and expert are generally protected as work-product). Spectrum disclosed those results weeks before the opening claim construction briefs were due to obviate the need to construe the 21 non-carbamate biocides. Indeed, Spectrum could have maintained those test results as privileged until expert disclosures occurred, but chose to disclose them in January to narrow the claim construction dispute for judicial economy, which is exactly what has happened.

### III. Conclusion

For the foregoing reasons, the Court need not and should not construe any of the claim terms of the '776 patent. If, however, it decides construction is necessary, it should adopt the alternative constructions proposed by Spectrum in the Joint Claim Construction Chart.

/ / /

| | | |
|---|---|---|
| DATED: March 18, 2013 | | JACZKO LAW GROUP, APC |
| | | MCDONALD HOPKINS LLC |
| | By: | /s/ Matthew J. Cavanagh |
| | | Matthew J. Cavanagh |
| | | Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS |