1   J. CHRISTOPHER JACZKO (149317)
    PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
2   525 B Street Suite 2200
    San Diego, CA 92101
3   Telephone:    (619) 906-5748
    Facsimile:    (619) 744-5418
4   chris.jaczko@procopio.com

5   DAVID B. CUPAR (*Pro Hac Vice*)
    MATTHEW J. CAVANAGH (*Pro Hac Vice*)
6   MCDONALD HOPKINS LLC
    600 Superior Avenue East, Suite 2100
7   Cleveland, OH 44114
    t 216.348.5730 │ f 216.348.5474
8   dcupar@mcdonaldhopkins.com
    mcavanagh@mcdonaldhopkins.com
9
    Attorneys for Defendants JAMES MATTHEW STEPHENS
10  and SPECTRUM LABORATORIES, LLC

11              **UNITED STATES DISTRICT COURT**

12        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

13  DR. GREENS, INC., a California         )   No.    11cv0638 JAH (KSC)
    corporation,                           )
14                                         )   **SPECTRUM'S ANSWER AND FIRST**
                    Plaintiff,             )   **AMENDED COUNTERCLAIM TO DR.**
15                                         )   **GREENS' AMENDED COMPLAINT**
    v.                                     )
16                                         )   Judge: Hon. John A. Houston
    JAMES MATTHEW STEPHENS, an             )   Mag. Judge: Hon. Karen Crawford
17  individual, and SPECTRUM               )   Filed: March 29, 2011
    LABORATORIES, LLC, an Ohio limited     )   Trial: None Set
18  liability company,                     )
                                           )
19                  Defendant,             )
                                           )
20  ───────────────────────────────       )
                                           )
21  JAMES MATTHEW STEPHENS, an             )
    individual, and SPECTRUM               )
22  LABORATORIES, LLC, an Ohio limited     )
    liability company,                     )
                                           )
23                  Counterclaim-Plaintiffs, )
    v.                                     )
24                                         )
    DR. GREENS, INC., a California corporation, )
25                                         )
                    Counterclaim-Defendant, )
26                                         )
    and                                    )
27                                         )
    MATT GREEN, an individual,             )
28                                         )
                    New-Party Defendant.   )

For its answer to the amended complaint of Dr. Greens, Inc., Spectrum Laboratories, LLC ("Spectrum") states as follows:

1. Spectrum denies the allegations of paragraph 1 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

2. Spectrum admits that James Matthew Stephens is an individual residing in the Cincinnati, Ohio, area and denies all other allegations in paragraph 2 of the amended complaint.

3. Spectrum admits that it is an Ohio limited liability company and that its principal place of business is in Ohio, and it otherwise denies the allegations in paragraph 3 of the amended complaint.

4. Spectrum admits the allegations in paragraph 4 of the amended complaint.

5. Spectrum admits that Mr. Stephens is its managing member and otherwise denies the allegations in paragraph 5 of the amended complaint.

6. Spectrum admits that Spectrum Laboratories, Inc. ("Spectrum Inc.") filed articles of incorporation in Ohio in September 1992 and that it filed dissolution papers in Ohio in May 2010. Otherwise, Spectrum denies the allegations in paragraph 6 of the amended complaint.

7. Spectrum admits that Mr. Stephens was the sole shareholder, president, and director of Spectrum Inc. and otherwise denies the allegations in paragraph 7 of the amended complaint.

8. Spectrum admits the allegations in paragraph 8 of the amended complaint.

9. Spectrum objects to the amended complaint referring to it and Mr. Stephens collectively as "Defendants" because they are each a separate and distinct person under the law. Spectrum further objects to the amended complaint defining the term "SPECTRUM" to incorrectly allege that Mr. Stephens somehow did business as a d/b/a outside of the corporate forms of Spectrum LLC and Spectrum Inc., which Spectrum expressly denies. Spectrum otherwise denies the allegations in paragraph 9 of the amended complaint.

10. Spectrum admits that the Court presently has subject matter jurisdiction over this action, and otherwise denies the allegations in paragraph 10 of the amended complaint.

11. Spectrum admits that the Court presently has subject matter jurisdiction over this action, and otherwise denies the allegations in paragraph 11 of the amended complaint.

12.     Spectrum admits that it has some business contacts with California, and otherwise denies the allegations in paragraph 12 of the amended complaint.

13.     Spectrum denies the allegations in paragraph 13 of the amended complaint.

## As to Dr. Greens' "General Allegations"

14.     Spectrum admits that Dr. Greens was an exclusive distributor for Spectrum Inc. in 2000 and that, by at least 2002, Dr. Greens began to purchase Quick Fix synthetic urine from Spectrum Inc. Otherwise, Spectrum denies the allegations in paragraph 14 of the amended complaint.

15.     Spectrum admits that: (i) Spectrum Inc. terminated the exclusive distributor relationship with Dr. Greens in 2000 or 2001; (ii) by at least 2002, Dr. Greens began to purchase Quick Fix synthetic urine from Spectrum Inc. and then from Spectrum; and (iii) Dr. Greens resold Quick Fix. Otherwise, Spectrum denies the allegations in paragraph 15 of the amended complaint.

16.     Spectrum denies that Mr. Stephens ever sold Quick Fix to Dr. Greens, admits that Dr. Greens purchased Quick Fix from Spectrum Inc. and then from Spectrum, and denies all other allegations in paragraph 16 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

17.     Spectrum admits the allegations in paragraph 17 of the amended complaint.

18.     Spectrum admits that, among other things, U.S. Patent No. 7,192,776 and its underlying application described Mr. Stephens' invention as including novel means for removing bacteria from the solution so as to control or eliminate sepsis of the urine solution, preferably through the use of a biocide. Otherwise, Spectrum denies the allegations in paragraph 18 of the amended complaint.

