GARY L. EASTMAN (182518)
GARY L. EASTMAN, APLC
401 West A Street, Suite 1785
San Diego, CA 92101
Telephone: (619) 230-1144
Facsimile: (619) 230-1194
gary@eastmanmccartney.com

Attorneys for Plaintiff and Counterclaim-Defendant
DR. GREENS, INC.

J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street Suite 2200
San Diego, CA 92101
Telephone: (619) 906-5748
Facsimile: (619) 744-5418
chris.jaczko@procopio.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone: (216)348-5730
Facsimile: (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendants JAMES MATTHEW STEPHENS and SPECTRUM LABORATORIES, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

DR. GREENS, INC., a California corporation,

Plaintiff,

v.

JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,

Defendant.

AND RELATED CROSS ACTION

No. 11cv0638 JAH (KSC)

**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**

Judge: Hon. John A. Houston
Mag. Judge: Hon. Karen Crawford
Filed: March 29, 2011
Trial: None Set

In accordance with the Civil Chambers Rules of United States Magistrate Judge Karen S. Crawford, the parties submit this joint motion for determination of a discovery dispute between the parties. The dispute concerns Dr. Greens, Inc.'s supplemental discovery responses to Spectrum Laboratories, LLC's Fifth Set of Requests for Production and Spectrum's Third Set of Interrogatories, which were served by Dr. Greens on December 21, 2013. Below, the parties set forth the exact wording of each disputed discovery request and Dr. Greens' written discovery responses to them, as well as a statement by each party as to whether further responses should or should not be compelled.

**Disputed Discovery Request No. 1**

Spectrum's Interrogatory No. 15. Identify (by name and full contact information) every DISTRIBUTOR to which DR. GREENS has sold a synthetic urine product (including any SYNTHETIC or QUICK FIX) at any time between 2007 and 2011, inclusively, and identify each product that DR. GREENS sold to each DISTRIBUTOR.

Dr. Greens' Response: Responding Party objects to this interrogatory as overbroad and unduly burdensome as it requests the name of every DISTRIBUTOR for any "synthetic urine product" sold "at any time between 2007 and 2011." Responding Party objects to this interrogatory to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to this interrogatory to the extent it seeks confidential commercial information of Responding Party.

Why Spectrum contends a further response should be compelled. Dr. Greens refused to provide any answer to this interrogatory. Dr. Greens' objection that the interrogatory seeks confidential commercial information is baseless because the Court has entered a stipulated protective order to address this very issue. The identify of Dr. Greens' distributors are relevant for calculating the number of infringing products sold by Dr. Greens and for determining details on Dr. Greens' sale of Spectrum's own patented "Quick Fix" product. Both of those figures are needed by Spectrum to make a more accurate calculation of damages.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

As indicated above, the purpose of this request is for "calculating the number of infringing products sold by Dr. Greens and for determining details on Dr. Greens' sale of Spectrum's own

patented "Quick Fix" product." Both objectives can be accomplished without the disclosure of every distributor used by Dr. Greens. Spectrum does not explain how the identity of Dr. Greens' distributors is related to Dr. Greens' sales figures. The substantial risk that the information sought, if disclosed, will be used for improper purposes outweighs any purported harm to Spectrum that non-disclosure will cause.

Further, Dr. Greens has already produced its sales records to Spectrum, disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and Dr. Greens' sales balance, specifically PLA000001 through PLA000435, PLA000869 through PLA000943, and PLA000949 through PLA000968. The information contained therein is sufficient to satisfy both of Spectrum's asserted objectives.

**Disputed Discovery Request No. 2**

Spectrum's Interrogatory No. 16. Describe each DR. GREENS' purchase of QUICK FIX from any PERSON other than SPECTRUM by stating, for each individual sale, the description of the good bought, quantity bought, purchase price, date of purchase, and the seller's name and contact information.

Dr. Greens' Response: Responding Party objects to this interrogatory as overbroad and unduly burdensome as it is unrestricted by date. Responding Party objects to this interrogatory to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to this interrogatory to the extent it seeks confidential commercial information of Responding Party.

