J. CHRISTOPHER JACZKO (149317)
JACZKO LAW GROUP, APC
4401 Eastgate Mall
San Diego, CA 92121
Telephone:    (858) 404-9206
Facsimile:    (858) 225-3500
chris@jaczkolaw.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:    (216)348-5730
Facsimile:    (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendants JAMES MATTHEW STEPHENS
and SPECTRUM LABORATORIES, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>            Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>            Defendant.<br><br>AND RELATED CROSS ACTION | No.   11cv0638 JAH (KSC)<br><br>**SPECTRUM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>Judge: Hon. John A. Houston<br>Mag. Judge: Hon. Karen Crawford<br>Filed: March 29, 2011<br>Trial: None Set |

**I.     Introduction**

Plaintiff Dr. Greens, Inc. has forced defendant Spectrum Laboratories, LLC to file this motion by providing grossly deficient discovery responses to Spectrum's Fifth Set of Requests for

Production of Documents and its Third Set of Interrogatories.[1] Despite repeated attempts by Spectrum to resolve these issues through the meet-and-confer process, Dr. Greens has not produced the discovery that Spectrum seeks and that is undeniably relevant to Spectrum's damage calculations. Dr. Greens, therefore, has left Spectrum with no choice but to seek the Court's intervention.

## II.   Background

This is a patent dispute between two businesses: Dr. Greens, Inc. (a seller of accused synthetic urine products) and Spectrum Laboratories, LLC (a patent owner). Spectrum and Dr. Greens are competitors in the synthetic urine market. Spectrum sells "Quick Fix," the leading brand in the market. And Dr. Greens sells two types of synthetic urine products: (i) its own products, which it sells under the AGENT X, SUPERHERO, and FIELD KIT brand names; and (ii) Spectrum's QUICK FIX product. (*See* Compl. ¶ 11.)

Spectrum owns U.S. Patent No. 7,192,776 ("the '776 patent"), which claims a "synthetic urine solution" and a method for manufacturing synthetic urine. (*See id.*) (Compl., ¶ 13-14, Ex. 1.) The '776 patent covers Spectrum's Quick Fix product and Dr. Greens' competing products. On March 29, 2011, Dr. Greens filed this lawsuit seeking, among other things, a declaratory judgment that it does not infringe the '776 patent or, alternatively, that the '776 patent is invalid. Dr. Greens' initiation of this litigation forced Spectrum to counterclaim for patent infringement.

On September 23, 2013, Spectrum served its Fifth Set of Requests for Production and its Third Set of Interrogatories. Those requests sought information and documents relevant to Spectrum's claim for patent infringement damages. On November 19, 2013, Dr. Greens provided deficient responses to Spectrum's discovery requests. (Cavanagh Decl. ¶ 9, Ex. D, E.) Dr. Greens them supplemented its responses on December 21, 2014. (*Id.* ¶ 14, Ex. J.) Upon discovering deficiencies in those responses, Spectrum's counsel requested a telephonic meet-and-confer with Dr. Greens' attorney at least four different times. (*Id.* ¶ 17-20.) Dr. Greens' attorney ignored those requests, provided input on the joint motion, and did not provide a memorandum of points and

---

[1] Spectrum's Fifth Set of Requests for Production and its Third Set of Interrogatories are attached as Exhibit A and B, respectively, to the Declaration of Matthew J. Cavanagh filed concurrently herewith.

authorities a declaration showing compliance with the meet-and-confer requirement. (*Id.* ¶ 18-23.) Further details regarding Spectrum's compliance with the meet-and-confer requirement, and Dr. Greens' non-compliance, are provided in the Declaration of Matthew J. Cavanagh filed concurrently herewith. Without any valid justification, Dr. Greens continues to withhold records and information concerning costs, price, profit, sales, distribution, and other financials for the accused Dr. Greens products and for Dr. Greens' purchase and sale of Spectrum's own patented Quick Fix product.

As explained below, the Court should compel Dr. Greens to produce this discovery because it is relevant and is likely to lead to the discovery of admissible evidence.

