Gary L. Eastman, Esq. (CSB #182518)
Matthew C. McCartney, Esq. (CSB #226687)
Gary L. Eastman, APLC
401 West A Street, Suite 1785
San Diego, CA 92101
(619) 230-1144

Attorneys for Plaintiff and Counterclaim-Defendant
DR. GREENS, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC.  California corporation,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>JAMES MATTHEW STEPHENS, an individual, SPECTRUM LABORATORIES, LLC, an Ohio limited liability company ,<br><br>Defendants and Counterclaim-Plaintiffs. | Case No. 3:11-cv-00638-JAH-KSC<br><br>**DR. GREENS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |

## I.    INTRODUCTION

Spectrum Laboratories, LLC's ("Spectrum") motion to compel further discovery responses from Dr. Greens, Inc. ("Dr. Greens") and request for sanctions should be denied.  This discovery dispute can be broken down into two categories of information sought by Spectrum: (1) the name and address of every single distributor/third-party seller used by Dr. Greens for the sale of Dr. Greens' synthetic urine products ("the Accused Products") and Spectrum's synthetic urine

products ("Quick Fix"); and (2) Dr. Greens' sales and costs records for the Accused Products and Spectrum's Quick Fix.

With regard to the former, contrary to Spectrum's argument, the contact information of Dr. Greens' distributors/third-party sellers for the Accused Products and Spectrum's Quick Fix is not relevant to calculating infringement damages.   Spectrum offers no meaningful explanation to support its claim of relevancy.  Further, given that Spectrum is a direct competitor of Dr. Greens, the substantial risk that the information sought, if disclosed, will be used for improper purposes outweighs any purported harm to Spectrum that non-disclosure will cause.

With regard to the latter, contrary to Spectrum's argument, Dr. Greens has already provided all sales and costs records for the Accused Products and Spectrum's Quick Fix.  To the extent that additional categories of documents requested by Spectrum are not contained in the documents already produced by Dr. Greens, no such responsive documents were found despite a diligent search and reasonable inquiry by Dr. Greens.  Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or taken from Dr. Greens' custody and control.  Dr. Greens cannot be forced to produce that which it does not have following a reasonable search and diligent inquiry.

Also of interest in this matter that during the pendency of this action, Plaintiff Dr. Greens experienced a disagreement between its constituent shareholders, which ultimately resulted in a lawsuit NAHAY vs. GREEN, San Diego Superior Court Case No. 37-2012-00088020-CU-NP-CTL.  This matter has been resolved; however, many of the documents and information sought by Defendants Stephens and Spectrum are simply not available following the lawsuit, despite the best efforts and diligent search of Dr. Greens and Mr. Green.

## II.    ARGUMENT

## I.    Contact information of Dr. Greens' distributors/third party sellers

*(Interrogatory Nos. 15 and 16)*

Interrogatory No. 15 requests Dr. Greens to identify the name and address of every single distributor used by Dr. Greens' for the sale of the Accused Products and Spectrum's Quick Fix between 2007 and 2011.  Interrogatory No. 16 requests Dr. Greens, in part, to identify the name and address of every third-party seller from whom Dr. Greens has purchased Spectrum's Quick Fix.  Spectrum contends that this information is relevant for calculating infringement damages and to verify the accuracy and completeness of Dr. Greens' sales records. Spectrum also contends that this information is relevant to showing the demand for the patented product, which is one of the *Panduit* factors relevant to Spectrum's claim for lost profit damages. Spectrum further contends that this information is relevant under the *Georgia-Pacific* factors used to calculate reasonable royalty damages.  Spectrum's arguments are unavailing and unsupported.  While Dr. Greens' sales records for the Accused Products and Spectrum's Quick Fix may be relevant for calculating infringement damages, the contact information of Dr. Greens' distributors/third-party sellers is not.

Requiring Dr. Greens' to disclose the name and address of every single distributor/third-party seller used by Dr. Greens' for the sale of the Accused Products and Spectrum's Quick Fix is unduly burdensome and beyond the scope of the relevant subject matter—i.e., damage calculation.  Spectrum offered no meaningful explanation as to why the identity of Dr. Greens' distributors/third-party sellers is relevant to a damage calculation.  Instead, Spectrum's argument is based upon on conclusive averments and inapposite case law only.

