FILED

14 MAY -6 AM 8:20

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., *a California corporation*,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MATTHEW STEPHENS, *an individual*, and SPECTRUM LABORATORIES, LLC, *an Ohio limited liability company*,<br><br>Defendant. | CASE NO. 11cv0638-JAH(KSC)<br><br>**ORDER DETERMINING DISCOVERY DISPUTE**<br><br>[Doc. No. 97] |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute [Doc. No. 97] regarding the adequacy of plaintiff's responses to defendant Spectrum Laboratories, LLC's ("Spectrum") Fifth Set of Requests for Production and Third Set of Interrogatories. Specifically, defendant Spectrum contends that plaintiff failed to provide adequate responses to Interrogatory Nos. 15 and 16, as well as Requests for Production Nos. 29, 30, 35, 38, 41, 42, and 47. Spectrum seeks a Court Order compelling plaintiff to provide additional responses to these discovery requests.

After considering the arguments contained in the Joint Motion, as well as the supporting and opposing points and authorities, declarations, and exhibits [Doc. Nos. 97, 99], and for the reasons outlined in greater detail below, Spectrum's request for additional responses from plaintiff is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This is a patent infringement action between parties involved in the "synthetic urine" market. Plaintiff Dr. Greens, Inc. ("plaintiff") alleges that it markets and distributes a synthetic urine product known as "Dr. Green's Agent X." Defendants James Matthew Stephens ("Stephens") and Spectrum, holders of the patent at issue in this litigation (Patent No. 7,192,776, hereinafter "the '776 patent"), claim Spectrum's "Quick Fix" synthetic urine is the only patented product of its kind on the market.

On March 29, 2011, plaintiff filed this patent and business action against defendants Stephens and Spectrum. [Doc. No. 1] In its Complaint, plaintiff asserts the following causes of action: (1) patent non-infringement; (2) patent invalidity; (3) misuse of patent; (4) federal statutory unfair competition; (5) common law unfair competition; (6) interference with business relations; and, (7) interference with prospective economic advantage. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, attorney's fees, and costs of suit. In essence, plaintiff seeks a declaratory judgment that its Dr. Green's Agent X does not infringe defendants' '776 patent, or in the alternative, that defendants' '776 patent is invalid. As support for its business-based claims, plaintiff cites certain written representations made by defendants to distributors and parties in this field. Specifically, plaintiff takes issue with a cease-and-desist letter Spectrum sent to distributors asserting (1) that its Quick Fix is the *only* patented product of its kind on the market; (2) its intent to aggressively defend its patent against all infringers; and, (3) its request that all parties cease offering or selling any potentially infringing products so as to avoid potential liability.

On August 15, 2011, defendant Spectrum filed an Answer, along with counterclaims for patent infringement and violations of the Lanham Act, 15 U.S.C. § 1124 (a)(1)(B); Ohio's Deceptive Trade Practices Act; California's Unfair Competition Law; and, malicious litigation under Ohio common law. [Doc. No. 8] On that same date, defendants Spectrum and Stephens each moved to dismiss plaintiff's

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. Nos. 7, 10] On March 21, 2012, this Court granted both Motions to Dismiss, and provided leave for plaintiff to amend its Complaint. [Doc. No. 51]

On April 19, 2012, plaintiff filed a First Amended Complaint asserting the same causes of action contained in its original Complaint. [Doc. No. 54] On May 7, 2012, defendants Spectrum and Stephens each filed an Answer and Counterclaim to the First Amended Complaint. [Doc. Nos. 55, 56] Spectrum's and Stephen's Answers and Counterclaims were substantially similar to their initial Answer and Counterclaims, and the Counterclaims contained the same causes of action, except that a new party defendant was added, Matt Green. *Id.* Dr. Greens and Matt Green answered the Counterclaims on May 29, 2012. [Doc. Nos. 60-62] On December 19, 2013, with leave of Court, Spectrum filed a First Amended Counterclaim in which it added more specificity by identifying "carbamate" as the infringing biocide. [Doc. No. 95] On January 16, 2014, Dr. Greens and Matt Green filed a Joint Answer to First Amended Counterclaim. [Doc. No. 96]

On February 7, 2014, the parties filed the Joint Motion presently before this Court. [Doc. No. 97] On February 24, 2014, this Court issued an Order to Show Cause Why Sanctions Should Not Be Imposed, in which it stated, "The Joint Motion, as filed, is incomplete and violates the Chamber Rules of the undersigned Magistrate Judge." [Doc. No. 98, p. 1] Specifically, the Court found the Joint Motion was missing a declaration from plaintiff's counsel regarding compliance with the meet and confer requirement, as well as points and authorities in support of plaintiff's position in the discovery dispute. Plaintiff's counsel was ordered to submit the missing documents, and to include in a declaration details regarding his failure to follow the Chamber Rules.

