J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
12544 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:   (619) 906-5748
Facsimile:    (619) 744-5418
chris.jaczko@procopio.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone:   (216)348-5730
Facsimile:    (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC AND Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>Defendants.<br><br>AND RELATED CROSS ACTION | No. 11cv0638 JAH (KSC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECTRUM LABORATORIES, LLC'S EX PARTE APPLICATION TO STRIKE EXPERT REPORT OF DALE CHATFIELD AND TO STAY EXPERT DEADLINES FOR SPECTRUM**<br><br>Date:<br>Time:<br>Courtroom:   E<br><br>Judge:   Hon. John A. Houston<br>Mag. Judge:   Hon. Karen Crawford<br>Filed:   March 29, 2011<br>Trial:   None Set |

MPA re Ex Parte Application to Strike D. Chatfield's Expert Report and to Stay Spectrum's Expert Deadlines          1                    Case No. 11cv0638 JAH(KSC)

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This Court should strike the invalidity report of Dale Chatfield, Ph.D., the putative expert of Plaintiff Dr. Greens, Inc. ("Greens"). It should do so because Dr. Chatfield relies on at least two prior art references that were not identified in Greens' invalidity contentions—which Greens served over three years ago and the parties have relied on since—and he offers a new invalidity theory, based on an alleged failure-to-disclose, that also was not identified in Greens' invalidity contentions.

Spectrum has spent time, money, and energy to conduct discovery on and to rebut the invalidity grounds that Greens identified in its invalidity contentions. Now, three years later, Greens tries to slip a new invalidity defense into the case through an expert report. It would cause significant and undue prejudice to require Spectrum—at this late stage—to readjust for this new invalidity defense and to lose all the time, money, and effort it has spent preparing to rebut the invalidity defense set forth in Greens' invalidity contentions. The Court should uphold the Local Patent Rules and hold Greens to the invalidity defenses it set forth in its rule-mandated invalidity contentions.

## II. BACKGROUND

### A. Greens' Invalidity Contentions

Greens sued Spectrum Laboratories, LLC, for a declaratory judgment of invalidity and non-infringement of Spectrum's U.S. Patent No. 7,192,776 ("the '776 patent").

On December 27, 2011, Greens served its invalidity contentions as required by the Court's Local Patent Rules, a true copy of which is attached as Exhibit A. Those contentions identified two invalidity grounds: (a) invalidity under 35 U.S.C. § 102(b) based on Greens' unsupported (and since disproven) allegation that Spectrum sold the patented formula more than one year before the '776 patent's filing date of January 28, 2004; and (b) invalidity under 35 U.S.C. § 103 (obviousness) based on a

combination of seven prior art patents: the (1) Haddad, (2) Adamczyk, (3) Bernardin, (4) Melius, (5) Dorn, (6) Keusch, and (7) Lynch patents.[1]

On January 23, 2013, Matt Green testified as Greens' Rule 30(b)(6) designee and confirmed under oath that Greens' December 2011 invalidity contentions identified all of Greens' invalidity grounds and all of the prior art that Greens is relying on in this litigation. (Green Dep. 23:11-17, att'd as Ex. B.)

### B.     Expert Discovery

This Court's October 2, 2014, Scheduling Order (ECF # 137) required the parties to identify their expert witnesses and to provide a "brief statement identifying the subject areas as to which the expert is expected to testify" by November 7, 2014, and to supplement their designations by November 28, 2014. On November 28, 2014, Greens identified Dr. Neil Spingarn as its expert. That designation, a true copy of which is attached as Exhibit C, did not identify what subject areas Dr. Spingarn would testify about, and the "Report of Analysis" attached to the Dr. Spingarn designation indicated only that Dr. Spingarn had tested "Agent X Powder" on November 20, 2014, and allegedly detected less that 100 μg/g of Methyl Carbamate in the powder. Nothing in that designation stated, let alone suggested, that Dr. Spingarn would testify about invalidity or about anything other than his November 20, 2014, chemical testing of Agent X Powder. (*See* Exhibit C.)

Spectrum immediately objected because Spectrum had previously designated Dr. Spingarn as one of its experts in this case on January 17, 2012, and had provided Greens with Dr. Spingarn's signed undertaking for the stipulated protective order at that time. (*See* December 10, 2014, letter to Greens' attorney, att'd as Exhibit D.) Spectrum told Greens that it would not object to Greens designating a replacement

---

[1] Greens' invalidity contentions also identified a 1995 "Handbook for Biocide and Preservative Use" and a 2003 Wikipedia entry for "Preservative," which the PTO had not considered, but Greens did not identify either of those references as combining with other references to render the '776 patent obvious. At best, Greens cited those alleged publications for background purposes.

