1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., <br><br>         Plaintiff, <br><br>     v. <br><br> JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, <br><br>         Defendants. <hr> Related Counterclaims. | Case No. 11cv638 JAH (KSC) <br><br> **ORDER DENYING DEFENDANT SPECTRUM'S MOTION FOR SUMMARY JUDGMENT** <br><br> **[Doc. No. 130]** |

## INTRODUCTION

Pending before the Court is defendant Spectrum Laboratories, LLC's motion for summary judgment of direct infringement of defendant Spectrum's '776 patent by Plaintiff Dr. Greens ("Plaintiff"). Plaintiff opposes the motion. After a careful review of the pleadings and relevant exhibits submitted by the parties along with the entire record in this matter, and, after considering the oral argument presented at the hearing, this Court **DENIES** defendant Spectrum's motion for summary judgment in its entirety.

//

# BACKGROUND

**A.      Factual Background - '776 Patent**

The patent-in-suit, U.S. Patent No. 7,192,776 ("'776 patent"), was issued on March 20, 2007.  The '776 patent claims a synthetic urine solution and method for manufacturing said solution.  A significant feature of the invention is the inclusion of biocides to prevent the solution from undergoing sepsis (i.e., bacterial growth) and decomposition. Through the use of biocides, the solution is able to maintain its viability and utility (i.e., shelf-life).  The solution also includes creatinine, a protein that occurs in human urine and is accounted for in most current methods of urinalysis.  The '776 patent was invented by James Matthew Stephens, who serves as a managing member of defendant Spectrum, an assignee of the patent.

Plaintiff is a California corporation that markets and distributes a synthetic urine product entitled Dr. Green's Agent X ("Agent X").  Defendant Spectrum is its competitor and markets a synthetic urine product entitled Quick Fix.

In June 2004, defendant Spectrum acquired a sample of Agent X sold as part of its ongoing efforts to monitor the synthetic urine market.  In 2012, Spectrum submitted the Agent X sample for testing to Dr. Thanedar of Avomeen Analytical Services, a chemical analysis laboratory.  Following the commencement of the instant suit, Plaintiff submitted their own sample of Agent X for testing to FAI Materials Testing Laboratory, Inc.  The parties' laboratory tests of Agent X yielded different results.  Among other things, defendant Spectrum's analysis demonstrated the presence of the biocide carbamic acid methyl ester in the product, but Plaintiff's analysis did not.

**B.      Markman Hearing**

On August 13, 2014, a *Markman* hearing was held by this Court.  Only two claim terms from the '776 patent were at issue: "a biocide" and "carbamates." In both instances, the Court adopted defendant Spectrum's proposed construction. Whereas Plaintiff had argued that "a biocide" should be construed to mean "only one biocide," the Court held, in light of general patent parlance as well as the language of the patent

and the prosecution history, that "a biocide" means "one or more biocides."  Moreover, whereas Plaintiff had proposed a construction of "carbamates" that would have limited them to compounds containing the monovalent ion $NH2COO^-$, the Court noted that Plaintiff ended up withdrawing this limitation based on "subsequent research," and held that "carbamates" simply means "organic compounds derived from carbamic acid," the construction proposed by defendant Spectrum.

## D.    Procedural History

On March 29, 2011, Plaintiff filed a complaint against defendants Spectrum and James Matthew Stephens seeking declaratory judgment of non-infringement and invalidity of Defendants' '776 patent.  Plaintiff also asserts claims for patent misuse, federal statutory unfair competition, common law unfair competition, interference with business relations, and interference with prospective economic advantage.

On August 15, 2011, defendant Spectrum filed an answer to Plaintiff's complaint, along with counterclaims for patent infringement and for violations of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(B); Ohio's Deceptive Trade Practices Act; California's Unfair Competition Law; and malicious litigation under Ohio common law.  Plaintiff filed an answer to the counterclaim on September 23, 2011.  Thereafter, defendants Stephens and Spectrum separately filed motions to dismiss Plaintiff's complaint.  The Court granted both motions to dismiss, allowing Plaintiff leave to amend.

Plaintiff subsequently filed an amended complaint seeking declaratory judgment that it does not directly infringe, induce infringement, or contribute to infringement of the '776 patent.  Plaintiff also asserts claims for patent misuse, federal statutory unfair competition, common law unfair competition, interference with business relations, and interference with prospective economic advantage.  Defendants separately filed answers, along with counterclaims, to Plaintiff's amended complaint on May 7, 2012.  Defendant Spectrum asserts counterclaims for patent infringement and for violations of the Lanham Act, Ohio's Deceptive Trade Practices Act, California's Unfair Competition Law, and unfair competition under Ohio common law.

