J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street Suite 2200
San Diego, CA 92101
Telephone:   (619) 906-5748
Facsimile:   (619) 744-5418
chris.jaczko@procopio.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:   (216)348-5730
Facsimile:   (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>         Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>         Defendant.<br><br>AND RELATED CROSS ACTION | No.   11cv0638 JAH (KSC)<br><br>**DECLARATION OF MATTHEW J. CAVANAGH IN SUPPORT OF DEFENDANTS' EX PARTE APPLICATION TO VACATE THE DECEMBER 14 SETTLEMENT CONFERENCE OR, IN THE ALTERNATIVE, TO GRANT LEAVE FOR JAMES MATTHEW STEPHENS AND LEAD COUNSEL TO ATTEND BY TELEPHONE** |

I, Matthew J. Cavanagh, declare as follows:

1. I have personal knowledge of the following facts, and if called as a witness, I could and would competently testify as follows:

2. I am an attorney at the Cleveland, Ohio offices of McDonald Hopkins LLC.

3. I am licensed to practice law in the state of Ohio, before various federal courts, and before the United States Patent and Trademark Office. I am admitted *pro hac vice* before this Court in this action.

4. I am one of the attorneys representing Spectrum Laboratories, LLC and James Matthew Stephens in this action.

5. On July 21, 2015, I emailed a settlement offer to counsel for Dr. Greens, Inc. ("Greens"), a copy of which is attached as Exhibit A.

6. On February 10, 2016, James Matthew Stephens emailed a settlement offer to Greens' owner, Matt Green, which proposed a payment of $400,000, a business deal, and other terms.

7. To date, neither Mr. Green nor Greens' attorney have accepted, rejected, or countered either of those two offers.

8. The Court has held two prior settlement conferences that Mr. Stephens attended in person in San Diego. Neither of those conferences was successful. At each conference, Greens refused to pay Spectrum any money and insisted that Spectrum (the patent owner) should pay Greens (the accused infringer) money to resolve the case.

9. Before the second settlement conference, on July 20, 2015, I emailed Mr. Eastman proposing that we seek a postponement of the August 4, 2015, settlement conference. He refused to join in such a motion because he said there was a "high likelihood that the matter can resolve at a settlement conference." Relying on his statement, Spectrum did not seek to postpone that settlement, and Mr. Stephens spent considerable time and money to have him and his Cleveland-based attorney, Mr. Cupar, prepare for and attend that conference in San Diego. At the conference, Mr. Green refused to pay any money to settle and, instead, demanded that Spectrum pay him money. With that settlement position, it is unknown why Mr. Eastman represented beforehand that he thought there was a "high likelihood" of settlement.

10. On November 14, 2016, I sent an email to Gary Eastman (counsel for Greens), requesting that he join a motion to allow Mr. Stephens to attend the third settlement conference (the December 14, 2016 conference) by telephone.

11. On November 16, 2016, Mr. Eastman responded by email and refused to join the motion. Mr. Eastman asserted that having Mr. Stephens physically present at the conference "will greatly increase the likelihood that this matter will resolve at that time."

12. On November 17, 2016, I responded to Mr. Eastman's email and asked whether Greens' refusal to offer money for settlement had changed, and I asked how Matt Stephens' physical presence at the conference might cause Mr. Green to rethink his unwillingness to offer money to settle. Mr. Eastman never responded to my November 17, 2016, email.

13. The fact that Mr. Eastman ignored my November 17 email, and other behavior by him, indicates that--if the third settlement conference goes forward--Greens will once again not offer money to settle, but instead will demand that Spectrum pay Greens money. Because Spectrum will not settle without the payment of money from Greens, Greens' settlement position makes settlement unworkable and would render the settlement conference futile.

14. Today, on November 22, 2016, I checked airline tickets prices and availability for flights from Cincinnati, Ohio (where Matt Stephens would travel from) and Cleveland, Ohio (where David Cupar would travel from). To attend the December 14, 2016, settlement conference, both Mr. Stephens and Mr. Cupar would have to take flights early in the morning on December 13 and would not be able to return to their respective cities until late in the evening on December 16. Thus, both of them would lose two entire business days due to travel. Mr. Stephens airline tickets would cost about $600 (economy) and Mr. Cupar's tickets would cost about $400 (economy). Together, they would incur at least $1,300 in hotel and meal expenses. And Mr. Cupar's legal fees would be at least $8,000 to travel to and attend the conference. The

1 | total expense to Spectrum for Messrs. Stephens and Cupar to appear in-person at the
2 | December 15 conference would exceed $10,000, which is consistent with the
3 | expenses that Spectrum incurred for each of the prior two in-person settlement
4 | conferences.

6 | I declare under the penalty of perjury under the laws of the United States of
7 | America that the foregoing is true and correct.

10 | Executed this 22th day of November, 2016 in Cleveland, Ohio.

12 |     s/ Matthew J. Cavanagh
13 | MATTHEW J. CAVANAGH