1 | J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
2 | 12544 High Bluff Drive, Suite 300
San Diego, CA 92130
3 | Telephone:   (619) 906-5748
Facsimile:   (619) 744-5418
4 | chris.jaczko@procopio.com

5 | DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
6 | MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
7 | Cleveland, OH 44114
Telephone:   (216)348-5730
8 | Facsimile:   (216)348-5474
dcupar@mcdonaldhopkins.com
9 | mcavanagh@mcdonaldhopkins.com

10 | Attorneys for Defendant and Counterclaimant SPECTRUM
LABORATORIES, LLC AND Defendant JAMES MATTHEW STEPHENS

11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14 |

DR. GREENS, INC., a California corporation,

      Plaintiff,

v.

JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,

      Defendant.

AND RELATED CROSS ACTION

No.  11cv0638 JAH (KSC)

**[FILED UNDER SEAL]**

**SPECTRUM LABORATORIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNTS I.B, II-VI OF AMENDED COMPLAINT**

Date:        May 15, 2017
Time:        2:30 p.m.
Courtroom:  13B (Annex)

Judge:       Hon. John A. Houston
Filed:        March 29, 2011
Trial:         None Set

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS ....................................................................................................... 1

    A.   The Parties ........................................................................................ 1

    B.   Synthetic Urine ................................................................................. 1

    C.   Spectrum's Legal Actions ................................................................. 3

    D.   Greens Sues and Quits, and Then Sues Again ................................... 4

III.  SUMMARY OF ARGUMENT ................................................................... 4

IV.   LAW AND ARGUMENT ........................................................................... 6

    A.   Summary Judgment Standard ............................................................ 6

    B.   The Court Should Grant Summary Judgment to Spectrum On

          Counts II-VI of Greens' Amended Complaint. .................................. 6

    C.   The Court Should Grant Summary Judgment to Spectrum On

          Greens' Obviousness Defense. .......................................................... 10

    D.   The Court Should Grant Summary Judgment on Greens'

          Inequitable Conduct Defense ............................................................ 15

          1.   For good reason, inequitable conduct is one of the

                  toughest defenses to prove ...................................................... 16

          2.   Greens cannot prove inequitable conduct because it

                  cannot show that the USPTO would have rejected the

                  '776 patent claims ..................................................................... 17

          3.   Greens cannot prove inequitable conduct because it

                  cannot show intent to deceive ................................................... 19

V.    CONCLUSION ......................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AAT Bioquest, Inc. v. Texas Fluorescence Labs., Inc.*, No. 14-cv-03909-DMR, 2015 WL 1738402, at *16 (N.D. Cal. Apr. 13, 2015)...................................16,17

*Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 655 (9th Cir. 2010) ...................................................................... 9

*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) .................................................................................................. 9

*Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015) ................ 12

*Dominant Semiconductors Sdn Bhd. v. OSRAM GmbH*, 524 F.3d 1254 (Fed. Cir. 2008).......................................................................................... 7

*Exergen Corp. v. Kaz USA, Inc.*, 120 F. Supp. 3d 1 (D. Mass. 2015).................... 16

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ............. 9

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367 (Fed. Cir. 2004)......................................................................................... 7

*Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023 (S.D. Cal. 2011)................................................................................ 9

*In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992)........................................... 12

*K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364 (Fed. Cir. 2012)............................ 12

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) ...................................... 11

*Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011)..................................... 11

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998)........ 7

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000).......... 6

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008) ................................................................................................ 19

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) ......................................................................................... 16

*Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352 (Fed. Cir. 2011)..................... 11

**OTHER AUTHORITIES**

35 U.S.C. § 101................................................................................... 2

35 U.S.C. § 103................................................................................... 17

37 C.F.R. § 1.56 ................................................................................................17

Fed. R. Civ. P. 56(a) ..........................................................................................6

MEMO POINTS AND AUTHORITIES ISO OF AMENDED MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Spectrum moves for summary judgment on Count I.B, and II-VI of the amended complaint by Dr. Greens, Inc. ("Greens"). The Court should grant this motion because, as shown below, Greens cannot meet its burden of proof of any of the claims or defenses asserted in those counts. Thus, there is no genuine issue of material fact for trial on each count, and judgment should be entered accordingly.

## II.     FACTS

### A.      The Parties

Plaintiff/Counterclaim-Defendant Dr. Greens, Inc. is a California corporation with a principal place of business in California.

