J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
12544 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:   (619) 906-5748
Facsimile:    (619) 744-5418
chris.jaczko@procopio.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
McDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone:   (216) 348-5730
Facsimile:    (216) 348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>Defendant.<br><br>AND RELATED CROSS-ACTION | Case No. 11cv0638 JAH (KSC)<br><br>**SPECTRUM'S OPPOSITION TO GARY EASTMAN'S EX PARTE APPLICATION TO WITHDRAW AS COUNSEL FOR DR. GREENS, INC. AND MATT GREEN (ECF #278)**<br><br>Judge:         Hon. John A. Houston<br>Mag. Judge:  Hon. Karen Crawford<br>Filed:           March 29, 2011<br>Trial:            None Set |

## I.     INTRODUCTION

After protracting this case for years with overzealous and costly litigation choices, attorney Gary Eastman wants permission to skip trial and walk away based

on his clients' refusing to pay his legal bills. Eastman does not come close to meeting his burden (or ethical obligation) necessary to withdraw. Indeed, his exiting at this final stage would exonerate his poor responsibility in failing to effectively manage this dispute for his client. And it would unfairly leave Greens, Spectrum, and the Court to clean up the expensive, litigation remaining in his wake after he gave Greens the risky advice to file this lawsuit years ago without knowing whether or not Greens infringed the Spectrum patent, and then aggressively litigating the case after the gambit failed.

If there is a payment problem, then Eastman should have raised it sooner. Instead, a few months ago, Eastman chose to prepare and file five pretrial motions, with hundreds of pages of supporting documents, which resembled a scorched-Earth approach, rather than a sound one. His strategy exacerbated the problem by imposing more fees on Greens and inundating Spectrum and the Court with hundreds of pages of briefing on motions that never should have been brought in the first place.

The parties are now on the verge of trial, with hefty legal bills on both sides because of Eastman's vexatious litigation filings. With the case now ready for final resolution, the Court should not allow Eastman to again delay resolution while escaping the consequences of his expensive and aggressive lawyering tactics. The Court should require him to see this case to its end, which is now finally in sight.

## II. BACKGROUND

Rule 3-700(C) of the California Rules of Professional Conduct identify the few times when an attorney may request permission to withdraw from a case. Although Eastman's motion does not mention this rule, the only situation under the rule that could fit is 3-700(C)(1)(f), when a client "breaches an agreement or obligation to the member as to expenses or fees." According to Eastman, "Dr. Greens and Matt Green have continuously failed to pay counsel the agreed-upon attorney's fees, resulting in a substantial outstanding balance." (Mot. at 3, ECF

#278.) Eastman does not say how much is owed or when the unpaid fees were incurred, and he offers no other reason for withdrawal that is recognized under Cal. Prof. Rule 3-700.

With the recent summary judgment rulings, this case is now ready for trial.

## III. LAW AND ARGUMENT

As Eastman's motion acknowledges, the Court has discretion whether to allow him to withdraw, based on consideration of why withdrawal is sought, harm that withdrawal may cause to the administration of justice, prejudice to the other parties, and the degree to which withdrawal will delay the resolution of the case. (Mot. at 3); *see also Metzger v. Imedex, Inc.*, No. 15cv1919-GPC(KSC), 2016 WL 5786945, at *1 (S.D. Cal. Oct. 4, 2016). Consideration of the relevant factors weigh against allowing Eastman to withdraw.

First, as to Eastman's reason, he says there is a "substantial outstanding balance [of legal fees]" owed by Greens. (Mot. at 3.) Typically, "nonpayment of fees alone is insufficient cause for the withdrawal of counsel." *In re Albert*, 277 B.R. 38, 45 (Bankr. S.D.N.Y. 2002) (citing cases). Also, "[w]here an attorney moves to withdraw on the eve of trial, courts generally deny such a motion." *Vachula v. Gen'l Elec. Cap. Corp.*, 199 F.R.D. 454, 458 (D. Conn. 2000). Eastman complains only about money; he does not claim irreconcilable differences, unlawful demands by Greens, a hostile relationship, or a communication breakdown.

