Gary L. Eastman (CSB #182518)
Matthew C. McCartney (CSB #226687)
EASTMAN & MCCARTNEY LLP
401 West "A" Street, Suite 1785
San Diego, CA 92101
Telephone: (619) 230-1144
Facsimile: (619) 230-1194

Attorneys for Plaintiff
DR. GREENS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SPECTRUM LABORATORIES, LLC, <br><br> Defendants. | Case No. 11cv0638 JAH (KSC) <br><br> **DR. GREENS' OPPOSITION TO SPECTRUM LABORATORIES, LLC'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AND PREJUDGMENT INTEREST** <br><br> **REQUEST FOR ORAL ARGUMENT** <br><br> Judge: Hon. John A. Houston <br> Courtroom: 13(B) (Annex) <br> Date: July 2, 2018 <br> Time: 2:30 p.m. |

Dr. Greens, Inc. ("Dr. Greens") hereby submits its Opposition to Spectrum Laboratories, LLC's ("Spectrum") Motion for Enhanced Damages, Attorneys' Fees, and Prejudgment Interest. Spectrum's motion must be denied because Dr. Greens conduct was not egregious, nor was this case exceptional, to warrant an award of enhanced damages, attorneys' fees, or prejudgment interest.

**1**

Dr. Greens' Opposition to Spectrum's Motion for Enhanced Damages, Attorneys' Fees, and Prejudgment Interest
11cv0638 JAH (KSC)

## I. Spectrum is not Entitled to Enhanced Damages based on the Jury's Finding that Dr. Greens' Willfully Infringed.

### A. Law on Enhanced Damages

A finding of willfulness merely authorizes, but does not mandate, enhancement. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed Cir. 1992) ("[A] finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages."). *See also Mentor H/S, Inc.v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). Courts frequently deny enhancement despite finding willfulness. *See, e.g., Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1376-77 (Fed. Cir. 2010); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1581-82 (Fed. Cir. 1992); *Modine Mfg.*, 917 F.2d at 543.

While *Read* Factors are considered in determining an award for enhanced damages, no single factor is dispositive. *See Funai Elec. Co., Ltd.*, 616 F.3d at 1376. The decision is "informed by the totality of the circumstances," *Id.* (quoting *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1274 (Fed. Cir. 1999)). These factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer at the time of discovering the patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; (3) the infringer's conduct during litigation; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of

the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Read Corp.*, 970 F.2d at 827.

Further, while the *Read* factors remain helpful in a Court's analysis, the touchstone for determining enhanced damages after *Halo* is egregiousness. *See Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1935 (2016) ("limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement").

**B. <u>The Read Factors Weigh Against an Award of Enhanced Damages and Dr. Greens' Conduct was not Egregious</u>**.

1. <u>Dr. Greens did NOT deliberately copy Spectrum's ideas or design</u>.

In a footnote of Spectrum's motion for enhanced damages, it attempts to disregard this first *Read* factor as irrelevant. (*See* ECF 336.1 at 2 fn1). This factor is highly relevant as to whether an award of enhanced damages should be granted and Spectrum purposely evaded addressing this issue. Spectrum incorrectly argues that because the jury found Dr. Greens' willfully infringed without considering this factor, it is not relevant. This directly contradicts well established case law that states the "totality of circumstances" must be considered and a finding of willful infringement does not mandate an award of enhanced damages. *See Read*, 970 F.2d at 827; *Mentor H/S,*, 244 F.3d at 1380; *Modine Mfg.,* 917 F.2d at 543; *Funai Elec.*, 616 F.3d at 1376-77; *Brooktree*, 977 F.2d at 1581-82.

Dr. Greens did NOT deliberately copy Spectrum's ideas or designs and this factor should weigh heavily against an award of damages. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999) (affirmed denial of enhanced damages; even if certain *Read* factors weighed against infringer; infringer had not copied the invention, engaged in misconduct during litigation, no motivation to harm, and no attempt to conceal).

No evidence whatsoever has been produced in this case that Dr. Greens copied any product manufactured by Spectrum. Indeed, as Mr. Short testified, Dr. Greens never provided any formula for the Agent X product, nor did anyone at DSBR, the manufacturer of all Agent X products, ever review the '776 Patent prior to this lawsuit. Further, Mr. Green testified that he never knew the formula used by Spectrum in its products. Absent a showing to the contrary by Spectrum, it is impossible to conclude that Dr. Greens copied the ideas or designs of Spectrum or the '776 Patent. Thus, *Read* factor (1) favors Dr. Greens.

