UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DR. GREENS, INC., MATTHEW GREEN,<br><br>    Defendants. | Case No. 11cv0638-JAH (KSC)<br><br>**ORDER GRANTING MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AND PREJUDGMENT INTEREST** |

## **INTRODUCTION**

Pending before the Court is Plaintiff Spectrum Laboratories, LLC's ("Plaintiff") motion for enhanced damages, attorneys' fees, and prejudgment interest. Doc. No. 336. Defendants Dr. Greens Inc. and Matthew Green (collectively "Defendants") filed an opposition to the motion. Doc. No. 337. The motion is fully briefed. After careful review of the pleadings filed by both parties, and for the reasons set forth below, the Court **GRANTS** Plaintiff's motion for enhanced damages, attorneys' fees, and prejudgment interest.

//
//
//

# BACKGROUND

On February 23, 2018, a jury verdict was entered in favor of Plaintiff and against Defendants. Doc. No. 326. The jury found Defendants liable for direct infringement, indirect infringement, and contributory infringement for multiple products. Id. The jury also found that Defendants' infringement was willful. Id. On May 22, 2018, Plaintiff filed a motion for enhanced damages, attorneys' fees, and prejudgment interest. Doc. No. 336. Defendants filed an opposition to the motion on June 5, 2018. Doc. No. 337.

# LEGAL STANDARD

Pursuant to section 284 of the 1952 Patent Act, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "Damages is the amount of loss to a patentee…A patentee may seek to recover actual damages, usually, the amount of profits actually lost, or if unable to prove actual damages, the patentee is entitled to a reasonable royalty." SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991) (internal citations omitted). Damages "may be split between lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder." State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989). "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." Id.

# DISCUSSION

### A. ENHANCED DAMAGES

The decision to award enhanced damages is committed to the sole discretion of the trial judge. Goodwall Const. Co. v. Beers Const. Co., 991 F.2d 751, 758 (Fed. Cir. 1993). Under section 284 of the 1952 Patent Act, upon a finding of willfulness "the Court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.

Plaintiff argues that Defendants failed to investigate the scope of Plaintiff's '776 patent. Doc. No. 336-1 at pg. 3. Specifically, Plaintiff contends that despite being twice

sued by Defendant for infringement, Defendants did not form a good faith non-infringement belief. Id. Plaintiff also argues that Defendants "needlessly increased litigation costs in every phase of [the] trial." Id. at pg. 4. Plaintiff contends that Defendants' motivation to harm, failure to perform remedial action, and the extended duration and subsequent concealment of misconduct all favor enhanced damages. Id. at pgs. 8-10. Plaintiff also contends that enhanced damages are appropriate because Defendants "lost on all of its defenses," and that Defendants' financial status and size indicate that Defendants can afford enhanced damages. Id. at pgs. 7-8.

In response, Defendants assert that they did not deliberately copy Plaintiff's ideas or design. Doc. No. 337 at pgs. 3-4. Defendants contend that they investigated the scope of Plaintiff's patent, determined Plaintiff's '776 patent was invalid, and proceeded in good faith. Id. at pgs. 4-7. Defendants argue they acted appropriately throughout the course of trial and performed adequate remedial actions by specifically seeking clarification from Plaintiff's counsel regarding possible infringement. Id. at pgs. 8-14. Defendants argue that their lack of motivation for harm, relative short duration of misconduct, which they did not attempt to conceal, and subsequent close litigation results all favor a finding against enhanced damages. Id. at pgs. 12-15.

In patent cases, courts can award enhanced damages when there is willful misconduct. Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S.Ct. 1923, 1933 (2016). The Supreme Court has set forth the following standard for determining willfulness: "A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Id. Another purpose for awarding enhanced damages is to discourage "egregious infringement behavior." Id. at 1932. Courts will award enhanced damages in "egregious cases of misconduct beyond typical infringement." Id. at 1934. "Egregious" culpable behavior, although not required for an enhanced damages award, is another factor the Court will consider. Id. at 1932. Culpability is measured according to "the knowledge of the actor at the time of the challenged conduct." Id. It is undisputed that Defendants knew

3

about the '776 patent. It is also undisputed that Defendants committed willful infringement.

Defendants were Plaintiff's largest distributor of Plaintiff's Quick Fix formulation and '776 patent products. Defendants knew Plaintiff held the '776 patent from the time it issued in March of 2007, and knew that Plaintiff's Quick Fix was created a few months before the '786 patent was filed. Doc. 312 at pg. 31; Doc. No. 318 at pg. 24. Defendants profited handsomely as a result of the business relationship with Plaintiff. Doc. No. 313 at pg. 185.

