**EASTMAN MCCARTNEY DALLMANN LLP**
Gary L. Eastman (SBN 182518)
Gary@EMDLLP.com
401 W. A Street, Suite 1785
San Diego, California 92101
Telephone: (619) 230-1144
Facsimile: (619) 230-1194

Attorneys for Plaintiffs/Counter-defendants
Dr. Greens, Inc. and Matthew Green

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation, and MATTHEW GREEN, an individual<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, INC., an Ohio limited liability company<br><br>    Defendants. | Case No. 11cv0638 JAH (KSC)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING MOTION FOR ENTRY OF FINAL JUDGMENT AND TO SET AMOUNT OF ATTORNEYS' FEES**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

Matthew Green and Dr. Greens, Inc. (hereinafter "Defendants") initiated these proceedings in 2011 by filing a declaratory judgment action, namely for patent non-infringement and invalidity, against Matthew Stephens and Spectrum Laboratories, Inc. (Dkt. 1.) Stephens and Spectrum Laboratories, Inc. (hereinafter "Plaintiffs") responded with an answer asserting five counterclaims against Defendants. (Dkt. 8, pp. 14-17.) By the time the case was tried before a jury in February 2018, Plaintiffs had narrowed down their original five counterclaims, which had included state and common-law claims, to simple patent infringement claims only. (Dkt. 292, pp. 6-9.)

On February 23, 2018, the jury returned a verdict in favor of Plaintiffs on the infringement claims and awarded Plaintiffs $865,173 in reasonable royalty damages. (Dkt. 326; Dkt. 344-1, pp. 1-2.) The Court granted Plaintiffs' motion for enhanced damages, pre-judgment interest, and attorneys' fees, which was reflected in the Clerk's entry of judgment on March 29, 2019. (Dkt. 340; Dkt. 341; Dkt. 344-1, p. 2.) A plaintiff desiring attorneys' fees must, ***within 14 days after entry of judgment***, file a motion stating, or at least fairly estimating, the desired amount. Fed. R. Civ. P. 54(d)(2)(B). Judgment was entered March 29, 2019, but Plaintiffs did not file a motion quantifying its attorneys' fees request until May 24, 2019, ***38 days after the 14-day deadline***. (*See* Dkt. 344.)

In the meantime, Defendants filed a notice of appeal in April 2019; the United States Court of Appeals for the Federal Circuit deactivated the appeal and asked this Court to resolve the attorneys' fee issue before an appeal will be considered. (Dkt. 350.) For the reasons discussed below, this Court should decline to award attorneys' fees to Plaintiffs, because their motion was untimely and the delay was inexcusable. In the alternative, Defendants request that this Court reduce the award amount to the extent that the attorneys' labor was not reasonably related to furthering successful causes of action.

## II. ATTORNEYS' FEES SHOULD BE DENIED BECAUSE PLAINTIFFS' MOTION WAS UNTIMLEY AND THE DELAY WAS INEXCUSABLE.

The Court should deny Plaintiffs' request for attorneys' fees because Plaintiffs failed to file a motion quantifying the attorneys' fees within 14 days of entry of judgment, as the Federal Rules require. Rule 54(d)(2)(B) requires that a claim for attorneys' fees must made by motion filed no later than 14 days after entry of judgment. The motion must specify the grounds for relief and must "state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2)(B)(iii). The Federal Circuit has specifically held that Fed. R. Civ. P. 54(d)(2)(B) applies to attorneys' fees awarded in patent infringement cases under 35 U.S.C. § 285. *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1386 (Fed. Cir. 2005). The 14-day timeline can only be extended upon motion to the court showing excusable neglect, per Rule 6(b). *Id.* at 1385-86.

