J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street Suite 2200
San Diego, CA 92101
Telephone:  (619) 906-5748
Facsimile:   (619) 744-5418
chris.jaczko@procopio.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East
Suite 2100
Cleveland, OH 44114
Telephone:  (216)348-5730
Facsimile:   (216)348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>        Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>        Defendant.<br><br>AND RELATED CROSS ACTION | No.  11cv0638 JAH (KSC)<br><br>**SPECTRUM'S REPLY TO GARY L. EASTMAN'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>**District Judge:** Hon. John A. Houston<br>**Magistrate Judge:** Hon. Karen S. Crawford |

## I. Introduction

The nearly 30 pages of combined briefing and 396 pages of supporting exhibits by Dr. Greens, Matt Green (collectively, "Greens"), and Gary Eastman, contrary to their convoluted arguments, *establish* rather than *disprove* a violation of this Court's valid February 23, 2018 order (the "Order").

The purpose of the Order is clear: with the jury verdict of willful infringement and monetary damages in place, the Order was to stop Greens and Eastman from avoiding the responsibility of that verdict. Unfortunately, as the Court repeatedly has seen in this case, (*e.g.*, as detailed in ECF #357), Greens and Eastman once again chose a different path than following the law. An hour after the jury verdict and Order, Eastman and Greens pushed forward on an unlawful business scheme to evade judgment while unjustly enriching themselves. The Order – asserted once the jury determined monetary damages to compensate Spectrum was appropriate – was proper, as shown by Eastman and Greens' improper behavior.

Further, Greens and Eastman waived any objection to the Order. Greens and Eastman neither objected on February 23, 2018 when the Court entered the Order nor objected three days later when the Court and parties further discussed the issue. In fact, as outlined below, Eastman specifically stated "I – we have no challenge to that." They did not alert the Court about Eastman *filing suit* against his client to foreclose on his client's assets (including on "any and all of debtor's cash and non-cash proceeds … and property in a safe-deposit box") so that he – and not Spectrum Labs – would be made whole. Greens never filed a JMOL motion challenging the jury verdict, and did not oppose the Court entering a final judgment in this case, which further supports the correctness of the Court's Order to enforce the monetary damages determined both by the jury and the Court.

If Greens and Eastman believe that their unlawful behavior was somehow appropriate and, as set forth in the response, it was the Court who got it wrong, then they should have raised their objection two years ago. They should have also been forthright about what they were doing. They, however, did no such thing, and they can ask an appeals court to determine whether their post-verdict behavior was appropriate and whether the Court holding them responsible was as well.

Finally, before allowing any argument or ruling on the appropriate sanction at the February 20, 2020 hearing, Spectrum requests that it be allowed the opportunity

to examine Mr. Green and Mr. Eastman as witnesses. This will further assist the Court in determining the facts and ultimately the appropriate sanction.

## II. Argument

### A. Eastman and Greens Understood and Violated the Order.

#### 1. The Order was Clear and Understood by All.

Both Greens and Eastman take the hyper-technical position that the term "monies," as used in the Order, was strictly limited to cash. However, the term "monies" means "assets or compensation in the form [of] or readily convertible to cash," or "[a]ssets that can easily be convertible to cash." *See, e.g.*, Webster's Third International Dictionary 1458 (1993); Black's Law Dictionary (9th Ed. 2009). But the fatal error in Eastman and Greens' reading of the Order is not limited to the word "monies"—it also depends on the word "monies" being limited by the words "accounts held," which it is not. (Eastman Decl. Ex. M. ln. 20 at 108 to ln. 4 at 109). Instead, the Order is broader and bars the transfer of "monies" from "accounts held" *and* "other entities controlled or owned by Dr. Greens or you." (*Id.*)

Further, Eastman's own words (conveniently omitted in his brief) just three days after the Order, on February 26, 2018, confirm that exact understanding of the Order:

> There will – I don't think that the Court's concern about, you know, ***wholesale transmissions of large sums of money <u>or assets</u> from one group to another is needed, to the extent they exist.*** But with regard to a limited stay on bulk transfers, I – we have no challenge to that.

(*See* Eastman Decl. Ex. O ln.17 to ln. 22 at 128) (emphasis added).

