SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
  Robert P. Allenby, SBN 156926
  allenby@sullivanhill.com
  Rebecca M. O'Grady, SBN 273761
  ogrady@sullivanhill.com
600 B Street, 17th Floor
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372
Our File No.: 2028-18078

Attorneys for Respondent GARY L. EASTMAN

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MATHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>Defendants.<br><br>AND RELATED CROSS ACTION | Case No. 3:'11-cv-00638-JAH-KSC<br><br>RESPONDENT GARY L. EASTMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON PARTIAL FINDINGS<br><br>[Fed. R. Civ. P. 52(c)]<br><br>SPECIAL BRIEFING SCHEDULE ORDERED [See Doc. # 378]<br><br>Date:          March 18, 2020<br>Time:          10:00 a.m.<br>Courtroom:  13B<br>District Judge: Hon. John A. Houston<br>Mag. Judge:  Hon. Karen S. Crawford |

Case No. 3:'11-cv-00638-JAH-KSC

# TABLE OF CONTENTS

PAGE

TABLE CONTENTS................................................................................ i

TABLE OF AUTHORITIES .................................................................. iii

I.  INTRODUCTION .......................................................................... 1

II. DISCUSSION ................................................................................. 1

   A.  Standards Governing Motions for Judgment on Partial Findings ..... 1

   B.  Standards Governing Enforcement of Injunctions by Contempt....... 3

      1.  Spectrum Has the Burden of Persuasion to Establish Each Element of Contempt by Clear and Convincing Evidence ................................................................................ 3

      2.  An Order Must Be Clear to Be Enforceable by Contempt, and Any Ambiguities Must Be Resolved in Favor of the Alleged Contemnor .......................................... 4

   C.  The Order Clearly Enjoined Only Transfers of "Money" ................. 5

   D.  Spectrum Has Not Shown Any Transfer of Money Violative of the Order ................................................................................ 10

      1.  The Only Transfer of a Security Interest in Money Predated the Order .................................................................. 13

      2.  Perfection of the Security Interest Was Not a Transfer of Money ................................................................................ 14

      3.  The Assignment; the Collection Action; the Foreclosure Sale; and the Move to Washington Were Not Transfers of Money ................................................................................ 15

   E.  Any Violation of the Order Was the Product of a Good Faith, Reasonable Interpretation by Mr. Eastman ...................................... 16

   F.  The Order Was Transparently Invalid ............................................. 19

      1.  The Order Was Void *Ab Initio* and Transparently Invalid ...... 20

         a.  The Order Was Void *Ab Initio* Per California Attachment Law ............................................................ 20

/ / /

           b.     Any Temporary Protective Order Has Long
Expired ......................................................................... 22

      2.     The Order Is Not Salvageable Under Rule 65 ......................... 23

III.    CONCLUSION ............................................................................ 25

1

## TABLE OF AUTHORITIES

2 CASES                                                                    PAGE

3 Aggregates Assoc., Inc. v. Packwood,
4        58 Cal. 2d 580 (1962).................................................................... 10

5  Alaska Wilderness League v. EPA,
6        727 F.3d 934 (9th Cir. 2013)............................................................ 5

7 Arnold v. Hadgis,
8        102 Cal. App. 2d 88 (1951).............................................................. 10

9 Bank of Stockton v. Diamond Walnut Growers,
10        199 Cal. App. 3d 144 (1988)............................................................ 15

11 Bank of Wash v. Burgraff,
12        687 P.2d 236 (Wash. Ct. App. 1984) ............................................... 12

13 Beeman v. Anthem Prescription Mgmt., LLC,
14        741 F.3d 29 (9th Cir. 2014).............................................................. 12

15 Bergum v. Weber,
16        136 Cal. App. 2d 389 (1955)............................................................ 11

17 In re Berry,
18        68 Cal. 2d 137 (1968)....................................................................... 19

19 Bischoff v. Leg Blue,
20        No. D052130,
        2009 Cal. App. Unpub. LEXIS 515
21        (Cal. Ct. App., 4th Dist., Div. One Jan. 22, 2009) ........................... 11

22 Brun v. Evans,
23        197 Cal. 439 (1925).......................................................................... 20

24 Card Tech Int'l, LLLP v. Provenzano,
25        No. CV 11-2434 DSF (PLAx),
        2012 U.S. Dist. LEXIS 81481 (C.D. Cal. June 7, 2012) ................... 11

26 In re Cent. R.R.,
27        45 B.R. 1011 (D.N.J. 1985)............................................................... 6

28

Chao v. Gotham Registry, Inc.,
    514 F.3d 280 (2d Cir. 2008) ........................................................................ 2, 4

Chemoil Corp. v. Cunningham Holdings, Inc.,
    No. E068157,
    2018 Cal. App. Unpub. LEXIS 8653 (Cal. Ct. App. Dec. 20, 2018) ........... 25

CHoPP Computer Corp. v. United States,
    5 F.3d 1344 (9th Cir. 1993) ........................................................................ 25

City of San Diego v. Pac. Beach Recreation Council, Inc.,
    No. D041232,
    2003 Cal. App. Unpub. LEXIS 11796 (Cal. Ct. App. Dec. 17, 2003) ......... 25

Cruzan v. Dir., Mo. Dep't of Health,
    497 U.S. 261 (1990) ...................................................................................... 3

Dairy Dale Co. v. Azevedo,
    211 Cal. 344 (1931) ..................................................................................... 11

Daniel's Buick vs. Commissioner,
    26 T.C. 894 (1956) ........................................................................................ 6

Davidson v. Superior Court,
    70 Cal. App. 4th 514 (1999) ........................................................................ 19

Deckert v. Independence Shares Corp.,
    311 U.S. 282 (1940) ..................................................................................... 24

Doyka v. Superior Court,
    233 Cal. App. 3d 1134 (1991) ............................................................... 21, 25

In re Dual-Deck Cassette Recorder Antitrust Litig.,
    10 F.3d 693 (9th Cir. 1993) .......................................................................... 3

Dunn v. N.Y. State Dep't of Labor,
    47 F.3d 485 (2nd Cir. 1995) .......................................................................... 4

Economy Ref. & Serv. Co. v. Royal Nat'l Bank,
    20 Cal. App. 3d 434 (1971) ......................................................................... 10

Eli Lilly & Co. v. Premo Pharm. Labs., Inc.,
    843 F.2d 1378 (Fed. Cir. 1988) ................................................................... 17

Eustace v. Lynch,
   80 F.2d 652 (9th Cir. 1935)................................................................. 17

Fremont Indem. Co. v. Fremont Gen. Corp.,
   148 Cal. App. 4th 97 (2007)............................................................... 12

FTC v. Am. Nat'l Cellular,
   868 F.2d 315 (1989)........................................................................... 19

Gates v. Shinn,
   98 F.3d 463 (9th Cir. 1996)............................................................ 4, 8

Golden State Bottling Co. v. NLRB,
   414 U.S. 168 (1973) ........................................................................... 17

Granite States Ins. Co. v. Smart Modular Techs.,
   76 F.3d 1023 (9th Cir. 1996)............................................................... 2

Grupo Mexicano De Desarrollo v. Alliance Bond Fund,
   527 U.S. 308 (1999) ........................................................................... 24

GTE Sylvania, Inc. v. Consumer's Union of United States, Inc.,
   445 U.S. 375 (1980) ........................................................................... 19

Guido v. Mount Lemmon Fire Dist.,
   859 F.3d 1168 (9th Cir. 2017)............................................................. 5

Hall v. Holstrom,
   106 Cal. App. 563 (1930).................................................................... 11

Harris v. City of Phila.,
   47 F.3d 1342 (3rd Cir. 1995)............................................................... 4

Hassell v. Bird,
   5 Cal. 5th 522 (2018).......................................................................... 17

Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,
   536 F.2d 1268 (9th Cir. 1976).............................................................. 1

Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y,
   774 F.3d 935 (9th Cir. 2014)................................................... 3, 5, 17

Int'l Longshoremen's Ass'n. v. Phila. Marine Trade Ass'n,
389 U.S. 64 (1967) ........................................................................... 4

Int'l Union of Operating Eng'rs, Local Union 103 v. Ind. Constr. Corp.,
13 F.3d 253 (7th Cir. 1994)............................................................ 2

Irwin v. Mascott,
370 F.3d 924 (9th Cir. 2004)........................................................ 19

J.B. v. United States,
916 F.3d 1161 (9th Cir. 2019).......................................................... 5

Jerry Beeman & Pharm. Servs., Inc. v. Anthem Prescription Mgmt., LLC,
652 F.3d 1085 (9th Cir. 2011) ........................................................ 12

In re Jobes,
108 N.J. 394 (1987)........................................................................ 3

Joseph v. Valencia, Inc.,
137 B.R. 778 (Bankr. C.D. Cal. 1992) .......................................... 12

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.,
295 F. Supp. 2d 366 (S.D.N.Y. 2003)............................................ 24

Khan v. Fatima,
680 F.3d 781 (7th Cir. 2012)............................................................ 2

Klett v. Pim,
965 F.2d 587 (8th Cir. 1992)........................................................ 19

Lenard v. Edmonds,
151 Cal. App. 2d 764 (1957)......................................................... 25

In re Marriage of King,
150 Cal. App. 3d 304 (1983).......................................................... 11

In re Marriage of McTiernan & Dubrow,
133 Cal. App. 4th 1090 (2005)...................................................... 11

Marshak v. Treadwell,
595 F.3d 478 (3d Cir. 2009).......................................................... 17

*Melendres v. Arpaio*,
   154 F. Supp. 3d 845 (D. Ariz. 2016).................................................................. 23

*Mondaca-Vega v. Lynch*,
   808 F.3d 413 (9th Cir. 2015)........................................................................ 3

*M Seven Sys. v. Leap Wireless Int'l, Inc.*,
   No. 12cv01424 CAB(RBB),
   2014 U.S. Dist. LEXIS 111598 (S.D. Cal. Aug. 11, 2014) ...................... 1, 3, 4

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
   No. 15-cv-03522-WHO,
   2017 U.S. Dist. LEXIS 110804 (N.D. Cal. July 17, 2017)......................... 17

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
   242 F.3d 1163 (9th Cir. 2001)..................................................................... 5

*Network Automation, Inc. v. Advanced Sys. Concepts*,
   638 F.3d 1137 (9th Cir. 2011)..................................................................... 11

