J. CHRISTOPHER JACZKO (149317)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street Suite 2200
San Diego, CA 92101
Telephone: (619) 906-5748
Facsimile: (619) 744-5418
chris.jaczko@procopio.com

DAVID B. CUPAR (*Pro Hac Vice*)
MATTHEW J. CAVANAGH (*Pro Hac Vice*)
McDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5730
Facsimile: (216) 348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant SPECTRUM LABORATORIES, LLC and Defendant JAMES MATTHEW STEPHENS

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. GREENS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MATTHEW STEPHENS, an individual, and SPECTRUM LABORATORIES, LLC, an Ohio limited liability company,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION | Case No. 11cv0638 JAH (KSC)<br><br>**APRIL 2, 2021 DECLARATION OF MATTHEW J. CAVANAGH IN SUPPORT OF SPECTRUM LABORATORIES, LLC'S MOTION FOR COSTS, EXPENSES, AND ATTORNEYS' FEES UNDER 28 U.S.C. § 1927 AGAINST GARY L. EASTMAN**<br><br>Hearing Date: June 9, 2021<br>Time: 10:30 A.M.<br>Courtroom: 13B<br><br>Judge: Hon. John A. Houston<br>Mag. Judge: Hon. Karen Crawford<br>Filed: March 29, 2011<br>Trial: held Feb. 13, 2018 |

I, Matthew J. Cavanagh, declare as follows:

1. I have personal knowledge of the following facts, and if called as a witness, I could and would competently testify as follows:

2. I am an attorney at the Cleveland, Ohio offices of McDonald Hopkins LLC.

3. I am licensed to practice law in the state of Ohio, before various federal courts, and before the United States Patent and Trademark Office. I am admitted *pro hac vice* before this Court in this action.

4. I am one of the attorneys representing Spectrum Laboratories, LLC and James Matthew Stephens in this action.

5. I submit this declaration in support of Spectrum's Motion for Costs, Expenses, and Attorneys' Fees under 28 U.S.C. § 1927 and to testify to the amount of attorneys' fees and litigation-related expenses incurred by Spectrum in this action and to testify as to facts that demonstrate how the fees and expenses incurred were necessary and reasonable to respond to the vexatious and unreasonable conduct of Gary Eastman.

6. I am a 2005 graduate of the Case Western Reserve University School of Law. I am a registered patent attorney, intellectual property litigator, and a member in the Cleveland office of McDonald Hopkins LLC. I have practiced law in the area of intellectual property for 15 years. I was promoted from associate to member effective October 1, 2013, during the pendency of this case. During my legal career, I have represented hundreds of clients as plaintiffs and defendants in civil lawsuits in state and federal court, including patent, trademark, copyright, trade secret, defamation, breach of contract, and commercial tort cases.

7. David B. Cupar also represented Spectrum in this case. Mr. Cupar is a 1999 graduate of the Case Western Reserve University School of Law. He is a

registered patent attorney and intellectual property litigator. He is a member of McDonald Hopkins LLC and chairs the firm's Intellectual Property Department.

8. Maxwell Goss represented Spectrum in this case. Mr. Goss is a 2009 graduate of the University of Notre Dame Law School. He is an intellectual property litigator and, at the time of his work on this case, was an associate attorney with McDonald Hopkins. Mr. Goss has practiced in the area of intellectual property for 10 years.

9. Ashley Weaver represented Spectrum in this case. Ms. Weaver is a 2004 graduate of the Georgetown University Law Center. She is an intellectual property litigator and, at the time of her work on this case, was an Of Counsel attorney with McDonald Hopkins. Ms. Weaver is a former law clerk for a Federal District Court Judge in the U.S. District Court for the Northern District of Ohio.

10. Andrew Gordon-Seifert represented Spectrum in this case. Mr. Gordon-Seifert is a 2014 graduate of the Ohio State University Moritz College of Law. He is an intellectual property litigator and is an associate of McDonald Hopkins LLC. Mr. Gordon-Seifert has experience in federal and state court nationwide and worked at another firm and in-house as an attorney at The Goodyear Tire & Rubber Company in Akron, Ohio prior to joining McDonald Hopkins.