19.     Spectrum admits the allegations in paragraph 19 of the amended complaint.

20.     Spectrum admits that the copy of U.S. Patent No. 7,192,776 ("the '776 patent") attached to the complaint appears accurate, and otherwise denies the allegations in paragraph 20 of the amended complaint.

21.     Spectrum denies the allegations in paragraph 21 of the amended complaint.

22.     Spectrum denies the allegations in paragraph 22 of the amended complaint.

## As to Dr. Greens' "First Claim of Infringement by Defendants"

23.    Spectrum admits that its attorney, David Cupar, sent a July 22, 2009, letter to Dr. Greens. Insofar as Dr. Greens construes that letter, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 23 of the amended complaint.

24.    Insofar as Dr. Greens construes the July 22, 2009, letter attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 24 of the amended complaint.

25.    Spectrum admits that on July 22, 2009, Spectrum existed and Spectrum Inc. had not yet filed its dissolution papers with the state of Ohio, but denies that those two separate entities actively did business at the same time. Spectrum further admits that it and Spectrum Inc. have each, at different times, referred to itself as "Spectrum Laboratories" or "Spectrum Labs," Otherwise, Spectrum denies the allegations in paragraph 25 of the amended complaint.

26.    Spectrum admits that Mr. Stephens has an education in chemistry and otherwise denies the allegations in paragraph 26 of the amended complaint.

27.    Spectrum neither admits nor denies that it or Mr. Stephens tested Agent X for the presence of biocides because whether either has done so is information protected against disclosure by the work-product doctrine. Otherwise, Spectrum denies the allegations in paragraph 27 of the amended complaint.

28.    Spectrum admits that Mr. Stephens knew that Spectrum Inc. sold Quick Fix to Dr. Greens before the filing date of the '776 patent. However, those "Quick Fix" products had a different chemical composition from what is claimed by the '776 patent and from present-day Quick Fix, and therefore are not invalidating sales under the Patent Act. Otherwise, Spectrum denies the allegations in paragraph 28 of the amended complaint.

29.    Spectrum denies the allegations in paragraph 29 of the amended complaint.

30.    Spectrum denies the allegations in paragraph 30 of the amended complaint.

31.    Spectrum denies the allegations in paragraph 31 of the amended complaint.

32.     Insofar as Dr. Greens construes the August 3, 2009, letter attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 32 of the amended complaint.

33.     Spectrum admits that its attorney, David Cupar, sent an August 6, 2009, e-mail to counsel for Dr. Greens. Insofar as Dr. Greens construes the August 6, 2009, e-mail attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 33 of the amended complaint.

### As to "Legal Action Notification Letter"

34.     Insofar as Dr. Greens construes the "Legal Action Notification" attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 34 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

35.     Spectrum denies the allegations in paragraph 35 of the amended complaint.

36.     Spectrum admits that the notice was sent to retailers in 2009 and otherwise denies the allegations in paragraph 36 of the amended complaint.

37.     Spectrum denies the allegations in paragraph 37 of the amended complaint.

38.     Insofar as Dr. Greens construes the "Legal Action Notification" attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 38 of the amended complaint.

39.     Insofar as Dr. Greens construes the "Legal Action Notification" attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 39 of the amended complaint.

40.     Insofar as Dr. Greens construes the "Legal Action Notification" attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 40 of the amended complaint.

41.     Insofar as Dr. Greens construes the "Legal Action Notification" attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 41 of the amended complaint.

42.     Spectrum denies the allegations in paragraph 42 of the amended complaint.

43.     Spectrum denies the allegations in paragraph 43 of the amended complaint.

44.     Spectrum denies the allegations in paragraph 44 of the amended complaint.

45.     Spectrum denies the allegations in paragraph 45 of the amended complaint.

46.     Spectrum denies the allegations in paragraph 46 of the amended complaint.

47.     Spectrum denies the allegations in paragraph 47 of the amended complaint.

48.     Spectrum denies the allegations in paragraph 48 of the amended complaint.

49.     Spectrum denies the allegations in paragraph 49 of the amended complaint.

50.     Spectrum denies the allegations in paragraph 50 of the amended complaint.

51.     Spectrum denies the allegations in paragraph 51 of the amended complaint.

52.     Spectrum denies the allegations in paragraph 52 of the amended complaint.

53.     Spectrum denies the allegations in paragraph 53 of the amended complaint.

54.     Spectrum denies the allegations in paragraph 54 of the amended complaint.

## As to "Exchanged Correspondence"

55.     Insofar as Dr. Greens construes the September 19, 2009, letter attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 55 of the amended complaint.

56.     Spectrum admits that its attorney, David Cupar, sent a September 21 2009, e-mail to counsel for Dr. Greens. Insofar as Dr. Greens construes the September 21, 2009, e-mail attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 56 of the amended complaint.

57.     Insofar as Dr. Greens construes the September 21, 2009, e-mail attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 57 of the amended complaint.

58.     Spectrum denies the allegations in paragraph 58 of the amended complaint.

59.     Spectrum neither admits nor denies that it or Mr. Stephens tested Agent X for the presence of biocides because whether either has done so is information protected against disclosure

by the work-product doctrine. Otherwise, Spectrum denies the allegations in paragraph 59 of the amended complaint.

60.     Insofar as Dr. Greens construes the September 23, 2009, letter attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 60 of the amended complaint.

61.     Insofar as Dr. Greens construes the October 23, 2009, letter attached to its complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 61 of the amended complaint.