Why Spectrum contends a further response should be compelled. Dr. Greens refused to provide any answer to this interrogatory. Dr. Greens' objection that the interrogatory seeks confidential commercial information is baseless because the Court has entered a stipulated protective order to address this very issue. Dr. Greens' purchases Spectrum's own patented "Quick Fix" product for resale to Dr. Greens' own customers. Details on how much Dr. Greens paid for the Quick Fix, how much it bought, and when it bought the products are all relevant to showing the demand for the patented product, which is one of the *Panduit* factors relevant to Spectrum's claim for lost profit damages.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

As indicated above, the purpose of this request is for "showing the demand for the patented product, which is one of the *Panduit* factors relevant to Spectrum's claim for lost profit damages." Spectrum's reliance on the "*Panduit* factors" to support its claim of relevancy is misplaced. Under *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978), the patent holder must establish: (1) there is a demand for the patented product; (2) there are no acceptable non-infringing substitutes; (3) the patent owner had the manufacturing and marketing capacity to exploit the demand; and (4) the amount of profit the patent owner would have made absent the infringing conduct. (*Id.*)

Notably, the "demand" referenced in the first *Panduit* prong is a demand for the patented feature, **not** a demand for the product. (*See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 1379 (Fed.Cir.2005); *see also Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538 (Fed.Cir.1995).) To assess the "demand" referenced in the first *Panduit* prong, the relevant inquiry is what benefit the invention provides and how customers value that benefit, i.e., if customer demand is based on the advantages that arise from the patented product. (*Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1104 (N.D. Cal. 2009) aff'd, 616 F.3d 1357 (Fed. Cir. 2010).)

In this case, the information sought by this interrogatory has no bearing on the *Panduit* "demand" prong. Evidence relating to "demand" for the patented feature requires an analysis of the actual features themselves and the consumer benefits arising therefrom. Spectrum does not explain how Dr. Greens' alleged purchase history of Quick Fix from third-party sellers and the contact information of said sellers is relevant to prove that the basis for customer demand is the patented feature.

Moreover, the privacy interests of third parties and the substantial risk that the information sought, if disclosed, will be used for improper purposes outweighs any purported harm to Spectrum that non-disclosure will cause.

**Disputed Discovery Request No. 3**

Spectrum's Request for Production No. 29. Any and all audited, reviewed, and compiled financial statements of DR. GREENS since 2005.

Dr. Greens' Response: Responding Party objects to the phrase "[a]ny and all audited, reviewed, and compiled" as overbroad, unduly burdensome, vague and ambiguous. Responding Party objects to the request as overbroad and unduly burdensome as it requests documents "since 2005." Responding Party objects to the phrase "financial statement" as used in this request as overbroad, vague, and ambiguous. Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Responding Party objects on the ground of attorney-client privilege and/or attorney-work product doctrine. Subject to, and without waiving said objection(s), Responding Party responds as follows:

Responding Party has made a diligent search and a reasonable inquiry in an attempt to comply with this request, but is unable to comply because the particular item or category of documents do not exist.

Why Spectrum contends a further response should be compelled. Dr. Greens claims that it has no responsive financial statements. But it must have such records in order to accurately calculate its profits or losses to report to the federal government for tax purposes. The financial information within the documents requested is needed by Spectrum to make a more accurate calculation of damages and, therefore, is relevant.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

Under Rule 34, Spectrum is required to "describe with reasonable particularity each item or category of items to be inspected." (Fed. R. Civ. P. 34(b)(1).)  Here, Spectrum has requested all "financial statements of DR. GREENS since 2005."  The phrase "financial statements" as used in this request is impermissibly overbroad, vague and ambiguous, making it impossible for Dr. Greens to know what to produce.   Courts routinely hold that requests for "all financial records" may be objectionable for inadequate description because they embrace too many subcategories to have much meaning. (*See* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-C, citing for support, *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008); *see also*, *Paiewonsky v. Paiewonsky*, 50 F.R.D. 379 (D.V.I. 1970), [holding that request for "corporate books, including but not limited to stock ledgers and financial records, including but not limited to, the financial statements of A. H.

Riise, Inc., for the years 1960 to the present," was at best ambiguous but in any event far too broad.])

Further, Dr. Greens has already produced its sales records to Spectrum, disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and Dr. Greens' sales balance, specifically PLA000001 through PLA000435, PLA000869 through PLA000943, and PLA000949 through PLA000968. The information contained therein is sufficient to satisfy the purpose of this request.

**Disputed Discovery Request No. 4**

Spectrum's Request for Production No. 30. All federal income tax returns of DR. GREENS since 2005.

Dr. Greens' Response: Responding Party objects to the request as overbroad and unduly burdensome as it requests "all" documents "since 2005." Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Subject to, and without waiving said objection(s), Responding Party responds as follows:

Responding Party will produce responsive, non-privileged documents to the extent such documents exist and can be located and made available to Responding Party by a reasonable search and inquiry. Due to a dispute amongst the owners of Responding Party, some business records have been lost.