### III. Legal Analysis

#### A. The Court Should Order Dr. Greens To Produce All Of The Relevant Discovery Requested By Spectrum

Under Rule 37, a party may move for an order compelling discovery when an opposing party refuses to produce items for inspection when properly requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). To achieve discovery's goal of "remov[ing] surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute," the discovery rules are "liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at trial." *Biovail Labs., Inc. v. Anchen Pharmaceuticals, Inc.*, 233 F.R.D. 648, 651-52 (C.D. Cal. 2006). As the party resisting discovery, Dr. Greens has the "burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *United States v. Chapman Univ.*, 245 F.R.D. 646, 648 (C.D. Cal. 2007).

The discovery sought by Spectrum is plainly relevant, and Dr. Greens has completely failed to show why its withholding this evidence is justified.

#### B. Financial, Sales, and Cost Information
*(Interrog. No. 16, Req. for Prod. Nos. 29-30, 35, 38, 41, 42, 47)*

The requests identified above specifically seek records regarding the sales, profitability, cost, pricing, and financial performance of Dr. Greens' accused products and of Spectrum's Quick Fix products as purchased and sold by Dr. Greens. It is well established that such records are relevant for

a patent owner to calculate its patent infringement damages under a lost profits or reasonable royalty theory. *See, e.g.*, *SRAM, LLC v. Hayes Bicycle Group, Inc.*, No. 12 C 3629, 2013 WL 6490252, at *3 (N.D. Ill. Dec. 10, 2013) (granting motion to compel financial records); *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-cv-06637-RS-PSG, 2013 WL 597655, at *1 (N.D. Cal. Feb. 15, 2013) (same). The sales and profitability of any products covered by the patent, including Dr. Greens' infringing products and Spectrum's Quick Fix products, are directly relevant under the *Georgia-Pacific* factors used to calculate reasonable royalty damages. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1239 n.3 (Fed. Cir. 2011) (identifying "established profitability of the product made under the patent" and "portion of the realizable profit that should be credited to the invention" as *Georgia-Pacific* factors). And the sales and profitability of both parties' products, both of which are covered by Spectrum's '776 patent, are relevant under the *Panduit* test for lost profits. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (identifying "demand for the patented product" as part of *Panduit* test).

Dr. Greens is either withholding the requested financial, sales, or cost information or documents on the basis of a relevance objection or it claims it has no responsive documents. Below is an explanation of why Dr. Greens should not withhold the requested information or why Dr. Greens' claim that it has no responsive documents is not plausible:

1. <u>Financial Statements and Calculations (Req. for Prod. No. 29, 35, 42)</u>

Dr. Greens claims that the requested financial statements "do not exist." This, however, is not plausible because either it or its accountants must have financial or profit-and-loss statements in order to accurately report profits or losses to the IRS annually. Dr. Greens' argument in the joint motion that production should not be compelled because the request is unduly broad is inconsistent with its written discovery responses that the documents do not exist. The sales reports identified by Dr. Greens are not responsive because they report only revenue, and do not report Dr. Greens' cost, expenses, and profit related to the accused products. Also, Dr. Greens' objection that the request for financial statements is overly broad is not well taken because Spectrum is entitled to inspect and analyze the financial data at the smallest level for the accused products. *See Parkervision, Inc. v. Qualcomm Inc.*, No. 3:11-cv-719, 2013 WL 84926, at *3 (M.D. Fla. Jan. 8, 2013) (granting motion

to compel in patent case for "financial information for the smallest saleable unit." If Dr. Greens does not maintain product-specific financial records, then it must produce its financial records at the closest level to the products. *See id.*

2.   Tax Returns (Req. for Prod. No. 30)

Dr. Greens claims that "due to a shareholder dispute," it cannot find any of the requested tax returns. Dr. Greens' outside accountant, however, must have retained copies and those are within Dr. Greens' possession, custody, or control and must be produced.

3.   Sales Reports (Req. for Prod. No. 38)

Dr. Greens claims that previously produced sales reports are "sufficient to satisfy the purpose of this request." This is not true. Those sales reports were produced in December 2011, and therefore do not account for sales occurring since then. Also, those reports do not account for sales of product through Dr. Greens' online store. Spectrum knows online sales have not been reported because the sales prices offered on the online store are much different from the prices shown on the sales reports.