First, Spectrum's reliance on the "*Panduit* factors" to support its claim of relevancy is misplaced.  (*See Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*,

575 F.2d 1152, 1156 (6th Cir. 1978).)  The "demand" referenced in the first *Panduit* prong is a demand for the patented feature, **not** a demand for the product. (*See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,* 408 F.3d 1374, 1379 (Fed.Cir.2005); *see also Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538 (Fed.Cir.1995).)  To assess the "demand" referenced in the first *Panduit* prong, the relevant inquiry is what benefit the invention provides and how customers value that benefit, i.e., if customer demand is based on the advantages that arise from the patented product.  (*Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1104 (N.D. Cal. 2009) aff'd, 616 F.3d 1357 (Fed. Cir. 2010).)  Evidence relating to "demand" for the patented feature requires an ***analysis of the actual features themselves and the consumer benefits arising therefrom***.  (*Id.*)

Here, the name and address of every single distributor/third-party seller used by Dr. Greens' for the sale of the Accused Products and Spectrum's Quick Fix has no bearing on the *Panduit* "demand" prong.  This information is not reasonably calculated to lead to the discovery of the actual features of the patented invention and the consumer benefits arising therefrom.   Spectrum offered no explanation as to how the information sought is justified within the meaning of the *Panduit* "demand" prong.

Second, Spectrum's reliance on the *Georgia-Pacific* factors to support its claim of relevancy is also misplaced.  (*See Georgia-P. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970).)  *Georgia-Pacific* established 15 factors to be considered in determining a reasonable royalty—none of which have any relation to the contact information of non-party distributors/sellers used by the accused infringer to sell the accused products.  Spectrum offered no explanation as to how the information sought is justified within the meaning of the *Georgia-Pacific* factors.

1   The nexus between the contact information of Dr. Greens'
2   distributors/third-party sellers and a purported damage calculation is highly
3   attenuated.   Spectrum's failure to support its relevancy argument with any
4   meaningful explanation suggests that these interrogatories are nothing more than a
5   veiled attempt by Spectrum to obtain unfettered access to Dr. Greens' confidential
6   commercial information related to Dr. Greens' relationship with its
7   distributors/third-party sellers.  Given that Spectrum is a direct competitor of Dr.
8   Greens, the substantial risk that the information sought, if disclosed, will be used
9   for improper purposes outweighs any purported harm to Spectrum that non-
10  disclosure will cause.

11  **II.    Dr. Greens' financial records for the Accused Products and Spectrum's**
12      **Quick Fix** (*Req. for Prod. Nos. 29, 30, 35, 38, 41, 42 and 47*)

13      1. "Financial statements" (Req. for Prod. Nos. 29 and 35)

14      Request for Production Nos. 29 and 35 request all financial statements of
15  Dr. Greens since 2005.   Courts routinely hold that requests for "all financial
16  records" may be objectionable for inadequate description because they embrace
17  too many subcategories to have much meaning.  (*See* Cal. Prac. Guide Fed. Civ.
18  Pro. Before Trial Ch. 11(IV)-C, citing for support, *Regan-Touhy v. Walgreen Co.*,
19  526 F.3d 641, 650 (10th Cir. 2008); *see also*, *Paiewonsky v. Paiewonsky*, 50
20  F.R.D. 379 (D.V.I. 1970), [holding that request for "corporate books, including
21  but not limited to stock ledgers and financial records, including but not limited to,
22  the financial statements of A. H. Rise, Inc., for the years 1960 to the present," was
23  at best ambiguous but in any event far too broad.])

24      Under Rule 34 of the Federal Rules of Civil Procedure, Spectrum is
25  required to "describe with reasonable particularity each item or category of items
26  to be inspected."  (Fed. R. Civ. P. 34(b)(1).)   Spectrum's use of the phrase
27  "financial statements" in Request Nos. 29 and 35 is impermissibly overbroad,
28  vague and ambiguous, making it impossible for Dr. Greens to know what to

1   produce.  It is Spectrum's burden to provide a sufficient description of the records

2   sought, and it failed to do so here.

3       2. <u>Tax returns (Req. for Prod. No. 30)</u>

4       Request for Production No. 30 requests Dr. Greens to produce all federal

5   income tax returns since 2005.  The intrusive nature of this request is

6   unreasonable and unwarranted.  Spectrum failed to offer any meaningful

7   explanation as to why nine years of income tax returns is relevant to this litigation.

8       Notwithstanding the unreasonableness of this request, Dr. Greens has

9   already stated in its supplemental response (see Doc. No. 97 at 6) that despite a

10  reasonable search and diligent inquiry, no responsive documents are in its

11  possession, custody, or control or reasonably available to Dr. Greens.  Due to a

12  shareholder dispute, some of Dr. Greens' business records have been rearranged,

13  misplaced, lost, and/or taken from Dr. Greens' custody and control.  Dr. Greens

14  cannot be forced to produce that which it does not have following a reasonable

15  search and diligent inquiry.