On March 7, 2014, plaintiff's counsel submitted Dr. Greens, Inc.'s Memorandum of Points and Authorities in Support of Joint Motion for Determination of Discovery Dispute, as well as a Declaration in support of plaintiff's position. [Doc. Nos. 99, 99-1]

As such, this discovery dispute has been fully-briefed and is ready for disposition.

## II. DISCUSSION

The scope of discovery under Rule 26(b) is broad: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). However, a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of responding to the proposed discovery outweighs the likely benefit. FED.R.CIV.P. 26(b)(2)(C). The party resisting discovery generally bears the burden of showing that the discovery requested is irrelevant to the issues in the case or is overly broad, unduly burdensome, unreasonable, or oppressive. *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010). If the resisting party meets its burden, the burden shifts to the moving party to show the information is relevant and necessary. *Id.*

The disputed discovery requests presently before the Court fall into two categories: (1) the contact information for the distributor/third-party sellers used by plaintiff for the sale of both its accused products as well as defendant Spectrum's Quick Fix; and, (2) plaintiff's financial records related to its accused products and Spectrum's Quick Fix. For the reasons outlined in greater detail below, defendant Spectrum's request to compel addition responses by plaintiff to the Interrogatories (Nos. 15, 16) and Requests for Production (Nos. 29, 30, 35, 38, 41, 42, 47) seeking information related to these categories is **GRANTED in part** and **DENIED in part**.

A. **Contact information for plaintiff's distributors/third-party sellers (Interrogatory Nos. 15, 16).**

As to the portions of Interrogatory Nos. 15 and 16 seeking the identities of plaintiff's distributors and third-party sellers, plaintiff has successfully met its burden

as the party resisting discovery. In Interrogatory No. 15, Spectrum seeks the contact information of plaintiff's distributors and third-party sellers to whom plaintiff sold synthetic urine products between 2007 and 2011, identifying each product that plaintiff sold to the party identified. [Doc. No. 97, p. 2] In Interrogatory No. 16, Spectrum wants plaintiff to describe each of its own purchases of Spectrum's Quick Fix from any party other than Spectrum, by describing the good, quantity, purchase price, date, and seller's name/contact information. *Id.*

Spectrum argues that additional responses should be compelled because the information sought is relevant for calculating the volume of infringing product sold by plaintiff directly, and for determining details regarding plaintiff's sales of Spectrum's Quick Fix product. Spectrum contends these figures are necessary to more accurately calculate damages in this case, and asserts that the details surrounding plaintiff's purchases of Spectrum's products for resale are relevant to showing the demand for the patented product, which is one of the *Panduit* factors relevant to Spectrum's claim for lost profit damages. *Id.* (citing *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)). Spectrum argues that the identities of these distributors are relevant because these parties "likely have information and documents concerning their purchase and resale of products covered by the '776 patent . . . which would be relevant for calculating infringement damages." [Doc. No. 97-1, p. 6] Lastly, Spectrum seeks these identities to verify the accuracy and completeness of plaintiff's sales reports, "as those reports do not appear to report sales to distributors." *Id.*

Plaintiff resists these requests on grounds that they are overbroad, unduly burdensome, and seek confidential commercial information. [Doc. No. 97, pp. 2-3] Further, plaintiff argues that the contact information of its distributors/third-party sellers is not relevant to calculating infringement damages. More specifically, if the purpose of the request is for "calculating the number of infringing products sold by [plaintiff] and for determining details on [plaintiff's] sale of Spectrum's own patented 'Quick Fix' product" as defendant states, plaintiff argues both objectives can be

accomplished without the disclosure of every distributor's name. *Id.* Plaintiff asserts that Spectrum does not explain how the identity of plaintiff's distributors is related to plaintiff's sales figures, and further argues there is a substantial risk that the information sought, if disclosed, could be used for improper purposes and outweighs and purported harm to Spectrum that non-disclosure will cause. *Id.* at 3-4.