MPA re Ex Parte Application to Strike D.
Chatfield's Expert Report and to Stay
Spectrum's Expert Deadlines           3           Case No. 11cv0638 JAH(KSC)

chemical expert if it designated that person by December 24, 2014. (*Id.*)

On January 26, 2015, a full month after the December 24th extension to which Spectrum had agreed, Greens designated Dr. Dale Chatfield "to provide testimony regarding invalidity and rebuttal testimony of non-infringement in this case." A true copy of that designation is attached as Exhibit E. Those subject areas are far beyond what Dr. Spingarn had been designated to testify about. And so that designation was untimely by months.

On February 26, 2015, at 11:58 p.m. (two minutes before the report deadline expired), Greens emailed Spectrum two expert reports by Dr. Chatfield. The first purported to rebut the infringement opinions of Spectrum's chemical expert, Dr. Shri Thanedar. The second report (the "Invalidity Report"), which is the subject of this motion, purports to offer two invalidity theories, neither of which was disclosed in Greens' invalidity contentions. A true copy of the Chatfield Invalidity Report is attached as Exhibit F. Dr. Chatfield's first theory opines that the '776 patent is invalid as "obvious in light of the combination of Haddad, Melius et al., Dorn, and the book, *Cooling Water Treatment-Principles and Practice*, by Colin Frayne and a corresponding article, 'The Selection and Application of Nonoxidizing Biocides for Cooling Water Systems', also by Colin Frayne." (Chatfield 2d Report ¶ 32.) Greens' invalidity contentions, however, do not identify the Frayne *Cooling Water Treatment* book (the "Frayne Book") or the Frayne article (the "Frayne Article") that Dr. Chatfield relies on.

Dr. Chatfield's second theory opines that the '776 patent is "invalid because the '776 Patent plagiarizes Frayne's article and yet, was not disclosed by those involved in the '776 Patent." (*Id.* ¶ 39.) Greens' invalidity contentions do not identify this ground for invalidity and, again, do not identify the Frayne Article on which this new theory rests.

MPA re Ex Parte Application to Strike D.
Chatfield's Expert Report and to Stay
Spectrum's Expert Deadlines        4            Case No. 11cv0638 JAH(KSC)

### C. Greens Refuses to Respond to or Remedy Spectrum's Objection

As detailed in the attached declaration of Spectrum's counsel, Matthew J. Cavanagh, Spectrum asked Greens several times beginning on March 5, 2015, to respond to and remedy Spectrum's objections. Yet Greens provided no substantive response to those objections. (*See* Cavanagh Decl. ¶ 12-13; emails att'd as Exhibit H.)

## III. LAW AND ARGUMENT

### A. The Court Should Strike Dr. Chatfield's Invalidity Report

#### 1. *Greens' Invalidity Contentions Needed to Identify All Grounds of Invalidity and All Prior Art References*

This Court's Local Patent Rules required Greens to serve invalidity contentions that identify all invalidity grounds and all prior art references on which those grounds rely. Patent L.R. 3.3.

Greens' right to amend those contentions expired on February 19, 2013, when claim construction discovery closed. *See* Patent L.R. 3.6(b), 4.3. If there was good cause and no prejudice to Spectrum, Greens could have sought leave to amend its invalidity contentions by October 10, 2014, *i.e.*, 50 days after the Court's August 21, 2014, claim construction ruling. *See* Patent L.R. 3.6(b). It did not do so. On October 10, 2014, Greens lost any right or ability to amend its invalidity contentions. *See id.*

The reasons for invalidity contentions and the other patent disclosures required by this Court's local rules are to require the parties "to crystallize their theories of the case early in the litigation" and to avoid a "shifting sands" approach to litigation that is inefficient and unfair to the adverse party. *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006).

For the Local Patent Rules to work, they must be enforced. Consequently, district courts correctly strike infringement or invalidity theories that were not disclosed in the infringement or invalidity contentions, and the Federal Circuit has

affirmed such sanctions as appropriate. *See Informatica Corp. v. Business Objects Data Integration, Inc.*, No. C 02-3378 JSW, 2006 WL 463549, at *1 (N.D. Cal. Feb. 23, 2006) (striking newly asserted infringement contentions); *O2 Micro*, 467 F.3d at 1367-68 (affirming denial of tardy motion to amend infringement contentions); *Asus*, 2014 WL 1463609, at *8-10 (striking portions of expert report that rely on prior art and invalidity theories not disclosed in invalidity contentions).