On January 22, 2013, the parties filed a joint claim construction chart and *Markman* hearing statement.  Plaintiff and defendant Spectrum filed their opening *Markman* briefs on March 4, 2013 and their responses on March 18, 2013.  A technical tutorial was held before this Court on June 28, 2013.

On February 28, 2013, defendant Spectrum filed an unopposed motion for leave to amend its preliminary infringement contentions, which this Court granted on July 11, 2013.  Defendant Spectrum also filed a motion to amend its counterclaims, which this Court granted on December 5, 2013.

Defendant Spectrum filed a motion for summary judgment on April 3, 2014, which this Court denied without prejudice as premature on the ground that claim construction issues had not yet been resolved in the instant case.  The parties appeared before this Court for a *Markman* hearing on August 13, 2014.

On September 11, 2014, defendant Spectrum renewed its motion for summary judgment.  The Court set a hearing date for November 17, 2014, which was continued on defendant Spectrum's motion to December 15, 2014.  Plaintiff filed their response in opposition to the motion on November 24, 2014 and defendant Spectrum filed a reply on December 3, 2014.

After hearing the arguments of counsel on December 15, 2014, the Court continued the hearing to February 17, 2015 to allow parties to file supplemental briefing.  On February 17, 2015, a second hearing was held on the motion.  After hearing the arguments of counsel, the Court took the matter under submission.

## DISCUSSION

### I.    Legal Standard

Determination of patent infringement is a two-step process: first, the court must determine as a matter of law the meaning of the particular patent claim or claims at issue; and second, it must consider whether the accused product infringes one or more of the properly construed claims. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996); see also Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1344 (Fed.

Cir. 2002). The second inquiry is a question of fact and, like all civil cases, summary judgment of infringement or noninfringement is only appropriate when no genuine dispute of material fact exists. Irdeto Access, Inc. v. Echostar Satellite Corp., 383 F.3d 1295, 1299 (Fed. Cir. 2004), quoting Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

A fact is material when, under the governing substantive law, it could affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  Id. at 322-23.

Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating "there is an absence of evidence to support the non-moving party's case."  Id. at 325.  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the nonmoving party's claim.  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).  "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497 U.S. at 885 (quoting Celotex, 477 U.S. at 323).  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not

1  consider the nonmoving party's evidence.  See Adickes v. S.H. Kress & Co., 398 U.S.

2  144, 159-60 (1970).

3      If the moving party meets the initial burden, the nonmoving party cannot defeat

4  summary judgment merely by demonstrating "that there is some metaphysical doubt as

5  to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

6  574, 586 (1986); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla

7  of evidence in support of the nonmoving party's position is not sufficient.").  Rather, the

8  nonmoving party must "go beyond the pleadings and by her own affidavits, or by the

9  depositions, answers to interrogatories, and admissions on file, designate specific facts

10  showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed.

11  R. Civ. P. 56(e)) (internal quotations omitted).

12      "Disputes over irrelevant or unnecessary facts will not preclude a grant of

13  summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

14  626, 630 (9th Cir. 1987).  "The district court may limit its review to the documents

15  submitted for purpose of summary judgment and those parts of the record specifically

16  referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030

17  (9th Cir. 2001).  Therefore, the court need not "scour the record in search of a genuine

18  issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

19  Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

20      The court may not make credibility determinations, and inferences to be drawn

21  from the facts must be viewed in the light most favorable to the party opposing the

22  motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); see Anderson,

23  477 U.S. at 255; Matsushita, 475 U.S. at 587.

24      In the endeavor to establish the existence of a factual dispute, the opposing party

25  need not establish a material issue of fact conclusively in its favor.  It is sufficient that

26  "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

27  differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Service Co., 391

28  U.S. 253, 289-90 (1968); Giles v. General Motors Acceptance Corp., 494 F.3d 865, 872

(9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory Committee Note to 1963 amendments).

**II.    Analysis**

      **A.   Evidentiary Issues**

            **i.    Objections to Declarations**

Plaintiff objects to Dr. Shri Thanedar's Declaration pursuant to Rules 702 and 703 of the Federal Rules of Evidence on the grounds that the testimony is unreliable and lacks specialized knowledge.  Defendant Spectrum objects to and moves to strike portions of Stefanie Eick's Declaration and Gary Eastman's declaration on the grounds that the declarations lack personal knowledge, is inadmissible hearsay, and improper opinion testimony.