Counterclaim-Defendant Matthew Green is the owner and operator of Greens. He is not a licensed doctor; he calls his business "Dr. Greens" for marketing purposes.

Defendant/Counterclaim-Plaintiff Spectrum Laboratories, LLC is an Ohio company with a principal place of business in Ohio. ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

### B.      Synthetic Urine

This case involves synthetic urine products. Synthetic urine may be used as a substitute for human urine in medical research, as a baseline to compare with actual human urine, with home urinalysis kits, and in other applications. (*See* U.S. Patent No. 7,192,776, (the "'776 patent"), col. 1, l. 19 – col. 2, l. 34, att'd as Ex. B to Cavanagh Decl.) The fact that the U.S. Patent and Trademark Office has repeatedly granted patent protection to synthetic urine solutions confirms that they serve a

1  useful purpose in society. 35 U.S.C. § 101 (patented inventions must be "new and
2  useful").

3  

9       Around 2004, Greens began to compete against Spectrum by selling its own
10 privately-labeled synthetic urine product that it calls *Agent X*.

18                                                          Among other things, the
19 bacterial growth was decomposing the creatinine protein in the solution, which
20 rendered the product unusable. (*See* '776 patent, col. 4, ll. 20-45.)

21      Mr. Stephens went to work on the problem and discovered that, by dissolving
22 certain biocides with creatinine in relative concentrations to minimize sepsis, he
23 could maintain stable creatinine levels in synthetic urine over time without the
24 solution undergoing noticeable decomposition and without interfering overtly with
25 the chemistry of the synthetic urine solution itself. (*See* '776 patent, col. 4, ll. 20-45
26 and col. 6, ll. 37-54.)

27

28

████████████████████████████████████████████

█████████████████

On January 28, 2004, Mr. Stephens applied for the '776 patent. The USPTO issued the '776 patent on March 20, 2007.

## C.    Spectrum's Legal Actions

In 2009, Spectrum became aware of significant counterfeiting of Spectrum *Quick Fix* in California and elsewhere in the U.S. (Stephens Decl. ¶¶ 5-7, att'd as Ex. D to Cavanagh Decl.) At the same time, Spectrum suspected that several competing synthetic urine products were infringing its '776 patent. (*Id.* ¶ 8.)

As to the counterfeiting, Spectrum investigated in 2009 and ultimately filed a lawsuit against the counterfeiters in the United States District Court for the Central District of California in the case entitled *Spectrum Laboratories, LLC v. US Global Import, Inc. et al.*, Case No. CV 10-329 PSG (JCx). (Stephens Decl. ¶ 7.)

As to potential infringers, Spectrum wrote private letters in July 2009 to each company (including Greens), notified it of the '776 patent and its possible infringement, and asked the company to provide the basis for any belief that it does not infringe. (Stephens Decl. ¶ 8.) In response to Spectrum's letter, Greens did not offer any non-infringement evidence, but merely claimed that the '776 patent was invalid because Spectrum had sold *Quick Fix* since 2000 and, therefore, more than one year before the 2004 filing date. (*Id.* ¶ 9.) Spectrum's *Quick Fix* sales that preceded the '776 patent's application date by more than a year, however, they did not invalidate the patent because those sales did not contain a biocide and, therefore, were not covered by the claims of the '776 patent. (*Id.* ¶ 10.)

In September 2009, Spectrum also sent a "Legal Action Notification" (the "Notice") to retailers of synthetic urine, advised them of the '776 patent, and warned them against selling any infringing products. (Stephens Decl. ¶ 11.) The Notice did not name Greens or *Agent* X, and it did not accuse any specific synthetic urine product or seller of infringement.

### D.    Greens Sues and Quits, and Then Sues Again

On August 3, 2009, Greens filed a lawsuit against Spectrum and Mr. Stephens in the case entitled *Green et al. v. Stephens et al.*, Case No. 3:09-cv-01673-MMA-JMA. The Court dismissed Mr. Stephens for want of prosecution, and Greens voluntarily dismissed Spectrum.

On March 29, 2011, Greens filed this lawsuit, which is almost identical to the first lawsuit. Greens seeks: (a) a declaratory judgment that it does not infringe the '776 patent, (b) a declaratory judgment that the '776 patent is invalid, and (c) money damages on tort and unfair competition claims against Spectrum's Notice.