Unpaid bills is not a valid reason to withdrawal at this late stage. Having led Greens' litigation for over six years, Eastman knew there was a risk that, if Greens could not pay, Eastman may still be required to continue as counsel. *See In re Albert*, 277 B.R. at 50 (counsel "knew or should have known of the risk that, once he was counsel of record for Plaintiffs, he could be required to continue in that representation whether or not his fees were being paid"). This is especially true because Eastman has not identified new counsel for Dr. Greens, Inc.—which is a

{7016259:}     3     Case No. 11cv0638 JAH (KSC)
SPECTRUM'S OPPOSITION TO GARY EASTMAN'S EX PARTE APPLICATION TO
WITHDRAW AS COUNSEL FOR DR. GREENS, INC. AND MATT GREEN (ECF #278)

corporation and cannot appear *pro se*—so Eastman should know he cannot leave his corporate client without the ability to defend itself and at risk of default. *See Aqua Logic, Inc. v. Esealife, Inc.*, No. 07-CV-2119-H, 2008 WL 11337818, at *1 (S.D. Cal. Jun. 20, 2008) (denying attorney's request to withdraw where no substitute counsel had been named, and lawyering without pay "though unfortunate, is a risk that attorneys face in undertaking representation of a corporation"). Eastman accepted the risk that he has now realized, and he benefited from it by receiving fees for at least for some period(s) of time and a contingency fee possibility on Greens' failed tort claims.[1] Greens' unpaid legal bills are insufficient to obtain a withdrawal.

Second, it would harm the administration of justice to allow Eastman to abandon the case after unloading a backbreaking amount of legal work on the Court, himself, and Spectrum with numerous March 10, 2017 filings. With a "substantial" debt that Eastman made "numerous" attempts to collect (Mot. at 3), Eastman must have known about the payment problem for some time. So he had a heightened obligation—in addition to every attorney's duty to avoid excessive work and costs—to streamline matters and reduce Greens' legal fees. But he didn't do that. Instead, on March 10, 2017, he did the opposite: he ran up Greens' legal bill by filing a barrage of lengthy, redundant, and unnecessary motions, with hundreds of pages of exhibits and briefing, all of which were denied. This further evidences how Eastman did not take reasonable steps to avoid reasonably foreseeable prejudice to the rights of his client as required by Cal. Rules of Prof. Conduct 3-700(A)(2), but rather exacerbated the prejudice with his aggressive and unsuccessful litigation tactics.

While he now asks for mercy, Eastman showed no mercy to Spectrum's counsel when Eastman rejected his courtesy request for a modest extension of time to oppose all of the March 10 filings that sprung unexpectedly from the two-month

---

[1] If Eastman has never received any payment from Greens, then he acquiesced and his motion is six years too late. His motion and declaration are vague as to what billings have not been paid.

bereavement period that Spectrum had consented to for Eastman.[2] Having advised Greens to file this case in 2011 and having run up everyone's legal bills since then by pushing meritless claims, defenses, and theories that have now been dismissed, Eastman must now lie in the bed that he made and see this case through trial.

Third and fourth, granting Eastman's motion will delay trial, likely for many months, which would be prejudicial to Spectrum. Eastman's motion says that Greens should be given "no less than four weeks" to find new counsel (Mot. at 4), and the reality is that granting his motion would probably delay trial for many more months as new counsel—if new counsel is even retained—gets engaged and up to speed. Indeed, the filing of Eastman's motion itself has already delayed trial.

After Spectrum incurred significant legal fees to fight through the barrage of March 10 Greens filings by Eastman, it would be unjust to further delay Spectrum's trial because Eastman's fees on those same excessive filings have not been paid by Greens. Spectrum has spent hundreds of thousands in legal fees and fought for years to get to trial on its patent infringement claims. The fact that Eastman's vexatious litigation choices led to a hefty legal bill that his client will not pay (especially when Eastman knew or should have known that Greens would not or could not pay for them) is not good cause for delaying trial and prejudicing Spectrum's right to collect compensatory damages from Greens. The risk of prejudice is heightened by years of Eastman billings that likely worsened Greens' financial state, so that delay further hurts Spectrum's ability to collect a money judgment from Greens.

## IV. CONCLUSION

For these reasons, the Court should deny Gary Eastman's motion to withdrawal as counsel, and the Court should proceed to set the case for trial

---

[2] (*See* Cavanagh Declaration, ECF #220-2, and email chain between counsel, ECF #220-3.)

Dated: October 10, 2017

Respectfully submitted,

McDONALD HOPKINS LLC

By:   s/ Matthew J. Cavanagh
      Matthew J. Cavanagh

*Attorneys for*
Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Defendant JAMES MATTHEW STEPHENS