2. <u>Dr. Greens investigated the scope of the patent and formed a good faith belief that it was invalid</u>.

The second *Read* factor considers whether the infringer investigated the scope of the patent and formed a good-faith belief that it was ***invalid* or** not infringed. *Read Corp.*, 970 F.2d at 827 (emphasis added). Dr. Greens first addressed his good faith belief that the '776 Patent was invalid in a letter to Spectrum's counsel on August 3, 2009. (*See* Complaint ECF 1-3 (Exhibit A) and

ECF 1-8 (Exhibit H)). Dr. Greens' invalidity argument was based on a sale of Spectrum's Quick Fix more than a year prior to the filing date of the '776 Patent in violation of 35 U.S.C. §102(b). While this belief ultimately proved to be incorrect, it was nonetheless based on evidence available at the time, and asserted in good faith.

Another factor which served as a basis for Dr. Greens' belief the '776 Patent was invalid was the blatant copying of the Cooling Water Treatment text book by Mr. Frayne which was incorporated verbatim into the patent application which ultimately issued as the '776, and the fact that Spectrum's counsel failed to disclose the source of the list of biocides and preservatives as required by patent office rules or practice.

The good faith nature of this belief is further supported by the fact that Dr. Greens believed it was being harmed by Spectrum's "Legal Action Notification" letters sent to his current and prospective customers. (*See* Complaint ECF 1-5 (Exhibit E)). If Dr. Greens did not truly believe that Spectrum's patent was invalid and that Spectrum's "Legal Action Notification" letters were causing it harm, it would not have engaged in the costly process of litigating this matter. Dr. Greens' belief was reinforced by Spectrum's failure to respond to its first complaint or its letters to Spectrum's counsel dated September 23, 2009 and October 23, 2009. (*See* Complaint ECF 1-8 (Exhibit H) and ECF 1-9 (Exhibit I)). Fourteen months passed without correspondence from Spectrum. (*See* Complaint ECF 1-10 (Exhibit

J). This led Dr. Greens to believe Spectrum abandoned its allegations of infringement once it realized its '776 Patent was invalid due to the prior sale as alleged by Dr. Greens.

When Spectrum again threatened Dr. Greens' with infringement allegations of the '776 Patent in its letter dated February 11, 2011 (*id.*), Dr. Greens followed common business sense and filed suit. *See Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 2016 U.S. Dist. LEXIS 105762, *23 (N.D. Cal. Aug. 10, 2016) (infringer considered the value of the patents and assessed they may be invalid; threatened with lawsuit, infringer followed common business sense by filing suit). Spectrum previously had the opportunity to refute Dr. Greens' allegations and instead remained silent, leading Dr. Greens to believe that this renewed demand was another baseless attempt to interfere with its business.

When considering the conduct of Dr. Greens, common sense cannot be ignored. Dr. Greens initiated its lawsuit; it would have made no sense to initiate a patent infringement lawsuit if there was not a good faith belief of non-infringement or invalidity; Mr. Green testified specifically to his good faith belief.

At the time of allegations of infringement by Spectrum, Mr. Green testified that Dr. Greens contacted its supplier DSBR and was provided a Material Safety Data Sheet (MSDS) which identified its harmful components – no biocide listed in the '776 Patent was included in the MSDS for Agent X. These documents were reviewed at trial (Exhibits AV, BM). Further, Mr. Green testified that he

questioned DSBR and was informed that sodium benzoate was the only preservative used in the AGENT X formulation. Mr. Short of DSBR testified to the same facts. The various formulations created and archived by DSBR supported these statements (e.g. Exhibits CS, CT, DA, EE, EF, EG, EO, EP, EZ).

Spectrum first sought Summary Judgment of direct infringement on April 3, 2014 (ECF 101). This motion was denied (ECF 121), and discovery continued. Spectrum sought Summary Judgment of direct infringement again on September 11, 2014. (ECF 130). This motion was also denied. (ECF 173). Spectrum again filed for summary judgment (ECF 200).