Armed with this knowledge, Defendants developed its infringing product, Agent X. In developing its product, Defendants did not investigate the '776 patent to obtain a good faith belief that Agent X was not infringing. Defendants did not obtain a legal opinion to determine whether its product infringed (Doc. No. 320 at pgs. 160-63) and did not perform independent chemical testing of Agent X to determine whether it included one of the infringing biocides. Doc. No. 318 at pgs. 29-32. Defendants never obtained the formula from its supplier, never informed its supplier about the existence of '776, and the supplier did not test its own formula to determine whether it included one of the infringing biocides. Doc. No. 318 at pgs. 29-32, 59-60. Notwithstanding, Defendants began selling Agent X, alongside Quick Fix and '776 products, directly competing against Plaintiff's products. Doc. No. 320 at pg. 179.

After receiving cease and desist warnings from Plaintiff, Defendants sold its infringing product for four years and, during that time, did not pursue a non-infringing alternative. Defendants proceeded to file the first of two infringement-related lawsuits against Plaintiff. The first case was dismissed without prejudice. Thereafter, Defendants filed its second action on March 29, 2011 asserting non-infringement. Defendants then sold off their existing Agent X product and failed to maintain any samples of the old Agent X. See Doc. No. 318 at pgs. 38-41. Defendants also secretly changed suppliers and formulas in 2011 without advising Plaintiff or the Court, and demonstrated willfulness in infringing by covering up the infringing activity in its effort to deceive Plaintiff as to the

4

nature of its infringing product. Defendants committed these acts in lieu of undertaking any remedial action. These actions support motivation to harm, willful misconduct, and evidence of guilt. The jury's finding of willfulness was supported by the evidence.

For these reasons and other reasons stated below, the Court finds that Defendants' willful infringement amounts to "egregious infringement behavior." Id. at pg. 1932 ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate…."). Thus, the Court finds enhanced damages appropriate. The Court further finds the willful infringement of Defendants supports a damages award amounting to three times the amount assessed appropriate.

**B. ATTORNEYS' FEES**

Plaintiff also argues that it is entitled to reasonable attorneys' fees. Doc. No. 336-1 at pgs. 10-11. Plaintiff largely makes the same arguments for attorneys' fees that it makes for enhanced damages, contending that this case is 'exceptional' and thus qualifies for attorneys' fees. Id. ("An exceptional case is 'simply one that stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated.") (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749, 1756 (2014)). Defendants contend that this case is not 'exceptional' and Plaintiff should not be awarded attorneys' fees in that Defendants' conduct was not egregious and they litigated in good faith. Doc. No. 337 at pgs. 15-17. Defendants also contend that they did not purposefully cause any of Plaintiff's enhanced litigation costs and are currently unable to pay legal fees. Id. at pg. 11.

Willful infringement by Defendants may support a finding that this case is "exceptional" within the meaning of 35 U.S.C. § 285. See Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc., 606 F.3d 1353, 1357 (Fed. Cir. 2010) ("The prevailing party may prove the existence of an exceptional case by demonstrating litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.") (citing Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002)). Once a Court finds a case exceptional, it has discretion to

5

award attorney's fees. See Aspex Eyewear Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1314 (Fed. Cir. 2010); 35 U.S.C. § 285.

In this case, the record is replete with many pretrial disputes between the parties involving Defendants' discovery avoidance tactics and charging decisions, increasing litigation costs. Defendants postponed the litigation by refusing to identify its supplier, a tactic permitting the supplier to sell off its remaining supply of Agent X. Defendants' behind the scene sell-off was not known to Plaintiff or the Court. Plaintiff did not learn that the supply was sold off until after the Court granted Plaintiff's motion to compel.

Thereafter, issues relating to Defendants' noticing of experts increased litigation and were concerning to the Court. Defendants noticed an expert, knowing that expert was previously contacted and engaged by Plaintiff, and later failed to timely notice another expert. Defendants explained away the lack of timely designation of its expert with inconsistent excuses, ranging from staff issues and inconsistent pre-trial orders to ultimately designating the particular expert as a rebuttal expert. See, e.g. Doc. No. 166 at pgs. 2-6. There were also conflicting assertions related to timing of service of contentions which Plaintiff asserted were not received, thereby causing Plaintiff and the Court to expend significant resources to obtain a handle on these moving goal posts. See Doc. No. 336-1. Plaintiff moved for sanctions against Defendants in November 2011. Doc. No. 23. However, the Court denied Plaintiff's motion for sanctions (Doc. No. 51) essentially relying on the representations of Plaintiff. At one point, the magistrate judge ordered Defendants' counsel to show cause why sanctions should not be imposed for violating Chambers Rules. Doc. No. 99.