Although Plaintiffs estimated their attorneys' fees in detail in their motion that they eventually filed (*see* Dkt. 344-1), this motion was filed more than a month late. Judgment was entered on March 29, 2019, so Plaintiffs' motion was required to be filed by no later than April 15, 2019. By filing their motion on May 24, 2019, Plaintiffs exceeded the statutory deadline by 38 days. In *IPXL Holdings*, a patent infringement case, the Federal Circuit overturned attorneys' fees awarded to a plaintiff that filed its motion **merely three days** after the 14-day window. *IPXL Holdings*, 430 F.3d at 1386. The Court held that the district court had abused its discretion in allowing the late filing, given the clear language of Fed. R. Civ. Pro 54(d)(2)(B). *Id.* The Court also noted that the plaintiff had not filed a Rule 6(b) motion showing excusable neglect, the only way to extend the 14-day period once it has expired. *Id.* at 1385-86.

In our case, Plaintiffs filed their motion a full 38 days after the April 15 deadline, as compared to the three-day delay in *IPXL Holdings* that warranted reversal of attorneys' fees. In 2013, this Court denied attorneys' fees in a patent case

in which the delay was 39 days. *Multimedia Patent Trust v. LC Elecs. Inc.*, No. 12-cv-2731-H (KSC), 2013 WL 12073797, *8-*9 (S.D. Cal. Oct. 1, 2013). *See also Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1306 (Fed. Cir. 2009) (upholding the district court's denial of attorneys' fees in a patent case where the movant never quantified them with specificity).

Plaintiffs did not file a Rule 6(b) extension request, but even if they had, they would not have been able to show excusable neglect to justify an extension. Courts evaluate four factors in deciding whether a party's delay was attributable to excusable neglect: (1) the length of the delay; (2) the danger of prejudice to the opposing party; (3) the reasons for the delay, including whether the delay was within the movant's control; and (4) the movant's good faith, or lack thereof. *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

### A. Factor 1: Length of Delay

Although the Federal Rules permit the prevailing party to file its motion up to 14 days after entry of judgment, which would have been April 15, 2019, Plaintiffs had the ability to provide their attorneys' fee calculations much earlier. The jury verdict was entered roughly 18 months ago, on February 23, 2018. At this point, the vast majority of the proceedings were over, notwithstanding post-trial motions. In their motion for enhanced damages, attorneys' fees, and prejudgment interest, filed May 22, 2018, Plaintiffs promised to provide their precise attorneys' fees "upon completion of this briefing as well as any potential motion for judgment on unclean hands that Greens stated it would raise as its sole post-trial motion." (*See* Dkt. 366-1, p. 11 n.3.) As Defendants decided not to pursue the unclean hands issue, briefing had been complete as of May 22, 2018—at which point Plaintiffs should have filed their motion as they had promised. Even if the proceedings had not quite concluded at that point, that would not have prevented Plaintiffs from fairly estimating their

attorneys' fees covering the years of litigation starting in 2011. The potential for future litigation expenses does not excuse the timely filing requirement under Rule 54(d)(2)(B), as the plaintiff can "reasonably anticipate" those future expenses and include those estimates in its motion to the court. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 676 (9th Cir. 2017). Therefore, there is no good reason why Plaintiffs waited an entire year, from May 2018 until May 2019, to file their motion with the Court.

### B.   Factor 2: Prejudice

Both Defendants and this Court have been prejudiced by Plaintiffs' late filing of their attorneys' fees request. Because Plaintiffs did not timely file, this Court has been delayed in issuing a final judgment on the merits. Because Defendants filed a notice of appeal in April 2019 after waiting nearly a year for Plaintiffs' motion, this Court was forced to file a motion with the Federal Circuit for limited remand on the issue of attorneys' fees once Plaintiffs finally filed their motion in May 2019. (Dkt. 347.) Defendants filed their notice of appeal on April 26, 2019, within 30 days of the March 29 entry of judgment, to avoid the risk of forfeiting their right to appeal. However, they were penalized for filing their notice of appeal on time: the Federal Circuit deactivated Defendants' appeal pending the outcome of the unresolved attorneys' fees issue. Plaintiffs' untimely filing has not only impeded Defendants' ability to appeal, but it has burdened judicial economy by creating the need for unnecessary motions and procedures.