The record reflects not only the correct understanding of the ruling, but the fact that Eastman *was orchestrating* such a "wholesale transmission[] of large sums of money *or assets*," **i.e., the entirety of Dr. Greens** to himself, at that very moment, while stating the opposite to the Court. Eastman's false statement to the Court is an additional basis for contempt.

## 2. Eastman and Greens Repeatedly Violated the Order.

Even if the Order was narrowly limited to cash, the mountains of exhibits filed with Eastman's declaration prove a transfer of "monies" from "accounts held" from Greens to Eastman occurred. For example, the "Notice of Public Sale" in Eastman's Exhibit W lists among Dr. Greens, Inc. and Matthew Greens' assets: "**any and all** of debtors' accounts receivable, deposit accounts and final money judgments;…" and "**any and all** of debtors' cash and non-cash proceeds (including insurance proceeds) and property in a safe deposit box." (*See, e.g.*, Eastman Decl. Ex. W at 318) (emphasis added).[1] The excerpts of deposition testimony provided only in partial form as Eastman Exhibit T also reveals that among his assets include "accounts receivable." (Eastman Decl. Ex. T at 195-96).[2]

Further, Eastman and Greens' conduct throughout the period since the Order demonstrates that they had little regard for the Order. Eastman wrongly points the blame towards the Court for failing to "elicit[] any opposition from the Green Parties," (Eastman Resp., ECF # 374 at 9),[3] Spectrum for failing to make the connection that "worked out a resolution" meant "take control of all asset," (*id.* at 16), and Spectrum again for not filing numerous post-trial motions (*id.* at 20-21).

Eastman's conduct ignoring the Order cannot be overlooked. When the Order was first discussed on February 23, 2018, Eastman did not object, and stated nothing about his security interest in Greens' assets and monies nor the fact that he had, allegedly, called his attorney *that day* to perfect that interest with the intent of collecting on his $800,000 in outstanding fees. (Eastman Resp. at 11; Eastman Decl. ¶ 17; Ex. M at 108-109). When the topic of the Order came up again *three days*

---

[1] These statements are repeated throughout the Exhibit W and is also found in Exhibit K, the First Amendment to the Attorney Client Agreement. That is worth noting because it shows that Eastman knew that he could be acquiring *all* of Greens' cash as a result of the security interest he was perfecting.

[2] Eastman asks the Court to take judicial notice of this exhibit. Spectrum objects to this request because they have not provided the entire deposition transcript nor all of the exhibits. Spectrum requests that these be provided in their *entirety* in advance of the hearing on Thursday, February 20, 2020.

[3] Even though three days later, the Court allowed Mr. Eastman the opportunity to provide objections.

*later*, Eastman indicated that "I—we have no challenge to that." (Eastman Decl. Ex. O ln.17 to ln. 22 at 128).

When Eastman initiated a law suit in June, 2018 against Greens to collect its assets, Eastman did not inform the Court or Spectrum. When Eastman took control of the Greens assets following a public sale on September 19, 2019, he did not inform the Court or Spectrum. And finally, when Eastman moved the business from San Diego to Vancouver, Washington, he similarly neglected to inform the Court and Spectrum. Eastman's lack of candor shows that he sought to hide what he was doing.

### B. The Order is Valid and Eastman Waived All Objections.

Eastman also takes the position that the Order is invalid *ab initio*, arguing that the Order was either "transparently invalid" and/or "had long expired." (Eastman Resp. ECF# 374 at 19-23). Eastman neglects to mention that he specifically *did not object* to the arrangement, representing to the Court that "with regard to a limited stay on bulk transfers, I – we have no challenge to that." (Eastman Decl. Ex. O ln.17 to ln. 22 at 128). Further, the Order is valid and this Court had the inherent power to make it. The cases cited by Eastman are all distinguishable.

#### 1. Any Objections to the Validity of the Order Are Waived.

Eastman and Greens have waived all objections to the validity of the Order. A waiver is "an intentional relinquishment or abandonment of a known right." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999); *see also*, *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829 –830 (9th Cir.1957). The following are "the requirements of a waiver: (1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit." *In re George*, 177 F.3d 885 (9th Cir.1999). All of these elements are plainly present here: (1) Greens and Eastman had the right to object to

the Order, both at the time it was entered and three days later; (2) Mr. Eastman was explicitly given notice of the Order and given the opportunity to object; and (3) Eastman explicitly indicated to the Court that he and Greens did not have objections to the Order when he stated "with regard to a limited stay on bulk transfers, I – we have no challenge to that." (Eastman Decl. Ex. O ln.17 to ln. 22 at 128).