*N. Cntys. Bank v. Earl Himovitz & Sons Livestock Co.*,
   216 Cal. App. 2d 849 (1963)....................................................................... 15

*Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir.1997)........................................................................ 12

*OTR Wheel Eng'g, Inc. v. West Worldwide Servs., Inc.*,
   897 F.3d 1008 (9th Cir. 2018)..................................................................... 3

*In re Palliser*,
   136 U.S. 257 (1890) ................................................................................... 6

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
   708 F.2d 492 (9th Cir. 1983) ..................................................................... 1

*People v. Gonzalez*,
   12 Cal. 4th 804 (1996)................................................................................ 19

*People v. Green*,
   125 Cal. App. 4th 360 (2004)...................................................................... 10

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*,
   112 F. Supp. 2d 1178 (C.D. Cal. 2000)...................................................... 20

Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,
    No. 14-cv-02061-H-BGS,
    2016 U.S. Dist. LEXIS 110212 (S.D. Cal. Aug. 17, 2016) ......................... 17

Raleigh Indus. of Am., Inc. v. Tassone,
    74 Cal. App. 3d 692 (1977)...................................................................... 14

Randone v. Appellate Dep't of Superior Court,
    5 Cal. 3d 536 (1971)................................................................................. 20

Regal Knitwear Co. v. NLRB,
    324 U.S. 9 (1945) ..................................................................................... 17

Ritchie v. United States,
    451 F.3d 1019 (9th Cir. 2006)..................................................................... 2

Savarese v. Agriss,
    883 F.2d 1194 (3d Cir. 1989) ................................................................... 17

Scott & Fetzer Co. v. Dile,
    643 F.2d 670 (9th Cir. 1981)..................................................................... 19

Sniadach v. Family Fin. Corp.,
    395 U.S. 337 (1969) ................................................................................. 20

Steinert v. United States,
    571 F.2d 1105 (9th Cir. 1978)................................................................... 17

Thomas, Head & Greisen Emps. Trust v. Buster,
    95 F.3d 1449 (9th Cir. 1996)..................................................................... 19

United States Fid. & Guar. Co. v. Postel,
    64 Cal. App. 2d 567 (1944)....................................................................... 10

United States v. Armour & Co.,
    402 U.S. 673 (1971) ............................................................................... 4, 8

United States v. Bestline Prods. Corp.,
    412 F. Supp. 754 (N.D. Cal. 1976) ............................................................. 5

United States ex rel. Rahman v. Oncology Assocs.,
    198 F.3d 489 (9th Cir. 1999)..................................................................... 24

United States Tr. v. Tamm,
    460 B.R. 763 (B.A.P. 9th Cir. 2011)................................................................ 6, 7

United States Tr. v. Tamm,
    776 F.3d 1083(9th Cir. 2015) ................................................................ 7

Vathana v. EverBank,
    770 F.3d 1272 (9th Cir. 2014)................................................................ 5

Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,
    329 F. Supp. 3d 1070 (N.D. Cal. 2018) ................................................................ 2

Vershbow v. Reiner,
    231 Cal. App. 3d 879 (1991) ................................................................ 21

Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,
    689 F.2d 885 (9th Cir. 1982)................................................................ 3, 4, 5

VFS Fin., Inc. v. CHF Express, LLC,
    620 F. Supp. 2d 1092 (C.D. Cal. 2009)................................................................ 20

Walker v. City of Birmingham,
    388 U.S. 307 (1967) ................................................................ 19

West Coast Constr. Co. v. Oceano Sanitary Dist.,
    17 Cal. App. 3d 693 (1971)................................................................ 25

Whittaker Corp. v. Execuair Corp.,
    953 F.2d 510 (9th Cir. 1992)................................................................ 23

Woorley vs. United States,
    340 F.2d 500 (9th Cir. 1965)................................................................ 6

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992)................................................................ 19

Zapon v. United States Dep't of Justice,
    53 F.3d 283 (9th Cir. 1995)................................................................ 19

Zhenhua Logistics (H.K. ) Co. v. Metamining, Inc.,
    No. C-13-2658 EMC,
    2013 U.S. Dist. LEXIS 87089 (N.D. Cal. June 20, 2013) ............................ 24

## STATUTES

Cal. Bus. & Prof. Code § 14100 .................................................................... 11

Cal. Bus. & Prof. Code § 14102 .................................................................... 11

Cal. Civ. Code §§ 3420-3424 ........................................................................ 23

Cal. Civ. Code § 3432 .................................................................................... 10

Cal. Civ. Code § 3439.01(a) .......................................................................... 10

Cal. Civ. Code § 3439.01(j) ........................................................................... 10

Cal. Civ. Code § 3439.01(m) ......................................................................... 10

Cal. Civ. Proc. Code §§ 481.10 – 493-060 ................................................... 20

Cal. Civ. Proc. Code § 484.080 ..................................................................... 22

Cal. Civ. Proc. Code § 485.010 ..................................................................... 21

Cal. Civ. Proc. Code § 486.020 ..................................................................... 21

Cal. Civ. Proc. Code § 486.090(a) ................................................................ 22

Cal. Civ. Proc. Code § 489.210 ..................................................................... 21

Cal. Civ. Proc. Code § 525 ............................................................................ 23

Cal. Civ. Proc. Code § 526 ............................................................................ 23

Cal. Civ. Proc. Code § 529 ............................................................................ 23

Cal. Civ. Proc. Code § 532 ............................................................................ 23

Cal. Civ. Proc. Code § 533 ............................................................................ 23

Cal. Civ. Proc. Code §§ 995.010 - 996.560 .................................................. 21

Cal. Com. Code § 1201(b)(24) ......................................................................... 7

Cal. Com. Code § 1201(b)(35) ....................................................................... 13

Cal. Com. Code § 9102(a)(7) ......................................................................... 14

Cal. Com. Code § 9102(a)(74) ....................................................................... 13

Cal. Com. Code § 9203(a) ........................................................................ 13, 14

Cal. Com. Code § 9203(b)(1) ......................................................................... 13

Cal. Com. Code § 9203(b)(2) ......................................................................... 13

Cal. Com. Code § 9203(b)(3) ......................................................................... 13

Cal. Com. Code § 9203(b)(3)(A)........................................................... 14

Cal. Com. Code § 9310(a) ..................................................................... 12

Cal. Com. Code §§ 9312-9313 .............................................................. 16

Cal. Com. Code § 9312(b)(1) ................................................................ 10

Cal. Com. Code § 9312(b)(3) ................................................................ 10

Cal. Health & Safety Code § 24135 ...................................................... 16

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 52(a) .............................................................................. 2

Fed. R. Civ. P. 52(c) .............................................................................. 2

Fed. R. Civ. P. 64 .................................................................................. 20

Fed. R. Civ. P. 65 advisory committee's note to 1995 amendment ...................... 2

Fed. R. Civ. P. 65(a)(1) ......................................................................... 23

Fed. R. Civ. P. 65(b) .............................................................................. 23

Fed. R. Civ. P. 65(c) .............................................................................. 23

Fed. R. Civ. P. 65(d) ........................................................................... 4, 23

Fed. R. Civ. P. 65(d)(2)(B) .................................................................... 17

CALIFORNIA RULES OF COURT

Cal. R. Ct. 3.1150 .................................................................................. 23

LOCAL RULES

CivLR 5.1(e) ........................................................................................... 1

ECF Admin. Policies & Procs. Manual § 2(k) ..................................... 1

SECONDARY AUTHORITIES

Black's Law Dictionary 1096 ¶ 2 (9th ed. 2009) ................................ 7

Black's Law Dictionary 1252 (9th ed. 2009) ...................................... 15

Lee Smalley Edmon & Curtis E.A. Karnoa, California Practice Guide:
     Civil Procedure Before Trial ¶¶ [9:560]-[9:670] (2019).............................. 23

Alan M. Ahart, California Practice Guide: Enforcing Judgments and Debts
     ¶¶ [4:299]-[4:376] (2019).................................................................. 21

Alan M. Ahart, California Practice Guide: Enforcing Judgments and Debts
     ¶[ 4:543] (2019)............................................................................. 21

https://www.merriam-webster.com/dictionary/money (last visited Feb.
     20, 2020).................................................................................... 7

13 Moore's Federal Practice - Civil § 64.12 (2019)............................... 19

13 Moore's Federal Practice - Civil § 64.14 (2019)............................... 20

Robert E. Jones, et. al., Rutter Group Practice Guide: Federal Civil
     Trials and Evidence ¶ [17:66] (2019)................................................. 2

Ellen A. Friedman, Secured Transactions in California Commercial
     Law Practice § 3.2 (CEB 2d Ed. 2020)............................................. 14

Ellen A. Friedman, Secured Transactions in California Commercial
     Law Practice § 3.6 (CEB 2d Ed. 2020)............................................. 15

Ellen A. Friedman, Secured Transactions in California Commercial
     Law Practice § 3.19 (CEB 2d Ed. 2020)........................................... 12

4 B.E. Witkin, et al., Summary of California Law, Secured Transactions
     in Personal Property §§ 34-103 (11th Ed. 2018).............................. 13

https://en.wikipedia.org/wiki/List_of_circulating_currencies (last
     visited March 2, 2020)................................................................... 9

# I.    INTRODUCTION

Respondent GARY L. EASTMAN is entitled to judgment on partial findings as a matter of law for at least four reasons.  First, Spectrum cannot establish that there was any transfer of money violative of the Order.  To the contrary, the evidence establishes that Mr. Eastman lawfully acquired a security interest in the Green Parties' assets weeks before the Order and then perfected and enforced that security interest in the Green Parties' non-cash assets.  Second, Spectrum cannot establish that Mr. Eastman's understanding of the Order was unreasonable.   Third, the Order is transparently invalid.    Fourth, to the extent that Spectrum would claim that the Order was a "temporary protective order" under California's attachment law, it has long expired.  For each of these reasons, Mr. Eastman is entitled to judgment.[1]

# II.    DISCUSSION

## A. Standards Governing Motions for Judgment on Partial Findings.

"In [the Ninth] circuit a civil contempt proceeding is 'a trial within the meaning of Fed. R. Civ. P. 43(a) rather than a hearing on a motion within the meaning of Fed. R. Civ. P. 43(e)." Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 495 (9th Cir. 1983)(quoting Hoffman v. Beer Drivers & Salesmen's Local Union No. 888, 536 F.2d 1268, 1277 (9th Cir. 1976)); accord M Seven Sys. v. Leap Wireless Int'l, Inc., No. 12cv01424 CAB(RBB), 2014 U.S. Dist. LEXIS 111598, at *11 (S.D. Cal. Aug. 11, 2014)(Brooks, Mag. J.).  Rule 52(c) provides, in pertinent part:

> If a party has been fully heard on an issue *during a nonjury trial* and the court finds against the party on that issue, the court may enter judgment against the party on a claim . . . that, under the controlling law, can be maintained . . . only

---

[1]  Citations to "Pl.'s Ex." are to Spectrum's exhibits received into evidence by stipulation. (Rep. Tr. lns. 1-10at 120.)  Citations to "Def.'s Ex." are to the exhibits attached to Mr. Eastman's Declaration (Doc. # 374-1), which were received into evidence by stipulation. (Rep. Tr. lns. 14-25 at 119.)  Page citations thereto are to the consecutive page numbers prescribed by local rule. See CivLR 5.1(e); ECF Admin. Policies & Procs. Manual § 2(k).  Citations to "Doc. #" are to the Civil Docket in this action.  Citations to "Req. Jud. Not." are to Mr. Eastman's Request for Judicial Notice, (Doc. # 374-7).  Citations to "Rep. Tr." are to the Reporter's Transcript of the evidentiary hearing on February 20, 2020, a copy of which is attached hereto as Exhibit A.

with a favorable finding on that issue. . . .  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c)(italics added).