11. The attorneys on Spectrum's legal team identified above have represented individuals and businesses in many patent, trademark, copyright, trade secret, and other types of civil lawsuits in federal district courts, state trial courts, and federal and state courts of appeal.

12. Each attorney and paralegal at McDonald Hopkins who worked on this case maintained contemporaneous billing records in the law firm's computer database of his or her time that set forth for each task billed: the timekeeper that performed the task, a task description, the date of the task, and the time billed for the task (rounded to the nearest 0.1 hour). McDonald Hopkins has given Spectrum a

1  10% courtesy discount on all billings since the start of the case. The billing numbers
2  analyzed in this declaration and in the attached Exhibits include and account for the
3  10% discount.

4      13.    McDonald Hopkins issued monthly invoices to Spectrum, and those
5  invoices contained printouts from the firm's billing database that provided the billing
6  details described in the immediately preceding paragraph for each timekeeper.
7  Attached as Exhibits A, B, C, and D are true copies of the actual McDonald Hopkins
8  invoices issued to Spectrum for legal work on this case. The invoices were broken
9  into four groupings because of file size limitations:

|   |     |         |          |
|---|-----|---------|----------|
| A  | 6/27/11 | through | 11/30/12 |
| B  | 12/1/12 | through | 11/30/15 |
| C  | 12/1/15 | through | 3/31/19  |
| D. | 4/1/19  | through | present  |

    14.    Because this case began ten years ago, in 2011, I divided the case into six phases to analyze the tasks performed and associated legal bills and expenses during each particular phase of the case: (I) pleadings/case investigation, planning, and scheduling/motion to dismiss/early discovery (March 29, 2011 through Dec. 2011); (II) fact discovery/claim construction (Jan. 2012 through Feb. 2014); (III) expert discovery/summary judgment (Mar. 2014 through Dec. 2016); (IV) pretrial motions, including second wave of summary judgment motions (Jan. 2017 through Nov. 2017); (V) trial prep/trial/post-trial (Dec. 2017 to Mar. 2019); and (VI) post-trial (continued)/appeal/contempt proceedings (Apr. 2019 to present).[1]

    15.    In preparing Spectrum's Motion for Costs, Expenses, and Attorneys' Fees under 28 U.S.C. § 1927, I carefully reviewed the firm's time-recording, billing records and invoices issued to Spectrum on this matter. For efficiency purposes and

---

[1] As part of its successful motion for fees against Greens, Spectrum provided unbilled time from April 1 to May 10, 2019. (ECF #344-12.) Because McDonald Hopkins LLC has now invoiced that time to Spectrum and it now provides that previously tallied time in Exhibit D, that time has been deducted from Phase V and added to Phase VI.

to be conservative, I eliminated from the analysis any billings by timekeepers that billed less than 20 hours in a given period. I also eliminated from my calculations any time entries that were redacted from the attached invoices. The redacted time entries were redacted either because they contain confidential and privileged information or because the time entries related to work that were not necessarily recoverable as fees in this case.

16. The following table shows, for each phase of the case, the total lawyer hours billed, average billing rate, and total legal fees billed to Spectrum and sought as fees to be awarded by Spectrum's present motion:

| Phase | Hours | Avg. Billing Rate | Fees |
|---|---|---|---|
| I | 177.03 | $301.34 | $53,346.30 |
| II | 672.70 | $327.33 | $220,192.98 |
| III | 599.13 | $366.36 | $219,496.73 |
| IV | 271.16 | $406.50 | $110,226.26 |
| V | 638.87 | $405.75 | $259,225.54 |
| VI | 572.71 | $422.39 | $220,964.80 |
| **TOTAL** | **3,017.73[2]** | **$371.61** | **$1,083,452.61** |