## As to "First Lawsuit"

62.     Insofar as Dr. Greens construes the Court's docket, it speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 62 of the amended complaint.

63.     Spectrum admits that it and Mr. Stephens were never served in Dr. Greens' prior lawsuit, and otherwise denies the allegations in paragraph 63 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

64.     Spectrum denies the allegations in paragraph 64 of the amended complaint.

65.     Insofar as Dr. Greens construes the Court's docket, it speaks for itself. Spectrum denies that Mr. Stephens tried to avoid personal service of the complaint in Dr. Greens' first lawsuit against him. Otherwise, Spectrum denies the allegations in paragraph 65 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

66.     Spectrum admits that, because Dr. Greens never served it or Mr. Stephens with a complaint in the first lawsuit it filed, neither filed an answer specifically denying Dr. Greens' baseless allegation that the '776 patent is invalid. Otherwise, Spectrum denies the allegations in paragraph 66 of the amended complaint.

## As to "Nunc Pro Tunc Assignment"

67.     Spectrum admits that Mr. Stephens' assignment of the '776 patent to Spectrum was recorded with the USPTO in early 2010, denies that the assignment "purport[ed]" to assign an interest as it did, in fact, assign the an interest to Spectrum, and denies all other allegations in

paragraph 67 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

68.     Spectrum denies the allegations in paragraph 68 of the amended complaint.

69.     Spectrum denies the allegations in paragraph 69 of the amended complaint.

70.     Spectrum denies the allegations in paragraph 70 of the amended complaint.

### As to "Current Dispute"

71.     Insofar as Dr. Greens construes the February 11, 2011, letter attached to its amended complaint, the document speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 71 of the amended complaint.

72.     Insofar as Dr. Greens construes the letters and e-mails written by Mr. Cupar attached to the amended complaint, those documents speak for themselves. Otherwise, Spectrum denies the allegations in paragraph 72 of the amended complaint.

73.     Spectrum neither admits nor denies that it or Mr. Stephens tested Agent X for the presence of biocides because whether either has done so is information protected against disclosure by the work-product doctrine. Otherwise, Spectrum denies the allegations in paragraph 73 of the amended complaint.

74.     Spectrum admits that Mr. Stephens knew that Spectrum Inc. sold Quick Fix to Dr. Greens before the filing date of the '776 patent. However, those "Quick Fix" products had a different chemical composition from what is claimed by the '776 patent and from present-day Quick Fix, and therefore there were no invalidating sales under the Patent Act. Otherwise, Spectrum denies the allegations in paragraph 74 of the amended complaint.

75.     Spectrum denies the allegations in paragraph 75 of the amended complaint.

76.     Spectrum denies the allegations in paragraph 76 of the amended complaint.

77.     Spectrum denies the allegations in paragraph 77 of the amended complaint.

78.     Insofar as Dr. Greens construes the letters and e-mails written by Mr. Cupar attached to the amended complaint, those documents speak for themselves. Otherwise, Spectrum denies the allegations in paragraph 78 of the amended complaint.

79.     Spectrum denies the allegations in paragraph 79 of the amended complaint.

1    80.    Spectrum denies the allegations in paragraph 80 of the amended complaint.

2    81.    Insofar as Dr. Greens construes the written correspondence exchanged by the parties'

3    attorneys, those documents speak for themselves. Otherwise, Spectrum denies the allegations in

4    paragraph 81 of the amended complaint.

5              **As to Dr. Greens' "Count I.a. Patent Non-Infringement"**

6    82.    Spectrum re-responds and incorporates herein by reference, the same as if set forth

7    verbatim, the responses contained in paragraphs 1 through 81.

8    83.    Spectrum denies the allegations in paragraph 83 of the amended complaint.

9    84.    Spectrum admits that it has alleged in this action that Dr. Greens has infringed the

10   '776 patent and otherwise denies the allegations in paragraph 84 of the amended complaint.

11   85.    Spectrum admits that Dr. Greens denies infringement and otherwise denies the

12   allegations in paragraph 85 of the amended complaint.

13   86.    Spectrum admits that Dr. Greens denies infringement and otherwise denies the

14   allegations in paragraph 86 of the amended complaint.

15   87.    Insofar as Dr. Greens construes the complaint, the amended complaint, or the written

16   documents attached to either pleading, those documents speak for themselves. Otherwise, Spectrum

17   denies the allegations in paragraph 87 of the amended complaint.

18   88.    Spectrum denies the allegations in paragraph 88 of the amended complaint.

19   89.    Insofar as Dr. Greens construes the amended complaint, it speaks for itself.

20   Otherwise, Spectrum denies the allegations in paragraph 89 of the amended complaint because it

21   lacks knowledge or information sufficient to form a belief about the truth of those allegations.

22              **As to Dr. Greens' "Count I.b. Patent Invalidity"**

23   90.    Spectrum re-responds and incorporates herein by reference, the same as if set forth

24   verbatim, the responses contained in paragraphs 1 through 89.

25   91.    Spectrum admits that it has alleged in this action that its '776 patent is valid and that

26   Dr. Greens has infringed the '776 patent. Otherwise, Spectrum denies the allegations in paragraph 91

27   of the amended complaint.

28   92.    Spectrum denies the allegations in paragraph 92 of the amended complaint.

93. Spectrum denies the allegations in paragraph 93 of the amended complaint.

94. Spectrum denies the allegations in paragraph 94 of the amended complaint.

95. Spectrum denies the allegations in paragraph 95 of the amended complaint.

96. Insofar as Dr. Greens construes the complaint, the amended complaint, or the written documents attached to either pleading, those documents speak for themselves. Otherwise, Spectrum denies the allegations in paragraph 96 of the amended complaint.