Why Spectrum contends a further response should be compelled. Although Dr. Greens agreed to produce the responsive tax returns, it has not done so. The financial information within the documents requested is needed by Spectrum to make a more accurate calculation of damages and, therefore, is relevant. Dr. Greens' claim that it has lost its tax returns due to a "shareholder dispute" is not a proper response because its outside accountant must have retained copies of the tax returns. Those records, therefore, are within Dr. Greens' possession, custody, or control.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or are no longer in the possession of Dr. Greens or reasonably available to Dr.

Greens. As stated in Dr. Greens' supplemental response, Dr. Greens has made a reasonable search and diligent inquiry in an attempt to comply with this request, however, despite its best efforts, no responsive documents were found.

**Disputed Discovery Request No. 5**

Spectrum's Request for Production No. 35. Any and all monthly internal financial statements (e.g., balance sheets, income statements, statements of cash flows, etc.), including monthly and year-to-date amounts, of DR. GREENS since 2005.

Dr. Greens' Response: Responding Party objects to the request as overbroad and unduly burdensome as it requests "[a]ny and all" documents "since 2005." Responding Party objects to the phrase "monthly internal financial statements" as used in this request as overbroad, vague, unduly burdensome, and ambiguous. Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Subject to, and without waiving said objection(s), Responding Party responds as follows:

Responding Party has made a diligent search and a reasonable inquiry in an attempt to comply with this request, but is unable to comply because the particular item or category of documents do not exist.

Why Spectrum contends a further response should be compelled. Dr. Greens claims that it has no responsive financial statements. But it must have such records in order to accurately calculate its profits or losses to report to the federal government for tax purposes. The financial information within the documents requested is needed by Spectrum to make a more accurate calculation of damages and, therefore, is relevant.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or are no longer in the possession of Dr. Greens or reasonably available to Dr. Greens. As stated in Dr. Greens' supplemental response, Dr. Greens has made a reasonable search and diligent inquiry in an attempt to comply with this request, however, despite its best efforts, no responsive documents were found.

Dr. Greens has already produced its sales records to Spectrum, disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and Dr. Greens' sales balance, specifically PLA000001 through PLA000435, PLA000869 through PLA000943, and PLA000949 through PLA000968. The information contained therein is sufficient to satisfy the purpose of this request.

**Disputed Discovery Request No. 6**

Spectrum's Request for Production No. 38. Any and all annual sales reports by product number for DR. GREENS since 2005. Reports should include all sales channels, including (without limitation) online sales through the Dr. Greens online store at www.drgreens.com, sales to retailers, sales to DISTRIBUTORS, direct sales to end users, etc.

Dr. Greens' Response: Responding Party objects to the request as overbroad and unduly burdensome as it requests "[a]ny and all" documents "since 2005." Responding Party objects to the phrase "sales reports by product number" as used in this request as overbroad and unduly burdensome. Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Subject to, and without waiving said objection(s), Responding Party responds as follows:

Responding Party has made a diligent search and a reasonable inquiry in an attempt to comply with this request, but is unable to comply because the particular item or category of documents do not exist. Responding Party has already produced its sales records, specifically PLA000001 – PLA000435, PLA000869 through PLA000943, and PLA000949 through PLA000968. No annual sales reports exist.

Why Spectrum contends a further response should be compelled. The sales reports that Dr. Greens previously produced do not account for website sales through Dr. Greens' online store, and the reports do not account for sales that have occurred since the time Dr. Greens produced those reports. Although Dr. Greens claims that "[n]o annual sales reports exist," it maintains its sales records in an accounting software database. Therefore, it can use its accounting software to produce annual sales reports. The financial information within the documents requested is needed by Spectrum to make a more accurate calculation of damages and, therefore, is relevant.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or are no longer in the possession of Dr. Greens or reasonably available to Dr. Greens. As stated in Dr. Greens' supplemental response, Dr. Greens has made a reasonable search and diligent inquiry in an attempt to comply with this request, however, despite its best efforts, no responsive documents were found.

Dr. Greens has already produced its sales records to Spectrum, disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and Dr. Greens' sales balance, specifically PLA000001 through PLA000435, PLA000869 through PLA000943, and PLA000949 through PLA000968. The information contained therein is sufficient to satisfy the purpose of this request.

**Disputed Discovery Request No. 7**

Spectrum's Request for Production No. 41. Any and all documentation of the costs components of any and all SYNTHETICS since 2005, including (without limitation):

a. costs of synthetic powder;

b. costs of bottles;

c. costs of heating packs;

d. costs of temperature strips;

e. costs of water;

f. costs of bladder bags;

g. costs of belts;

h. costs of packaging;

i. shipping costs;

j. labor costs;

k. machine and equipment costs;

l. overhead costs; and

m. any other incremental costs as applicable.