4.   Documentation of Costs (Req. for Prod. No. 41)

Dr. Greens claims all responsive documents have been produced. The documents previously produced by Dr. Greens only provide cost information for: (i) water; (ii) packaging; (iii) bottles; and (iv) powdered synthetic urine. Dr. Greens has not produced any of the documentation of its costs for heating packs, temperature strips, bladder bags, belts, shipping costs, labor costs, machine and equipment, leasing of warehouse and office space, etc. Dr. Greens must have those records in the form of receipts, invoices, purchase orders, W-2 forms, bank statements, and accounting records. These requested documents, or the information that those documents may lead to, are needed by Spectrum to make a more accurate calculation of damages and, therefore, are relevant.

5.   Records of Dr. Greens' Purchase of Spectrum's Patented Quick Fix Product
     (Req. for Prod. No. 47)

Dr. Greens refuses to produce any records of its purchases of Spectrum's patented Quick Fix product on the basis of its relevance objection. However, how much Dr. Greens is willing to pay for Quick Fix is very relevant to assessing the demand for and profitability of the patented product. If Dr. Greens makes less profit on Quick Fix than it does on its own product, yet continues to sell

1  Quick Fix alongside its products through its online store, then that confirms there is a large demand
2  for the patented Quick Fix product. Indeed, the profitability of Dr. Greens' sales of Quick Fix is
3  directly relevant under the *Georgia-Pacific* factors used to calculate reasonable royalty damages. *See*
4  *Powell*, 663 F.3d at 1239 n.3 (Fed. Cir. 2011) (identifying "established profitability of the product
5  made under the patent" and "portion of the realizable profit that should be credited to the invention"
6  as *Georgia-Pacific* factors), and its relevant under the *Panduit* test for lost profits. *See Rite-Hite*
7  *Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (identifying "demand for the patented
8  product" as part of *Panduit* test). Thus, Dr. Greens' cost for Quick Fix are figures that Spectrum's
9  damage experts have requested to calculate damages.

      C.    **Distributors and Licensed Resellers**
           *(Interrog. No. 15)*

12  Interrogatory No. 15 requires Dr. Greens to identify every distributor to whom it has sold
13  synthetic urine products. The identities of these distributors are relevant because they likely have
14  information and documents concerning their purchase and resale of products covered by the '776
15  patent (both Dr. Greens' product and Spectrum's Quick Fix product, which Dr. Greens resells
16  through distributors), which would be relevant for calculating infringement damages. *See Rite-Hite*,
17  56 F.3d at 1545 (identifying "demand for the patented product" as part of *Panduit* test); *Powell*, 663
18  F.3d at 1239 n.3 (identifying "established profitability of the product made under the patent" and
19  "portion of the realizable profit that should be credited to the invention" as *Georgia-Pacific* factors).
20  This information is also relevant to verify the accuracy and completeness of Dr. Greens' sales
21  reports, as those reports do not appear to report sales to distributors. The Court, therefore, should
22  overrule Dr. Greens' objections to producing this information.

**III.**    **Conclusion**

24  For the foregoing reasons, the Court should compel Dr. Greens to produce this outstanding
25  discovery and sanction Dr. Greens by requiring it to reimburse Spectrum for the attorneys' fees it
26  unnecessarily incurred due to Dr. Greens' unjustified resistance to simple discovery. *See* Fed. R.
27  Civ. P. 37(a)(5) (court "must" require party "to pay movant's reasonable expenses incurred in

1 | making the motion, including attorney's fees . . . [unless] nondisclosure . . . was substantially
2 | justified").

DATED: February 7, 2014                    MCDONALD HOPKINS LLC

                                           By:    /s/ Matthew J. Cavanagh
                                                  Matthew J. Cavanagh

                                           Attorneys for Defendant and
                                           Counterclaimant
                                           SPECTRUM LABORATORIES, LLC and
                                           Defendant JAMES MATTHEW STEPHENS