16      3. <u>Sales records for the Accused Products (Req. for Prod. No. 38)</u>

17      Contrary to Spectrum's argument, Dr. Greens has already produced its sales

18  records for the Accused Products to Spectrum, disclosing the date of purchase, the

19  item purchased, the quantity purchased, the sales price, the name of the purchaser,

20  and Dr. Greens' sales balance, see for example, PLA000001 through PLA000435,

21  PLA000869 through PLA000943, and PLA000949 through PLA000968.   To the

22  extent that additional categories of documents requested by Spectrum were not

23  previously produced, despite a reasonable search and diligent inquiry  by Dr.

24  Greens, no such responsive documents are in its possession, custody, or control or

25  reasonably available.  Due to a shareholder dispute, some of Dr. Greens' business

26  records have been rearranged, misplaced, lost, and/or taken from Dr. Greens'

27  custody and control.  Dr. Greens cannot be forced to produce that which it does

28  not have following a reasonable search and diligent inquiry.

4. <u>Costs records for the Accused Products (Req. for Prod. Nos. 41 and 42)</u>

Contrary to Spectrum's argument, Dr. Greens ha Dr. Greens has already produced its cost records for the Accused Products to Spectrum, see for example, PLA000944 through PLA000948, and PLA000969 through PLA001288.  To the extent that additional categories of documents requested by Spectrum were not previously produced, despite a reasonable search and diligent inquiry  by Dr. Greens, no such responsive documents are in its possession, custody, or control or reasonably available.  Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or taken from Dr. Greens' custody and control.  Dr. Greens cannot be forced to produce that which it does not have following a reasonable search and diligent inquiry.

5. <u>Purchase and sale records for Spectrum's Quick Fix (Req. for Prod. No. 47)</u>

Contrary to Spectrum's argument, Dr. Greens has already produced its purchase and sale records for Spectrum's Quick Fix, see for example, PLA000386 through PLA000477, and PLA000869 through PLA000888, disclosing the quantity of Quick Fix bought, the purchase price, date of purchase, and the seller's/buyer's name.  To the extent that additional categories of documents requested by Spectrum were not previously produced, despite a reasonable search and diligent inquiry  by Dr. Greens, no such responsive documents are in its possession, custody, or control or reasonably available.  Due to a shareholder dispute, some of Dr. Greens' business records have been rearranged, misplaced, lost, and/or taken from Dr. Greens' custody and control.  Dr. Greens cannot be forced to produce that which it does not have following a reasonable search and diligent inquiry.

### III.   CONCLUSION

Dr. Greens has already produced all sales and costs records for the Accused Products and Spectrum's Quick Fix relevant to a damage calculation.  Despite a diligent search and reasonable inquiry by Dr. Greens, no additional sales and costs records were found.   The sales records previously produced by Dr. Greens disclose the item purchased, the quantity purchased, the sales price, Dr. Greens' sales balance, and ***the name of the purchaser***.  Spectrum's attempt to obtain unfettered access to the contact information of Dr. Greens' distributors/third-party sellers is unreasonable, inappropriate, and beyond the relevant subject matter of this litigation.  Indeed, Dr. Greens has participated in good faith in the discovery process, has provided all information that has been requested in the control or available to Dr. Green, and stands ready to continue this level of cooperation in responding to reasonable discovery requests.  Therefore, based on the above, Spectrum's motion to compel further discovery responses from Dr. Greens and request for sanctions should be denied.


Dated: March 7, 2014


GARY L. EASTMAN, APLC

By:     /s/  Gary L. Eastman

Gary. L. Eastman, Esq.

Attorney for Plaintiff and Counterclaim-Defendant
DR. GREENS, INC.

1

## CERTIFICATE OF SERVICE

2

I, the undersigned certify and declare as follows:

3

I am over the age of eighteen years and not a party to this action.  My business address is

4

401 West "A" Street, Suite 1785, San Diego, California, 92101, which is located in the county where the service described below took place.

5

6

On March 7, 2014 at my place of business in San Diego, California, I served the following document:

7

8

**DR. GREENS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**

9

10

Via the CM/ECF FILING SYSTEM.  The undersigned hereby certifies that he caused a copy of the foregoing documents to be filed with the clerk of the U.S. District Court, Southern District of California, using the CM/ECF filing system, which caused a copy to be electronically mailed to the following CM/ECF Participant(s) noted below:

11

12

13

David  B. Cupar

14

Matthew J. Cavanagh McDonald Hopkins, LLP

15

600 Superior Avenue East Cleveland, OH 44114

16

Attorney for Defendant and Counterclaim-Plaintiff

17

Spectrum Laboratories, LLC

18

I certify and declare under penalty of perjury under the laws of the United States and the

19

State of California that the foregoing is true and correct.

20

Executed on March 7, 2014 in San Diego, California.

21

22

By:        /s/ Gary L. Eastman

23

Gary. L. Eastman, Esq.

24

25

26

27

28