With respect to the component of these requests seeking identities of plaintiffs distributors/third-party sellers, this Court finds that the specific identities are not relevant to the issue of calculating infringement damages. Spectrum's reliance on *Panduit* and *Georgia-Pacific* is misplaced and the connection between the identities sought and any purported damage calculation is attenuated. *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970). Further, as represented by plaintiff: "[Plaintiff] has already produced its sales records to Spectrum, disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and [plaintiff's] sales balance, [citing three specific Bates numbered ranges]." [Doc. No. 97, p. 3] Given that Spectrum and plaintiff are direct competitors, even with the protections offered by the Stipulated Amended Protective Order entered in this action [Doc. No. 95], the risk that the information sought will be used for improper purposes is significant and outweighs any purported harm to Spectrum that non-disclosure will cause. Therefore, defendant Spectrum's request to compel additional responses by plaintiff regarding the identities sought in Interrogatory Nos. 15 and 16 is **DENIED**.

To the extent that these Interrogatories seek additional information beyond third-party identities, or Spectrum raises arguments regarding the adequacy or completeness of plaintiff's production as support for its request for said identities, such arguments are addressed in section II(B), *infra*.

///

///

B. **Plaintiff's financial records related to its accused products and Spectrum's Quick Fix (Interrogatory No. 16; Request for Production Nos. 29, 30, 35, 38, 41, 42, 47).**

Collectively, these requests seek financial, sales, and cost information from plaintiff. Spectrum asserts that the sales and profitability of any products covered by the '776 patent, including plaintiff's infringing products and its own Quick Fix products, are directly relevant under the *Georgia-Pacific* factors used to calculate reasonable royalty damages. [Doc. No. 97-1, p. 4 (citing *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1239, fn. 3 (Fed. Cir. 2011))] Plaintiff argues that, contrary to Spectrum's assertions, it has already provided all sales and costs records related to its accused products and Spectrum's Quick Fix. [Doc. No. 99, p. 2] Spectrum contends that the withholding of any information on the basis of relevance is not warranted, and that plaintiff's claim that it has no additional responsive documents is not plausible. [Doc. No. 97-1, p. 4]

1. Financial Statements [RFP Nos. 29, 35]

Request for Production No. 29 seeks all of plaintiff's "audited, reviewed, and complied financial statements . . . since 2005." [Doc. No. 97, p. 4] Request for Production No. 35 seeks any and all "monthly internal financial statements (e.g., balance sheets, income statements, statements of cash flows, etc.), including monthly and year-to-date amounts . . . since 2005." *Id.* at 7. Because both requests seek financial information, the arguments raised will be addressed together.

In its initial responses, plaintiff categorized these requests as overbroad, unduly burdensome, and vague/ambiguous. *Id.* at 5, 7. Further, plaintiff objected to the extent the requests sought confidential financial or commercial information. *Id.* Notwithstanding these objections, plaintiff represented that it "made a diligent search and reasonable inquiry in an attempt to comply with th[ese] request[s], but is unable to comply because the particular item or category of documents do[es] not exist." *Id.*

Plaintiff argues that the phrase "financial statements" is impermissibly overbroad, and objects based on "inadequate description because [the concept of

financial statements] embrace[s] too many subcategories to have much meaning." [Doc. No. 99, p. 5] Plaintiff states that under Federal Rule of Civil Procedure 34, Spectrum is required to "describe with reasonable particularity each item or category of items to be inspected." *Id.* (citing FED.R.CIV.P. 34(b)(1)). Notwithstanding these objections, plaintiff asserts that it has already produced its responsive sales records to Spectrum regarding its sales of the accused products, "disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and [plaintiff's] sales balance, [citing three specific Bates numbered ranges]." [Doc. No. 97, p. 6] However, plaintiff states that "due to a shareholder dispute, some of [plaintiff's] business records have been rearranged, misplaced, lost, and/or are taken from [its] custody and control." [Doc. No. 99, p. 2] As such, plaintiff argues that it "cannot be forced to produce that which it does not have following a reasonable search and diligent inquiry." *Id.*

In the instant Joint Motion, Spectrum questions plaintiff's claim of having no responsive financial statements, and argues that such records *must* exist in order for plaintiff to accurately calculate its profits or losses to report to the federal government for tax purposes. [Doc. No. 97, pp. 5, 7] Spectrum further asserts that the sales reports identified by plaintiff are not responsive "because they report only revenue, and do not report [plaintiff's] cost[s], expenses, and profit related to the accused products." [Doc. No. 97-1, p. 4] As such, under *Parkervision*, Spectrum argues it is entitled to analyze the financial data related to the accused products, and that if plaintiff does not maintain product-specific financial records, then "it must produce its financial records at the closest level to the products." *Id.* at 4-5 (citing *Parkervision, Inc. v. Qualcomm Inc.*, 2013 WL 84926, at *3 (M.D. Fl. Jan. 8, 2013)). Plaintiff counters that it is "Spectrum's burden to provide a sufficient description of the records sought, and it failed to do so here." [Doc. No. 99, p. 6]