"[A] party may not," as Greens attempts to do here, "use an expert report to introduce . . . new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *Asus Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. April 11, 2014).

### 2. *Dr. Chatfield's Invalidity Report Contradicts Greens' Invalidity Contentions and Should Be Stricken*

The Court should strike the Chatfield Invalidity Report in its entirety because both of Dr. Chatfield's invalidity opinions rely on alleged prior art references that were not identified in Greens' invalidity contentions, namely the Frayne Book and Frayne Article. The Court should also strike Chatfield's "failure to disclose" invalidity theory (Paragraphs 39 through 46) because—in addition to improperly relying on the Frayne Article—Greens never identified this invalidity ground in its invalidity contentions. And Greens never amended, let alone sought leave to amend, its invalidity contentions to identify the two Frayne references or to identify the failure-to-disclose invalidity theory. There is no reason that Greens could not have identified these references and this theory at the time it served its invalidity contentions or within the time for amending them.

For years now, Spectrum has relied on Greens' invalidity contentions for deciding what fact discovery to conduct, what questions to ask Matt Green (both individually and as Greens' Rule 30(b)(6) witness) at deposition, what witnesses to

MPA re Ex Parte Application to Strike D.
Chatfield's Expert Report and to Stay
Spectrum's Expert Deadlines          6            Case No. 11cv0638 JAH(KSC)

question (or to not question), what experts to engage, what prior art to study, and how to prepare for trial.

Allowing Greens to assert these new theories at this late stage—four years after it sued and three years after servings its invalidity contentions—would unfairly prejudice Spectrum, which has spent time, money, and effort on the invalidity defenses that Greens identified in its rule-mandated invalidity contentions. Because fact discovery has now closed, Spectrum has had no opportunity to conduct fact discovery on the two references or on the new failure-to-disclose theory. In fact, to this day, Greens has not produced a complete copy of the Frayne Book. Furthermore, allowing Dr. Chatfield's testimony to stand and to constructively amend Greens' invalidity contentions would diminish the relevance and respect for the Local Patent Rules, frustrate the case schedule, and likely cause a further delay of the trial date that Spectrum has already waited four years for. For example, if Dr. Chatfield's opinions are allowed to stand, Spectrum would need additional time: (i) to conduct discovery on the two Frayne references; (ii) to potentially re-depose Matt Green on those references and on the new invalidity theories; (iii) to locate and retain one or more experts to rebut Dr. Chatfield's opinions; and (iv) for Spectrum's experts to prepare their rebuttal reports. The cost and delay associated with those efforts would unfairly prejudice Spectrum.

### B.   The Court Should Stay Spectrum's Expert Deadlines

The Court should stay Spectrum's rebuttal expert deadline of March 25, 2015, and the April 22, 2015, expert discovery deadline, while it resolves this motion to strike.

How the Court resolves Spectrum's motion to strike will substantially impact whether and to what extent Spectrum offers a rebuttal report and whether and to what extent Spectrum conducts additional fact and expert discovery. It would be unfair to force Spectrum to retain and pay an invalidity expert or experts—especially

MPA re Ex Parte Application to Strike D. Chatfield's Expert Report and to Stay Spectrum's Expert Deadlines           7                Case No. 11cv0638 JAH(KSC)

given the high cost of such experts—to rebut Dr. Chatfield's invalidity opinions when those opinions are improper and should be stricken by this Court. Spectrum should only incur that time, money, and effort if this Court decides to allow Dr. Chatfield's invalidity opinions to stand. Likewise, Spectrum should not be required to conduct full expert discovery on Dr. Chatfield's invalidity opinions and to depose him on invalidity (where Spectrum, by rule, would have to pay Dr. Chatfield for his deposition time) before this Court has decided whether his Invalidity Report should be stricken. Because Greens' violation of this Court's Local Patent Rules—and its refusal to respond to or remedy the problem—has caused the present issue, Spectrum should not bear the additional cost, risk, and effort caused by that violation.

In short, Spectrum should not be required to incur the cost and effort to rebut and conduct discovery on Dr. Chatfield's improper invalidity opinions unless and until this Court decides whether to excuse Greens' violation of the Local Patent Rules, which it should not do.

## V. CONCLUSION

For the foregoing reasons, the Court should immediately stay the expert deadlines for Spectrum only and then strike Dr. Chatfield's Invalidity Report in its entirety.

Dated: March 25, 2015                MCDONALD HOPKINS LLC

By: /s/ Matthew J. Cavanagh
Matthew J. Cavanagh
Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC
and Defendant JAMES MATTHEW STEPHENS