The Court found it unnecessary to consider the objected to portions of the declarations in making its determination on the motion.  As such, the parties' objections are DENIED AS MOOT.

            **ii.    Requests for Judicial Notice**

Pursuant to Federal Rule of Evidence 201(b), Plaintiff requests that the Court take judicial notice of two documents: United States Patent No. 5,534,649, entitled "Process for Preparing Dialkyl Carbonates" and International Patent Application No. WO2014/072803.  Defendant Spectrum opposes the requests and argues taking judicial notice of the truth of the documents' contents is improper.

The Court found it unnecessary to consider the documents that are the subject of Plaintiff's requests in making its determination on the motion.  As such, Plaintiff's requests for judicial notice are DENIED AS MOOT.

//

//

//

11CV638

**B.   Defendant's Motion for Summary Judgment**

Defendant Spectrum moves for summary judgment on the grounds that the synthetic urine products sold by Plaintiff literally meets the limitations of independent claim 1 and dependent claims 2, 3, and 4 of the '776 patent.

Plaintiff argues, among other things, that "the evidence before the Court is insufficient to determine that no genuine issue of material fact remains as to whether the alleged Agent X sample relied on by [defendant] Spectrum here is a true and correct representation of the accused product sold by Dr. Greens in 2004" and this Court agrees. See Doc. No. 151 at 7.

In order to test Agent X for direct infringement, defendant Spectrum obtained a sample of a 2004 box of Agent X.  Kusala Decl. ¶13, Doc. No. 101-2 at 3.   Once obtained, defendant Spectrum performed an inspection of Agent X consistent with its regular business practice of examining competitor's products. Kusala Decl. ¶¶12, 14, Doc. No. 101-2 at 3-4.  Specifically, defendant Spectrum personnel opened the black box and observed the following contents inside of the box: a capped plastic bottle holding a liquid, an instruction sheet dated June 2004, a heat pad, and a rubber band. Kusala Decl. ¶15, Doc. No. 101-2 at 4.  Defendant Spectrum asserts they did not open the capped plastic bottle during this time.  Kusala Decl. ¶16; Doc. No. 101-2 at 4.  The contents, including the capped plastic bottle were placed back inside the box. Kusala Decl. ¶¶14-16, Doc. No. 101-2 at 3.  In 2008, when defendant Spectrum moved to a new office, defendant Spectrum moved the box of Agent X to a secure location in the new office.  Kusala Decl. ¶14-16, Doc. No. 101-2 at 3.  The box remained in its new location until September 28, 2012 when the Agent X sample was sent for testing.  Kusala Decl. ¶19-20, Doc. No. 101-2 at 4; see also Thanedar Decl. ¶6, Doc. No. 101-3 at 2-3.

In opposition, Plaintiff asserts that in 2004 Agent X was only sold in a powder form, and was not premixed with a liquid. Green Decl. ¶3-4, Doc. No. 139-2 at 2. Plaintiff asserts that the black box of Agent X sold by Plaintiff contained the following contents: a small vial of powdered synthetic urine, an instruction sheet, a heating pad, a

11CV638

rubber band, and an empty 3 ounce plastic bottle with a temperature strip and flip-top cap.  Green Decl. ¶7, Doc. No. 139-2 at 3.

Plaintiff contends that although they currently sell a liquid form of Agent X, the product was not introduced on the market until March 2005.  Green Decl. ¶8, Doc. No. 139-2 at 3.  As opposed to the black box entitled Agent X which contains the powder, Plaintiff contends that the liquid form of Agent X is sold in a grey box and labeled "Agent-X Premixed."  Green Decl. ¶8, Doc. No. 139-2 at 3.  As sold, the grey box contains the following items: a 3 ounce bottle of liquid synthetic urine with a temperature strip and flip-top cap, a heating pad, rubber band, and instruction sheet.  Green Decl. ¶8, Doc. No. 139-2 at 3.