In discovery of this case, Spectrum obtained evidence that Greens' infringed the '776 patent. That proof consisted of documents, deposition and affidavit testimony, and chemical testing of *Agent X*. Spectrum moved for summary judgment of infringement on that evidence. This Court decided that reasonable minds could dispute whether there was infringement, denied summary judgment, and concluded that the infringement issue "must be determined by the trier of fact." (Order at 11, ECF # 1723.)

### III.   <u>SUMMARY OF ARGUMENT</u>

Spectrum now moves for summary judgment on the claims or affirmative defenses for which Greens carries the burden of proof and does not have sufficient evidence to meet its burden of proof.

In Counts II-VI, Greens asserts federal and state claims for money damages allegedly arising out of a notice of possible infringement that Spectrum sent to retailers in 2009. The Patent Act, however, specifically encourages patent owners to give such notices to potential infringers. Because of that, a plaintiff cannot sue a patent owner for sending such a notice unless the plaintiff shows, by clear and convincing evidence, that the allegations were objectively baseless and sent in bad faith. Greens cannot prove that the Spectrum notice was false or that its warning of potential infringement was objectively baseless. Moreover, Greens has no evidence

that it sustained any compensable damages caused by the notice. For each of these reasons, summary judgment should be granted on those counts.

In Count I.B, Greens seeks a declaration that the '776 patent is invalid as obvious. More specifically, Greens asserts that three synthetic urine prior art references disclose all of the claim limitations in claims 1-4 of the '776 patent, except for the list of "biocides" recited in each patent claim. Greens contends that the Frayne reference--which is a textbook on industrial cooling water treatment-- discloses the biocides listed in the claims of the '776 patent. Greens argues that it would have been obvious to add the biocides identified in the Frayne reference to prior art synthetic urine patents. It bases that position entirely on its assertion that industrial cooling water and synthetic urine both have water in them. According to Greens' theory, any prior art that discloses ways of controlling bacterial growth in water-based solutions (even pool maintenance handbooks) are relevant prior art. Greens' overly-broad theory of what is relevant prior art is contrary to law and must be rejected. Because the Frayne reference on which Greens bases its obviousness defense is not analogous prior art for a synthetic urine invention, as a matter of law, Greens' obviousness defense fails.

Also, in Count I.B., Greens seeks a declaration that the '776 patent is unenforceable due to inequitable conduct on the United States Patent and Trademark Office. Greens' theory is that Spectrum should have disclosed the Frayne cooling water treatment book to the USPTO as prior art. Greens, however, cannot prove by clear and convincing evidence that Spectrum withheld the Frayne with deceptive intent, and it cannot prove that the USPTO would have rejected the '776 patent application if it had been given the Frayne book at that time. Because Greens cannot make any of those showings, and especially not at a clear and convincing level, the Court should grant summary judgment to Spectrum.

## IV.   <u>LAW AND ARGUMENT</u>

### A.   **Summary Judgment Standard**

A court should grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Here, for every claim or defense on which Spectrum is moving for summary judgment, Greens carries the burden of proof. Accordingly, Spectrum's burden of production for this motion is to "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Spectrum's burden of production is met—and as shown below, it has been met— "the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.*

Because Greens cannot show enough evidence to create a genuine issue of material fact on essential elements of certain claims and defenses on which it carries the burden of proof, this Court should grant summary judgment to Spectrum.

### B.   **The Court Should Grant Summary Judgment to Spectrum On Counts II-VI of Greens' Amended Complaint.**

Counts II-VI of Greens' amended complaint are each based on the Notice that Spectrum sent to retailers. Greens alleges that the Notice falsely accused it of infringing the '776 patent and caused it harm. Greens' amended complaint contends that Spectrum's Notice is patent misuse (Count II), false advertising under § 43(a) of the Lanham Act (Count III), unfair competition under California Business & Profession Code § 17200 (Count IV), interference with business relations (Count V), and interference with prospective economic advantage (Count VI).

Two separate reasons for granting summary judgment exist: (i) Greens has no clear and convincing evidence that the Notice contained objectively baseless statements against it, which Greens must prove because infringement notices are statutorily privileged under the Patent Act, and (ii) Greens has no evidence that the Notice caused Greens any compensable harm.