It was not until October 23, 2017 – a mere 4 months prior to trial – that the court granted Spectrum's motion on validity; the infringement claim and non-infringement defense remained for trial because factual issues existed and reasonable minds could differ. (ECF 285).

Dr. Greens' conduct was not egregious and was based on a good faith belief of patent invalidity and non-infringement. Thus, *Read* factor (2) favors Dr. Greens.

3. Dr. Greens' conduct during litigation does not warrant enhanced damages.

Dr. Greens' behavior as a litigant has been fair and honorable. Dr. Greens defended itself vigorously, but fairly, honestly, and on the merits. Spectrum's allegation that Dr. Greens needlessly increased litigation costs in every phase of

this trial is without merit and fails to acknowledge Spectrum's own wrongful conduct during litigation.

Spectrum has pointed to several instances in the case where it asserts Dr. Greens acted inappropriately; these assertions are misplaced and are addressed in the order presented.

i. <u>Pleadings</u>: Spectrum correctly stated that Dr. Greens twice initiated lawsuits. What Spectrum fails to acknowledge is that Dr. Greens only filed a second complaint because Spectrum failed to respond to the first lawsuit which was intended to resolve the issue, and then fourteen months later, only after the first case was dismissed, reinitiated its threatening letters to Dr. Greens. Meanwhile, Matthew Stephens transferred ownership of the '776 Patent from himself personally to Spectrum.

As stated above, the claims were based on the good faith belief that the '776 Patent was invalid and unenforceable based on the on-sale bar and inequitable conduct, and even if valid, it was not infringed. Dr. Greens reasonably relied on this during the litigation of this case.

ii. <u>Discovery</u>: Contrary to Spectrum's assertions, Dr. Greens' discovery conduct was within reason and while Dr. Greens may have ultimately been required to provide its supplier's name, there was a legitimate dispute regarding its discoverability, and its conduct was by no means egregious. Dr. Greens and Spectrum are direct competitors; to demand that Dr. Greens divulge its confidential

**8**

DR. GREENS' OPPOSITION TO SPECTRUM'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AND PREJUDGMENT INTEREST
11cv0638 JAH (KSC)

supplier of its product is a violation of its highly regarded trade secret. Moreover, since the attorney soliciting the supplier information is indeed the same attorney that prosecuted the '776 Patent application, Dr. Greens was reasonable in objecting to its disclosure. Nevertheless, once directed by the Court to disclose this information, Dr. Greens complied promptly.

    iii.   <u>Sanctions Motions</u>: Dr. Greens sought sanctions against Spectrum to exclude the sample tested by Dr. Thanedar because his lab failed to maintain any sample of the tested product for Dr. Greens' expert to test, despite having enough sample for hundreds of thousands of tests. Such challenge is reasonable as Dr. Thanedar's conduct deprived Dr. Greens from testing the same sample Spectrum relied on to prove infringement. What Spectrum fails to acknowledge is that DSBR is the manufacturer of the AGENT X product, not Dr. Greens. Spectrum learned at the deposition of Mr. Short in 2012 that DSBR retained plenty of the AGENT X powder that would have been sold during the period of the '776 Patent, but never requested any. Instead, Spectrum relied on a pre-issuance sample for its testing, failing to retain any for Dr. Greens' discovery. While this sanction request was ultimately denied following thorough briefing, it was not frivolous.

    iv.   <u>Claim Construction</u>: At the time of submission of the joint claim construction, no specific allegation of infringement was presented. Accordingly, since Dr. Greens was unaware of the specific biocide listed that the AGENT X product supposedly contained it sought construction of all listed biocides (See ECF

9

Dr. Greens' Opposition to Spectrum's Motion for Enhanced Damages, Attorneys' Fees, and Prejudgment Interest
11cv0638 JAH (KSC)

71 - Joint Claim Construction Chart dated January 22, 2013)). Indeed, it wasn't until later (ECF 72) that Spectrum actually sought to narrow its theory of infringement.

  v. <u>Settlement</u>: Dr. Greens invited in-person discussions with Spectrum in hopes of having meaningful discussions; after all, Mr. Green and Mr. Stephens were friends and colleagues before this litigation. Mr. Greens' failure to appear at one settlement conference due to illness was fully explained to the Court, and sanctions were reversed. (*See* ECF 201).