While the Court initially ruled in Defendants' favor on some of these matters, Defendants' discovery abuses and pre-trial strategy ultimately caused this Court to re-focus on the underpinnings of the disputes. Defendants' litany of excuses for non-production of documents and its pretrial strategies resulted in this Court's findings resolving on-going discovery disputes in favor of Plaintiff , (See Doc. No. 110, at 7- 19 and Doc. No. 189, which are by this reference adopted and incorporated herein). Thus, it became clear later

6

in the litigation that Defendants' tactics represented a pattern of gamesmanship to obtain an unfair advantage in the litigation.

Another example of pretrial misconduct occurred prior to a scheduled settlement conference. Plaintiff requested Defendants to stipulate to a telephonic settlement conference because its principals were out of district and the parties settlement discussions were acres apart. Defendants refused, representing to the magistrate judge that the parties were close to arriving at a settlement. On the day of the settlement conference with Plaintiff's principals present, Defendant Matthew Greens did not appear, preluding any meaningful settlement discussions. This tactic created enhanced legal and travel costs to Plaintiff.

Defendants filed five motions for summary judgment. The Court denied all but the infringement motion. The motions denied were brought without any reasonable merit. The Court agrees with Plaintiff that these motions stretched Plaintiff's legal resources and increased its cost of litigation. In addition, the Court denied Defendants' motions for sanctions, one of which concerned the alleged spoliation of an Agent X sample by Plaintiff's expert witness, even though Defendants sold off its own product and disregarded their responsibility to test and maintain samples to prove its case.

At trial, Defendants made a number of attempts to introduce evidence excluded in pre-trial proceedings and other inadmissible evidence, creating extended side bars, extending the number of trial days set aside for the trial, and impeding upon the time frame in which Plaintiff had to complete its case in chief, all to the detriment of Plaintiff. In addition, the evidence at trial demonstrated Defendants were and continued to be financially rewarded by its infringing conduct. Up to the day of trial, Defendants continued to sell Agent X and Plaintiff's product, producing substantial revenue. The evidence established that Defendants' earned millions of dollars earned in revenue per year. Their profit from the sale of Agent X represented 71% of total profit, and Defendants' profit from the sale of Plaintiff's product represented only 18% of total profit (Doc. No. 320 at pgs.

145, 182-83), further demonstrating the detrimental impact of Defendants' infringement on Plaintiff's bottom line.

The Court agrees with Plaintiff that this case is exceptional. In addition, the overwhelming strength of Spectrum's evidence presented at trial illuminated the underlying hidden purpose of Defendants' pretrial reasons for their litigation tactics that unreasonably and unfairly extended Plaintiff's litigation resources.

For these reasons, the Court finds attorneys' fees under 35 U.S.C. § 285 are warranted.

**C. Prejudgment Interest**

Plaintiff argues that, as the victorious patentee, it is entitled to a prejudgment interest award of $326,728. Doc. No. 336-1 at pgs. 11-12. Plaintiff asserts that $326,728, the prejudgment interest amount from 2007 through May 22, 2018, is based on prime interest rates reported by JPMorgan Chase. Id. at pg. 12.

In response, Defendants argue that Plaintiff contributed to the delay in litigation by not responding to Defendants' counterclaim and other letters. Doc. No. 337 at pg. 18. Defendants contend that Plaintiff's failure to respond caused a two year delay in the litigation. Id.

The Court may award prejudgment interest when it "is necessary to ensure that the patent owner is placed in as good a position as it would have been had the infringer entered into a reasonable royalty agreement." General Motors Corp. v. Devex Corp., 461 U.S. 648, 655 (1983). Moreover, the Court will award prejudgment interest to the patentee unless there is independent justification that justifies withholding the award. Id. at 657 ("For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit."). Here, the Court does not find any independent justification for withholding prejudgment interest. The Court finds that given the duration of litigation and the nature of Defendants' litigation tactic as described herein, prejudgment interest is necessary to put

8

Plaintiff in as good a position as it would have been had Defendant agreed to a reasonable royalty arrangement. See General Motors Corp., 461 U.S. at 655.

## **CONCLUSION**

Based on the foregoing reasons, Plaintiff's motion for enhanced damages, attorneys' fees, and prejudgment interest is **GRANTED**. **IT IS HEREBY ORDERED THAT**:

(1) Plaintiff's request for enhanced damages in the amount of $2,595,519 is **GRANTED**;

(2) Plaintiff's request for attorneys' fees under 35 U.S.C. § 285 is **GRANTED**; and

(3) Plaintiff's request for prejudgment interest in the amount of $326,728 is **GRANTED**.

**IT IS SO ORDERED**.

DATED: March 22, 2019

_____
JOHN A. HOUSTON
United States District Judge