### C.   Factors 3 and 4: Reasons for Delay and Good Faith

As discussed above, Plaintiffs were able to, and had even promised to, quantify their attorneys' fees once the post-trial motions had concluded in May 2018. Given that Plaintiffs had nearly a year to prepare their motion prior to the entry of judgment, their failure to file within 14 days after the entry of judgment is inexcusable. Plaintiffs have offered no legitimate reasons for the delay.

DEFENDANTS' OPP'N TO MOTION FOR
ENTRY OF JUDGMENT AND FEES                4                     Case No. 8:19-cv-00878

In sum, this Court should deny Plaintiffs' request for attorneys' fees in its entirety because it was untimely. Even had Plaintiffs requested an extension of time under Rule 6(b), the request would not have been granted because Plaintiffs' neglect was inexcusable.

### III. IF GRANTED, ATTORNEYS' FEES SHOULD BE REDUCED TO THE EXTENT THAT THE ATTORNEYS' LABOR WAS NOT REASONABLY RELATED TO FURTHERING SUCCESSFUL CLAIMS.

If the Court chooses to award attorneys' fees despite Plaintiffs' unjustified delay, the Court should reduce the amount to the extent that the attorneys' labor did not reasonably further successful claims. A lodestar analysis applies to requests for attorneys' fees in patent infringement actions. *In re Bluetooth Headset Prods. Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011). The lodestar figure is calculated by multiplying the number of hours the attorneys **reasonably** spent on the litigation by a reasonable hourly rate, taking into account the type of case and the attorneys' experience. *Id.* Hours spent on unrelated or unsuccessful claims do not count as time "reasonably spent" on the litigation and thus must be discounted from the ultimate attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1984); *see also Hotchkiss v. CSK Auto, Inc.*, 949 F.Supp.2d 1040, 1045 (E.D. Wash. 2013) ("Only hours reasonably expended on successful claims should be included in the lodestar calculation; the court must exclude hours billed on unsuccessful or unrelated claims.").

#### A. Lodestar Basis for Reducing the Attorneys' Fee Award

Plaintiffs' attorneys' fee request of $883,426.98, representing more than 2,400 hours of work, is too high because it encompasses time spent on unsuccessful claims that were irrelevant to the patent infringement claims that Plaintiffs ultimately litigated, and prevailed on, at trial.

Plaintiffs, who are based in Ohio, originally asserted five counterclaims against Defendants in 2011: 1) patent infringement under the Patent Act, 35 U.S.C. § 271; 2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); 3) violations of Ohio's Deceptive Business Practices Act, Ohio Rev. Code § 4165.01-04; 4) violations of California's unfair competition statute, Cal. Bus. § Profs. Code § 17200; and 5) malicious litigation under Ohio common law. (Dkt. 8, pp. 14-17.)

Plaintiffs maintained all five of these claims until formally withdrawing counts 2-5 one month before trial, in January 2018. (*See* Dkt. 292, pp. 6-9 (listing all causes of action to be tried).) At trial in February 2018, Plaintiffs ultimately litigated and succeeded only on patent infringement (count 1).

### 1. The Four Dropped Claims Were Unrelated to the Successful Patent Infringement Claim.

In cases like ours where the prevailing party succeeded on only some of the claims originally brought, a lodestar analysis first asks whether the failed claims were unrelated to and separable from the successful ones. *Hotchkiss*, 949 F.Supp.2d at 1048, citing *Hensley*, 461 U.S. at 434-35. A claim is unrelated and separable if it does not share the same "common core" of facts and legal theories. *Id.*, citing *Hensley*, 461 U.S. at 434-35. Attorneys' fees for time spent on unrelated, separable claims may not be awarded. *Id.*