### 2. The Order was, and is, Valid.

The Order was, and is, valid, and the case law cited to support the contention that the Court did not have the inherent authority to make such an order is distinguishable. *Grupo* and the line of cases cited all contemplate an injunction at a stage of litigation *far* before jury verdict. *E.g.*, *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 312 (1999) (temporary restraining order entered *same day* of filing case); *Zhenhua Logistics (Hong Kong) Co. v. Metamining, Inc.*, No. C-13-2658 EMC, 2013 WL 3157906, at *5 (N.D. Cal. June 20, 2013) (complaint filed June 10, 2013; motion denying in part request for injunction, ten days later, June 20, 2013). Here, the jury rendered its verdict, including monetary damages. That verdict was entered into the record and has been published. *See*, 2018 WL 1459813. Greens never moved for Judgment as a Matter of Law and consented without objecting to a final judgment. For all intents and purposes the "judgment establishing the debt" contemplated by *Grupo* had been in place as of the time of the Order. *Grupo*, 527 U.S. at 319. While the exact amount of the judgment had not been finalized, all of the pre-requisite steps had been taken. It was not a matter of "if" but a matter of "when." *Grupo*, thus, not only does not bar the Order; it expressly permits it.

### C. The Court Should Allow Questioning before Argument.

While a violation of the Order is shown by the documents and the brief, the entire scope of the conduct of Greens and Eastman remains unclear. It is revealed that Gary Eastman now apparently owns and operates Dr. Greens through Pacific Inventory Services, LLC by "promoting and processing sales; filling orders;

maintaining payroll, inventory, and the website; hiring and managing employees; etc." (Eastman Response, ECF # 374 ln. 8-11 at 13).  However, the exact scope of that relationship is not transparent from the exhibits or the responses.  Spectrum seeks to cross-examine these witnesses since each provided testimony by declaration.

### D. The Court has Inherent Power to Sanction Willful Disobedience and Should Do So.

Eastman, ironically, characterizes Spectrum's proposed sanctions as "frivolous." As the Court exhaustively described in its November 18, 2019 Order, the common theme in this case has been Eastman and Greens' continued malfeasance and disrespect of Spectrum, the Court, and, generally, the rule of law. (ECF# 357).  Greens and Eastman created numerous unnecessary disputes that delayed and avoided discovery production that continually increased costs. (*Id.* at 6). They misled the Court causing it to rule in a fashion it wouldn't have but for the misrepresentation. (*Id.* at 7). Overall, as the Court noted, "Defendants' litigation tactics represented a pattern of gamesmanship to obtain an unfair advantage in the litigation." (*Id.* at 9). Faced with yet another glaring example of Eastman and Greens' gamesmanship, the Court has the inherent power to sanction willful disobedience and should do so. *Chambers v. NASCO, Inc*., 501 U.S. 32, 47, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d 27 (1991) (recognizing the inherent power of federal courts to sanction willful disobedience).

### E. The Court Should Grant Final Judgment.

In its February 14, 2020 order, (ECF #375), the Court vacated the February 24, 2020 hearing and stated that the Motion for Judgment (ECF #363) was suitable for adjudication without oral argument.  The Court should enter judgment against Matthew Green, Dr. Greens, and their agents, assigns, acquirers, and successors-in-interest, including, but not limited to, Gary Eastman, Eastman APLC, Eastman McCartney, AR Acquisitions, LLC, and Pacific Inventory Services, LLC for all money damages, including attorneys' fees, costs, and interest.

### III. Conclusion

For the foregoing reasons, Counterclaim Plaintiff Spectrum submits that Greens and Eastman violated the Court's valid Order and should be in held contempt.

DATED: February 18, 2020                    MCDONALD HOPKINS LLC

                                            By:   /s/ David Cupar
                                                  David Cupar

                                                  Attorneys for Defendant and
                                                  Counterclaimant SPECTRUM