A court typically hears a defendant's motion for judgment on partial findings after the plaintiff has rested its case-in-chief.  Granite States Ins. Co. v. Smart Modular Techs., 76 F.3d 1023, 1030-31 (9th Cir. 1996)(district court granted motion after plaintiff rested case-in-chief and defendant made offer of proof); Chao v. Gotham Registry, Inc., 514 F.3d 280, 284 (2d Cir. 2008)(affirming judgment on partial findings where party failed to meet burden to establish civil contempt); Fed. R. Civ. P. 65 advisory committee's note to 1995 amendment ("A judgment on partial findings is made after the court has heard all the evidence bearing on a crucial issue of fact."). Robert E. Jones, et. al., Rutter Group Practice Guide: Federal Civil Trials and Evidence ¶ [17:66] (2019)("A defense motion for judgment is usually made after the plaintiffs complete their case-in-chief.").

In granting a judgment on partial findings, the court must "find the facts specially and state its conclusions of law separately" "on the record . . . or in an opinion or memorandum of decision."  Fed. R. Civ. P. 52(a) & 52(c); "In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006); accord Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 329 F. Supp. 3d 1070, 1107 (N.D. Cal. 2018).  The court may weigh the evidence, resolve any conflicts in it, and decide for itself what has or has not been proven under the applicable evidentiary standard. Int'l Union of Operating Eng'rs, Local Union 103 v. Ind. Constr. Corp., 13 F.3d 253, 257 (7th Cir. 1994); see also Khan v. Fatima, 680 F.3d 781, 786 (7th Cir. 2012)(court not excused from finding facts under Rule 52(c) because plaintiff had clear and convincing burden of proof).

///

**B. Standards Governing Enforcement of Injunctions by Contempt.**

   **1. Spectrum Has the Burden of Persuasion to Establish Each Element of Contempt by Clear and Convincing Evidence.**

    As the party seeking to charge Mr. Eastman and his clients with contempt, Spectrum bears the burden of persuasion and must establish each of the elements of contempt by "clear and convincing evidence." Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 945 (9th Cir. 2014)[hereinafter "Cetacean"]; accord M Seven, 2014 U.S. Dist. LEXIS 111598, at *13-14 (citing In re Dual-Deck Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993)("The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence.")(citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982))).

    The Supreme Court has defined the clear and convincing standard to require, "evidence which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 285 n.11 (1990)(modifications and punctuation original to Cruzan)(quoting In re Jobes, 108 N.J. 394, 407-08 (1987)); see also Mondaca-Vega v. Lynch, 808 F.3d 413, 420-22 (9th Cir. 2015)(equating "clear and convincing" with "clear, unequivocal, and convincing"); OTR Wheel Eng'g, Inc. v. West Worldwide Servs., Inc., 897 F.3d 1008, 1020 (9th Cir. 2018)(clear and convincing standard requires party adduce enough evidence to give finder of fact "abiding conviction" that factual contentions are "highly probable.").

    The elements necessary to support a civil contempt charge are well established:

    a court may impose a civil contempt sanction only if there is clear and convincing evidence that "(1) the contemnor violated a court order, (2) the noncompliance was more than technical or *de minimis* (substantial compliance is not punishable

as contempt), and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order." 7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-109 (3rd ed. 2013) (footnotes omitted); see *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010)(quoting *Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009)). "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." 7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-109 (footnote omitted).

M Seven, 2014 U.S. Dist. LEXIS 111598, at *13-14.

## 2. An Order Must Be Clear to Be Enforceable by Contempt, and Any Ambiguities Must Be Resolved in Favor of the Alleged Contemnor.

"An injunction must be 'specific in terms' and describe 'in reasonable detail' the acts sought to be restrained. Fed. R. Civ. P. 65(d). "Specificity in the terms of [injunctions] is a predicate to a finding of contempt." Gates v. Shinn, 98 F.3d 463, 467-68 (9th Cir. 1996)(citing Vertex, 689 F.2d at 889); Harris v. City of Phila., 47 F.3d 1342, 1349 (3rd Cir. 1995)); accord Int'l Longshoremen's Ass'n. v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76 (1967)(Congress "requir[es] that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.").

Indeed, a court may only find the meaning of an injunction "'within its four corners' and not by reference to the court's purpose or the purpose of the party seeking to hold the other in contempt." Gates, 98 F.3d at 468 (citing United States v. Armour & Co., 402 U.S. 673, 681-82 (1971)). Thus, "[i]f an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." Gates, 98 F.3d at 468; accord Chao, 514 F.3d at 291("T]he judicial power of contempt is circumscribed and '[t]he failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt.' A party may be held in civil contempt only where a plaintiff establishes (1) the decree was clear and unambiguous, and (2) the proof of non-compliance is clear and convincing.")(quoting Dunn v. N.Y. State Dep't of Labor, 47 F.3d 485, 490 (2nd Cir. 1995)). Further, as the Ninth Circuit has elaborated:

[W]e have recognized a narrow "good faith" exception to the general rule that intent is irrelevant in civil contempt proceedings. *See Vertex*, 689 F.2d at 889. We held in *Vertex* that "if a defendant's action appears to be based on a good faith and reasonable interpretation of (the court's order), he should not be held in contempt." *Id.* (internal quotation marks omitted). By its terms, the *Vertex* exception only applies where a defendant's interpretation is "reasonable." . . . [¶] The principle announced in *Vertex* was based on the well-established rule that a "vague" order may not be enforced. *See id.* (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) (reversing a civil contempt judgment founded upon a decree too vague to be understood)). In *Vertex*, the parties disputed whether the words 'includes' and 'incorporating' in the consent judgment were impermissibly vague. 689 F.2d at 890. The case thus involved a 'semantic battle' about the meaning of allegedly vague terms in the language of the judgment. *See id.*

<u>Cetacean</u>, 774 F.3d 935, 953 (9th Cir. 2014)(parallel citations omitted); <u>see also</u> <u>Nat. Res. Def. Council v. Sw. Marine, Inc.</u>, 242 F.3d 1163, 1169 n.2 (9th Cir. 2001)(ambiguous terms of injunction must be construed in favor of alleged contemnor); <u>Vertex</u>, 689 F.2d at 891 (district court did not abuse discretion in refusing to find contempt where injunction was ambiguous and defendants' interpretation was not unreasonable).

Ambiguity, including as to an order, arises when "language remains reasonably susceptible to any of [multiple] interpretations." <u>United States v. Bestline Prods. Corp.</u>, 412 F. Supp. 754, 769 (N.D. Cal. 1976)(construing consent decree); <u>accord</u> <u>J.B. v. United States</u>, 916 F.3d 1161, 1167 (9th Cir. 2019)("A term is ambiguous only if it is 'susceptible to more than one reasonable interpretation,'")(citing <u>Guido v. Mount Lemmon Fire Dist.</u>, 859 F.3d 1168, 1173 (9th Cir. 2017)(quoting <u>Alaska Wilderness League v. EPA</u>, 727 F.3d 934, 938 (9th Cir. 2013))); <u>Vathana v. EverBank</u>, 770 F.3d 1272, 1277 (9th Cir. 2014)(same). Here, under the standards governing motions for judgment on partial findings and civil contempt proceedings, Spectrum has not met, and cannot meet, its burden to establish any of the elements necessary to sustain a finding of contempt.

## C. The Order Clearly Enjoined Only Transfers of "Money."

The text contained in the four corners of the Order is undisputed. The Court enjoined:

Mr. Green, as well as Dr. Greens, Inc. from *transferring any **monies** from any accounts held*, whether personal accounts, business accounts, other entities controlled or owned by Dr. Greens or or you, outside of ordinary, routine business expenses that you've been paying to keep your business going between now and until further order of the Court.

(Def.'s Ex. M ln. 20 at 108 to ln. 2 at 109 (emphasis added); see also Doc. # 329 ("[T]he Court grants *temporary stay of any transfer of **funds***." (emphasis added)); Def.'s Ex. O ln. 15 at 130 ("So let's leave [the Order] as it is."); Req. Jud. Not. No. 1.)