17. Attached as Exhibit E is a table that I created that compares the average billing rates by Spectrum's lawyers in each phase of the case to the average lawyer billing rates reported in the most applicable survey report by the American Intellectual Property Law Association (the "AIPLA Report"). The AIPLA Report is an economic survey, published every other year, that is developed and managed by the Law Practice management Committee of the American Intellectual Property Law Association ("AIPLA") that collects, analyzes and reports billing rate and typical charges for certain intellectual property legal services. The AIPLA Report provides

---

[2] Spectrum's attorneys and legal staff actually expended a total of 3,291.8 hours. So Spectrum seeks 91.7% (3,017.73 out of 3,291.8) of the total billable hours charged to Spectrum.

data on billing rates broken out by years of practice, type of practice, as well as by geographic location. Attached as Exhibits F, G, H, I, and J are relevant excerpts from the 2011, 2013, 2015, 2017, and 2019 AIPLA Reports, respectively.

18. The Court previously ruled that Spectrum's fees, with only a small deduction of $6,339.60, were reasonable for the period from Phases I-V and awarded a total of $890,614.38. (ECF #357 at 10-12, amount amended, ECF #362.)

19. The table attached as Exhibit E demonstrates that the hourly billing rates by Spectrum's attorneys are within the ranges of similar attorneys that perform similar work during those time periods and are therefore reasonable.

20. As to Phase VI, McDonald Hopkins' billings in March have not yet been invoiced. The table attached as Exhibit K provides a breakdown of the billings during Phase VI. I personally reviewed the time entries for the March, 2021 billing in McDonald Hopkins time entry computer system and confirm that the numbers reported in Exhibit K are correct and were for work incurred in preparing this motion, supporting documents, and other reasonably necessary post-verdict and appeal activities.

21. Below I identify some of the tasks that Spectrum's attorneys performed in each phase. I have personal knowledge of all work that was performed on the case, I directly supervised and provided instruction to the Associates and Of Counsel attorney that worked on the case. I am the attorney that billed the most time on the case.

22. In Phase I, from Mar. 29, 2011 through Dec. 2011, Spectrum's attorneys conducted various tasks that were reasonable and necessary for the case, including the following:

● Researching and studying the law and facts relevant to Greens' patent-based claims.

● Researching and studying the law and facts relevant to Greens' tort and

{9486073:3 }  6  Case No. 11cv0638 JAH (KSC)
APRIL 2, 2021 DECLARATION OF MATTHEW J. CAVANAGH IN SUPPORT OF
SPECTRUM LABORATORIES, LLC'S MOTION FOR 1927 SANCTIONS

Lanham Act claims.

- Reviewing, analyzing, and answering Greens' complaint.
- Communicating with Mr. Stephens and Spectrum personnel regarding the factual allegations in Greens' complaint.
- Investigating Greens' allegations that the Spectrum '776 patent was invalid and reviewing evidence related to same.
- Researching, drafting, editing, and filing motions to dismiss certain claims by Greens and supporting briefs.
- Draft and serve written discovery requests upon Greens and Mr. Green.
- Review Local Patent Rules and patent disclosure requirements; Draft preliminary infringement contentions.
- Work with opposing counsel to draft and submit joint discovery plan.
- Attend calls and conferences with Court.
- Evaluate potential counterclaims; draft, revise, and file Spectrum's counterclaim against Greens and Mr. Green.

23. In Phase II, from Jan. 1, 2012 through Feb. 28, 2014, Spectrum's attorneys conducted various tasks that were reasonable and necessary for the case, including the following:

- Drafting, revising, and serving Spectrum's Rule 34 document requests and interrogatories.
- Reviewing Greens' Rule 34 document requests and interrogatories; working with Spectrum to search for, review, and produce responsive documents; and drafting objections and responses to document requests and interrogatories. In total, Eastman served 167 document requests to Spectrum and 199 document requests to Mr. Stephens.
- Working with Greens to resolve discovery disputes; drafting and submitting joint statements and briefing to the Court to obtain judicial resolution of

discovery disputes.

- Performing investigation and discovery work to obtain the identities of Greens' synthetic urine suppliers and obtaining a protective order from the Court to overcome Greens' objections to disclosing its suppliers names.