97. Spectrum denies the allegations in paragraph 97 of the amended complaint.

98. Insofar as Dr. Greens construes the amended complaint, it speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 98 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

**As to Dr. Greens' "Count II. Misuse Of Patent"**

99. Spectrum re-responds and incorporates hereing by reference, the same as if set forth verbatim, the responses contained in paragraphs 1 through 98.

100. Spectrum denies the allegations in paragraph 100 of the amended complaint.

101. Spectrum denies the allegations in paragraph 101 of the amended complaint.

102. Spectrum admits that: (i) Mr. Stephens never asserted patent infringement against Dr. Greens; (ii) Mr. Stephens is aware that Dr. Greens sells Agent X; and (iii) Spectrum Inc. did not file an answer in the first lawsuit that Dr. Greens failed to prosecute. Otherwise, Spectrum denies the allegations in paragraph 102 of the amended complaint.

103. Spectrum denies the allegations in paragraph 103 of the amended complaint.

104. Spectrum denies the allegations in paragraph 104 of the amended complaint.

105. Spectrum denies the allegations in paragraph 105 of the amended complaint.

106. Spectrum denies the allegations in paragraph 106 of the amended complaint.

107. Spectrum denies the allegations in paragraph 107 of the amended complaint.

108. Spectrum denies the allegations in paragraph 108 of the amended complaint.

109. Insofar as Dr. Greens construes the amended complaint, it speaks for itself. Otherwise, Spectrum denies the allegations in paragraph 109 of the amended complaint because it lacks knowledge or information sufficient to form a belief about the truth of those allegations.

## As to Dr. Greens' "Count III. Federal Statutory Unfair Competition"

110. Spectrum re-responds and incorporates hereing by reference, the same as if set forth verbatim, the responses contained in paragraphs 1 through 109.

111. Spectrum denies the allegations in paragraph 111 of the amended complaint.

112. Spectrum denies the allegations in paragraph 112 of the amended complaint.

113. Spectrum denies the allegations in paragraph 113 of the amended complaint.

114. Spectrum admits that: (i) Mr. Stephens never asserted patent infringement against Dr. Greens; (ii) Mr. Stephens is aware that Dr. Greens sells Agent X; and (iii) Spectrum Inc. did not file an answer in the first lawsuit that Dr. Greens failed to prosecute. Otherwise, Spectrum denies the allegations in paragraph 114 of the amended complaint.

115. Spectrum denies the allegations in paragraph 115 of the amended complaint.

116. Spectrum denies the allegations in paragraph 116 of the amended complaint.

117. Spectrum denies the allegations in paragraph 117 of the amended complaint.

118. Spectrum denies the allegations in paragraph 118 of the amended complaint.

119. Spectrum admits that: (i) Mr. Stephens never asserted patent infringement against Dr. Greens; (ii) Mr. Stephens is aware that Dr. Greens sells Agent X; and (iii) Spectrum Inc. did not file an answer in the first lawsuit that Dr. Greens failed to prosecute. Otherwise, Spectrum denies the allegations in paragraph 119 of the amended complaint.

120. Spectrum denies the allegations in paragraph 120 of the amended complaint.

121. Spectrum denies the allegations in paragraph 121 of the amended complaint.

## As to Dr. Greens' "Count IV. Unfair Competition
## Under California Business & Professions Code Section 17200"

122. Spectrum re-responds and incorporates herein by reference, the same as if set forth verbatim, the responses contained in paragraphs 1 through 121.

123. Spectrum denies the allegations in paragraph 123 of the amended complaint.

124. Spectrum denies the allegations in paragraph 124 of the amended complaint.

125. Spectrum denies the allegations in paragraph 125 of the amended complaint.

126. Spectrum denies the allegations in paragraph 126 of the amended complaint.

1   127.   Spectrum denies the allegations in paragraph 127 of the amended complaint.

2   128.   Spectrum denies the allegations in paragraph 128 of the amended complaint.

3   129.   Spectrum denies the allegations in paragraph 129 of the amended complaint.

4   130.   Spectrum denies the allegations in paragraph 130 of the amended complaint.

5   131.   Spectrum admits that: (i) Mr. Stephens never asserted patent infringement against Dr.

6   Greens; (ii) Mr. Stephens is aware that Dr. Greens sells Agent X; and (iii) Spectrum Inc. did not file

7   an answer in the first lawsuit that Dr. Greens failed to prosecute. Otherwise, Spectrum denies the

8   allegations in paragraph 131 of the amended complaint.

9   132.   Spectrum denies the allegations in paragraph 132 of the amended complaint.

10          **As to Dr. Greens' "Count V. Interference With Business Relations"**

11   133.   Spectrum re-responds and incorporates herein by reference, the same as if set forth

12   verbatim, the responses contained in paragraphs 1 through 132.

13   134.   Spectrum denies the allegations in paragraph 134 of the amended complaint.

14   135.   Spectrum denies the allegations in paragraph 135 of the amended complaint.

15   136.   Spectrum denies the allegations in paragraph 136 of the amended complaint.

16   137.   Spectrum denies the allegations in paragraph 137 of the amended complaint.

17   138.   Spectrum denies the allegations in paragraph 138 of the amended complaint.

18   139.   Spectrum denies the allegations in paragraph 139 of the amended complaint.

19   140.   Spectrum denies the allegations in paragraph 140 of the amended complaint.

20   141.   Spectrum denies the allegations in paragraph 141 of the amended complaint.