Dr. Greens' Response: Responding Party objects to the phrase "[a]ny and all documentation of the costs components of any and all" as overbroad, unduly burdensome, vague and ambiguous. Responding Party objects to the request as overbroad and unduly burdensome as it requests documents "since 2005." Responding Party objects to the phrase "costs components" as used in this request as overbroad, vague, and ambiguous. Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Responding Party objects on the ground of attorney-client privilege and/or attorney-work product doctrine. Subject to, and without waiving said objection(s), Responding Party responds as follows:

The particular item or category of documents has already been produced by Responding Party in this action, specifically PLA000944 – PLA000948, and PLA000969 through PLA001288, and to the extent it has not been produced, Responding Party has made a diligent search and a reasonable inquiry in an attempt to comply with this request, but is unable to comply because the particular item or category of documents do not exist.

Why Spectrum contends a further response should be compelled. The documents previously produced by Dr. Greens only provide cost information for: (i) water; (ii) packaging; (iii) bottles; and (iv) powdered synthetic urine. Dr. Greens has not produced any of the documentation of its costs for heating packs, temperature strips, bladder bags, belts, shipping costs, labor costs, machine and equipment, leasing of warehouse and office space, etc. Dr. Greens must have those records in the form of receipts, invoices, purchase orders, W-2 forms, bank statements, and accounting records. These requested documents, or the information that those documents may lead to, are needed by Spectrum to make a more accurate calculation of damages and, therefore, are relevant.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or are no longer in the possession of Dr. Greens or reasonably available to Dr. Greens. As stated in Dr. Greens' supplemental response, Dr. Greens has made a reasonable search and diligent inquiry in an attempt to comply with this request. Dr. Greens has already produced all responsive cost documentation available to it based on a reasonable and diligent search, specifically

PLA000944 through PLA000948, and PLA000969 through PLA001288. To the extent that additional categories of documents requested by Spectrum are not contained in said bate stamp ranges, despite Dr. Greens' best efforts, no such responsive documents were found.

**Disputed Discovery Request No. 8**

Spectrum's Request for Production No. 42. Any and all documentation, calculations, or other support of variable, fixed, and incremental costs of DR. GREENS for SYNTHETICS since 2005.

Dr. Greens' Response: Responding Party objects to the phrase "[a]ny and all documentation, calculations, or support" as overbroad, unduly burdensome, vague and ambiguous. Responding Party objects to the request as overbroad and unduly burdensome as it requests documents "since 2005." Responding Party objects to the phrase "variable, fixed, and incremental costs" as used in this request as overbroad, vague, unduly burdensome, and ambiguous. Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Responding Party objects on the ground of attorney-client privilege and/or attorney-work product doctrine. Subject to, and without waiving said objection(s), Responding Party responds as follows:

Responding Party has made a diligent search and a reasonable inquiry in an attempt to comply with this request, but is unable to comply because the particular item or category of documents do not exist.

Why Spectrum contends a further response should be compelled. Dr. Greens claims that it has no responsive financial statements. But it must have such records in order to accurately calculate its profits or losses to report to the federal government for tax purposes. The financial information within the documents requested is needed by Spectrum to make a more accurate calculation of damages and, therefore, is relevant.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or are no longer in the possession of Dr. Greens or reasonably available to Dr. Greens. As stated in Dr. Greens' supplemental response, Dr. Greens has made a reasonable search

and diligent inquiry in an attempt to comply with this request, however, despite its best efforts, no responsive documents were found. Dr. Greens has already produced all cost documentation available to it based on a reasonable and diligent search, specifically PLA000944 through PLA000948, and PLA000969 through PLA001288.

**Disputed Discovery Request No. 9**

Spectrum's Request for Production No. 47. All DOCUMENTS concerning DR. GREENS' purchase of QUICK FIX from any PERSON other than SPECTRUM, including (without limitation) invoices, receipts, bills, purchase orders, quotations, proposals, price lists, sales reports, accounts receivable records, accounting records, and billing records.