While this Court agrees that Spectrum could have written more precise requests, and that Request for Product Nos. 29 and 35 are somewhat duplicative, the details

provided in Request No. 35 do supply adequate particularity ("(e.g., balance sheets, income statements, statements of cash flows, etc.), including monthly and year-to-date amounts") to satisfy the specificity requirement of Rule 34. However, plaintiff asserts that, notwithstanding its objections, it has already produced all responsive documents within its custody and control.

Plaintiff makes reference to a "shareholder dispute" as the basis for its inability to produce additional responsive financial documents and information. The vague description of a "shareholder dispute" causing disruption to its business and record keeping practices, and thus its access to certain business and financial records, however, does not provide this Court with enough information with which to determine whether the items sought were within the reasonable reaches, custody, or control of plaintiff at the time plaintiff reasonably anticipated this action or when the requests at issue were made. In the Declaration filed in support of plaintiff's position in the Joint Motion, plaintiff's counsel states:

> [Plaintiff] has experienced a breakdown in relations between shareholders and participants in the corporation. This breakdown resulted in a dispute which was filed in the San Diego Superior Court on December 17, 2012, Case No. 37-2012-00088020-CU-NP-CTL. This matter has been resolved. Many of the documents which have been sought be [d]efendants Stephens and Spectrum through their numerous discovery requests are simply not available to [plaintiff], despite its best efforts to locate said documents.

[Doc. No. 99-1, pp. 1-2] This explanation is woefully insufficient. As the party resisting discovery, plaintiff bears the burden of establishing that these items are not within its reasonable reaches/control, or otherwise protected from discovery. *Henderson*, 269 F.R.D. at 686. Plaintiff has failed to carry this burden.

Under Rules 26 and 34, plaintiff, as the responding party, has a duty to fully respond to these requests, either with responsive items or with supported objections. FED.R.CIV.P. 26(b), 34(a)(1). In addition, plaintiff has an obligation to conduct a reasonable search and produce all responsive information within its possession, custody, and control. FED.R.CIV.P. 26(g)(1)(A), 34(a)(1). Plaintiff has failed to comply with these obligations. First, plaintiff failed to describe the scope of the search

- 9 -

it conducted, any of the facts surrounding this "shareholder dispute" which resulted in "loss" of its access to data, documents, or information, or how such a dispute could result in the wholesale loss of relevant and responsive documents. Second, plaintiff has not adequately explained how the information sought is not in its possession, custody, or control. Therefore, **IT IS ORDERED** that plaintiff supplement its responses **and** provide Spectrum with a written Declaration under penalty of perjury detailing all of the pertinent facts and circumstances surrounding this "shareholder dispute," the documents and information allegedly lost and how and when such documents and information were lost, and all steps plaintiff took to search for the documents in response to the subject discovery requests.

At issue is whether plaintiff met its discovery preservation, search, and production obligations under the Federal Rules of Civil Procedure, whether certain items sought were properly preserved, and whether documents and information should be deemed to be within plaintiff's reasonable reaches, custody, or control. The Declaration should provide a sufficient factual basis to make this determination. To the extent that plaintiff believes the misplaced, rearranged, or lost items were not within its control at the time it reasonably anticipated filing this action or at the time these requests were made, it must provide a detailed factual account as support. Further, given this "shareholder dispute," plaintiff should provide a detailed time line surrounding this dispute, along with a reasonable estimate as to which individuals or entities presently have custody or control of the sought-after items. To the extent that this information is confidential and is more appropriately filed under seal, plaintiff will be permitted to move the Court for such relief. Lastly, plaintiff must include in this Declaration a statement that "to the best of [its] knowledge, information, and belief formed after a reasonable inquiry," its responses to these requests are "complete and correct." FED.R.CIV.P. 26(g)(1)(A). Plaintiff must file this Declaration **no later than June 6, 2014**. To the extent that any further responsive documents exist, plaintiff must also produce them **no later than June 6, 2014**. Given that the information sought is

necessary to prove damages in this action, plaintiff is admonished that its failure to make a diligent search or a complete production in response to these requests risks the penalty of evidence preclusion at trial.