Accordingly, Plaintiff asserts that the liquid Agent X sample tested by defendant Spectrum could not have been produced by Plaintiff because the product did not exist at the time. Green Decl. ¶7, Doc. No. 139-2 at 3.  Additionally, Plaintiff argues that that the sample was tampered with and its chain of custody is questionable.  <u>See</u> Doc. No. 139 at 4-5, 9-10.  With respect to the sample's chain of custody, Plaintiff argues that defendant Spectrum has not established the following facts: who and where defendant Spectrum "obtained" the alleged Agent X box from, who first opened the box, who had access to the box after it was opened, and who first inspected the contents of the box. <u>See</u> Doc. No. 139 at 7.  Plaintiff also argues that a gap in the chain of custody exists because Fran Kusala, the employee defendant Spectrum relies on to testify to the sample's chain of custody, did not work for defendant Spectrum from December 31, 2004 to December 31, 2007. <u>Id</u>. at 6-7.

In reply, defendant Spectrum argues that there is no evidence that any tampering occurred and Plaintiff's assertion to the contrary is mere speculation and does not create a genuine issue of material fact.  <u>See</u> Doc. No. 156 at 5.  Even if tampering did occur, defendant Spectrum argues that Plaintiff lacks evidence that tampering would have introduced the carbamate biocide into Agent X.  <u>Id</u>.  Defendant Spectrum also contends that there is no evidence of a broken chain of custody. <u>See</u> Doc. No. 146 at 3.

11CV638

1   Specifically, defendant Spectrum argues that Kusala was employed by defendant at all

2   material times: the time it acquired Agent X in 2004 and again in 2008 when it relocated

3   to a new office.  See Doc. No. 146 at 3.[1]

4        After commencement of the instant suit, Plaintiff located in its warehouse a vial of

5   the accused product which had not been sold in several years and observed that the

6   sample appeared to be clumped and contaminated by humidity.  See Green Decl. ¶21,

7   Doc 139-2 at 5-6.  Plaintiff asserts that these observations are in part due to the two

8   year shelf-life of the product, which is the standard for the industry and the shelf-life of

9   defendant Spectrum's Quick Fix synthetic urine product.  See Green Decl. ¶14, Doc 139-

10  2 at 4.  As such, Plaintiff argues that the results from Dr. Thanedar's tests of the alleged

11  Agent X sample, which sat on a shelf for more than seven years and was exposed to the

12  elements, are not reliable.  See Doc. No. 139 at 10.

13       In reply, defendant Spectrum argues that Plaintiff does not specify what effect the

14  expiration of the accused product's shelf life had on the product, if any.  See Doc. No.

15  146 at 5.  Specifically, defendant Spectrum points out that Plaintiff has not argued that

16  the expiration of the shelf-life could have resulted in the added presence of carbamic acid

17  methyl ester into the product.  Id.  Defendant Spectrum goes on to argue that Plaintiff's

18  testimony does not counter Dr. Thanedar's observation that the sample he tested

19  showed no signs of spoliation.  Id.

20       Here, the evidence presented by the parties makes clear that defendant Spectrum

21  obtained the black box of Agent X without the words "Premixed" on the outside of the

22  box.  The record evidences that the box of Agent X that defendant Spectrum obtained

23  included a liquid sample and subsequently, defendant Spectrum tested the liquid sample

24  to establish its infringement claim.  The record also shows that the box itself was moved

25

26       [1] During oral argument, Plaintiff asserted that the chain of custody is broken on this fact
    alone in that defendant Spectrum has not presented any witnesses with personal knowledge of
27  the storage and integrity of defendant Spectrum's sample for the three year period during
    Kusala's absence.

28

11CV638

when defendant Spectrum moved to a new office location in 2008 and there is no evidence that anyone has personal knowledge regarding the safe keeping or integrity of the box for the three year period prior to the move when Kusala did not work for defendant Spectrum.  Lastly, the record shows that industry standards calls into question the integrity of the accused product.

Having considering all of the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, the Court finds there are genuine issues of material facts that defeat granting summary judgment in this case, including, without limitation, the reliability of the test results of the accused product, shelf-life of the products, defendant Spectrum's chain of custody, and credibility determinations. These issues must be determined by the trier of fact.   Defendant Spectrum's motion for summary judgment is DENIED.[2]

## CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant Spectrum's motion for summary judgment is DENIED [doc. no. 130]; and

2. The parties are directed to contact the Magistrate Judge within three business days to reset the case management dates previously vacated pending the Court's ruling on this motion.

Dated:      September 25, 2015

_____
JOHN A. HOUSTON
United States District Judge

---

[2] Because a genuine issue exists as to the threshold question of the authenticity and integrity of the accused Agent X product, the Court will not address Defendant's other arguments, including its infringement claim, premised on the authenticity of the same product.

11

11CV638