         **1.**    ***The Court should grant summary judgment because Greens cannot prove "bad faith."***

                 **a.**    **Greens must prove bad faith by clear and convincing evidence to proceed on Counts II-VI.**

Because the Patent Act encourages patent owners to notify potential infringers about patents and their possible infringement of them, state or federal claims that seek to impose liability on sending of a notice of possible infringement are barred unless the plaintiff proves "bad faith" by clear and convincing evidence. *See Dominant Semiconductors Sdn Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1263 (Fed. Cir. 2008). The plaintiff must prove both objective and subjective bad faith. *Id.*

"Thus federal authority makes clear that it is not improper for a patent owner to advise *possible* infringers of its belief that a particular product *may infringe* the patent." *Mikohn Gaming Corp. v. Acres Gaming, Inc*., 165 F.3d 891, 897 (Fed. Cir. 1998) (emphasis added) "A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004).

To be objectively baseless, the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits." *Id.* Even if statements are made "without regard to whether they are true," bad faith is not indicated if the information in the statements is objectively accurate. *Dominant Semiconductors*, 524 F.3d at 1261.

**b.      Greens cannot prove bad faith because it cannot show a false statement, let alone one about Greens.**

Greens has not identified anything in the Notice that is false, so that nothing in it can be viewed as objectively baseless. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights."). Instead, the Notice contains only undisputed truths or opinions.

*First*, because *Quick Fix* is covered by the '776 patent, it is (by virtue of the exclusivity granted by the Patent Act) necessarily "the only patented product of its kind in the market." Thus, that statement in the Notice is true. Also, at the time the notice was sent, there were "legal actions Spectrum Labs [wa]s in the process of taking against all synthetic urine manufacturers who [we]re potentially violating [Spectrum's] patent," which included the *US Global* lawsuit that Spectrum filed, the various letters that its outside legal counsel had sent to potentially infringing synthetic urine companies, and the legal investigation that Spectrum's outside counsel had undertaken. Those statements, then, are also true.

The remainder of the letter contains statements of law that are truisms. For example, it is true that the Patent Act imposes liability on any manufacturer, seller, or re-seller of an infringing product as the Notice correctly advises retailers.

Because Greens cannot make a threshold showing that the Notice contained any false statement, the Court should grant summary judgment on Counts II-VI on that basis alone.

**c.      Greens cannot prove Spectrum's case is objectively baseless no matter how the Notice is interpreted.**

Greens urges the Court to construe the Notice as falsely accusing Greens of infringing the '776 patent. That, however, would not be a correct reading of the Notice because it refers to an unnamed group of "potential" infringers. It does not

identify Greens or its *Agent X* product, much less accuse them of infringement. Regardless, even if the Notice were construed as accusing Greens of infringement—which would not be a reasonable reading of the Notice—Greens has not offered clear and convincing evidence that such an accusation would be objectively baseless.

In fact, Greens cannot meet that high burden because the evidence that Spectrum obtained in discovery is sufficient for a reasonable juror to decide that Greens *has* infringed the '776 patent. (*See* Order at 11, ECF # 173 (finding that infringement "must be determined by the trier of fact").) An infringement case declared worthy of a jury trial cannot be declared objectively baseless as a matter of law. *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 958 (S.D. Cal. 1996) ("A denial of summary judgment means that the nonmoving party has produced enough evidence that a rational jury could find in its favor. A party with sufficient evidence to support a jury finding in its favor has probable cause to bring a lawsuit."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("we find it difficult to agree that the inequitable conduct defense was 'baseless' when it survived a motion for summary judgment").

Indeed, if Spectrum's infringement position were objectively baseless, then the case would have ended long ago in Greens' favor. The fact that Greens has litigated the case for over five years without seeking dismissal confirms that Spectrum's infringement case is not objectively baseless.

### 2. *Greens has no damages.*

The Court should grant summary judgment to Spectrum on Greens' Counts II-VI for another reason: Greens has no evidence of damages. To proceed on these money damage claims, Greens needed to offer evidence that the Notice caused it compensable damages. *Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 655 (9th Cir. 2010) (proof that patent-related statements caused actual injury is necessary to obtain damages under Lanham Act); *see also Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023,

MEMO POINTS AND AUTHORITIES ISO AMENDED MOTION FOR SUMMARY JUDGMENT

1038 (S.D. Cal. 2011) (granting summary judgment on tortuous interference of

contract when plaintiff did not provide proof of damages). ███████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████ And Greens did not produce

any documents or testimonial evidence in discovery that could tie any lost sale or

lost customer to the Notice. Greens' lack of damages evidence is consistent with the

fact that the Notice did not refer to Greens or *Agent X*.