  vi. <u>Summary Judgment</u>: Dr. Greens had filed no prior Summary Judgment motions against Spectrum, as compared to the multiple swipes Spectrum made at Dr. Greens (ECF 101 and 130 were denied in their entirety, and ECF 200 denied in part). The dispositive motions filed by Dr. Greens were intended to narrow the issues before the court for trial, and each focused on distinct basis for relief. Spectrum sought to consolidate the hearings for a later date. Dr. Greens refusal to stipulate to Spectrums request to consolidate the various hearings was based on a desire to receive an early ruling on the motion given the trial scheduling order, and was accompanied by a compromise (See ECF 220-3 and ECF 221-1, paras. 5-6). Spectrum mischaracterizes this issue.

  vii. <u>Trial</u>: Dr. Greens did use more than the 12 hours allotted, and there were many side bars to wrangle over evidentiary issues –many of which were resolved in Dr. Greens' favor. The longer than planned trial was not in any way an

attempt at delay or to needlessly increase the cost of any litigation or expense. Indeed, Dr. Greens even paid Dr. Thanedar's expenses to stay an extra day. Dr. Greens was entitled to present its defense, and appreciates the court's latitude in this regard. To consider this a "dilatory tactic" ignores the fact that Dr. Greens' expert and attorney fees were likewise increased.

Thus, considering the specific issues outlined above, *Read* factor (3) favors Dr. Greens.

    4. <u>Dr. Greens' financial condition strongly weighs against enhanced damages</u>.

Contrary to Spectrum's baseless assertions, Dr. Greens' financial condition is very poor. As Mr. Green testified, the purpose for this litigation was to protect Dr. Greens' market share from the industry wide campaign of Legal Action Notification Letters, and not to punish Spectrum. Dr. Greens is not purposely accruing litigation costs as it has not, and it cannot, pay its legal fees. On September 22, 2017, Dr. Greens' counsel filed an Ex Parte Motion to Withdraw due to the substantial outstanding legal fees Dr. Greens has been unable to pay. (*See* ECF 278 and 278-1).

While Spectrum in its motion asserts that Dr. Greens receives millions in gross revenues, that amount spans many years, covers many employees and expenses related thereto, and does not accurately state the declining market for Dr. Greens. Thus, *Read* factor (4) favors Dr. Greens.

5. <u>This case was a close call</u>.

This case was a close call. Dr. Greens prevailed against Spectrum's initial motion to dismiss (ECF 19). Dr. Greens prevailed against Spectrum's Rule 11 Sanction Motion (ECF 23). Dr. Greens prevailed against Spectrums first two motions for summary judgment on its infringement claims (ECF 101, 130). *See Enplas Display Device Corp.*, 2016 U.S. Dist. LEXIS 105762, *24 (surviving a motion to dismiss and motion for summary judgment weighed favorably for infringer in determining whether the case was a close call).

The fact that a jury was required to determine the case supports a finding that this case was a close call; Spectrum didn't even present a sample in support of its infringement claims that was manufactured during the period of the '776 Patent despite DSBR having it for testing. The jury decided this case; the fact that it made it to the jury demonstrates that reasonable minds could differ. Thus, *Read* factor (5) favors Dr. Greens.

6. <u>Dr. Greens' duration of misconduct does not support enhanced damages</u>.

The duration of Dr. Greens' alleged misconduct cannot be divorced from Spectrum's delay in responding, which effectively enhanced the total. *See i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 858 (Fed. Cir. 2010) (finding that "i4i's delay in bringing" suit…"weighs against enhancement").

As outlined above and as attached to the Complaint (ECF 1), Spectrum first raised its allegations against Dr. Greens in a letter dated July 22, 2009. Dr.

Greens' counsel responded to this letter on August 3, 2009. Spectrum's counsel failed to respond to Dr. Greens' last two letters dated September 23, 2009 and October 23, 2009. Spectrum's counsel likewise failed to file a response to Dr. Greens' first complaint despite being served. Spectrum allowed fourteen months to pass without taking any action, at which point it only sent another letter to Dr. Greens alleging infringement. Spectrum's silence reinforced Dr. Greens' good faith belief that the '776 Patent was invalid and that Spectrum was not following through because its allegations were without merit. Spectrum only finally filed a response and counterclaims to Dr. Greens' second complaint on August 15, 2011—over two years after it first alleged infringement. (*See* ECF 8).