In a case factually similar to ours, the district court reduced the plaintiff's attorneys' fee award "to account for the fact that much of counsel's time was devoted to pursuing claims that were dropped or dismissed." *Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 172 (1st Cir. 2013). A fired employee had originally alleged six claims against her former employer, including two discrimination-based claims, a civil rights claim, wrongful termination, intentional infliction of emotional distress, and defamation. She voluntarily dropped the civil rights, wrongful termination, and defamation claims, and the intentional infliction claim was dismissed before trial. *Id.* Only the two discrimination-based claims were tried, and

the plaintiff eventually prevailed on only one of her original six claims. *Id.* On appeal, the First Circuit held that the district court did not abuse its discretion in reducing the award to reflect the four dropped claims that did not contribute to the ultimate result. *Id.* at 173.

Just like in *Diaz*, Plaintiffs in our case should not receive attorneys' fees on behalf of "unsuccessful and largely independent claims." *Diaz*, 741 F.3d at 173. Plaintiffs' four dropped claims were based in the Lanham Act, Ohio's Deceptive Business Practices Act, California's unfair competition statute, and Ohio common law. These are legal theories entirely distinct from patent infringement, and just like the extraneous non-discrimination-related claims in *Diaz*, these are totally separate issues not deriving from the same "common core" of facts determining whether Defendants practiced Plaintiffs' patented invention. These dropped claims had little to no bearing of the ultimately litigated patent issues—similar to how wrongful termination, intentional infliction of emotional distress, defamation, and civil rights issues were found to have no bearing on the plaintiff's successful discrimination claim in *Diaz*.

A significant percentage of Plaintiffs' attorneys' labor, especially during Phases I and II as set forth in Plaintiffs' Motion for Entry of Final Judgment and to Set Amount of Attorneys' Fees (Dkt. 344-1, p. 7), was devoted to legal research, drafting, and discovery related to the dropped claims. For example, Plaintiffs state in their motion that the hours billed during Phase I (March 29, 2011 through December 2011) was spent conducting activities including evaluating, drafting, revising, and filing counterclaims against Defendants. (Dkt. 344-1, p. 9.) During Phase II (January 1, 2012 through February 28, 2014), Plaintiffs' attorneys conducted discovery, including discovery on matters related to the dropped claims, and filed amended counterclaims that still maintained all five causes of action. (Dkt. 344-1, pp. 10-11; Dkt. 95.) Because the factual analysis for the four dropped claims was unrelated to investigation of patent infringement, hours spent on the false advertising and

DEFENDANTS' OPP'N TO MOTION FOR
ENTRY OF JUDGMENT AND FEES         7         Case No. 8:19-cv-00878

malicious prosecution claims were not "reasonably necessary to the effective prosecution of plaintiff's [successful] claims." *Designing Health, Inc. v. Erasmus*, No. CV 98-4758 LGB (CWx), 2003 WL 25902463, at *12 (C.D. Cal. May 1, 2003), citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 n.4 (9th Cir. 1984). As "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" the Court should reduce the attorneys' fee award to account for hours spent on the unrelated claims. *Hensley*, 461 U.S. at 435.

### 2. The Four Dropped Claims, Even if Related to the Successful Patent Claim, Resulted in Expenses Not Reasonably Necessary to Achieve the End Result.

Even assuming, arguendo, that the four dropped claims were related to the successful patent claim, attorneys' fees may be awarded only if "expenditure of counsel's time was reasonable in relation to the success achieved," per the second step of the lodestar analysis. *Hensley*, 461 U.S. at 436. To illustrate that point, *Hensley* noted that, hypothetically, a claimant who prevailed on only one out of six claims should not be entitled to a full attorneys' fee award. *Id.* This principle applies even when the unsuccessful claims were "interrelated, nonfrivolous, and raised in good faith." *Id.* That is essentially the case here, where Plaintiffs' attorneys for six years invested time and labor pursuing five claims, only one of which was ultimately litigated at trial.