As the Ninth Circuit has succinctly stated, "money . . . means money; the kind one could bite, feel or pinch. If one should define it as 'money or the right to receive money,' the door would be open beyond any reasonable width that Congress could have in mind." Woorley vs. United States, 340 F.2d 500, 502 (9th Cir. 1965)(interpreting statute defining "security" to include "money"). Indeed, the United States Supreme Court long ago recognized that cash "means ready money or money in hand, either in current, coin or legal tender, or in blank bills or checks paid or received as money, and does not include promises to pay money in the future." In re Palliser, 136 U.S. 257, 263 (1890); see also In re Cent. R.R., 45 B.R. 1011, 1018 (D.N.J. 1985); Daniel's Buick vs. Commissioner, 26 T.C. 894, 899–900 (1956). In fact, in the Ninth Circuit "money" has repeatedly been held to be *synonymous* with "cash." United States Tr. v. Tamm, 460 B.R. 763, 773 (B.A.P. 9th Cir. 2011)[hereinafter "Tamm"]("[T]he courts have used the terms *"money" and "cash" as synonymous* in applying § 704(a)(1)." (italics added)). Thus:

[T]he Bankruptcy Code does not define either "money" or "moneys disbursed." In the absence of a statutory definition, "we construe a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). A court "may follow the common practice of consulting dictionaries to determine how the terms were defined at the time the statute was adopted." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010); *see also Ransom v. FIA Card Servs., N.A.*, [562 U.S. 61, 68] (2010)(consulting, in a recent bankruptcy case, both Webster's Third New International Dictionary ("Webster's") and the Oxford English Dictionary ("OED") for the ordinary meaning of "applicable."). [¶] The OED defines money: "[a]ny generally accepted medium of exchange which enables a society to trade goods without the need for barter; any objects or tokens regarded as a store of value and used as a medium of exchange. a. Coins and banknotes collectively as a medium of exchange." (3d ed. online,2002). Webster's defines it as "something generally accepted as a medium of exchange, measure of value or a means of payment."

Webster's 1458 (2002). Black's Law Dictionary states that money is "[t]he medium of exchange authorized or adopted by a government as part of its currency." Black's Law Dictionary 1096 (9th ed. 2009). As can be seen, the common element in all these definitions is the notion that money is a "medium of exchange." [¶] That phrase, in turn, has an ordinary and plain meaning in the principal dictionaries. A medium of exchange is "something commonly accepted in exchange for goods and services and recognized as representing a standard of value." Webster's 1403 (2002). The OED delves deeper, noting that a medium of exchange is "anything commonly agreed as a token of value and used in transactions in a trading system; esp. freely circulating units of money, as banknotes, coins, which fulfill this role; currency." OED (Online, 3d ed., 2001). . . . Thus, according to the dictionaries, money is a medium of exchange "commonly accepted in exchange for goods and services" or "used in transactions in a trading system."

Tamm, 460 B.R. at 770-71 (parallel citations omitted), aff'd 776 F.3d 1083, 1086 (9th Cir. 2015)(declining to expand definition of "money" to encompass real estate *which is about as far from a 'medium of exchange' as one can get*." (italics added)); accord Cal. Com. Code § 1201(b)(24)(defining "'[m]oney' [to] mean[] a medium of exchange currently authorized or adopted by a domestic or foreign government.").[2]

Spectrum's argument that the Order extended to either transfers of assets generally or assets "readily [or easily] convertible to cash," (see Doc. # 377 § II(A)(1) lns. 7-10 at 3), must fail as a matter of law for several reasons. First, the Order makes no mention of assets generally or assets "convertible to cash" in particular. (See Def.'s Ex. M ln. 20 at 108 to ln. 2 at 109.)

Second, while Spectrum moved for "an injunction against the transfer of *assets* by Mr. Green and Dr. Greens, Inc," (Def.'s Ex. M lns. 24-25 at 107 (italics added)), it did

---

[2]   At first blush, it is curious that both Spectrum and the Ninth Circuit's Bankruptcy Appellate Panel would cite to the same dictionaries, but find strikingly different definitions of "money." (Cf. Doc. # 377 § II(A)(1) lns. 7-10 at 3 ("However, the term 'monies' means 'assets or compensation in the form [of] or readily convertible to cash," or [a]ssets that can easily be convertible to cash." *See, e.g.,* Webster's Third International Dictionary 1458 (1993); Black's Law Dictionary (9th Ed. 2009).") As it turns out, the definitions selectively cited by Spectrum are secondary definitions. (See https://www.merriam-webster.com/dictionary/money ("Legal Definition of *money*" ¶ 2a at 5 (last visited Feb. 20, 2020)(defining money as "assets or compensation in the form of or readily convertible into cash."); Black's Law Dictionary 1096 ¶ 2 (9th ed. 2009)(defining money as "assets that can be easily converted to cash <demand deposits are money>.")   Surely, neither Mr. Eastman nor the Green Parties can be held in contempt for allegedly violating orders based upon secondary, legal definitions nowhere revealed in the four-corners of the Order.

1   so for the stated purpose of preventing "Mr. Green, either personally or through his

2   company, [from] transfer[ring] *large amounts of **money** to make himself judgment-*

3   *proof here*," (id. lns. 6-8 at 108 (emphasis added)). Therefore the Court understandably

4   only enjoined transfers of "money." (Id. ln. 20 at 108 to ln. 2 at 109.)   Moreover,

5   whether Spectrum or even the Court *intended* to restrain transfers of assets generally or

6   assets convertible to cash in particular, the meaning of an injunction may only be

7   drawn "'within its four corners' and not by reference to the court's purpose or the

8   purpose of the party seeking to hold the other in contempt." Gates, 98 F.3d at 468

9   (citing Armour, 402 U.S. at 681-82).  For the same reason, Mr. Eastman's comments at

10  the telephonic hearing on February 26, 2018, are not relevant and certainly do not, as

11  Spectrum suggests, "confirm [an] exact understanding of the Order" as enjoining

12  transfers of all assets.  (See Doc. # 377 lns. 16-18 at 3.)   Read in context, Mr. Eastman

13  was not *characterizing* the scope of the order on February 26, 2018, far less as

14  extending to asset transfers; he was arguing that there was no *need* for any order.

15  Thus, the relevant portion of the transcript in its entirety reads:

16      The Court:  What's your view on the stay?

17      Mr. Eastman:  Well, I have to be candid with you, your honor.  I think the writ of
18      attachment that was effectively the stay that you identified at the close our
        discussions last week was a bit of a surprise.

19      I understand that you acknowledged the fact that Dr. Greens needs to continue to
        run its business.  And to the extent that that's the scope of your stay, I have no
20      problem with that stay.  I imagine that's exactly what they are planning to do.

21      There will - - I don't think that the Court's concern about, you know, wholesale
        transmissions of large sums of money or assets from one group to another is
22      needed, to the extent that I don't think those exist.  But with regard to a limited
        stay on bulk transfers, I - - we have no challenge to that.
23

24  (Def.'s Ex. O lns. 7-22 at 128.)

25      Thus, Mr. Eastman was not stating that the Order enjoined the transfer of assets; he

26  was saying that he was not aware of any transfers contemplated by the Green Parties at

27  that time that justified a need to have *any* injunction. (See Rep. Tr. lns. 15-24 at 89.)

28  Accordingly, the Court immediately inquired of Mr. Cupar whether, "with your writ of

8       Case No. 3:'11-cv-00638-JAH-KSC

attachment, is the *status quo* sufficient?"  (Def.'s Ex. O lns. 23-24 at 128.)  In response, Mr. Cupar advocated for maintaining the *status quo*, i.e. maintaining an injunction enjoining only transfers of money, (id. ln. 25 at 128 (Mr. Cupar: "I think so, your honor."), even though, like Mr. Eastman, Mr. Cupar admitted that "there is nothing specific we know about," (id. ln. 25 at 128 to ln. 1 at 129).  Mr. Cupar did not request that the injunction be expanded to "assets." (Id.)  The Court agreed to "leave [the Order] as it is." (Id. ln. 15 at 11.)  At no time did Mr. Eastman or the Green Parties characterize the Order as enjoining transfers of assets.

Finally, even if Spectrum's argument that the Order enjoined transfers of assets generally or assets easily convertible to cash were correct, such proves too much for two reasons.  First, general intangibles—including goodwill, tradenames, and websites; product inventory in the form of goods (now illegal in California no less); and furniture/equipment are not "easily convertible to cash." A willing buyer, a willing seller, and an agreed-upon price must be found so as to effectuate a lawful sale. General intangibles, goods, furniture, and equipment cannot be taken to the grocery store to purchase a steak.  They cannot be endorsed as a negotiable instrument or deposited in a bank. They are not listed on any market alongside dollars, euros, pesos, pounds sterling, rubles, rupees, yens, or yuans as recognized currencies or mediums of exchange. (See generally https://en.wikipedia.org/wiki/List_of_circulating_currencies (last visited March 2, 2020).[3] Second, given the above-cited case law regarding the

---

[3]  Indeed, it bears mention that Spectrum's accusations that the Green Parties or Mr. Eastman have "liability of fraudulent conveyance," (see Rep. Tr. ln. 2 at 124 to ln. 10 at 125), further undermines Spectrum's suggestion that the term "money in accounts held" in the Order could reasonably mean "assets." Under the Uniform Voidable Transfers Act, the term "asset" is broadly defined as:

[P]roperty of a debtor, but the term does not include the following:
(1) Property to the extent it is encumbered by a valid lien.
(2) Property to the extent it is generally exempt under nonbankruptcy law.
(3) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

plain meaning of money, Spectrum's effort to expand that meaning at most establishes an ambiguity that must be resolved in Mr. Eastman's and the Green Parties' favor.

**D. Spectrum Has Not Shown Any Transfer of Money Violative of the Order.**

The evidence adduced by Spectrum during its case-in-chief affirmatively demonstrates that there was no transfer—indeed, could have been no transfer—of money, funds, cash, or mediums of exchange. Mr. Green testified that, at the time of the foreclosure sale, the Dr. Green's business had no cash "to speak of." (Rep. Tr. lns. 16-18 at [71].) Mr. Eastman testified that the foreclosure "wasn't for cash." (Id. lns. 1 3 at 101.)[4]  Indeed, the evidence adduced by Spectrum—including an expert opinion

---

Cal. Civ. Code § 3439.01(a); see also id. § 3439.01(j)(defining "property" to mean "anything that may be the subject of ownership."); § 3439.01(m)(defining "transfer" to mean "disposing of or parting with an asset, *and includes payment of **money**.*" (emphasis added).

Thus, Spectrum is suggesting that in enjoining "transfers of money," the Order could only be understood to enjoin transfers of anything in which the Green Parties claim an ownership interest, *including* money. That is a tortured stretch of logic far beyond reasonable.