- Drafting and serving third-party subpoenas upon Greens' synthetic urine suppliers in Kansas and Washington.

- Filing a miscellaneous action in the U.S. District Court for the District of Kansas to enforce subpoena to obtain formula information from Greens' Kansas-based supplier.

- Developing claim construction arguments; reviewing patent and other intrinsic and extrinsic evidence to analyze and respond to Greens' proposed constructions for certain claim terms; drafting and revising claim construction briefing.

- Attending court conferences.

- Preparing for and taking depositions of: (a) Greens' Washington-based supplier in Washington; (b) Greens' Kansas-based supplier in Kansas; and (c) Matt Green (both individually and as Rule 30(b)(6) designee of Greens) and Mr. Green's former business partner, Greg Nahay, in San Diego.

- Working with damage expert and technical expert to obtain necessary discovery and to develop opinions needed for trial.

- Reviewing interrogatory answers and objections provided by Greens and Mr. Green and following up with counsel to resolve deficiencies in same;

- Reviewing documents produced by Greens and Mr. Green and drafting follow-up document requests to obtain certain necessary sales information and to fill other gaps in evidence.

- Working with Spectrum's synthetic urine supplier to review, respond to, and produce documents in response to Greens' third-party document subpoena.

- Reviewing Greens' "on-sale" bar and other invalidity defenses, reviewing evidenced cited by Greens in support of same, and developing arguments and obtaining evidence in response to same.

24. In Phase III, from Mar. 1, 2014 through Dec. 31, 2016, Spectrum's attorneys conducted various tasks that were reasonable and necessary for the case, including the following:

- Researching and gathering facts and law in support of Spectrum's motion for summary judgment of infringement.
- Working with technical expert, Dr. Shri Thanedar, to draft declaration in support of summary judgment motions.
- Drafting motion for summary judgment, memorandum of points and authorities in support, and supporting declarations and exhibits.
- Preparing for and attending *Markman* Hearing.
- Modifying and resubmitting summary judgment motion, based on *Markman* ruling by Court.
- Reviewing and analyzing Greens' brief in opposition to motion for summary judgment and drafting reply brief in reply to same.
- Moving to strike Greens' attempt to rely on purported chemical expert opinion by its own attorney.
- Reviewing and analyzing expert reports by Greens' putative expert, Dr. Dale Chatfield, addressing non-infringement, invalidity, and inequitable conduct.
- Moving to strike untimely and improper expert reports by Greens' purported damage expert (who was not timely disclosed) and Greens' attempt to offer Dr. Chatfield's opinions on previously undisclosed invalidity theories, and drafting various briefs in support of same.
- Working with Spectrum's technical expert, Dr. Thanedar, to rebut opinions by Dr. Chatfield.

1  • Working through meet-and-confer process and briefing to Court regarding discovery disputes.

• Reviewing supplemental document products by Greens.

• Reviewing newer sets of documents requests by Greens, working with Spectrum to search for and review potentially responsive documents, and producing documents to Greens.

• Preparing and defending the following witnesses at deposition: (a) Dr. Thanedar (in Ann Arbor, Michigan); (b) Matt Stephens, individually and as Spectrum's Rule 30(b)(6) designee (in Cincinnati, Ohio); and (c) former Spectrum employee Fran Kusala (in Cincinnati, Ohio).

• Drafting document subpoena to Dr. Chatfield and review documents produced in response to same.

• Preparing for and attending deposition of Dr. Chatfield in San Diego.

• Assisting Dr. Thanedar and his Avomeen Lab with reviewing, responding to, and producing documents in response to document subpoenas served by Greens.

• Attending court conferences, including preparing settlement statement for Court and attending settlement conference.

25. In Phase IV, from Jan. 1, 2017 through Nov. 30, 2017, Spectrum's attorneys conducted various tasks that were reasonable and necessary for the case, including the following:

• Working with technical expert, Dr. Shri Thanedar, to respond to motions by Greens to strike Dr. Thanedar's opinions and to exclude him from trial, and drafting declaration of Dr. Thanedar in response to Greens' motions.