21        **As to Dr. Greens' "Count VI. Interference With Prospective Economic Advantage"**

22   142.   Spectrum re-responds and incorporates herein by reference, the same as if set forth

23   verbatim, the responses contained in paragraphs 1 through 141.

24   143.   Spectrum denies the allegations in paragraph 143 of the amended complaint.

25   144.   Spectrum denies the allegations in paragraph 144 of the amended complaint.

26   145.   Spectrum denies the allegations in paragraph 145 of the amended complaint.

27   146.   Spectrum denies the allegations in paragraph 146 of the amended complaint.

28   147.   Spectrum denies the allegations in paragraph 147 of the amended complaint.

148. Spectrum denies the allegations in paragraph 148 of the amended complaint.

149. Spectrum denies the allegations in paragraph 149 of the amended complaint.

### As to Dr. Greens' Prayer For Relief

150. Spectrum denies that Dr. Greens is entitled to any of the relief demanded.

### Affirmative Defenses

151. Dr. Greens fails to state a claim upon which relief can be granted.

152. Dr. Greens' claims are barred by the doctrines of laches, estoppel, and waiver.

153. Dr. Greens' claims are barred by the doctrine of unclean hands.

154. Dr. Greens' damages, if any, were caused or contributed to by its own action or inaction or by the action or inaction of third-persons over whom Spectrum has no ownership or control.

155. Dr. Greens' claims are barred, in whole or in part, by its failure to mitigate its damages, if any.

156. Dr. Greens' claims are barred because the Patent Act gives Spectrum a statutory privilege to give potential infringers notice of Spectrum's patent rights.

157. Dr. Greens' demand for punitive damages is barred by the Due Process Clause of the Fifth Amendment to the United States Constitution and similar provisions of any applicable state constitution.

158. Spectrum reserves the right to assert any additional affirmative defenses which it might discover during the pendency of this action.

WHEREFORE, Spectrum prays that the Court dismiss Dr. Greens' amended complaint and grant such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

## SPECTRUM'S FIRST AMENDED COUNTERCLAIM

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Spectrum hereby asserts its first amended counterclaim against Dr. Greens, Inc. and Matt Green as follows:

### Parties

1. Spectrum Laboratories, LLC is an Ohio limited liability company with a principal place of business in Ohio.

2. Mr. Stephens is an individual who resides in Ohio.

3. According to its amended complaint, Dr. Greens, Inc. is a California corporation "doing business" in California.

4. Matt Green is an individual who resides in California.

### Jurisdiction

5. To the extent the claims asserted in Dr. Greens' complaint are within this Court's subject matter jurisdiction, this amended counterclaim also is within that subject matter jurisdiction.

6. This Court has personal jurisdiction over Dr. Greens because it is incorporated and does business in California, and it has personal jurisdiction over Matt Green because he resides in California.

### Facts

**I.     The '776 Patent**

7. James Matthew Stephens is the sole inventor of the '776 patent.

8. The '776 patent claims synthetic urine and a method for manufacturing synthetic urine.

9. Mr. Stephens assigned his entire interest in the '776 patent to Spectrum, which is memorialized in a nunc pro tunc assignment document that was executed on January 4, 2010, and recorded with the USPTO on February 15, 2010.

10. Mr. Stephens' assignment to Spectrum was effective as of March 4, 2008.

11. A true copy of the nunc pro tunc assignment and the USPTO's record of that assignment are attached as Exhibit 1.

## II.  Spectrum's Business

12.  Spectrum owns, markets, and sells a synthetic urine product called "Quick Fix."

13.  Spectrum Inc. began selling Quick Fix in 2000 or 2001.

14.  Spectrum later took over the sales of Quick Fix.

15.  Mr. Stephens is the Managing Member of Spectrum.

16.  Persons other than Mr. Stephens handle the day-to-day business activities of Spectrum.

## III.  Dr. Greens' Business Relationship With Spectrum

17.  Dr. Greens regularly purchased Quick Fix from Spectrum Inc. and then from Spectrum from at least 2002 until 2011.

18.  Dr. Greens marked up and resold Quick Fix to retailers, end users, and others.

19.  Dr. Greens was one of Spectrum Inc.'s first and largest customers for Quick Fix.

20.  Matt Green is Dr. Greens' founder, President, and largest shareholder.

21.  Greg Nahay is the only other Dr. Greens' shareholder.

22.  Upon information and belief, Dr. Greens' entire staff consists of only two persons: Matt Green and Mr. Nahay.

23.  Upon information and belief, Matt Green and Mr. Nahay perform all of the tasks at Dr. Greens, including, without limitation, purchasing, sales, customer service, manufacturing, quality control, and accounting.

24.  Upon information and belief, Matt Green manages, and is the sole person in control of, the day-to-day operations of Dr. Greens, and he makes all of the business and litigation decisions for Dr. Greens.

25.  Dr. Greens' Rule 26(a)(1) Initial Disclosures, which it served in this case on October 26, 2011, identified Matt Green as the only person within Dr. Greens that has knowledge about the history of the Quick Fix product, Dr. Greens' purchases of Quick Fix from Spectrum, and the chemical composition of Dr. Greens' Agent X product.

26.  Dr. Greens' disclosures further state that Matt Green has "personal experiences as a sales representative" for Spectrum and for Dr. Greens' sales of Quick Fix.

27.     Matt Green has gained personal knowledge about Quick Fix, its characteristics, and other synthetic urine products since at least 2002.

28.     Explaining how much he knows about Quick Fix and Spectrum, Matt Green recently testified that he has "known James Matthew Stephens and his company Spectrum Laboratories for more than a decade."

29.     Around 2002, Spectrum Inc. and Dr. Greens were receiving customer complaints that Quick Fix had become septic, which is a putrefied condition caused by bacteria growth that destroys the product's usefulness.