Dr. Greens' Response: Responding Party objects to the request as overbroad and unduly burdensome as it requests "all" documents "including (without limitation) invoices, receipts, bills, purchase orders, quotations, proposals, price lists, sales reports, accounts receivable records, accounting records, and billing records" and is unrestricted by date. Responding Party objects to the term "concerning" as overbroad, unduly burdensome, vague and ambiguous. Responding Party objects to the phrase "testimony taken or offered" as overbroad, vague, unduly burdensome, and ambiguous. Responding Party objects to the request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to the request to the extent it seeks confidential financial and commercial information of Responding Party. Responding Party objects on the ground of attorney-client privilege and/or attorney-work product doctrine. Responding Party further objects to the extent that disclosure of the particular item or category of documents requested will violate privacy interests of third parties. Subject to, and without waiving said objection(s), Responding Party responds as follows:

The particular item or category of documents requested are not relevant to any party's claim or defense in this action. Matters that are merely "relevant to the subject matter" are discoverable only with leave of court for "good cause" shown (see FRCP 26(b)(1)), and no such "good cause" exists here. The privacy interests of third parties and the substantial risk that the documents requested, if produced, will be used for improper purposes outweighs any purported harm to propounding party that non-production will

cause. Propounding party's own sales records for QUICK FIX provide reliable evidence sufficient to evaluate the demand for QUICK FIX.

Why Spectrum contends a further response should be compelled. Dr. Greens refused to produce a single document in response to this request. Dr. Greens' objection that the request seeks confidential commercial information is baseless because the Court has entered a stipulated protective order to address this very issue. The information within the documents requested, or the information that those documents may lead to, is needed by Spectrum to make a more accurate calculation of damages. These documents are relevant to Spectrum's lost profit and reasonable royalty damages.

Dr. Greens' statement as to the bases for all of its objections and/or claims of privilege.

*Panduit Corp. v. Stahlin Brothers Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978) established a non-exclusive test for proving lost profits. Under *Panduit*, the patent holder must establish: (1) there is a demand for the patented product; (2) there are no acceptable non-infringing substitutes; (3) the patent owner had the manufacturing and marketing capacity to exploit the demand; and (4) the amount of profit the patent owner would have made absent the infringing conduct. (*Id.*)

Notably, the "demand" referenced in the first *Panduit* prong is a demand for the patented feature, **not** a demand for the product. (*See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 1379 (Fed.Cir.2005); *see also Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538 (Fed.Cir.1995).) To assess the "demand" referenced in the first *Panduit* prong, the relevant inquiry is what benefit the invention provides and how customers value that benefit, i.e., if customer demand is based on the advantages that arise from the patented product. (*Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1104 (N.D. Cal. 2009) aff'd, 616 F.3d 1357 (Fed. Cir. 2010).)

In this case, the information sought by this interrogatory has no bearing on the *Panduit* "demand" prong. Evidence relating to "demand" for the patented feature requires an analysis of the actual features themselves and the consumer benefits arising therefrom. Spectrum does not explain how Dr. Greens' alleged purchase history of Quick Fix from third-party sellers is relevant to prove that the basis for customer demand is the patented feature.

*Georgia-P. Corp. v. U.S. Plywood Corp*., 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970) established 15 facts to be considered in determining a reasonable royalty: (1) royalties the patentee has received for licensing the patent to others; (2) rates paid by the licensee for the use of comparable patents; (3) the nature and scope of the license (exclusive or nonexclusive, restricted or nonrestricted by territory or product type); (4) any established policies or marketing programs by the licensor to maintain its patent monopoly by not licensing others to use the invention or granting licenses under special conditions to maintain the monopoly; (5) the commercial relationship between the licensor and licensee, such as whether they are competitors; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; (7) the duration of the patent and license term; (8) the established profitability of the product made under the patent, including its commercial success and current popularity; (9) the utility and advantages of the patent property over old modes or devices; (10) the nature of the patented invention and the benefits to those who have used the invention; (11) the extent to which the infringer has used the invention and the value of that use; (12) the portion of profit or of the selling price that may be customary in that particular business to allow for use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as opposed to its non-patented elements; (14) the opinion testimony of qualified experts; and (15) the results of a hypothetical negotiation between the licensor and licensee.

In this case, the information sought by this interrogatory has no bearing on the *Georgia-Pacific* factors. Spectrum does not explain how Dr. Greens' alleged purchase history of Quick Fix from third-party sellers is relevant to establish a reasonable royalty rate for the patented product.

Moreover, the privacy interests of third parties and the substantial risk that the information sought, if disclosed, will be used for improper purposes outweighs any purported harm to Spectrum that non-disclosure will cause.

DATED: February 7, 2014

MCDONALD HOPKINS LLC

By: /s/ Matthew J. Cavanagh
Matthew J. Cavanagh

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS

Dated: February 7, 2014

Gary L. Eastman, APLC

By _*/s/ Gary L. Eastman*_________
Gary L. Eastman, Esq.

Attorneys for Plaintiff and Counterclaim-Defendant DR. GREENS, INC.