Accordingly, Spectrum's request for a Court Order compelling additional responses by plaintiff to Request Nos. 29 and 35 is **GRANTED**.

### 2. Tax Returns [RFP No. 30]

Request for Production No. 30 seeks all of plaintiff's "federal income tax returns . . . since 2005." [Doc. No. 97, p. 6] In its initial response to this request, plaintiff categorized the request as overbroad, unduly burdensome, and vague/ambiguous. *Id.* Further, plaintiff objected to the extent the request sought confidential financial or commercial information. *Id.* Notwithstanding its objections, plaintiff stated that it would otherwise willingly produce all responsive, non-privileged documents that can be located through "a reasonable search and inquiry." *Id.* However, "[d]ue to a dispute amongst the owners of [plaintiff], some business records have been lost." *Id.*

In the instant Joint Motion, Spectrum advises that plaintiff has produced no relevant tax returns, and argues that such records *must* exist in order for plaintiff to accurately calculate its profits or losses to report to the federal government for tax purposes. *Id.* Spectrum contends that such documents *must* have been retained by plaintiff's outside accountant "and those are within [plaintiff's] possession, custody, or control and must be produced." [Doc. No. 97-1, p. 5] Plaintiff represents that it has made a "reasonable search and diligent inquiry in an attempt to comply with this request" and that "no responsive documents were found." [Doc. No. 97, p. 7] However, plaintiff again asserts that due to a shareholder dispute, some of its business records have been "rearranged, misplaced, lost, and/or are no longer in the possession of [plaintiff] or reasonable available to [plaintiff]." *Id.* at 6-7. The Court notes that the parties fail to support their arguments with case or statutory authority.

"Financial records of the defendant in the possession of defendant's accountant are documents which defendant has the legal right to obtain." *Wardrip v. Hart*, 934 F.

Supp. 1282, 1286 (D. Kan. 1996); *see also Winston v. Alhadeff*, 1986 WL 4437, at *2 (N.D. Ill. Apr. 7, 1986)("Documents of a client given to an accountant are within the custody and control of the client since he has a right to demand their return."). Spectrum speculates that an "outside accountant" has access to these records, while plaintiff states unambiguously that is has produced everything responsive within its reasonable custody and control. As the party resisting discovery, and as described in greater detail in section II(B)(1), *supra*, plaintiff has failed to meet its burden, as it has failed to provide this Court with sufficient information to support its position. Specifically, without more information regarding the timing and circumstances of this "shareholder dispute," this Court is unable to fully assess the adequacy of plaintiff's discovery responses and preservation practices in this action. Accordingly, Spectrum's request for a Court Order compelling additional responses by plaintiff to Request No. 30 is **GRANTED**. As such, **on or before June 6, 2014**, plaintiff must produce to Spectrum the responsive tax returns **or** provide an executed form authorizing release of the same information by the IRS to Spectrum in a form prepared for this purpose by defendant.

### 3. Sales Reports [Request No. 38]

Request for Production No. 38 seeks any and all of plaintiff's "annual sales reports by product number ... since 2005." [Doc. No. 97, p. 8] The request asserts that reports should include "all sales channels, including (without limitation) online sales through the [plaintiff's] online store ..., sales to retailers, sales to distributors, direct sales to end users, etc." *Id.* In its initial response, plaintiff categorized the request as overbroad, unduly burdensome, and vague/ambiguous. *Id.* Further, plaintiff objected to the extent the request sought confidential financial or commercial information. *Id.* Notwithstanding these objections, plaintiff stated that it has already produced all of the sales records in its custody and control, identifying three ranges of Bates numbered items, and asserted, "No annual sales reports exist." *Id.* Plaintiff represented that it had "made a diligent search and reasonable inquiry in an attempt to comply with this

request, but is unable to comply because the particular item or category of documents do not exit." *Id.*

In the instant Joint Motion, Spectrum contends that the sales reports produced by plaintiff do not account for website sales through plaintiff's online store, as well as sales that have otherwise occurred since the time plaintiff produced reports in December, 2011. [Doc. No. 97-1, p. 5] Spectrum claims that plaintiff's online sales are especially relevant because "the sales prices offered on the online store are much different from the prices shown on the sales reports." *Id.* Further, Spectrum reasons that because plaintiff maintains its sales records in an accounting software database, "it can use its accounting software to produce annual sales reports." [Doc. No. 97, p. 8] Because the information "is needed by Spectrum to make a more accurate calculation of damages," Spectrum argues that it is relevant and subject to production. *Id.* Plaintiff again cites the disruption to its record keeping stemming from a shareholder dispute as support for its contention that some of its business records have been "rearranged, misplaced, lost, and/or are no longer in the possession of [plaintiff] or reasonably available to [plaintiff]." *Id.* at 9. Plaintiff represents that it has made a "reasonable search and diligent inquiry in an attempt to comply with this request" and that "no responsive documents were found." *Id.* Lastly, plaintiff argues that it already produced its sales records to Spectrum, "disclosing the date of purchase, the item purchased, the quantity purchased, the sales price, the name of the purchaser, and [plaintiff's] sales balance .... The information contained therein is sufficient to satisfy the purpose of this request." *Id.*