   Because Greens has no damages, the Court should dismiss these claims.

**C.**    **The Court Should Grant Summary Judgment to Spectrum On Greens' Obviousness Defense.**

   Count I.B of Greens' amended complaint seeks a declaration that the '776 patent is invalid as obvious. For the reasons explained below, the Court should grant summary judgment to Spectrum on that defense.

### *1.    Summary of Greens' Obviousness position*

   Greens asserts that three synthetic urine prior art references disclose all of the claim limitations in claims 1-4 of the '776 patent, except for the list of "biocides" recited in each patent claim. Greens contends that a 1999 textbook by Colin Frayne, *Cooling Water Treatment: Principles and Practice*, (the "Frayne book") and a related Frayne article, *The Selection and Application of Nonoxidizing Biocides for Cooling Water Systems*, (collectively, the "Frayne references") disclose the biocides listed in the claims of the '776 patent. (*See* Expert Report of Greens' Putative Expert Dale Chatfield, att'd as Ex. E to Cavanagh Decl.)[2]

   Greens argues that it would have been obvious to add the biocides identified in the Frayne references to prior art synthetic urine patents based entirely on the

_____

[2] If Greens is going to rely on those references to oppose summary judgment, then it should submit the entire Frayne book to chambers (and file copies of the book's cover and relevant pages on ECF), and it should file the Frayne reference on ECF.

1  assertion that industrial cooling water and synthetic urine both have water in them.
2  According to Greens' theory, any prior art that discloses ways of controlling
3  bacterial growth in water-based solutions (even pool maintenance handbooks) are
4  relevant prior art. Greens' overly-broad theory of what is relevant prior art is
5  contrary to law and should be dispensed by summary judgment.

6              **2.    *Law on Obviousness***

7        Pre-AIA Section 103(a) of the Patent Act explains when an invention is
8  obvious and not patentable. It states:

9         A patent may not be obtained . . . if the differences between the subject
10        matter sought to be patented and the prior art are such that the subject
11        matter as a whole would have been obvious at the time the invention
12        was made to a person having ordinary skill in the art to which said
13        subject matter pertains.

14  § 103(a).

15        Issued patents are presumed valid and not obvious. *Microsoft Corp. v. I4I Ltd.*
16  *P'ship*, 564 U.S. 91, 95 (2011) To overcome that presumption and invalidate a
17  patent, an accused infringer must prove obviousness by clear and convincing
18  evidence. *Id.*

19        Obviousness is a question of law that is based on consideration of the
20  following four factors: (1) the scope and content of the prior art, (2) differences
21  between the prior art and the claims at issue, (3) the level of ordinary skill in the art,
22  and (4) objective indicia of non-obviousness (sometimes called "secondary
23  considerations"). *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007).

24        Greens has the burden of proving by clear and convincing evidence that each
25  asserted prior art reference qualifies as "analogous" prior art. Thus, Greens must
26  show, again by clear and convincing evidence, that a person having ordinary skill in
27  the art would have found it obvious to select and combine those prior art references

28

in the same way that they are claimed by the challenged claims in the '776 patent. *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011).

### 3.    *Greens cannot prove that the Frayne Reference are relevant prior art.*

Again, to prove obviousness, Greens must prove that each prior art reference on which it relies is relevant prior art (i.e., "analogous prior art"). *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1375 (Fed. Cir. 2012). To "qualify as prior art for an obviousness analysis, a references must qualify as 'analogous art,' *i.e.*, it must satisfy one of the following conditions: (1) the reference must be in the same field of endeavor; or (2) the reference must be reasonably pertinent to the particular problem with which the inventor is involved." *Id.*

The patent itself identifies the field of endeavor. *See In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992). It cannot be disputed that the field of endeavor of the '776 patent is synthetic urine solutions and their manufacture. Therefore, the Frayne references—which deal exclusively with industrial cooling water treatment—are not within the field of endeavor, and Greens has no evidence proving otherwise. *See Id.* at 659 (finding prior art dealing with storage of petroleum not in same field of endeavor as patent to extraction of petroleum).