The duration of Dr. Greens' misconduct is in large part due to Spectrum's own delay in taking action and, therefore, should not favor an award of enhanced damages. Thus, *Read* factor (6) favors Dr. Greens.

7. <u>Dr. Greens' performed remedial actions that weigh against enhanced damages</u>.

When Dr. Greens learned of Spectrums assertion through the Legal Action Notification Letters that Dr. Greens may infringe the '776 Patent, Dr. Greens sought clarification from Spectrum's counsel but no clarification was provided. Dr. Greens also inquired of MSDS data and checked with its manufacturer DSBR regarding the sodium benzoate used. Dr. Greens' inquiry provided Dr. Greens

**13**

Dr. Greens' Opposition to Spectrum's Motion for Enhanced
Damages, Attorneys' Fees, and Prejudgment Interest
11cv0638 JAH (KSC)

with a reasonable belief that no infringement was taking place. Thus, *Read* factor (7) favors Dr. Greens.

8. <u>Dr. Greens' had no motivation for harm</u>.

Dr. Greens' had no motivation to harm Spectrum; to the contrary, Dr. Greens thought it was being harmed by Spectrum's "Legal Action Notification" letters which were sent to thousands of its current and prospective customers. This is what led to the litigation between the parties in the first place. Had Spectrum actually responded meaningfully to Dr. Greens in the first case (2009) and identified at that time the basis for any alleged infringement, Dr. Greens would have been able to determine the accuracy of any allegations. However, Spectrum failed to participate meaningfully, and instead shuffled ownership of the '776 Patent from Mr. Stephens to Spectrum to avoid any personal liability. Only after Dr. Greens interpreted the lack of action by Spectrum as acquiescence to non-infringement and dismissed the first case did Spectrum resume its marketplace assault on Dr. Greens' business. Moreover, per testimony by Mr. Stephens and Mr. Short, any number of non-infringing alternatives existed at the time of infringement. Thus, *Read* factor (8) favors Dr. Greens.

9. <u>Dr. Greens' never attempted to conceal his misconduct</u>.

Dr. Greens' never attempted to hide its misconduct; it did the opposite by initiating the lawsuit twice on the good faith belief that he was not infringing the '776 Patent because it was invalid. Further, Dr. Greens on several occasions

sought clarification from DSBR, its manufacturer of the AGENT X products, that there was no infringement. Mr. Short testified that he had his own patent counsel, and despite such counsel, nevertheless continued to manufacture and sell the AGENT X formulation. Moreover, Mr. Short testified at his deposition in 2012 and again at trial that DSBR still has AGENT X powder in its possession; it was never instructed by Dr. Greens to destroy the product, was never told to hide any formulations, or take any other actions of concealment. The sole fact that Spectrum points to is Dr. Greens sell through of its DSBR inventory – a normal process for any distributor – and that alone cannot support an allegation of concealment. Thus, *Read* factor (9) favors Dr. Greens.

In light of the above *Read* factors, and following *Halo*'s precedent of "limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement", Dr. Greens has not behaved egregiously; at worst, Dr. Greens has defended itself vigorously throughout this case where Dr. Greens wasn't the manufacturer, relied on its manufacturer for information on the formula, and no infringing product was sold during the entirety of this case.

## II. Spectrum is not Entitled to Reasonable Attorneys' Fees

The Patent Act requires a case to be "exceptional" for reasonable attorney fees to be awarded to the prevailing party. 35 U.S.C. § 285. The Supreme Court

has defined exceptional as "uncommon, rare, or not ordinary." *Octane Fitness, LLC v. ICONHealth & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

> An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position…or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.
>
> *Id.*

There is nothing exceptional about this case and Spectrum is not entitled to reasonable attorneys' fees for the same reasons enhanced damages are unwarranted. Dr. Greens' conduct was not egregious and his suit was brought in good faith favoring a denial of attorneys' fees. *See Enplas Display Device Corp.*, 2016 U.S. Dist. LEXIS 105762, *26-27 (holding case was not exceptional, attorney fees denied; litigant did not adopt an objectively unreasonable position and advanced a good faith claim of patent invalidity).