If the hours spent on the related but unsuccessful claims cannot be precisely identified, the Court should base its award on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

The time spent pursuing the dropped claims in this case was not significant to the ultimate outcome of the litigation. Even if loosely based on the same circumstances as the patent claims, Plaintiffs' false advertising and malicious prosecution claims resulted in more attorneys' hours than reasonably necessary to

prevail. The dropped claims required Plaintiffs to establish Defendants' deceptive business practices and bad-faith litigatory intent, which are irrelevant to the technical question of whether Defendants infringed Plaintiffs' patent. None of the four dropped claims are even based on the Patent Act, showing at best a tenuous connection at best to the infringement allegations. Thus, the dropped claims resulted in extra attorneys' hours that did not reasonably further the objectives of the litigation, and the Court should adjust the fee award accordingly.

### B. Proposed Formula for Reducing the Award Amount

Although *Hensley* notes that there is "no precise rule or formula" for reducing a fee award under a lodestar analysis, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436-37.

Plaintiffs, in their Motion for Entry of Final Judgment and to Set Amount of Attorneys' Fees, divide their attorneys' fees into five phases of litigation. Phases I-IV cover the time period (March 29, 2011 through November 30, 2017) during which Plaintiffs' four non-litigated counterclaims were still active. Therefore, Defendants will assume that a calculable percentage of the 1,720 hours spent on Phases I-IV did not reasonably further the successful patent claim. Acknowledging that the bulk of the attorneys' time was probably spent on the patent-related issues, Defendants propose that this Court assume 30% of the 1,720 hours were not reasonably necessary to advance the successful claims. Likely more time was spent on the four dropped claims, considering that these claims technically comprised 80% of Plaintiffs' total claims. However, Plaintiffs state that they have requested compensation for only 88.7% of their attorneys' billable hours, which, if true, is a start toward discounting the unnecessary hours. (Dkt. 344-1, p. 7 n.3.)

Plaintiffs have requested $603,262.94 representing the 1,720 hours for Phases I-IV. (*See* Dkt. 344-1, p. 7.) When a 30% reduction is applied, this amount is reduced to $422,284.06. Then the total award, including fees for Phase V, is $702,448.10. This amounts to a roughly 20% reduction of Plaintiffs' total proposed fee award.

Reducing an attorneys' fee award via a lodestar analysis is an inherently equitable judgment. *Hensley*, 461 U.S. at 436-37. Given that Plaintiffs' four dropped claims were tangential to the ultimate patent litigation and required additional labor from Defendants' attorneys over a six-year period, Defendants' overall proposed 20% reduction of the attorneys' fee award is equitable.

## IV.     CONCLUSION

Defendants respectfully request that this Court deny Plaintiffs' motion for attorneys' fees, because Plaintiffs inexcusably failed to file their quantified request within the required 14-day period, resulting in prejudice to Defendants and the Court. If attorneys' fees are to be awarded, Defendants request that the Court apply the lodestar method to reduce Plaintiffs' proposed amount to $702,448.10, accounting for expenses that did not reasonably advance the ultimate litigation.

DATED:  August 23, 2019            **EASTMAN MCCARTNEY DALLMANN LLP**

By:     /s/ Gary L. Eastman
Gary L. Eastman
Attorneys for Plaintiffs/Counter-defendants
Dr. Greens, Inc. and Matthew Green

## CERTIFICATE OF SERVICE

I certify that on August 23, 2019, I electronically filed the foregoing DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING MOTION FOR ENTRY OF FINAL JUDGMENT AND TO SET AMOUNT OF ATTORNEYS' FEES with the Clerk of the Court for the United States District Court, Southern District of California, by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Executed on August 23, 2019, at San Diego, California.

/s/     *Gary Eastman*

ENTRY OF JUDGMENT AND FEES            11            Case No. 11cv0638 JAH (KSC)C