Of course, it bears repeating that neither the Green Parties nor Mr. Eastman can have voidable transfer liability to Spectrum. Though a creditor may intend a transfer of assets to remove assets and make impossible the collection of a particular creditor's judgment, if the transfer operates only as a preference of one creditor of the transferor over another, the transfer is not subject to fraudulent conveyance attack. See Aggregates Assoc., Inc. v. Packwood, 58 Cal. 2d 580, 591 (1962); Economy Ref. & Serv. Co. v. Royal Nat'l Bank, 20 Cal. App. 3d 434 (1971); see Cal. Civ. Code § 3432 (debtor may pay one creditor in preference to another or give one creditor security in preference to another). Indeed, even if a preference hinders or delays other creditors in the collection of their claims, it is not thereby rendered void, even if the preferred creditor knew that such consequence would follow, United States Fid. & Guar. Co. v. Postel, 64 Cal. App. 2d 567, 571-72 (1944), or that the non-preferred creditor's action to enforce the debtor's indebtedness was pending at the time of the transfer, see Arnold v. Hadgis, 102 Cal. App. 2d 88, 92 (1951).

[4]  Mr. Eastman does not deny that the security interest he obtained and which attached on January 10, 2018, extended to cash and deposit accounts. (See Def.'s Ex. K ¶ 2 at 93.)  Nor does Mr. Eastman deny that, in perfecting the security interest in the Green Parties' non-cash assets, the UCC-1 Financing Statement described the collateral as including cash and deposit accounts. (See Def.'s Ex. N ¶ 4 at 112.)  Finally, Mr. Eastman does not deny that the notice of public sale and the resulting foreclosure described the assets foreclosed upon as including cash and deposit accounts. (See Def.'s Ex. W at at 318 & 321.)  Nonetheless, these facts are irrelevant for two reasons. First, just because Mr. Eastman had a security interest which attached to cash or deposit accounts does not mean that he perfected a security interest therein. A security interest in money or a deposit account *cannot be* perfected by filing a UCC-1 financing statement. See Cal. Com. Code § 9312(b)(1)("A security interest in a deposit account may be perfected only by control under Section 9314."); Cal. Com. Code § 9312(b)(3)("A security interest in money may be perfected only by the secured party's taking possession under Section 9313."); People v. Green, 125 Cal. App. 4th 360, 365 (2004)(despite valid security
(footnote continues…)

valuing the assets foreclosed upon, (see Def.'s Ex. V)—affirmatively established that there were but three non-cash assets foreclosed upon: 1) Dr. Green's "general intangibles," including its goodwill consisting of its tradename, customer lists, employees, and website, (see Rep. Tr. lns. 8 at 7 to ln. 1 at 9; id. ln. 17 at 18 to ln. 24 at 19; id. ln. 2 at 9 to ln. 20 at 15; Pl.'s Exs. A & B; Def.'s Ex. V at 301, 305);[5] 2) goods

---

agreement and filing of financing statement, attorney could not perfect security interest in client's cash because government was in possession). There is no evidence that Mr. Eastman obtained possession of any cash or control over any deposit accounts. Second, and more importantly, just because Mr. Eastman had an attached, unperfected security interest in cash or deposit accounts, does not mean than any such cash or deposit accounts existed at the time of the foreclosure or were foreclosed upon. There is no evidence that Mr. Eastman received any cash or proceeds from any deposit account.   To the contrary the evidence affirmative establishes that he perfected his security interest and foreclosed upon three non-cash assets: 1) Dr. Green's general intangibles, including goodwill, customers, employees, a tradename, and a web site; 2) product inventory in the form of goods; and 3) equipment/furniture. (See Def.'s Ex. V.) None of these are money, cash, funds, or a medium of exchange.

[5]   Under California law, "[t]he 'goodwill' of a business is the expectation of continued public patronage." Cal. Bus. & Prof. Code § 14100. "The good will of a business is property and is transferable." Cal. Bus. & Prof. Code § 14102.   Goodwill includes such things as trademarks, tradenames, and signs, Hall v. Holstrom, 106 Cal. App. 563 (1930); the names, addresses and requirements of customers, Dairy Dale Co. v. Azevedo, 211 Cal. 344 (1931); Bergum v. Weber, 136 Cal. App. 2d 389 (1955); a business' employees, professionals, and independent contractors, including independent computer consultants, In re Marriage of McTiernan & Dubrow, 133 Cal. App. 4th 1090, 1116 (2005)(citing inter alia In re Marriage of King, 150 Cal. App. 3d 304, 310 n.1 (1983)(goodwill may be reliant upon quality employees.); and the use and ownership of websites and internet domain names, see Card Tech Int'l, LLLP v. Provenzano, No. CV 11-2434 DSF (PLAx), 2012 U.S. Dist. LEXIS 81481, at *95-96 (C.D. Cal. June 7, 2012)(deceptive use and ownership of website and domain names as misappropriation of goodwill); Network Automation, Inc. v. Advanced Sys. Concepts, 638 F.3d 1137, 1147 (9th Cir. 2011)(deceptive website as misappropriation of goodwill). For purposes of secured transactions governed by the Uniform Commercial Code, goodwill is a species of "general tangible." That is:

[Commercial Code] Section 9102, subdivision (a)(42), defines "general intangibles" as "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software." Importantly, the cases have repeatedly discussed, with apparent approval, security agreements which include general intangibles as collateral. (See e.g. Waltrip v. Kimberlin (2008) 164 Cal.App.4th 517, 521; California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc. (2002) 96 Cal.App.4th 598, 605.) Moreover, the cases have found that goodwill falls within the category of "general intangibles." (See Bank of Washington v. Burgraff (Wash.App. 1984) 687 P.2d 236, 238; DFS Sec. Healthcare Rec. v. Caregivers Great Lakes (2004) 384 F.3d 338, 344, fn. 4; In re Leasing Consultants, Incorporated (2d Cir. 1973) 486 F.2d 367, 371, fn. 5.)

Bischoff v. Lcg Blue, No. D052130, 2009 Cal. App. Unpub. LEXIS 515, at *15-16 (Cal. Ct.
(footnote continues…)

in the form of product inventory of which AR Acquisitions took possession "shortly after the deposition" in the Collection Action on August 7, 2018, (see Rep. Tr. ln. 21 at 15 to ln. 23 at 17; ln. 24 at 104 to ln. 2 at 105; Pl.'s Ex. C; Def.'s Exs. S, T, & V at 301-04; Req. Jud. Not. Nos. 2(a) & 2(b)),[6] and which AR Acquisitions purchased at the public sale on September 19, 2019, (Rep. Tr. lns. 3-15 at 104); and 3) furniture and

App., 4th Dist., Div. One Jan. 22, 2009)(Benke, J.)(unpublished)(because goodwill may be used as collateral under security agreement governed by Division 9 of the California Commercial Code, "a transfer in violation of a security agreement which covers goodwill will likely permit the secured party to bring an action in tort for recovery of the value of the goodwill.")(citing Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 124-26 (2007); Bank of Wash., 687 P.2d at 239-40)). While Bischoff is unpublished and not precedential, it may be considered as persuasive authority by the Court. Nunez v. City of San Diego, 114 F.3d 935, 943 n. 4 (9th Cir.1997); Jerry Beeman & Pharm. Servs., Inc. v. Anthem Prescription Mgmt., LLC, 652 F.3d 1085, 1093 (9th Cir. 2011), vacated sub nom. Beeman v. Anthem Prescription Mgmt., LLC, 741 F.3d 29 (9th Cir. 2014);

A security interest in general intangibles, including goodwill and tradenames, is properly perfected by filing a UCC-1 financing statement. Cal. Com. Code § 9310(a); Joseph v. Valencia, Inc., 137 B.R. 778, 781-82 (Bankr. C.D. Cal. 1992)(security interest in general intangibles, including trademarks, tradenames, and trade styles, properly perfected by filing financing statement; but holding that financing statement was invalid for failing to adequately describe collateral); see generally Ellen A. Friedman, Secured Transactions in California Commercial Law Practice § 3.19 (CEB 2d Ed. 2020)[hereinafter "Secured Transactions"]("In most instances, an interest in general intangibles may be perfected by filing a financing statement.")

Here, the security interest granted to Eastman APLC and Eastman McCartney weeks prior to the Order expressly included:

> any and all of [the Green Parties'] general intangibles, including but not limited to, the inventory of [the Green Parties'] trademarks, tradenames, goodwill, phone number, websites and URL (www.drgreens.com), and all patents, copyrights and trademarks, customer lists, and trade secrets incorporated therein, all product designs and descriptions, and other assets identified in the list attached as **Exhibit "A,"** which is incorporated herein by this reference.

(Def.'s Ex. K ¶ 2 at 93 (italics added; bolding and underlining original).)

[6]  Plaintiff's Exhibit C—consisting of a box of "Dr. Greens Cleansing Soft Gel"—was marked during the evidentiary hearing on February 20, 2020. (See Rep. Tr. lns. 15-16 at 17.) A separate box (which contained Plaintiff's Exhibit C), was published during the evidentiary hearing as having been "marked as an exhibit in Spectrum's motion to show cause," (Rep. Tr. lns. 21-22 at 15), and was the subject of Spectrum's cross-examination of Mr. Green, (see id. ln. 21 at 15 to ln. 23 at 17). In fact, no box actually was "marked as an exhibit in Spectrum's motion to show cause;" only evidence of a delivery—not offered into evidence during the evidentiary hearing—was submitted in support of Spectrum's motion. (See Doc. # 366-2 & Exs. B-D.) For ease, references to Plaintiff's Exhibit C herein are to the box and its contents published and received during the evidentiary hearing.

equipment, (Def.'s Ex. V at 301, 308).  It was these three non-cash assets, and *only* these three non-cash assets, which were independently valued at $42,626, (see Def.'s Ex. V at 301), and which AR Acquisitions purchased by credit bid at the public sale, (see Rep. Tr. lns. 3-15 at 104; Def.'s Ex. W at 315).[7]

Spectrum has offered no evidence, far less clear and convincing evidence, that Mr. Eastman, Eastman APLC, Eastman McCartney, AR Acquisitions, Pacific Inventory or any other affiliate ever obtained any money, funds, cash or other medium of exchange from the Green Parties subsequent to the Order issued on February 23, 2018. (Rep. Tr. ln. 3 at 101 ("[The foreclosure] wasn't for cash.")  Accordingly, Spectrum has not met, and cannot meet, its burden on the first element of its contempt claim.