• Drafting motions for summary judgment of no liability on tort claims by Spectrum and Matt Stephens, memorandum of points and authorities in support, and supporting declarations and exhibits.

• Drafting motions for summary judgment of no invalidity and no inequitable

conduct, memorandum of points and authorities in support and supporting declarations and exhibits.

- Reviewing and drafting memoranda in opposition to Greens' pretrial motions, including Greens' motion to exclude Dr. Thanedar under *Daubert*, motion to strike rebuttal report of Dr. Thanedar, motion to preclude certain evidence at trial as a sanction, motion for sanctions under Court's inherent powers to dismiss Spectrum's patent infringement claim, and motion for summary judgment of no infringement. (ECF ##205-209.)

- Drafting reply memoranda in support of Matt Stephens and Spetrum's motions for summary judgment.

- Moving to consolidate all motions at one oral argument hearing.

- Preparing for and attending hearings on pretrial motions.

26. In Phase V, from Dec. 1, 2017 to Apr. 1, 2017, Spectrum's attorneys conducted various tasks that were reasonable and necessary for the case, including the following:

- Reviewing discovery, prior briefing, and other case materials to draft proposed stipulations of fact for trial and work with Greens' counsel regarding same.

- Preparing and drafting proposed Pretrial Order.

- Preparing for and attending oral argument on Spectrum's cross-motion for spoliation sanctions against Greens.

- Preparing exhibit lists for trial, and gathering exhibits.

- Preparing witness lists for trial.

- Preparing opening statements, direct examinations of witnesses, cross-examinations of witnesses, and closing argument for trial.

- Preparing voir dire for jury at trial.

- Reviewing Local Rules and Chamber Orders to ensure all trial requirements are satisfied.

- Preparing jury instructions.
- Preparing proof charts of claims and defenses to plan for trial.
- Working with fact and expert witnesses to prepare for their trial testimony.
- Designating portions of deposition transcripts to be read at trial, and reviewing portions designated by Greens.
- Responding to over-designating of deposition transcripts and excessive exhibit lists provided by Greens.
- Drafting objections to exhibits identified on Greens' exhibit lists.
- Preparing for and attending Final Pretrial Conference.
- Drafting motions in limine.
- Preparing for jury trial.
- Conducting jury trial.
- Researching and drafting motion for enhanced damages and attorneys' fees; reviewing Greens' opposition to motion for enhanced damages.

27. In Phase VI, from Apr. 1, 2019 to present, Spectrum's attorneys conducted various tasks that were reasonable and necessary for the case, including the following:

- Performing fact and legal research to support this Motion for Final Judgment;
- Drafting the prior Motion for Final Judgment and supporting documents, including the Memorandum of Points and Authorities and the Declaration of Matthew J. Cavanagh.
- Review of the Court's order granting enhanced damages, attorneys' fees, and prejudgment interest.
- Review and analysis of enforcement of judgment.
- Review and analysis of appeal and related issues.

- Perform fact and legal research regarding the violation of the Court's order by Eastman and Greens; drafting motion for an order to show cause based on the same;
- Attendance at Court hearings regarding the order to show cause and related issues.
- Drafting responses to Eastman's briefs regarding the Court's order to show cause.
- Performing legal and fact research related to the Court's amendment to the order to show cause and drafting responses to Eastman's briefs related to the same.
- Research and analysis of issues related to the various motions to withdraw.
- Various conferences with opposing counsel and the ESI vendor regarding discovery.
- Review and analysis of the documents and discovery responses by Eastman and Greens.
- Drafting motions to compel and for sanctions regarding abuses in the discovery phase of the contempt proceedings.
- Review and analysis of Eastman's claims of privilege.
- Review and analysis of the facts in support of this motion.
- Drafting of this motion.