30.     Matt Green was personally involved with receiving the sepsis complaints and working with Spectrum to resolve the issue.

31.     Around 2003, Mr. Stephens discovered that adding a biocide to Quick Fix inhibited bacterial growth and avoided the sepsis problem.

32.     Mr. Stephens' discovery, along with other conceptual work on his part, formed the basis for the patent application that matured into the '776 patent.

33.     From the time Quick Fix was first introduced until 2003 or later, it did not contain a biocide.

34.     Dr. Greens and Matt Green knew that Quick Fix sold before January 28, 2003 experienced sepsis problems and that pre-2003 Quick Fix did not contain any biocide.

35.     Dr. Greens and Matt Green knew that Mr. Stephens was working to fix the sepsis problem in 2003.

36.     Both Dr. Greens and Matt Green later learned that Mr. Stephens had solved the sepsis problem by adding a biocide to Quick Fix.

37.     By at least 2009, Dr. Greens and Matt Green both understood that Mr. Stephens' biocide solution is part of what is claimed and protected by the '776 patent.

IV.     **Spectrum's Investigation Of Dr. Greens' Agent X Product**

38.     Since at least 2007, Dr. Greens has sold its own privately-labeled synthetic urine products under the brand names "Agent X," "SuperHero," and "Field Kit." Collectively, Dr. Greens' privately-labeled synthetic products are the "Accused Synthetics."

39.    Dr. Greens purchases the concentrated synthetic urine powder used in all of its Accused Synthetics from two different suppliers: Dyna-Tek Industries, Inc. in Overland Park, Kansas, and DSBR Enterprises, LLC in Redmond, Washington.

40.    Dr. Greens manufactures SuperHero, Field Kit, and Agent X by mixing synthetic urine powder with water at a Dr. Greens' facility in San Diego, California.

41.    Dr. Greens also sells an unmixed version of Agent X, which is merely synthetic urine powder that the end user must mix with water before use.

42.    Dr. Greens sells SuperHero and Field Kit only in the pre-mixed, liquid form.

43.    Dr. Greens has admitted in this litigation that it does not know the formula for the synthetic urine powder supplied to it by Dyna-Tek and DSBR, and that it does not know the formula of its own Accused Synthetics.

44.    After Spectrum discovered that Dr. Greens' was selling a synthetic urine product called "Agent X" that likely infringes its '776 patent, Spectrum's attorney wrote to Dr. Greens' on July 22, 2009, asking it to provide "any basis for which you do not believe that you infringe." (Am. Compl., Ex. B.)

45.    Dr. Greens responded with a general denial, baseless accusations, and threats against Spectrum, but it refused to produce the formula it used to manufacture Agent X. (*See* Am. Compl., Ex. C, F.)

46.    Spectrum's attorney responded by specifically asking for the "formulation" of Agent X, which he offered to keep confidential under an "attorney's eyes only" designation. (Am. Compl., Ex. G.)

47.    Again, Dr. Greens refused to produce the formula. (*See* Am. Compl., Ex. H, I.)

48.    On February 11, 2011, Spectrum's attorney again asked Dr. Greens to "please provide the formula and method used to manufacture that product so we can test the accuracy of that contention in accordance with 35 U.S.C. § 295." (Am. Compl., Ex. J.)

## V.  Dr. Greens Files This Baseless Lawsuit Against Spectrum And Mr. Stephens

49.     Rather than obtain the formulas for the Accused Synthetics from its suppliers, DSBR and Dyna-Tek, Dr. Greens filed this lawsuit against Spectrum and its managing member, Mr. Stephens, demanding declaratory relief and money damages.

50.     Upon information and belief, Matt Green made and approved of the decision to file this lawsuit and to name Mr. Stephens individually.

51.     Dr. Greens' amended complaint seeks a declaration that the '776 patent is invalid based on a false allegation that "Defendants manufactured and sold product covered by one or more claims of the '776 Patent years before the filing date of the '776 Patent, and hence in violation of 35 U.S.C. § 102(b), resulting in any issued patent being invalid on its face." (Am. Compl. ¶ 93.)

52.     Dr. Greens has alleged that the '776 patent is invalid without having any evidentiary support for that allegation and without having any good faith basis for thinking it would obtain such evidentiary support after a reasonable opportunity for further investigation or discovery.

53.     In fact, Matt Green, who (upon information and belief) authorized the baseless invalidity allegation on behalf of Dr. Greens, knew this allegation was false because he knew that the Quick Fix that Spectrum Inc. sold more than one year prior to the January 28, 2004 filing date did not have any of the biocides claimed by the '776 patent.

54.     Moreover, in discovery in this case, Mr. Stephens provided Dr. Greens with sworn evidence that pre-2003 Quick Fix lacked any of the biocides claimed by the '776 patent and was chemically distinct from present-day Quick Fix.  That evidence stands undisputed.

55.     At the time Matt Green authorized the filing of the complaint and the amended complaint, Matt Green knew that Spectrum and Spectrum Inc. had not manufactured or sold any product covered by one or more claims of the '776 patent prior to the January 28, 2003 bar date.

56.     Dr. Greens' amended complaint also seeks a declaration that the Accused Synthetics do not infringe '776 patent.

57.     Dr. Greens, however, has alleged non-infringement without having any evidentiary support for that allegation and without having any good faith basis for thinking it would obtain such evidentiary support after a reasonable opportunity for further investigation or discovery.

58.     In fact, Matt Green, who (upon information and belief) authorized the baseless non-infringement allegation on behalf of Dr. Greens, recently testified: "I do not know the formula for Agent X. I am aware of no one at Dr. Greens that knows the formula for Agent X."