The Court notes that, again, the parties fail to support their arguments with case or statutory authority. Plaintiff ignores Spectrum's arguments regarding the capabilities of plaintiff's accounting software database, namely that said software is capable of producing the comprehensive and complete sales reports sought by Spectrum. Plaintiff also fails to address Spectrum's contentions regarding the lack of production of records evidencing online sales. Lastly, plaintiff provides no grounds

justifying its failure to supplement its production since December of 2011.

As to the capabilities of plaintiff's accounting software, Spectrum's request is speculative and unsupported by the Federal Rules of Civil Procedure. Rule 34(b)(2)(E)(ii) states: "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." FED.R.CIV.P. 34(b)(2)(E)(ii). Spectrum speculates that plaintiff's accounting software is capable of producing the sales reports in a format Spectrum desires, and reasons that because the information desired is relevant to this action, plaintiff has a duty to generate those reports and produce them. Without any representation from plaintiff regarding its software capabilities, defendants' assumption is speculative.

To the extent that plaintiff has access to responsive items which are ordinarily maintained in reasonably usable native forms, plaintiff must produce said items. However, to the extent that Spectrum seeks to place an affirmative duty on plaintiff to manipulate its data for the purpose of generating tailored sales reports plaintiff otherwise would not keep in its ordinary course, Spectrum's request is **DENIED** at this time, as plaintiff does not have an affirmative obligation under Rule 34 to create or generate the type of financial reports sought by Spectrum. Should plaintiff fail, however, to supplement its discovery responses with information relevant to sales generated from December 2011 to the present, as ordered in this same sub-section *infra*, this Court will reconsider this ruling.

As to plaintiff's internet-based sales, given Spectrum's representation that plaintiff has produced no records reflecting its online transactions, this Court agrees that further production is warranted, as plaintiff's online sales are relevant to damages in this action. Although plaintiff unequivocally represents that it has produced all detailed sales figures responsive to this request within its custody and control, plaintiff has failed to carry its burden as the party resisting discovery, as described in section II(B)(1), *supra*. Accordingly, Spectrum's request for a Court Order compelling

additional responses by plaintiff to Request No. 38 is **GRANTED**.  **On or before June 6, 2014**, plaintiff must produce to Spectrum records of its online sales **and** include an explanation in the Declaration regarding the alleged "shareholder dispute" (as ordered in section II(B)(1), *supra*) and its impact on plaintiff's access to records pertinent to this request. Given that the information sought is necessary to prove damages, plaintiff is admonished that its failure to make a diligent search or a complete production in response to this request risks the penalty of evidence preclusion at trial.

To the extent that Spectrum seeks a supplemental production to the sales reports produced by plaintiff in December 2011 [Doc. No. 97-1, p. 5] accounting for sales from the time of production to present, Spectrum's request is **GRANTED**. **No later than June 6, 2014**, plaintiff is **ORDERED** to supplement its December 2011 production to this request, accounting for relevant sales occurring since then.

### 4. Records of Costs [Request Nos. 41, 42]

Request for Production No. 41 seeks any and all documentation of the costs of the "components of any and all [accused products] since 2005, including (without limitation): [a list of 13 itemized types of costs]." [Doc. No. 97, p. 9] Request for Production No. 42 seeks any and all "documentation, calculations, or other support of variable, fixed, and incremental costs of [plaintiff] for [the accused products] since 2005." [Doc. No. 97-4, p. 8]

In its initial responses, plaintiff categorized these requests as overbroad, unduly burdensome, and vague/ambiguous. [Doc. No. 97, p. 10] Further, plaintiff objected to the extent the requests seek confidential financial or commercial information. *Id.* Notwithstanding these objections, plaintiff represented that the cost documents sought have "already been produced" by plaintiff in this action, identifying two ranges of Bates numbered items. *Id.* To the extent that additional items have not been produced, plaintiff asserted that it "made a diligent search and a reasonable inquiry in an attempt to comply with th[ese] request[s], but is unable to comply because the particular item or category of documents do not exit." *Id.*