Because the Frayne references are not in the same field of endeavor, Greens has the burden to show that those references are reasonably pertinent to the particular problem faced by Stephens. A reference is not "reasonably pertinent" unless "as a result of its subject matter," it "logically would have commended itself to an inventor's attention in considering the problem." *K-TEC, Inc.*, 696 F.3d at 1375. The Federal Circuit has warned that not everything that a person having ordinary skill in the art knows is considered analogous prior art: "An alleged infringer should not be able to transform all systems and methods within the common knowledge into analogous prior art simply by stating that anyone would have known of such a

system or method." *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015). Instead, the Federal Circuit admonishes, "the question is whether an inventor would look to this particular art to solve the particular problem at hand." *Id.*

Greens fails to raise a genuine issue of material fact that the Frayne references are reasonably pertinent because Greens does not explain any rational underpinning for the inventor to have consulted cooling water treatment publications in order to solve the problem that he encountered in formulating a new synthetic urine solution. In fact, the undisputed differences between industrial cooling water and synthetic urine foreclose Greens from proving that the former would be reasonably pertinent to problems encountered in synthetic urine design.

Spectrum's chemical expert, Dr. Shri Thanedar, provides sworn facts and opinions which are attached as Ex. F to the Declaration of Matthew J. Cavanagh, that explain the significant differences between chemical treatment of industrial cooling water and formulating a new synthetic urine solution. Those differences include that synthetic urine undergoes bacterial growth due to creatinine in the solution, in stagnant state, in a closed container, at room temperature, and away from sunlight. (Thanedar Decl. at ¶ 25.) Whereas industrial cooling water experiences different bacterial growth caused by things other than creatinine, the cooling water is typically in an open system, is constantly moving (and not stagnant), undergoes significant temperature changes, may be run through filters, and is exposed to sun and artificial light. (*Id.*)

Dr. Thanedar further explains why a person having ordinary skill in the art at the time of the invention of the '776 patent would have had no motivation or good reason to look to Frayne or other cooling water treatment publications to solve the problem with decomposing creatinine that Mr. Stephens was working to solve when he invented what is claimed by the '776 patent. (*Id.* at ¶ 25.)

There is nothing in the Frayne references or any other prior art reference cited by Greens that suggests biocides used in cooling water treatment—where the

concern is cooling water corroding piping and other system equipment—would avoid decomposition of creatinine in a synthetic urine solution. (*Id*. at ¶ 26.) Moreover, Greens points to nothing in the prior art suggesting that such a use would not adversely affect the chemistry of the synthetic urine, its appearance, or its functionality. (*Id*.) Indeed, the fact that the USPTO considered only prior art dealing specifically with synthetic urine further confirms that a cooling water treatment textbook is not analogous art to the '776 patent. (*Id*. at ¶¶ 22-23.)

Greens' putative expert, Dr. Dale Chatfield, provides only a conclusory opinion that Frayne is analogous because cooling water is an "aqueous solution." (Chatfield Decl. ¶ 35 ("because synthetic urines are aqueous solutions, it would have been obvious to one skilled in the art to prevent sepsis in a synthetic urine by using biocides typically used in water treatment").) This opinion, which lacks necessary rational underpinnings, cannot establish that Frayne is analogous art by clear and convincing evidence.

Because Greens cannot prove that Frayne is analogous art, the Court should enter summary judgment in Spectrum's favor on Greens' obviousness defense.

> **4.    Greens' obviousness defense fails for a second reason: it never shows how the different elements would have been obvious to find and then combine in the way the '776 patent claims them.**

The Court should grant summary judgment to Spectrum on Greens' obviousness defense for a second independent reason: it has not offered clear and convincing evidence that a person having ordinary skill in the art would obviously have looked to industrial cooling water treatment books, such as the Frayne references, to find ways to avoid decomposition of creatinine in synthetic urine solutions.

"Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination." *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011). "Rather,

obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention." *Id.*

There is literally nothing in the Frayne references that describes adding biocides to synthetic urine solutions, or indicates which of those biocides would work successfully in a synthetic urine solution to minimize sepsis and decomposition of creatinine, let alone doing so without adversely affecting the chemistry and performance of the synthetic urine for its intended purpose. The conclusory opinion by Greens' expert that "it would have been obvious to one skilled in the art to prevent sepsis in a synthetic urine by using biocides typically used in water treatment" because both are "solutions containing water" is insufficient to meet Greens' burden. Identifying the fact that biocides can be used to kill microbials in a water-based solution, and that most people know that fact, is not enough to prove obviousness according to Federal Circuit precedent. *See Circuit Check*, 795 F.3d at 1335. Rather, Greens needed to show that a skilled artisan would have had some reason or motivation to look to industrial wastewater treatment systems, which it failed to do. *See Unigene*, 655 F.3d at 1363.

Greens has no evidence of anyone ever before applying methods outside of the synthetic urine field to synthetic urine, much less from the cooling water treatment world. Moreover, the Frayne references do not teach anything about dissolving "creatinine and biocide" together "in relative concentrations to minimize sepsis," which are key claim limitations. ('776 patent, col. 6, ll. 37-40.)

**D.    The Court Should Grant Summary Judgment on Greens' Inequitable Conduct Defense**

Count I.B of Greens' amended complaint also seeks to invalidate the '776 patent based on an inequitable conduct defense. Greens argues that Spectrum should have disclosed the Frayne references to the USPTO and that its alleged failure to disclose is inequitable conduct. Greens' defense fails because it cannot prove by

clear and convincing evidence that the Frayne references are "material" to patentability. Greens' defense also fails for the separate reason that it cannot prove by clear and convincing evidence that Spectrum believed the Frayne references were material and made the deliberate decision to withhold those references to deceive the USPTO and obtain a patent.

### 1. For good reason, inequitable conduct is one of the toughest defenses to prove.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). As the Federal Circuit recognized in *Therasense*, the "far-reaching consequence" of this "atomic bomb" remedy made inequitable conduct "a common litigation tactic" that "plagued not only the courts but also the entire patent system." *Id.* at 1288, 1289.

Over time, "low standards for meeting the intent requirement" and "a broad view of materiality" have led to "many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality." *Id.* Thus, in *Therasense*, the Federal Circuit "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290.

To prove inequitable conduct based on an alleged failure to disclose information to the USPTO, the accused infringer must prove by clear and convincing evidence that the patent applicant: (i) failed to disclose a *material* reference; and (ii) acted with the specific intent to deceive the USPTO. "Intent and materiality are separate requirements." *Id.* at 1290, 649 F.3d at 1290.

District courts correctly dismiss inequitable conduct defenses by summary judgment when—as is the case here—the accused infringer does not have clear and convincing evidence of deceptive intent or materiality. *See, e.g., Exergen Corp. v.*

*Kaz USA, Inc.*, 120 F. Supp. 3d 1, 6-7 (D. Mass. 2015) (granting summary judgment where accused infringer had not proven intent to deceive by clear and convincing evidence); *AAT Bioquest, Inc. v. Texas Fluorescence Labs., Inc.*, No. 14-cv-03909-DMR, 2015 WL 1738402, at *16 (N.D. Cal. Apr. 13, 2015) (granting summary judgment based on lack of proof for intent and materiality).

> ### 2.   *Greens cannot prove inequitable conduct because it cannot show that the USPTO would have rejected the '776 patent claims.*

The Court should dismiss the inequitable conduct defense because Greens has not proven that the Frayne references were material under the but-for standard required by *Therasense*. Under that but-for standard, the accused infringer must prove that the USPTO would not have allowed the patent claim had it been aware of the undisclosed prior art. *Therasense*, 649 F.3d at 1291. In adopting this heightened standard for materiality in *Therasense*, the Federal Circuit specifically rejected the lower *materiality* standard that the USPTO applies in prosecution under PTO Rule 56 (37 C.F.R. § 1.56). *Id.* at 1293-94. Adopting that lower materiality standard, the Federal Circuit found, "would inevitably result in patent prosecutors continuing the existing practice of disclosing too much prior art of marginal relevance and patent litigators continuing to charge inequitable conduct in nearly every case as a litigation strategy." *Id.* at 1295.

Greens cannot prove but-for materiality because it cannot prove that the USPTO would not have issued the '776 patent if it had known of the Frayne references. Greens' theory is that the USPTO would have rejected the claims of the '776 patent as obvious under 35 U.S.C. § 103 by combining the Frayne references (and the biocides listed in those references for use in industrial cooling water treatment) with the synthetic urine prior art references that the USPTO did consider.