The '776 Patent was subject to challenge based on several issues, including a on-sale bar (35 U.S.C. §102(b)) and inequitable conduct based on Spectrum's failure to disclose the Frayne reference from which the entire list of biocides was copied verbatim. The parties' experts Dr. Thanedar and Dr. Chatfield had differing opinions as to the materiality and relevancy of the Frayne reference. It was not until a few months prior to trial that this issue was determined by the Court.

**16**

DR. GREENS' OPPOSITION TO SPECTRUM'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AND PREJUDGMENT INTEREST
11cv0638 JAH (KSC)

However, non-infringement was left for the jury despite being the subject of multiple summary judgment motions by Spectrum.

Applying *Octane* to the facts of this case dictates a denial of Spectrum's request for attorney fees. Spectrum refused to address the infringement issue in the first case, only clarified its infringement position years after first being asked by Dr. Greens, failed to keep any of the sample tested by Dr. Thanedar, and failed to solicit any sample manufactured during the term of the '776 Patent from DSBR. This case was circumstantial at best, and hinged on a single expert test by Dr. Thanedar. While this case was pending for some time for a number of reasons, it nevertheless is a common and ordinary patent infringement case – a product was manufactured, sold, and after an eight day jury trial, ultimately determined to infringe a patent. It was far from exceptional and does not warrant an award of attorney fees.

## III. Spectrum is not Entitled to Prejudgment Interest

The Supreme Court held that 35 U.S.C § 284 does not require a prejudgment interest award whenever infringement is found. *GM Corp. v. Devex Corp.*, 461 U.S. 648, 656-57, 103 S. Ct. 2058, 2063 (1983). A prejudgment interest award is at the court's discretion. *Id.* It may be appropriate to deny a prejudgment interest "where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Id. See also Crystal Semiconductor Corp. v. TriTech Microelectronics Inter., Inc.,* 246 F.3d 1336, 1362 (Fed. Cir. 2001) (upheld refusal to grant

prejudgment interest; patent holder delayed filing suit for two years causing damages to escalate, resulted in prejudice to defendants).

Similar to *Crystal Semiconductor*, Spectrum needlessly delayed litigation for two years by failing to respond to Dr. Greens' first complaint and countless letters, and should be denied an award of prejudgment interest. *Crystal Semiconductor Corp.*, 246 F.3d at 1362.

## IV. Conclusion

It should not be forgotten that Spectrum, throughout the entire case before the jury, repeatedly characterized Dr. Greens' conduct as "willful blindness". Spectrum instead relies solely on the blindness claim; yet has provided no legal authority to this court that such willful blindness can support its sought after enhancement, attorney fees and interest.

For the foregoing reasons, the Court must deny Spectrum's Motion for Enhanced Damages, Attorneys' Fees, and Prejudgment Interest.

Dated: June 5, 2018      EASTMAN & MCCARTNEY LLP

By: /s/ Gary L. Eastman
Gary L. Eastman, Esq.
Attorneys for Plaintiff and Counter-Defendant
DR. GREENS, INC.

## PROOF OF SERVICE

I, the undersigned certify and declare as follows:

I am over the age of eighteen years and not a party to this action. My business address is 401 West A Street, Suite 1785, San Diego, California, 92101, which is located in the county where the service described below took place.

On June 5, 2018, at my place of business in San Diego, California, I served the following document:

**DR. GREENS' OPPOSITION TO SPECTRUM LABORATORIES, LLC'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AND PREJUDGMENT INTEREST**

Via the CM/ECF FILING SYSTEM. The undersigned hereby certifies that he caused a copy of the foregoing documents to be filed with the clerk of the U.S. District Court, Southern District of California, using the CM/ECF filing system, which caused a copy to be electronically mailed to the following CM/ECF Participant(s) noted below:

| | |
|---|---|
| David B. Cupar | J. Christopher Jaczko |
| Matthew J. Cavanagh | Jaczko Goddard LLP |
| McDonald Hopkins, LLP | 4401 Eastgate Mall |
| 600 Superior Avenue East | San Diego, CA 92121 |
| Cleveland, OH 44114 | |

I certify and declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on June 5, 2018 in San Diego, California

By: /s/ Gary L. Eastman
Gary L. Eastman