**1. The Only Transfer of a Security Interest in Money Predated the Order.**

Spectrum's position belies a fundamental misapprehension of the nature of secured transactions generally, and the creation, attachment, and perfection of security interests in personal property in particular. See generally 4 B.E. Witkin, et al., Summary of California Law, Secured Transactions in Personal Property §§ 34-103 (11th Ed. 2018). A security interest is an interest in personal property or fixtures that secures payment or performance of an obligation. Cal. Com. Code § 1201(b)(35).)  A security interest is created by a "security agreement" describing the collateral. Cal. Com. Code § 9102(a)(74). A security interest "attaches" to collateral when it becomes enforceable against the debtor with respect to the collateral.  Cal. Com. Code § 9203(a).  To be enforceable, against the debtor and third parties three conditions must be satisfied: 1) value must be given, Cal. Com. Code § 9203(b)(1); 2) the debtor must have rights in the collateral or the power to transfer rights in the collateral to a secured party, Cal. Com. Code § 9203(b)(2); and 3) there must be a valid security agreement, Cal. Com.

---

[7]   That is, Dr. Green's general intangibles consisting of the tradename and website, were independently valued at $6,000, (Def.'s Ex. W at 301, 305); the product inventory was valued at $34,591, (id. at 301-04); and the furniture/equipment was valued at $2,035, (id. at 301, 308). These amounts total $42,626, (id. at 301)—the exact amount for which AR Acquisitions purchased them, (Def.'s Ex. W at 315.)

1   Code § 9203(b)(3).  A valid security agreement includes one that is "authenticated" by

2   the debtor's signature.  Cal. Com. Code §§ 9102(a)(7) &  9203(b)(3)(A).  It is the

3   creation and attachment of a security interest which effectuates a transfer of the

4   security interest to the creditor; the security interest thereby becomes enforceable

5   against the debtor.  See Cal. Com. Code § 9203(a); Raleigh Indus. of Am., Inc. v.

6   Tassone, 74 Cal. App. 3d 692, 698 (1977)(debtor transferred unperfected security

7   interest to creditor upon attachment); Secured Transactions § 3.2.

8       Here, the only transfers of money between the Green Parties, on the one hand, and

9   Eastman APLC and Eastman McCartney, on the other hand, was when: 1) the Green

10   Parties executed the retainer agreements granting attorney liens, (See Def.'s Ex. A at 3

11   & Ex. D at 54); and 2) executed the First Amendment, (Def.'s Ex. K).  The latter of

12   these transfers took place *five weeks prior to trial*.  Indeed, in withdrawing his motion

13   to be relieved as counsel, Mr. Eastman advised the Court that he had "spoke[n] with

14   Mr. Green . . . and . . . we've *worked out a resolution* to allow this to go through trial."

15   (Def.'s Ex. H lns. 1-17 at 82 (italics added); see Rep. Tr. ln. 6 at 28 to ln. 3 at 30; id. ln.

16   14 at 33 to ln. 16 at 34; id. lns. 21-25 at 74; id. lns. 1-9 at 75; id. ln. 15 at 82 to ln. 12

17   at 84; & id. lns. 19-20 at 85.) Thus, way before trial and the Order, Spectrum was on

18   notice that the Green Parties had likely agreed to pledge their assets to secure their

19   debt.

20   **2. Perfection of the Security Interest Was Not a Transfer of Money.**

21       Spectrum argues, without citation to authority, that the UCC-1 Financing Statement

22   was some type of "transfer" of the Green Parties' assets and thereby makes much of

23   the fact that it was filed an hour after the Order.  (See Rep. Tr. ln. 7 at 44 to ln. 12 at

24   45; id. lns. 2-14 at 82; & id. lns. 7-23 at 88.) Wholly apart from the fact the Order in no

25   way enjoined "asset" transfers, Spectrum clearly misapprehends the nature of

26   perfection of a security interest.

27       Perfection of a security interest is not a "transfer" of collateral. Quite to the

28   contrary, "Perfection of a security interest in collateral is the means by which a creditor

1  may seek to have superior rights to other creditors." Secured Transactions § 3.6; accord
2  Bank of Stockton v. Diamond Walnut Growers, 199 Cal. App. 3d 144, 151 (1988)
3  ("The priority of a security interest depends, among other things, upon its being
4  'perfected,' which occurs 'when it has attached and when all of the applicable steps
5  required for perfection have been taken' as required by [Commercial Code] sections
6  9302, 9304, 9305 and 9306. (§ 9303.)");   Black's Law Dictionary 1252 (9th ed.
7  2009)(defining perfection as "Validation of a security interest as against other
8  creditors, usu. by filing a statement with some public office or by taking possession of
9  the collateral").

10    Here, well prior to the jury's verdict and the subsequent Order, Mr. Eastman
11  instructed his lawyer to perfect the security interest in the Green Parties' assets that had
12  attached months prior by filing the UCC-1 Financing Statement.  (Rep. Tr. ln. 23 at 86
13  to  ln. 1 at 87.)  While Mr. Gupta did not effectuate the filing in Sacramento until an
14  hour after the Order issued, nothing nefarious can be inferred from that timing; it was
15  an exercise that had already been put in motion. (Id.; Def.'s Ex. N; Req. Jud. Not. No.
16  3(b).)  More to the point, the Order did not enjoin any creditor of the Green Parties,
17  including Mr. Eastman, from perfecting security interests, and the filing of the UCC-1
18  Financing Statement in no way can be characterized as a transfer, far less a transfer of
19  money or funds.  Indeed, a security interest in money or a deposit account *cannot be*
20  perfected by filing a UCC-1 financing statement. (See Note 4 supra at 10.)

21  **3. The Assignment; the Collection Action; the Foreclosure Sale; and the Move**
22  **to Washington Were Not Transfers of Money.**

23    Having created a duly-attached security interest prior to the Order, and having
24  perfected that security interest in due course, Mr. Eastman and his affiliates were
25  entitled to enforce the security interest.  Their doing so in no way constituted a transfer
26  of money violative of the Order.  The assignment to AR Acquisitions was not a
27  transfer of any money by the Green Parties. See N. Cntys. Bank v. Earl Himovitz &
28  Sons Livestock Co., 216 Cal. App. 2d 849, 855 (1963)(antecedent debt ample

consideration for assignment).  Neither the Collection Action nor the deposition of the Green Parties constituted the transfer of any money.  Quite to the contrary, it was by those acts of taking control and possession of the Green Parties' non-cash assets, e.g. the website and inventory, that AR Acquisitions further perfected its security interests. See Cal. Com. Code §§ 9312-9313 (perfection of security interest in goods by possession).  The public sale did not constitute a transfer of money for the simple reason that no  money was foreclosed upon. Finally, moving the business acquired by AR Acquisition to Washington did not constitute a transfer of money.  To the contrary, it was a necessary act to avoid violating the law.  See Cal. Health & Safety Code § 24135.

**E. Any Violation of the Order Was the Product of a Good Faith, Reasonable Interpretation by Mr. Eastman.**

Even assuming *arguendo* that Spectrum could establish, and had established, a non-technical violation of the Order (which Spectrum neither can do nor has done), Spectrum has not established, and cannot establish, that Mr. Eastman's and the Green Parties' conduct was not the product of a good faith, reasonable interpretation of the Order.  The unrebutted evidence is that Messrs. Green and Eastman both reasonably understood the order to restrain only the voluntary transfer of money, i.e. cash on hand or in deposit accounts.  They reasonably did not consider the Order restrain third-party creditors—such as credit card companies, trade creditors and, yes, professionals like Mr. Eastman—from perfecting security interests created and attached well prior to the Order or enforcing them against non-cash assets thereafter.[8]

---

[8]   As the California Supreme Court recently recounted:

[C]ourts have long observed a general rule against entering injunctions against nonparties. An injunction is a "'personal decree'" that "'operates on the person of the defendant by commanding him to do or desist from certain action'" as a remedy for violations or threatened violations of the law. (*Comfort v. Comfort* (1941) 17 Cal.2d 736, 741.) More than a century ago, the United States Supreme Court invalidated an injunction enjoining nonparties, explaining: "[W]e do not think it comports with well-settled principles of equity procedure to include [nonparties] in an injunction in a suit in which they were not heard or represented, or to subject them to penalties for contempt in
(footnote continues…)

1

disregarding such an injunction." (*Scott v. Donald* (1897) 165 U.S. 107, 117].) Some decades later, the high court again invalidated an injunction as "clearly erroneous" insofar as it "assumed to make punishable as a contempt the conduct of persons who act independently and whose rights have not been adjudged according to law." (*Chase National Bank v. Norwalk* (1934) 291 U.S. 431, 436–437, fn. omitted.) And again, in *Zenith [Corp. v. Hazeltine* (1969) 395 U.S. 100, 110], the high court ruled that the district court had erred in entering an injunction against an entity (there, the parent company of the named defendant) that "was not named as a party, was never  served and did not formally appear at the trial."

*Hassell v. Bird*, 5 Cal. 5th 522, 549 (2018)(parallel citations omitted); accord *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-cv-02061-H-BGS, 2016 U.S. Dist. LEXIS 110212, at *65 (S.D. Cal. Aug. 17, 2016)(Huff, J.)("successors, assigns, parents, and subsidiaries [are not] those among whom an injunction may be made binding upon.")(citing *Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*, 843 F.2d 1378, 1381 (Fed. Cir. 1988)).

Here, Mr. Eastman is not claiming that he was immune from contempt *because* he was acting as a third-party secured creditor. Mr. Eastman acknowledges that he "received actual notice" of the Order and that he was bound by it as the Green Parties' attorney, see Fed. R. Civ. P. 65(d)(2)(B); however, as the Supreme Court has explained, this rule:

is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts *through aiders and abettors*, although they were not parties to the original proceeding.

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)(italics added); accord *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973).

Thus, attorneys who actively aid or abet their clients in violating court orders may be found in contempt. *Marshak v. Treadwell*, 595 F.3d 478, 488-89 (3d Cir. 2009)(attorney liable for contempt where attorney "in active concert or participation" with enjoined party "aid[ed] or abet[ted] the violation of the injunction by "[i]mmediately . . . srambl[ing] to evade injunction."); *Savarese v. Agriss*, 883 F.2d 1194, 1209 (3d Cir. 1989)(attorney/party who took "overt steps" to violate order liable for contempt); *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2017 U.S. Dist. LEXIS 110804, at *32 (N.D. Cal. July 17, 2017)(attorneys for party enjoined from publicizing illicitly-obtained video found in contempt for posting links to video on attorney's website); see also *Cetacean*, 774 F.3d at 955 (holding individual board members who controlled enjoined corporation's violation of injunction in civil contempt).