28. To date, based on my review of McDonald Hopkins' billing and accounting computer system, Spectrum was billed a total of **$1,083,452.61** in legal fees by McDonald Hopkins for the Dr. Greens lawsuit, and Spectrum has fully paid that entire invoiced amount: **$1,083,452.61**. Spectrum will continue to incur additional legal fees on post-verdict activities that have not been accounted for in this

declaration or the attached exhibits. Considering the Court's prior order of a deduction of $6,331.60, Spectrum seeks a total of **$1,077,113.01.**

29. Spectrum was billed a total of $75,020.78 by its local counsel, Chris Jaczko, and has paid the entirety of that amount. Mr. Jaczko's invoices are attached as Exhibit O, with new invoices beginning on page 771.

30. Spectrum incurred certain litigation-related expenses that were necessary to defend and prosecute this case. Below I provide a description of each expense and the amount that Spectrum was billed and paid for each category:

- Westlaw legal research $5,453.26. This legal research was necessary for analyzing and defending against legal claims raised by Greens, analyzing and asserting legal claims against Greens and Matt Green, for drafting jury instructions, formulating legal arguments, drafting memoranda of points and authority and other briefs submitted to the court, and for many other necessary legal tasks. These expenses are documented in the McDonald Hopkins' invoices that are attached as Exhibits A-D.

- $68,501.75 for expert witness services by Dr. Shri Thanedar (Spectrum's technical expert) and his staff. Dr. Thanedar's technical services were required to test samples of Greens' Agent X product, to review declaration evidence submitted by Greens in response to Spectrum's summary judgment motions, to respond to Greens' subpoenas, to issue expert reports and declarations in support of Spectrum's infringement case, to assess and respond to Greens' invalidity and inequitable conduct defenses, to respond to Greens' non-infringement defense, to respond to Greens' attempts to strike Dr. Thanedar as an expert and under *Daubert*, and to testify at trial. True copies of the invoices issued by Dr. Thanedar and his former firm, Avomeen Labs, for the work done by he and his staff are attached as Exhibit L.

- $109,244.11 for expert witness services by David Haas (Spectrum's damages expert) and his staff. Mr. Haas' expert services were required to analyze the

sales and financial records produced by Spectrum and by Greens, to develop his expert opinion for appropriate damages, to issue his expert report on damages, and to testify at trial on damages. True copies of the invoices issued by Mr. Haas' consulting firm, Stout Risius and Ross, for the work done by him and his staff are attached as Exhibit M.

- $11,835.74 for deposition related expenses, including court reporter attendance at depositions and/or transcripts for the depositions of eight witnesses: Matt Green (individually and as Rule 30(b)(6) designee of Dr. Greens, Inc.), Greg Nahay (former co-owner of Dr. Greens), Kevin Dyches (owner of Greens' current synthetic urine supplier), David Short (owner of Greens' prior synthetic urine supplier), Dr. Thanedar (Spectrum's technical expert), and Dr. Chatfield (Greens' technical expert). These deposition-related expenses are documented in the McDonald Hopkins' invoices that are attached as Exhibits A-D.

- $49,794.72 for travel expenses, including airfare, cabs, hotels, and meals for: (a) Spectrum's lawyers, fact witnesses, and expert witnesses to travel to trial in San Deigo, (b) Spectrum's lawyers and Matt Stephens to travel to San Diego for a settlement conference, (c) Spectrum's lawyer to travel to San Diego for court hearings, including Markman hearing, hearing on motion for summary judgment, and Final Pretrial Hearing; and (d) Spectrum's lawyer to attend the Court's hearing regarding the order to show cause in the contempt action. $31,148.74 of the travel expenses are documented in the McDonald Hopkins' invoices, which are attached as Exhibits A-D. The remaining $16,650.99 of travel expenses were incurred directly by Spectrum and are detailed on the table attached as Exhibit N.

//
//
//
//

1 I declare under the penalty of perjury under the laws of the United States of
2 America that the foregoing is true and correct.
3 Executed this Friday, April 2, 2021 in Cleveland, Ohio.

                                     s/ Matthew J. Cavanagh

                                     **MATTHEW J. CAVANAGH**