59.     At the time Matt Green authorized the filing of the complaint and the amended complaint, Matt Green had no good faith reason to believe that the Accused Synthetics did not fall within any of the claims of the '776 patent.

60.     Dr. Greens bases its money damage claims (Am. Compl., Counts III-VI) entirely upon a "Legal Notification Letter" from Spectrum (the "Notice"), which warned retailers that other synthetic urine products "potentially infringe" the '776 patent.

61.     According to Dr. Greens, that notice "mischaracterized" Agent X as infringing the '776 patent. (*See* Am. Compl. ¶ 111.)

62.     Spectrum, however, sent the Notice in a good faith effort to enforce its patent rights in accordance with the Patent Act, which requires patentees to notify potential infringers to recover infringement damages. 35 U.S.C. 287(a).

63.     Dr. Greens now alleges that Spectrum and Mr. Stephens sent the Notice in bad faith. But Dr. Greens lacks any evidentiary support for the allegation of bad faith, and it has no good faith basis for thinking it would obtain such evidentiary support after a reasonable opportunity for further investigation or discovery.

64.     Furthermore, Dr. Greens has alleged that Mr. Stephens personally authored and approved the Notice without having any evidentiary support for that allegation and without having any good faith basis for thinking it would obtain such evidentiary support after a reasonable opportunity for further investigation or discovery.

65.     In fact, Mr. Stephens provided Dr. Greens with sworn evidence that he did not author the Notice, that he did not specifically authorize the Notice, and that Spectrum's Marketing Department authored the Notice. During six months of discovery, Dr. Greens has not obtained a shred of evidence to rebut Mr. Stephens' sworn evidence.

20

66.     Dr. Greens also has asserted declaratory claims regarding the '776 patent against Mr. Stephens despite Dr. Greens and Matt Green knowing that Mr. Stephens has no ownership interest in the '776 patent based on an assignment that was memorialized and recorded in 2010.

67.     By filing and maintaining baseless claims against Spectrum and Mr. Stephens, Dr. Greens and Matt Green have caused both defendants to sustain damages, including (without limitation) requiring them to expend time, money, and resources towards defending against the baseless claims.

## VI.     **Dr. Greens' False Ad**

68.     In July 2011, Spectrum discovered that Dr. Greens had published a false magazine ad in the nationally-distributed "Headquest Magazine," and perhaps in other publications (the "Ad"). A true copy of the Ad is attached as Exhibit 2.

69.     The Ad claims that Dr. Greens "invented detox!," which is untrue.

70.     The Ad also claims that Dr. Greens has been in business for "20 YRS," which also may be untrue. The California Secretary of State records show that Dr. Greens incorporated on March 22, 2011, and an apparent predecessor (which is in "suspended" status) formed on December 17, 1999.

71.     The Ad also depicts, what appear to be, several crumpled boxes of Spectrum's Quick Fix product at the feet of the Agent X product.

72.     Spectrum did not permit Dr. Greens to use its Quick Fix box or the various Spectrum-owned trademarks adorning the Quick Fix box.

### Count One
*Patent Infringement Under The Patent Act, 35 U.S.C. § 271*

73.     Spectrum incorporates by reference all allegations in all preceding paragraphs of this amended counterclaim as if fully rewritten herein.

74.     Dr. Greens and Matt Green have directly infringed, and continue to directly infringe, one or more claims of the '776 patent by making, using, selling, and offering to sell synthetic urine products covered by the '776 patent, including, but not necessarily limited to, the Accused Synthetics.

75.     Dr. Greens has actively induced infringement of the '776 patent under 35 U.S.C. § 271(b) by directing others, including DSBR and Dyna-Tek, to manufacture synthetic urine powders that infringe the '776 patent.

76.     Matt Green has actively induced infringement of the '776 patent under 35 U.S.C. § 271(b) by directing others, including Dr. Greens, to manufacture, sell, and offer to sell the Accused Synthetics.

77.     The powdered variety of Dr. Greens' Agent X has no commercial use, other than to be mixed with water to form a synthetic urine solution.

78.     Customers that mix water with powdered Agent X directly infringe the '776 patent by practicing the claimed methods, by manufacturing the claimed solutions, and by using the claimed solutions.

79.     Customers that buy Dr. Greens' premixed synthetic products directly infringe the '776 patent by using the claimed solutions.

80.     Dr. Greens has contributed to its customers' direct infringement of the '776 patent under 35 U.S.C. § 271(c) by selling powdered synthetic urine to them and instructing them to mix it with water and by selling them premixed synthetic urine solutions for their use.

81.     Matt Green is personally liable for direct infringement, induced infringement, and contributory infringement because, upon information and belief, he personally authorized, participated in, directed, and is responsible for the infringing conduct complained of herein.

82.     Dr. Greens' and Matt Green' infringement of the '776 patent was, and continues to be, willful and deliberate, and both likely will continue their infringing activities unless restrained by this Court.

83.     Dr. Greens' and Matt Green's infringement of the '776 patent is exceptional under 35 U.S.C. § 285.

84.     Dr. Greens' and Matt Green's activities were done with an intent to, and in fact did allow them to, derive benefit from use of Spectrum's '776 patent.

85.     Dr. Greens and Matt Green have profited, and will continue to profit, by their infringing activities.

86.     Spectrum has been damaged by Dr. Green's and Matt Green's infringing activities and will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**Count Two**

*False Advertising Under The Lanham Act, 15 U.S.C. § 1125(a)(1)(B)*

87.     Spectrum incorporates by reference all allegations in all preceding paragraphs of this amended counterclaim as if fully rewritten herein.