In the instant Joint Motion, Spectrum contends that documents previously produced by plaintiff only provide cost information for 4 of the 13 categories sought, namely (1) water; (2) packaging; (3) bottles; and, (4) powdered synthetic urine. However, plaintiff has not produced any documentation of its costs for the remaining 9 categories, specifically (1) heating packs; (2) temperature strips; (3) bladder bags; (4) belts; (5) shipping; (6) labor; (7) machine/equipment; (8) overhead; and, (9) "any other incremental costs as applicable." *Id.* Spectrum contends that plaintiff "must have those records in the form of receipts, invoices, purchase orders, W-2 forms, bank statements, and accounting records." *Id.* Spectrum speculates that these records *must* exist for plaintiff to accurately calculate its profits or losses to report to the federal government for tax purposes. *Id.* at 11. All of these cost records, Spectrum argues, are necessary to make a more accurate calculation of damages in this infringement action. *Id.* at 10-11.

Plaintiff again cites the disruption to its record keeping stemming from a shareholder dispute as support for its contention that some of its business records have been "rearranged, misplaced, lost, and/or are no longer in the possession of [plaintiff] or reasonably available to [plaintiff]." *Id.* at 10-12. Plaintiff represents that it has made a "reasonable search and diligent inquiry in an attempt to comply with this request" and that "no [additional] responsive documents were found." *Id.* Plaintiff argues that it already produced to Spectrum all responsive cost documentation available to plaintiff. "To the extent that additional categories of documents ... are not contained in said [B]ate stamp ranges, despite [plaintiff's] best efforts, no such responsive documents were found." *Id.* at 11-12.

The Court notes that, again, the parties fail to support their arguments with case or statutory authority. Notwithstanding, plaintiff has unambiguously stated that it has produced all responsive documents in its possession, and within its reasonable reaches and control. [Doc. No. 97, pp. 10-12; Doc. No. 99, p. 7] However, by failing to provide plaintiff or the Court with more information regarding the timing and circumstances

of this "shareholder dispute," plaintiff has failed to carry its burden as the party resisting these discovery requests. Accordingly, Spectrum's request for a Court Order compelling additional responses by plaintiff to Request Nos. 41 and 42 is **GRANTED**. As stated in greater detail in section II(B)(1), *supra*, plaintiff must file a Declaration regarding its search and responses to these discovery requests, as well as detailing this "shareholder dispute" allegedly impacting plaintiff's access to records pertinent to these requests. Plaintiff must file this Declaration **no later than June 6, 2014**. To the extent that any further responsive documents exist, plaintiff must produce them **no later than June 6, 2014**. Given that the information sought is necessary to prove damages, plaintiff is admonished that its failure to make a diligent search or a complete production in response to these requests risks the penalty of evidence preclusion at trial.

### 4. Purchase/Sale Records re: Spectrum's Quick Fix [Request No. 47; ROG No. 16]

Request for Production No. 47 seeks all documents "concerning [plaintiff's] purchase of Quick Fix from any person other than Spectrum, including (without limitation) invoices, receipts, bills, purchase orders, quotations, proposals, price lists, sales reports, accounts receivable records, accounting records, and billing records." [Doc. No. 97, p. 12] Interrogatory No. 16 seeks a description of each purchase by plaintiff of Spectrum's Quick Fix from any person other than Spectrum. *Id.* at 3. In its initial response to these requests, plaintiff categorized the requests as overbroad, unduly burdensome, and vague/ambiguous, and further objected on relevancy grounds and to the extent the requests sought confidential financial or commercial information. *Id.* at 12. Plaintiff also cited the privacy interests of third parties, stating that there is a substantial risk that the documents requested could be misused, and such risk outweighs any purported harm to Spectrum caused by non-production, especially given that Spectrum's own sales records for its Quick Fix product is sufficient to evaluate the demand for Quick Fix. *Id.* at 12-13.