Greens cannot meet its burden to prove by clear and convincing evidence that would have happened for several reasons. First, Greens cannot show that the Frayne

references were "analogous" prior art because those references address industrial cooling water treatment as a whole, and do not provide any teachings or suggestions about inhibiting the spoliation of creatinine in synthetic urine solutions. Because the references are not analogous art, the USPTO would not have combined the Frayne references with the synthetic urine references. On that basis alone, Greens cannot prove materiality.

Second, even if Greens had proven the Frayne references were "analogous art," it still would not have proven materiality because it has not shown how a person having ordinary skill in the art would have been motivated to look to cooling water treatment books for ways of improving synthetic urine in the ways described by the claims of the '776 patent.

Third, to prove the USPTO would have considered the '776 patent obvious in light of the Frayne references, Greens needed to show that the strong secondary consideration evidence in this case would not have led to a conclusion of non-obviousness. Greens, however, has completely ignored secondary consideration evidence. That evidence—which includes the commercial success of Spectrum's patented product, copying by competitors, and Mr. Stephens' recognition of a problem that others had not perceived—would have foreclosed any finding of obviousness by the USPTO, which further renders the Frayne references immaterial to patentability.

The only "materiality" evidence that Greens offers is from its putative chemistry expert, Dr. Dale Chatfield. But Dr. Chatfield's opinion is neither relevant nor reliable on this issue because he applied the lower, incorrect standard for materiality that the USPTO applies, and has disclosed no opinion on whether the Frayne references would meet the but-for materiality standard that *Therasense* requires. Moreover, his opinion about why a person having ordinary skill in the art would have considered the Frayne references—*i.e.*, that it deals with aqueous

MEMO POINTS AND AUTHORITIES ISO AMENDED MOTION FOR SUMMARY JUDGMENT

solutions—is too simplistic, conclusory, and lacks the rational underpinnings that are required to prove obviousness.

For these reasons, Greens cannot prove materiality and summary judgment should be granted to Spectrum on this defense.

### 3. Greens cannot prove inequitable conduct because it cannot show intent to deceive.

Regardless of how this Court decides the materiality element of Greens' defense, it should still grant summary judgment to Spectrum based on Greens' failure to prove the intent element. "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* at 1290. "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* Rather, to prove intent to deceive, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.*

"Because the party alleging inequitable conduct bears the burden of proof, the 'patentee need not offer any good faith explanation unless the accused infringer . . . prove[s] a threshold level of intent to deceive by clear and convincing evidence.'" *Id.* at 1291, *quoting Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

Here, Greens has not offered any evidence—much less clear and convincing evidence—that Spectrum, Mr. Stephens, or Spectrum's patent attorneys withheld the Frayne references with specific intent to deceive the USPTO. Indeed, even if the Court assumes the Frayne references were known to Spectrum, there are a number of reasonable inferences that can be drawn from the lack of disclosure. For example, the

patentee may have thought that the Frayne references were not material to patentability because they involved cooling water treatment, and did not teach anything about controlling bacteria growth in urine (human or synthetic) solutions. That inference is especially reasonable because the USPTO Examiner specifically considered only urine-related prior art references during prosecution of the patent. That a qualified expert in this area, Dr. Shri Thanedar, believes that the Frayne reference is not material to patentability, further strengthens the reasonableness of the inference that the applicant did not consider the Frayne references material. Indeed, if as Greens contends, any prior art addressing the prevention of microbial growth in aqueous solutions was material, then the applicant would have inundated the USPTO with a thousands of references, including books on pool maintenance.

Because Greens does not have clear and convincing evidence that the Frayne references were withheld with a specific intent to deceive, the Court should grant summary judgment on that separate ground.

**V.   CONCLUSION**

For all the foregoing reasons, the Court should grant summary judgment on Count I.B, and II-VI in favor of Spectrum.


DATED:  March 10, 2017                    MCDONALD HOPKINS LLC

                                          By:    /s/ Matthew J. Cavanagh
                                                 Matthew J. Cavanagh
                                                 Attorneys for Defendant and
                                                 Counterclaimant
                                                 SPECTRUM LABORATORIES, LLC
                                                 and
                                                 Defendant JAMES MATTHEW
                                                 STEPHENS