Here, Mr. Eastman is not claiming immunity from contempt *because* he was third-party secured creditor; he is not liable for contempt because 1) he did not violate the Order; 2) did not aid or abet the Green Parties to violate the Order; and 3) reasonably understood the Order not to extend to the perfection or enforcement of security interests as to non-cash assets. Nor is Mr. Eastman relying on the advice of counsel as a defense. See *Cetacean*, 774 F.3d at 955-56 (reliance on advice of counsel not a defense to civil contempt)(citing *Steinert v. United States*, 571 F.2d 1105, 1108 (9th Cir. 1978); *Eustace v. Lynch*, 80 F.2d 652, 656 (9th Cir. 1935); but see *Eustace*, 80 F.2d at 656 (advice of counsel may be considered in mitigation). Rather, the advice of counsel he received from Mr. Gupta, and the advice of counsel that the Green Parties received from Mr. Dyson, further supports the reasonableness of their interpretation of the Order. (See Rep. Tr. lns. 4-22 at 36; id. lns. 1-11 at 50; id. lns. 3-5 at 62; id. lns. 23-24 at 62; id.

(footnote continues...)

17          Case No. 3:'11-cv-00638-JAH-KSC

Thus, Mr. Green testified that he was "in the room when the Court ordered that no *moneys* be transferred from [him] or [his] companies except for ordinary-course business activities," (Rep. Tr. lns. 5-8 at 42 (italics added); that the Order stayed "Mr. Green as well as Dr. Greens, Inc. from transferring *any moneys from any accounts held . . .*" and that he believed he had complied with the Order, (id. lns. 9-23 at 43 (italics added); and that the Order "said '*monies*'" not "assets or moneys," (id. lns. 4-6 at 45 (italics added)).  Mr. Eastman testified that "[t]he Court's order was for *money*," (id. lns. 5-8 at 42(italics added)); that he did not recall "[t]he Court [raising a] stay regarding the movement of money or assets;" he only "remember[ed] the order about *money*," (id. lns. 2-4 at 89 (italics added)); and that it was "not true at all" that he "understood the [Order] to mean money or assets," (id. lns. 4-8 at 90).  Spectrum has not adduced a shred of evidence, far less clear and convincing evidence, that the Green Parties or Mr. Eastman understood the Order to restrain transfers of non-cash assets or the perfection or enforcement of security interests therein.

Because Spectrum has offered no evidence rebutting the Green Parties' and Mr. Eastman's testimony as to their good faith interpretation of the Order, Spectrum can only meet its burden as to the third element required to establish contempt by showing that the Green Parties' and Mr. Eastman's interpretation was unreasonable as a matter of law.  They cannot do so for the simple reasons that: 1) the Supreme Court and the Ninth Circuit have held that the plain meaning of "money" is synonymous with "cash;" 2) any ambiguity in the order *must* be resolved in favor of the alleged contemnors; and 3) the unrefuted evidence establishes that, consistent with their interpretation, Mr. Eastman did not perfect or foreclose upon (indeed, assiduously avoided perfecting or foreclosing upon)—and the Green Parties did not suffer any foreclosure upon—any security interest in money or deposit accounts.  Quite to the contrary, the undisputed evidence establishes that Eastman APLC and Eastman

_____

lns. 17-20 at 80; id. lns. 10-22 at 82; id. lns. 21-25 at 98; id. lns. 1-2 t 99; & id. lns. 19-20 at 102.)

1   McCartney perfected a security interest in; AR Acquisitions foreclosed upon; and the

2   Green Parties suffered foreclosure upon, non-cash assets consisting of general

3   intangibles, goods, furniture, and equipment.

4   **F. The Order Was Transparently Invalid.**

5      Generally, the invalidity of a federal injunction is not a defense to a charge of civil

6   contempt. See GTE Sylvania, Inc. v. Consumer's Union of United States, Inc., 445

7   U.S. 375, 386 (1980); Zapon v. United States Dep't of Justice, 53 F.3d 283, 285 (9th

8   Cir. 1995). However, there are two exceptions recognized under federal law where the

9   invalidity of an allegedly-violated injunction can be raised to a charge of

10   contempt. First, "where the injunction was transparently invalid or had only a

11   frivolous pretense to validity" its validity may be raised as a defense to

12   contempt. Walker v. City of Birmingham, 388 U.S. 307, 315 (1967); Irwin v.

13   Mascott, 370 F.3d 924, 931 (9th Cir. 2004); FTC v. Am. Nat'l Cellular, 868 F.2d 315,

14   317 (1989); Thomas, Head & Greisen Emps. Trust v. Buster, 95 F.3d 1449, 1456 (9th

15   Cir. 1996).[9] Second, where an injunction is no longer in effect, its expiration can be

16   raised as a defense to a contempt charge. Klett v. Pim, 965 F.2d 587, 590 (8th Cir.

17   1992)(compensatory contempt cannot lie after underlying injunction mooted by

18

19     [9]   Similarly, under California law, the invalidity of an injunction may be raised in the first instance when a charge of contempt is brought where the injunction is challenged as being void or in excess of the issuing court's jurisdiction. People v. Gonzalez, 12 Cal. 4th 804, 823-24 (1996)(violation of order in excess of the jurisdiction cannot produce a valid judgment of contempt; such "jurisdiction" extends to any acts exceeding statutorily-defined power of a court)(quoting In re Berry, 68 Cal. 2d 137, 147 (1968)); Gonzalez, 12 Cal. 4th at 819 ("California courts continue to reject the collateral bar rule adopted by other jurisdictions. Instead, they apply the rule that in the contempt proceeding, the contemner may, for the first time, collaterally challenge the validity of the order he or she is charged with violating."); accord Zal v. Steppe, 968 F.2d 924, 927 (9th Cir. 1992)("[A]lthough a state may adopt the collateral bar rule, it need not do so as a matter of federal law. . . . California has explicitly elected not to do so." (italics original; citation of Berry omitted)); Davidson v. Superior Court, 70 Cal. App. 4th 514, 528-29 (1999)(order noncompliant with statute void, in excess of court's jurisdiction, and could not be basis for contempt). Insofar as the Court's power to issue provisional remedies under Rule 64 is governed by state law, it is not clear that federal law governs the ability of the responding parties to challenge the validity of the order. To the extent that California's rejection of the collateral bar rule is substantive law, it applies with equal force here. See generally 13 Moore's Federal Practice - Civil § 64.12 (2019)(under Rule 64, state law determines use of provisional remedies but underlying action continues subject to the Federal Rules of Civil Procedure.)

1  legislation); <u>Scott & Fetzer Co. v. Dile</u>, 643 F.2d 670, 675 (9th Cir. 1981)(neither
2  coercive nor remedial civil contempt can survive invalidation of underlying
3  injunction).  Here, the Order was transparently invalid, expired long ago, and cannot
4  be the subject of contempt.

5  **1.  The Order Was Void *Ab Initio* and Transparently Invalid.**

6  A district court's power to issue provisional remedies and injunctions is proscribed
7  by Federal Rules of Civil Procedure 64 and 65 respectively.  Here—while it is clear
8  from the record that the parties and the Court considered Spectrum's application to be
9  for provisional relief  pursuant to California's Attachment Law under Rule 64, (<u>see</u>
10  Def.'s Ex. O ln. 8 at 128 to ln. 4 at 129), the Order is invalid under either rule.

11  **a.  The Order Was Void *Ab Initio* Per California Attachment Law.**

12  Rule 64 provides that every remedy under state law for "seizing . . . property to
13  secure satisfaction of the potential judgment" is available in a federal action, including
14  "attachment." Fed. R. Civ. P. 64.  Thus, Rule 64 borrows state provisional remedies
15  provided they meet constitutional due process requirements. <u>See</u> <u>generally</u> 13 Moore's
16  Federal Practice - Civil § 64.14 (2019).  Originally, California's attachment statute was
17  declared unconstitutional for lack of notice and a hearing sufficient to satisfy due
18  process. <u>Randone v. Appellate Dep't of Superior Court</u>, 5 Cal. 3d 536, 564
19  (1971)(citing <u>Sniadach v. Family Fin. Corp.</u>, 395 U.S. 337 (1969)).  In response,
20  California adopted a comprehensive statutory scheme which exclusively governs
21  attachment. Cal. Civ. Proc. Code §§ 481.010-493.060 [hereinafter the "Attachment
22  Law"].

23  Because the Attachment Law is purely statutory, it must be strictly construed. <u>VFS</u>
24  <u>Fin., Inc. v. CHF Express, LLC</u>, 620 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009). Thus,
25  the plaintiff has the burden of establishing grounds for an attachment order, <u>Pos-A-</u>
26  <u>Traction, Inc. v. Kelly-Springfield Tire Co.</u>, 112 F. Supp. 2d 1178, 1181 (C.D. Cal.
27  2000), and must do so with admissible evidence, <u>VFS</u>, 620 F. Supp. 2d at 1096-97.
28  Further, the courts may not create their own attachment remedies not authorized by

statute. <u>Brun v. Evans</u>, 197 Cal. 439, 443 (1925)("[Former attachment law] does not empower the court to create a lien where none exists, nor to revive a lien which has ceased to exist."); <u>see</u> <u>Doyka v. Superior Court</u>, 233 Cal. App. 3d 1134, 1136-37 (1991)(superior court exceeded its authority in enjoining defendant from using any funds on deposit because injunction was "in effect, a prejudgment attachment without meeting the requirements for such attachment.").

While it is true that plaintiffs can apply *ex parte* for a right to attach order and issuance of a writ of attachment or for a temporary protective order pending a noticed motion for a right to attach order and issuance of a writ of attachment, <u>see</u> Alan M. Ahart, California Practice Guide: Enforcing Judgments and Debts ¶¶ [4:299]-[4:376] (2019)[hereinafter "Ahart"], substantively they must show they will suffer "great or irreparable injury," Cal. Civ. Proc. Code § 485.010, and that attachment is otherwise proper, Cal. Civ. Proc. Code § 486.020. Procedurally, there must be a noticed, written motion for a right to attach order and issuance of a writ of attachment; a written application for a temporary protective order; both applications must be supported by a competent declaration, a memorandum, and a proposed order; the applications must identify the property to be levied upon and/or enjoined within California; both applications must be served on all parties at the first reasonable opportunity; the plaintiff must post an undertaking in compliance with the Bond and Undertaking Law, Cal. Civ. Proc. Code §§ 995.010 - 996.560; and, upon issuance, the written temporary protective order must be personally served on the defendant. Ahart, ¶¶ [4:299]-[4:376] & [4:543].[10] The failure to post an undertaking is fatal, and any remedy mistakenly issued without an undertaking is void *ab initio*. <u>See</u> Cal. Civ. Proc. Code § 489.210; <u>Vershbow v. Reiner</u>, 231 Cal. App. 3d 879, 882-83 (1991).