88.     Dr. Greens authored and published the Ad in a nationally-distributed magazine, and thereby placed it in interstate commerce.

89.     Upon information and belief, Matt Green personally authorized, participated in, directed, and is responsible for the authorship and publication of the Ad.

90.     The Ad contains several false statements; including, but not limited to, stating that Dr. Greens "invented detox." Dr. Greens did not invent detox.

91.     The Ad's false statements are both literally false and create a false impression.

92.     The false and misleading representations in the Ad are likely to deceive (and, upon information and belief, have deceived) actual or potential buyers of synthetic urine products.

93.     The false and misleading representations in the Ad have affected, and are likely to affect, the purchasing decisions of synthetic urine buyers.

94.     Dr. Greens and Matt Green have made the false and misleading representations willfully and in bad faith, knowing or expecting that they would be material to actual or potential buyers of synthetic urine and would likely deceive those customers.

95.     As a direct and proximate result of Dr. Greens' and Matt Green's false advertising, Spectrum has suffered damages in an amount to be determined at trial.

96.     As a direct and proximate result of Dr. Greens' and Matt Green's false advertising, Spectrum will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Count Three
### *Violations of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01-04*

97.    Spectrum incorporates by reference all allegations in all preceding paragraphs of this amended counterclaim as if fully rewritten herein.

98.    By, among other things, stating falsely in the Ad that Dr. Greens "invented detox," Dr. Greens and Matt Green violated Ohio's Deceptive Trade Practices Act, R.C. 4165.01-.04.

99.    Dr. Greens' and Matt Green's deceptive acts have damaged, and are likely to continue damaging, Spectrum in an amount to be determined at trial.

100.    As a direct and proximate result of Dr. Greens' and Matt Green's deceptive acts, Spectrum has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by the Court.

## Count Four
### *Violations of California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200*

101.    Spectrum incorporates by reference all allegations in all preceding paragraphs of this amended counterclaim as if fully rewritten herein.

102.    Dr. Greens' claims against Spectrum and Mr. Stephens are objectively baseless.

103.    Matt Green made and approved of the decision to have Dr. Greens file baseless claims against Spectrum and Mr. Stephens.

104.    By, among other things, stating falsely in the Ad that Dr. Greens "invented detox," and by initiating and maintaining this objectively baseless litigation with the intent of damaging Spectrum to gain a competitive advantage over it, Dr. Greens and Matt Green have violated California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200.

105.    Dr. Greens' and Matt Green's unfair competition has damaged, and is likely to continue damaging, Spectrum in an amount to be determined at trial.

106.    As a direct and proximate result of Dr. Greens' and Matt Green's unfair competition, Spectrum has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by the Court.

## Count Five
### *Unfair Competition under Ohio Common Law*

107.   Spectrum incorporates by reference all allegations in all preceding paragraphs of this amended counterclaim as if fully rewritten herein.

108.   Dr. Greens' claims against Spectrum and Mr. Stephens are objectively baseless.

109.   Matt Green made and approved of the decision to have Dr. Greens file baseless claims against Spectrum and Mr. Stephens.

110.   Dr. Greens and Matt Green have asserted baseless claims against Spectrum and Mr. Stephens with the malicious intent to embarrass, harass, and harm Spectrum – a Dr. Greens' competitor – and Spectrum's Managing Member (Mr. Stephens) in violation of Ohio unfair competition common law.

111.   By filing and maintaining malicious litigation, Dr. Greens and Matt Green have damaged, and are likely to continue damaging, Spectrum and Mr. Stephens in an amount to be determined at trial.

## Prayer for Relief

**WHEREFORE**, Spectrum prays for judgment against Dr. Greens and Matt Green as follows:

(A)   A finding that Dr. Greens and Matt Green have infringed one or more claims of the '776 patent.

(B)   Preliminary and permanent injunctive relief enjoining Matt Green, Dr. Greens, its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with it, and all others aiding, abetting, or acting in concert or active participation therewith, from continuing to infringe the '776 patent.

(C)   Preliminary and permanent injunctive relief enjoining Matt Green, Dr. Greens, its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with it, and all others aiding, abetting, or acting in concert or active participation therewith, from stating or implying that Dr. Greens invented detox.

(D)     A declaratory judgment that Dr. Greens' statement that it "invented detox" is false and misleading, and a violation of the Lanham Act, Ohio's Deceptive Trade Practices Act, and California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200.

(E)     Compensatory damages;

(F)     Treble damages;

(G)     Punitive damages;

(H)     An accounting and disgorgement of all sales, revenues, and profits derived from Dr. Greens' and Matt Green's wrongful conduct;

(I)     Attorneys' fees;

(J)     Pre-judgment and post-judgment interest;

(K)     Costs of the action; and

(L)     Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

DATED:   December 19, 2013          PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
                                    MCDONALD HOPKINS LLC

                                    By:     /s/ Matthew J. Cavanagh
                                            Matthew J. Cavanagh
                                            Attorneys for Defendant and
                                            Counterclaimant
                                            SPECTRUM LABORATORIES, LLC and
                                            Defendant JAMES MATTHEW STEPHENS

**Jury Demand**

Spectrum Laboratories, LLC demands a jury trial for all issues so triable

DATED:   December 19, 2013        PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
                                  MCDONALD HOPKINS LLC

                                  By:    /s/ Matthew J. Cavanagh
                                         Matthew J. Cavanagh
                                         Attorneys for Defendant and
                                         Counterclaimant
                                         SPECTRUM LABORATORIES, LLC and
                                         Defendant JAMES MATTHEW STEPHENS