In the instant Joint Motion, Spectrum states plaintiff "refused to produce a single document in response to th[ese] request[s]," and argues that plaintiff's objections based on commercial confidentiality or privacy are baseless since the Court has entered a stipulated protective order in this action addressing those very issues. *Id.* at 13. Spectrum contends that the information contained in the sought-after documents is essential to make a more accurate calculation of damages, and is specifically relevant to Spectrum's lost profits and reasonable royalty damages. *Id.* As stated, "[plaintiff's] costs for Quick Fix are figures that Spectrum's damage experts have requested to calculate damages." [Doc. No. 97-1, p. 6]

Plaintiff argues that the information sought by this request has "no bearing on the *Panduit* 'demand' prong." [Doc. No. 97, p. 13 (referring to *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978))] Plaintiff asserts that evidence relating to *Panduit's* demand prong "requires an analysis of the actual patented features themselves and the consumer benefits arising therefrom." [Doc. No. 97, p. 13] As such, plaintiff argues that Spectrum fails to explain how plaintiff's purchase history from third-party sellers is relevant to proving that the basis for customer demand is the patented feature. *Id.* With respect to royalty calculations, plaintiff argues that the information sought by these requests has no bearing on any of the 15 *Georgia-Pacific* factors considered in determining a reasonable royalty. *Id.* at 14 (referring to *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970)).

Notwithstanding these objections, plaintiff states that it has "already produced its purchase and sale records for Spectrum's Quick Fix," identifying two ranges of Bates numbered items which disclose (1) the quantity of Quick Fix bought; (2) the purchase price; (3) the date of purchase; and, (4) the seller's/buyer's name. [Doc. No. 99, p. 7] This representation is contrary to Spectrum's assertion that plaintiff has failed to produce responsive information. [Doc. No. 97, p. 13] Plaintiff presumably failed to produce the other information requested on the same grounds previously asserted in

response to other discovery requests, namely that it has "made a reasonable search and a diligent inquiry" but that "no such responsive documents are in its possession, custody, or control or reasonably available." *Id.* Further, plaintiff asserts that due to a shareholder dispute, some of its business records have been "rearranged, misplaced, lost, and/or are no longer in the possession of [plaintiff] or reasonable available to [plaintiff]." *Id.*

For the same reasons previously expressed, by failing to provide Spectrum or the Court with more information regarding the timing and circumstances of this "shareholder dispute," plaintiff has failed to carry its burden as the party resisting these discovery requests. Accordingly, Spectrum's request for a Court Order compelling additional responses by plaintiff to Request No. 47 and Interrogatory No. 16 is **GRANTED**. As stated in greater detail in section II(B)(1), *supra*, plaintiff must file a Declaration regarding its search and responses to these discovery requests, as well as detailing this "shareholder dispute" allegedly impacting plaintiff's access to records pertinent to these requests. Plaintiff must file this Declaration **no later than June 6, 2014**. To the extent that any further responsive documents exist, plaintiff must produce them **no later than June 6, 2014**. Given that the information sought is necessary to prove damages, plaintiff is admonished that its failure to make a diligent search or a complete production in response to these requests risks the penalty of evidence preclusion at trial.

### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

1. To the extent Spectrum seeks the identities of plaintiff's distributors and third-party sellers, Spectrum's request for a Court order compelling plaintiff to provide additional responses to Interrogatory Nos. 15 and 16 is **DENIED**.

2. Spectrum's request for a Court order compelling plaintiff to provide additional responses to Interrogatory No. 16 and Request for Production Nos. 29, 30, 35, 38, 41, 42, 47 is **GRANTED**. As outlined more completely above, plaintiff must

supplement its responses to these requests **no later than June 6, 2014**.

3. As described more fully in section II(B)(1), *supra*, plaintiff must file a written Declaration under penalty of perjury exhaustively detailing its search efforts with respect to all of the contested discovery requests, as well as the alleged "shareholder dispute" asserted as a basis for plaintiff's inability to produce documents and information. Plaintiff must include in this Declaration a statement that "to the best of [its] knowledge, information, and belief formed after a reasonable inquiry," its responses to these requests are "complete and correct." FED.R.CIV.P. 26(g)(1)(A). Plaintiff must file this Declaration **no later than June 6, 2014**. Given that the information sought is necessary to prove damages, plaintiff is admonished that its failure to make a diligent search or a complete production in response to these requests risks the penalty of evidence preclusion at trial.

4. After reviewing plaintiff's counsel's March 7, 2014 Declaration [Doc. No. 99] submitted in accordance with this Court's February 24, 2014 Order to Show Cause Why Sanctions Should Not Be Imposed [Doc. No. 98], this Court is satisfied with counsel's explanations regarding his inadvertent failure to comply with the Chamber Rules of the undersigned Magistrate Judge. As such, this Court finds sanctions are not warranted at this juncture.

**IT IS SO ORDERED.**

Date: May 5, 2014

KAREN S. CRAWFORD
United States Magistrate Judge