/ / /

---

[10]   While optional, the Judicial Council has promulgated several forms to assist litigants in complying with with complex procedures required for attachment remedies, including temporary protective orders. (Def.'s Ex. BB; Req. Jud. Not. No 3(g).)

1   Here, it is obvious that Spectrum did not come close to meeting—didn't even try to
2   meet—its burdens.   Despite Mr. Cupar's representation that he had "looked up
3   California law before the jury verdict," (Def's. Ex. O lns. 1-4 at 129), and that
4   Spectrum could follow up with a written motion," (Def.'s Ex. M ln. 25 at 107 to ln. 1
5   at 108), Spectrum never made a written application for a temporary protective order
6   supported by admissible evidence of great or irreparable injury; posted an undertaking;
7   served any temporary protective order; or even applied for a right to attach order and
8   issuance of a writ of attachment.   Indeed, Spectrum not only relied upon Mr. Cupar's
9   incompetent, speculative "concern" that, because Mr. Eastman had sought to withdraw
10  for non-payment months before trial, there was a possibility that the Green Parties
11  would transfer large amounts of money to make themselves judgment proof, (see
12  Def.'s Ex. M lns. 2-11 at 108), at the subsequent hearing Mr. Cupar openly admitted
13  "there is nothing specific we know about" warranting relief. (Def.'s Ex. O ln. 25 at 128
14  to ln.1 at 129.)   For these reasons, the Order was void *ab initio*; did not comport with
15  the minimum requirements of due process; and was transparently invalid such that it
16  cannot be the basis for contempt.
17      **b. Any Temporary Protective Order Has Long Expired.**
18      Even if oral, *ex parte* temporary protective orders issued without prior notice,
19  without a meaningful opportunity to respond, without a written application, without a
20  showing of great or irreparable injury by admissible evidence, without an undertaking,
21  without a pending application for a right to attach order and issuance of a writ of attachment, and
22  without service thereof were  valid (and they are not), any such order has long expired.
23  Temporary protective orders under the Attachment Law expire 40 days after issuance
24  unless an earlier date is prescribed.   Cal. Civ. Proc. Code § 486.090(a); see also Cal.
25  Civ. Proc. Code § 484.080 (temporary protective order can be extended by request if
26  hearing on application for right to attach order and issuance of writ of attachment
27  continued).
28  / / /

1    Here, Spectrum never filed an application for a right to attach order and issuance of

2    a writ of attachment.   Nor did Spectrum ever request that the Order be extended

3    pending such an application.   The Order issued on February 23, 2018, and expired 40

4    days later on April 4, 2018.   The foreclosure took place fifteen months later on

5    September 19, 2019.   (Def's Ex. W at 315.)   The Order cannot serve as the basis for a

6    contempt charge here, particularly after 15 months of laches.   See <u>Melendres v. Arpaio</u>,

7    154 F. Supp. 3d 845, 849-50 (D. Ariz. 2016)(laches as defense to contempt upon

8    showing of delay and prejudice).[11]

9    **2. The Order Is Not Salvageable Under Rule 65.**

10   Rule 65 governs the general injunction power of the federal courts.   Thus, to meet

11   minimum due process, a federal court may issue a temporary restraining order or

12   preliminary injunction only after: notice to the adverse party or, as to a restraining

13   order, a specific showing by affidavit of good cause excusing notice, Fed. R. Civ. P.

14   65(a)(1) & 65(b), and the movant posts security in a proper amount, <u>id.</u> 65(c).   Further,

15   upon issuance, a restraining order or an injunction must state: the reasons why it was

16   issued; its specific terms; and, in reasonable detail, the act or acts restrained.   Fed. R.

17   Civ. P.  65(d).[12]   Here—just as it did with respect to the minimum due process

18   requirements to obtain an attachment remedy—Spectrum never even attempted to

19   comply with any of these due process requirements to obtain a restraining order or

20

---

21   [11]   Mr. Eastman has clearly suffered prejudice because he assumed the liabilities and
22   expenses of running the Dr. Greens business and, indeed, moving it out of state to maintain it as
     a lawful enterprise.  Spectrum's laches is particularly egregious here considering that the UCC-
     1Financing Statement; the Collection Action; and the foreclosure were all matters of public
23   record which, apparently, Spectrum never bothered to investigate notwithstanding having
     expended "hefty legal bills", (<u>see</u> Def's Ex. G ln. 15 at 73; Req. Jud. Not. No. 1(d)), and then a
24   large, enhanced verdict.

25   [12]   The due process requirements of Rule 65 are similar to those required for injunctive
     relief under California law.  To obtain injunctive relief under California law, the plaintiff must
26   comply with the minimum due process requirements codified in California law for obtaining
     temporary restraining orders and preliminary injunctions.  <u>See</u> Cal. Civ. Code §§ 3420-3424;
27   Cal. Civ. Proc. Code §§ 525-526, 529, 532 & 533; Cal. R. Ct. 3.1150; <u>see</u> <u>generally</u> Lee
     Smalley Edmon & Curtis E.A. Karnoa, California Practice Guide: Civil Procedure Before Trial
28   ¶¶ [9:560]-[9:670] (2019).

preliminary injunction under Rule 65.  Improper notice is a defense to a contempt charge.  See Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).

Moreover, in an action at law for money damages, district courts lack authority under Rule 65 to issue injunctions preventing a party from transferring assets in order to preserve assets against which a money judgment could later be enforced. Grupo Mexicano De Desarrollo v. Alliance Bond Fund, 527 U.S. 308 (1999); United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 495-99 (9th Cir. 1999); Zhenhua Logistics (H.K. ) Co. v. Metamining, Inc., No. C-13-2658 EMC, 2013 U.S. Dist. LEXIS 87089, at *11-*12 (N.D. Cal. June 20, 2013)(denying under Grupo order freezing defendant's assets in a breach-of-contract case, as "preliminary injunctive relief may issue to freeze a defendant's assets only to the extent that they are related to the property at issue in the case."); JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003)(denying preliminary injunction freezing defendant's assets, as the injunction would simply be "in aid of the collection of a money judgment, not final equitable relief, an outcome barred by Grupo Mexicano.").[13]

Here, Spectrum has never sought relief in equity claiming an interest in any specific, identifiable property of the Green Parties, (see Rep. Tr. lns. 9-21 at 81); they

---

[13] In Grupo, investors sued for breach of contract on secured notes.  Based on the perceived risk of petitioner's insolvency and its preference for certain Mexican creditors, the investors requested a preliminary injunction restraining petitioner from transferring assets or receivables from the sale of those assets. The district court entered a temporary restraining order preventing petitioners from transferring certain assets. Ten days later the district court entered a preliminary injunction enjoining petitioner "from dissipating, disbursing, transferring, conveying, encumbering or otherwise distributing" its assets, and required the investors to post a $50,000 bond in light of such provisional remedy. Grupo, 311 U.S. at 312-13. The Supreme Court held that such injunctions could not issue to preserve assets to which a party did not yet have a legal claim. Id. at 332. The high court contrasted this general rule with exceptional circumstances involving fraudulent conveyances, bankruptcy, and where a plaintiff seeks to enjoin specific property in which the plaintiff claims an equitable interest. Id. at 319-20; cf., e.g., Deckert v. Independence Shares Corp., 311 U.S. 282, 285 (1940); Rahman, 198 F.3d at 499. As the high court noted, were such a provisional remedy granted under Rule 65, Rule 64 would be rendered superfluous. See Grupo 311 U.S. at 330-31 ("Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?").

sued only in law for damages and, upon obtaining a verdict, sought to enjoin the Green Parties from transferring assets for the stated purpose of preserving them to collect a money judgment.  Such an injunction is transparently invalid, and cannot be the basis of a contempt charge.[14]

### III.   CONCLUSION

Mr. Eastman engaged in no contempt.  The Order restrained the Green Parties from transferring money. Spectrum has not proven any such transfer of money.  Rather, the evidence shows that Mr. Eastman acquired a security interest weeks before the Order which he then perfected and enforced against the Green Parties' non-cash assets.  Nor has Spectrum proven that Mr. Eastman's understanding of the Order was unreasonable; his interpretation was not only reasonable, it was consistent with established law.  The Order was transparently invalid, and, to the extent that Spectrum would claim a protective order under the Attachment Law, the Order expired 15 months before the foreclosure.  Mr. Eastman requests the Court enter a judgment in his favor exonerating him from any contempt and discharging the Order to Show Cause.

Dated: March 2, 2020

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By:  /s/ Robert P. Allenby
E-mail: allenby@sullivanhill.com
Attorneys for Respondent GARY L. EASTMAN

---

[14]   California courts also may not use their general injunctive power to provisionally seize or otherwise prevent the disposition of a defendant's assets without first complying with the Attachment Law. Doyka, 233 Cal. App. 3d at 1136-37; CHoPP Computer Corp. v. United States, 5 F.3d 1344, 1349 (9th Cir. 1993)("California discourages the use of equitable remedies to ward off competing prior lienholders."); cf. Chemoil Corp. v. Cunningham Holdings, Inc., No. E068157, 2018 Cal. App. Unpub. LEXIS 8653, at *24-25 (Cal. Ct. App. Dec. 20, 2018)(unpublished)(injunction permitted to preserve assets already subject to attachment); Doyka, 233 Cal. App. 3d at 1136 (injunction can issue to prevent the disposition of "readily identifiable assets" in which the plaintiff claims an interest)(citing West Coast Constr. Co. v. Oceano Sanitary Dist., 17 Cal. App. 3d 693, 700 (1971); Lenard v. Edmonds, 151 Cal. App. 2d 764, 769 (1957)); City of San Diego v. Pac. Beach Recreation Council, Inc., No. D041232, 2003 Cal. App. Unpub. LEXIS 11796, at *16-17 (Cal. Ct. App. Dec. 17, 2003)(Iron, J.)(unpublished)(trial court "properly granted the TRO and preliminary injunction to restrain use of 'readily identifiable' assets in specified bank accounts."). While Chemoil and San Diego are unpublished, they may be cited. (See Note 5 supra at 12.)